UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 3 2016
```

---

Royal Park Investments SA/NV,

Plaintiff,

–v–

Deutsche Bank National Trust Company,

Defendant.

14-CV-4394 (AJN)

MEMORANDUM AND
ORDER

---

ALISON J. NATHAN, District Judge:

On June 18, 2014, Royal Park Investments SA/NV ("Plaintiff") filed the above-captioned

action against Deutsche Bank National Trust Company ("Defendant") relating to ten residential

mortgage-backed securities ("RMBS") trusts for which Defendant serves as Trustee. *See* Dkt.

No. 1 ("Comp."). Plaintiff alleges violation of the Trust Indenture Act of 1939 ("TIA") and also

brings breach of contract and breach of trust claims. *See id.* ¶ 4. On March 2, 2015, Defendant

moved to dismiss the complaint. *See* Dkt. No. 54. For the reasons articulated below,

Defendant's motion to dismiss is granted in part and denied in part.

## I.   LEGAL STANDARD

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* Insufficient are "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements." *Id.* For the purpose of evaluating a motion

1

to dismiss under Rule 12(b)(6), the Court "accept[s] as true all factual allegations in the complaint, and draw[s] all reasonable inferences in the plaintiff's favor." *Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In addition to the pleadings, a court evaluating a Rule 12(b)(6) motion to dismiss "may consider . . . documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). A court may also consider a document not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). As a result, the Court may consider the Pooling and Servicing Agreements ("PSAs") of the ten relevant trusts. If the PSAs "contradict[] allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)).

## II.   FACTUAL BACKGROUND

The dispute in the above-captioned action concerns residential mortgage-backed securities ("RMBS") trusts. As the name suggests, securities contained within an RMBS trust derive from residential real estate financing. In connection with purchasing a home, an individual may borrow money from a bank in the form of a mortgage loan. Comp. ¶ 36. Institutional entities ("Sellers" or "Originators") group these mortgage loans into large pools and

sell them to other entities ("Depositors"). *Id.* ¶ 37. Thereafter, a Depositor transfers the pool of mortgage loans to a Trustee, who assumes certain rights and obligations to enforce the terms of the sale. *Id.* ¶ 39. In return, the Trustee transfers RMBS "certificates" to the Depositor. *Id.* The Depositor then sells these certificates to "Certificateholders," who retain legal title of the certificates but sell beneficial ownership rights to investors, called "Certificate Owners." *Id.* ¶ 40, 46; Dkt. No. 55 ("Br.") at 6; *Beneficial Owner*, Black's Law Dictionary (10th ed. 2014). Certificate Owners have the right to a share of profits generated by the mortgage loans. Comp. ¶ 42.

Pooling and Servicing Agreements ("PSAs") between the Seller, Depositor, Trustee, and other interested parties govern the sale of a pool of mortgage loans. *Id.* ¶¶ 5, 37-38. In the PSA, the Seller or Originator makes representations and warranties ("R&Ws") concerning the quality of mortgage loans in the pool and agrees to cure, substitute, or repurchase any individual loans that fail to comply with these R&Ws. *Id.* ¶ 38. The PSA also describes the obligations of the Trustee, the Depositor, and any other parties to the agreement. *Id.*

Plaintiff, a Certificate Owner in ten RMBS trusts and a third-party beneficiary of their PSAs, claims that Defendant, the Trustee of the ten RMBS trusts, violated its contractual duties under the PSAs, including its duty to enforce the Sellers' obligation to substitute or repurchase mortgage loans breaching the R&Ws. *Id.* ¶¶ 47, 49-50. Additionally, Plaintiff claims that Defendant violated its common law duty to avoid conflicts of interest. *Id.* ¶ 61. Plaintiff further claims that Defendant violated duties imposed by the TIA. *Id.* ¶¶ 62, 66. Alternatively, Plaintiff brings derivative claims on behalf of the Trusts. *Id.* ¶¶ 195-199. The Court will address the sufficiency of each claim in turn.

### III.   BREACH OF CONTRACT

Defendant's contractual obligations fall into two categories: (1) obligations prior to an "Event of Default"; and (2) obligations after an "Event of Default."[1]   *See* Comp. ¶¶ 207-210; Dkt. No. 56 Ex. A ("FFML 2006-FF9 PSA") § 8.01.   Prior to an "Event of Default," Plaintiff alleges that Defendant has a limited obligation to enforce breaches of a Seller's R&Ws by requiring the Seller to substitute or repurchase defective or noncompliant loans.   Comp. ¶ 207(a). After an "Event of Default," Plaintiff alleges that Defendant has a broader obligation to act as a "reasonable, prudent person" to protect the interests of the Plaintiff.   *Id*. ¶ 207(e).   In its motion to dismiss, Defendant first argues that Plaintiff lacks standing to enforce these contractual obligations.   Second, Defendant argues that Plaintiff has failed to plead a breach of pre-Event of Default obligations.   Third, Defendant argues that Plaintiff has failed to plead a breach of post-Event of Default obligations.

#### A. Standing

Defendant makes two arguments that Plaintiff lacks standing.   First, it argues that "negating clauses" in three PSAs prevent Plaintiff, a third-party beneficiary of the PSAs, from suing to enforce those agreements.   Br. at 13.   Second, Defendant argues that "no action" clauses in all ten PSAs prohibit Plaintiff from suing without meeting certain conditions that are not met here.   *Id*. at 37.   The Court finds neither of these arguments persuasive.

##### 1.   The negating clauses do not bar Plaintiff's suit

Defendant first argues that Plaintiff, a beneficial owner of RMBS certificates, lacks standing to enforce the PSAs for three Trusts, HVMLT 2006-8, NHEL 2006-4, and SVHE 2007-

---

[1] An Event of Default occurs 30 days "after the date on which written notice of [] failure [to perform contractual duties], requiring the same to be remedied, shall have been given to the [] Servicer by the Trustee or . . . by the holders of Certificates evidencing at least 25.00% of the Voting Rights."   *See, e.g.*, FFML 2006-FF9 PSA § 9.06(b).

NS1, because those PSAs contain negating clauses barring enforcement by third-party beneficiaries. *See* Br. at 13-15; Dkt. No. 56 Ex E ("HVMLT 2006-8 PSA") § 12.10; Dkt. No. 56 Ex. J ("NHEL 2006-4 PSA") § 12.10; Dkt. No. 56 Ex. L ("SVHE 2007-NS1 PSA") § 11.10. Plaintiff counters that it has been authorized by the Certificateholder CEDE & Co. to bring suit on its behalf. *See* Opp. Br. at 7; Dkt. No. 65 Ex. 11 at 3 ("CEDE & Co. . . . hereby authorizes . . . [Plaintiff] to take any and all actions and exercise any and all rights . . . that CEDE & Co. . . . is entitled to take.").

Beneficial owners may "obtain[] . . . permission to sue from the registered holder" even if a negating clause would ordinarily bar such a suit. *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005). Defendant argues that a beneficial owner can only obtain such permission if specifically authorized by the contract to do so. Reply Br. at 6. However, "[u]nder New York law, contracts are freely assignable absent language which expressly prohibits assignment." *In re Stralem*, 758 N.Y.S.2d 345, 347 (App. Div. 2003) (citing *Allhusen v. Caristo Constr. Corp.*, 103 N.E. 2d 891, 892 (N.Y. 1952)). For this reason, "[a] beneficial owner who lacks standing [to enforce a PSA] may receive authorization to sue from the registered Holder," even if the PSA does not specifically provide for such authorization. *See Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 607 & n.111 (S.D.N.Y. 2015) ("*HSBC*"). As a result, Plaintiff is authorized to bring suit to enforce the terms of the PSA.

### 2. The no action clauses do not bar Plaintiff's suit

Defendant further argues that Plaintiff fails to satisfy the requirements of the no action clauses in all ten PSAs, which prohibit suing to enforce the PSA unless certain conditions are met. Br. at 37. To properly initiate suit, a party must (1) provide "written notice of an Event of

Default" to the Trustee; and (2) have at least 25% of Certificateholders make a "written request to the Trustee to initiate such action." *See, e.g.*, FFML 2006-FF9 PSA § 12.08.

In *Cruden v. Bank of New York*, the Second Circuit held that a virtually identical no action clause was not enforceable against a Trustee such as Defendant. *See* 957 F.2d 961, 968 (2d Cir. 1992). ("[T]he 'no action' clause applie[s] only to debenture holder suits against [the issuer], not the Indenture Trustees."). Defendant argues that *Cruden* only bars enforcement of the pre-suit demand requirement and not the written notice requirement. Br. at 37. In support of this position, Defendant points to language in *Cruden* where the Second Circuit explains that "it would be absurd to . . . ask the Trustee to sue itself." *Cruden*, 957 F.2d at 968. Citing this language and severability clauses in the PSAs, Defendant argues that Plaintiff should still be required to comply with the written notice requirement. However, *Cruden*'s holding was not limited to the pre-suit demand provision; the Second Circuit held that the entire no action clause, which included both a pre-suit demand requirement and a written notice requirement, did not apply to the Trustee in that case. *Id*. In light of this holding, Defendant points to no authority distinguishing *Cruden* and permitting it to sever the two subdivisions of the no action clause. In fact, other courts to consider Defendant's argument on this point have rejected it. *See HSBC*, 109 F. Supp. 3d at 606; *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, No. 09-CV-6904 (JFG), 2010 WL 3324705, at *4 (N.D. Ill. Aug. 20, 2010). As a result, compliance with the no-action clause is excused and Plaintiff does not lack standing on this ground.

Because Plaintiff has standing to bring a breach of contract action under the PSAs, the Court turns to Defendant's substantive challenge to Plaintiff's breach of contract allegations.

**B. Breach of Pre-Event of Default Obligations**

Plaintiff alleges that Defendant breached its obligation to require a Seller to substitute or repurchase loans that did not comply with the Seller's R&Ws. Comp. ¶¶ 207(a), 208. Defendant counters that it had no such duty under the terms of the PSAs. Defendant further argues that Plaintiff has not adequately alleged that any mortgage loans in the Trusts did not comply with any Seller's R&Ws. Finally, Defendant argues that Plaintiff has failed to allege that Defendant had actual knowledge that mortgage loans did not comply with a Seller's R&Ws. The Court will address each of these arguments in turn.

### 1. All ten PSAs obligate Defendant to require Sellers to repurchase or substitute defective loans

Plaintiff claims that Defendant, upon discovering that mortgage loans did not conform with a Seller's R&Ws, had an obligation to require the Seller to substitute or repurchase defective loans (an obligation referred to by the parties as a duty to "enforce breaches of R&Ws"). Comp. ¶ 207(a). Defendant argues it had no such obligation under seven of the PSAs at issue here. Br. at 24-25. As described below, the Court has evaluated the language of each PSA and finds Defendant's argument unpersuasive.

#### a. The SAST 2006-2 PSA imposes a duty to enforce breaches of R&Ws

Defendant does not contest that § 2.3(d) of the SAST 2006-2 Trust PSA grants it the *right* to enforce breaches of R&Ws, *see* Dkt. No. 65 Ex. 8 ("SAST 2006-2 PSA"), but argues that it has no *obligation* to do so. Plaintiff responds by pointing to § 2.5 of the PSA, which provides that "[t]he Trustee agrees to . . . exercise the rights referred to above for the benefit of . . . Holders of the Certificates and to perform the duties set forth in this Agreement to the best of its ability, to the end that the interests of the Holders of the Certificates may be adequately and

7

effectively protected." *Id.*  Citing to the New York Court of Appeals case *Coley v. Cohen*, Defendant argues that this language does not create an obligation to enforce R&Ws because § 2.5 is "separate and distinct . . . and with no direct and evident contextual connection" to § 2.3(d).  Br. at 25 (quoting *Coley*, 45 N.E.2d 913, 914-15 (N.Y. 1942)).

Defendant's interpretation is unavailing.  Unlike the provision at issue in *Coley*, there is a "direct and evident contextual connection" between § 2.5 and § 2.3 of the SAST 2006-2 PSA.  Section 2.5 incorporates "rights referred to above" in defining the scope of the Trustee's obligations.  Because § 2.4 does not describe any rights of the Trustee, it cannot be the source of rights referenced by § 2.5.  Section 2.3, and § 2.3(d) in particular, however, describes the various rights assigned to the Trustee by the Depositor.  As a result, § 2.5 must incorporate the rights articulated in § 2.3.  Under § 2.5 of the PSA, then, Defendant has an obligation to "exercise [its] rights" to enforce the substitution and repurchasing remedies described in section 2.3(d) "for the benefit of all present and future Holders of Certificates . . . to the best of its ability, to the end that the interests of the Holders of the Certificates may be adequately and effectively protected." SAST 2006-2 PSA § 2.5.  This creates an obligation to enforce breaches of R&Ws of which Defendant has knowledge.

### b.  The HASC 2007-WF1 and FFML 2006-FF9 PSAs impose a duty to enforce breaches of R&Ws

With respect to the HASC 2007-WFI and FFML 2006-FF9 Trusts, Defendant argues that it only has an obligation to enforce breaches of R&Ws when it receives notice of a breach from another party.  Br. at 26.  In support of its position, Defendant cites § 2.03(d) of the almost identical PSAs governing these two trusts, which provides that the Trustee "shall give notice of [] breach to the Originator and request the Originator to substitute . . . or to repurchase" loans if it

8

"receives notice of a breach . . . of any of the representations and warranties." *See* Dkt. No. 56 Ex. D ("HASC 2007-WF1 PSA") § 2.03(d); *see also* FFML 2006-FF9 PSA § 2.03(d). Plaintiff counters § 2.03(d) does not require that notice of breach come from another party if Defendant is the party who discovers the breach. Opp. Br. at 30 n. 34.

Again, Defendant's proposed interpretation is unpersuasive. Section 2.03(k) of the PSAs provides that "[u]pon the discovery by . . . the Trustee [or any other party]. . . of a breach of any . . . representations and warranties . . ., the party discovering the breach shall give prompt written notice to the others." *See* HASC 2007-WF1 PSA § 2.03(k); FFML 2006-FF9 PSA § 2.03(k). The reference in § 2.03(d) to receipt of "notice of a breach" reflects the parties' § 2.03(k) obligation to notify each other upon discovering a breach. However, § 2.03(k) also contemplates that Defendant could independently discover a breach. *See, e.g.,* HASC 2007-WF1 PSA § 2.03(k) (referencing "discovery by . . . the Trustee" of breach). Reading § 2.03(d) in conjunction with § 2.03(k), Defendant's obligation to enforce breaches of R&Ws upon receipt of "notice" may be triggered both when it receives notice of breach from another party and when it independently discovers such breach. *See id.* § 2.03(d); § 2.03(k); *see also Notice*, Black's Law Dictionary (10th ed. 2014) ("A person has notice of a fact . . . if that person . . . has actual knowledge of it [or] has received information about it."). Plaintiff's allegation that Defendant had actual knowledge of a breach, discussed at length below, is thus sufficient to trigger Defendant's duty to enforce breaches of the R&Ws under § 2.03(d) of these PSAs.

### c.  The GSR 2007-AR2 PSA imposes a duty to enforce breaches of R&Ws

With respect to the GSR 2007-AR2 Trust, Defendant argues that the "Securities Administrator," not the Trustee, has the obligation to enforce breaches of R&Ws. Br. at 26.

This argument is contradicted by the plain language of multiple provisions of the PSA that explicitly require the Trustee to enforce breaches of R&Ws.[2]

### d. The MSAC 2007-NC2, MSAC 2007-NC3, and MISX 2006-1 PSAs impose a duty to enforce breaches of R&Ws

Finally, with respect to the MSAC 2007-NC2, MSAC 2007-NC3, and MISX 2006-1 Trusts, Defendant argues that it has an obligation to enforce breaches of R&Ws only if directed to do so by the Depositor. Br. at 26. To support its argument, Defendant points to § 2.07, creating an obligation to enforce breaches of R&Ws "if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies." *See, e.g.*, Dkt. No. 56 Ex. F ("MSAC 2007-NC2 PSA") § 2.07.

Plaintiff counters that the prevention doctrine precludes enforcement of this requirement. The portion of § 2.07 immediately preceding that cited by Defendant provides that "[u]pon discovery by any of the parties hereto of a breach of a representation or warranty . . ., the party discovering such breach shall give prompt written notice thereof to the other parties to this Agreement." *Id.* Plaintiff argues that Defendant, despite having discovered such breaches, did not provide the requisite notice to other parties. Comp. ¶ 10. As a result, the argument goes, Defendant cannot claim that it was not "direct[ed] . . . to pursue such remedies," *see* § 2.07, by a party to whom it failed to give the required notice. In sum, Plaintiff argues that the Defendant cannot rely on the Depositor's failure to direct it to act when Defendant did not inform Depositor of the need to act.

---

[2] *See* Dkt. No. 65 Ex. 10 ("GSR 2007-AR2 PSA") § 2.03(a) ("[Up]pon discovery by . . . the Trustee of any breach by any Servicer or any representation, warranty, or covenant, . . . the party discovering such breach shall give prompt written notice thereof to the other applicable parties. . . . The Trustee shall enforce such Servicer's obligation under such Servicing Agreement to purchase such Mortgage Loan from the Trustee."); § 2.03(b) "[T]he Trustee[] shall enforce the obligations of the Seller under the related Sale Agreement to cure such breach or to purchase the Mortgage Loan from the Trust.").

As the Plaintiff notes, this quandary is contemplated by the prevention doctrine. Under this doctrine, "a party may not insist upon performance of a condition precedent when its non-performance has been caused by the party [it]self." *Bank of N.Y. v. Tyco Int'l Group, S.A.*, 545 F. Supp. 2d 312, 324 n. 81 (S.D.N.Y. 2008) (quoting *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 93 (S.D.N.Y. 1995)). Under § 2.07 of these PSAs, Defendant had an affirmative duty to notify the Depositor of any discovery of breaches of R&Ws. Assuming that the Defendant did not provide the Depositor with notice of discovered breaches, *see* Comp. ¶ 10, the Depositor was unable to direct the Defendant to pursue any remedies. Defendant cannot avoid liability by "insist[ing] upon" written notice from the Depositor when Defendant prevented such notice from being sent. *See Tyco Int'l Group*, 545 F. Supp. 2d at 324 n.81. As a result, Defendant cannot disclaim its obligation to enforce breaches of R&Ws with respect to these Trusts.

### 2. Plaintiff need not allege breaches of R&Ws on a "loan by loan" basis at this stage

In addition to its arguments that the PSAs do not impose a duty to enforce the Seller's R&Ws, Defendant argues that Plaintiff attacks the general quality of the pool of mortgage loans rather than alleging breaches of R&WS on an individual "loan-by-loan" basis. Defendant correctly notes that, to prevail on its claims, Plaintiff must demonstrate such breach on a "loan-by-loan and trust-by-trust" basis. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*PABF*"). This, however, is not a pleading standard. As courts in this district have recognized, "[a]t the pleading stage, [a] plaintiff[] cannot be required to identify breaches of representations and warranties with respect to the individual loans in the specific trusts [as] such information, at this stage, is uniquely in the

11

possession of defendants." *Fixed Income Shares: £Series M v. Citibank N.A.* ("*Fixed Income Shares*"), No. 14-CV-9373 (JMF), 2015 WL 5244707, at *9 (S.D.N.Y. Sept. 8, 2015) (quoting *Policemen's Annuity and Benefit Fund of Chi. v. Bank of Am., NA*, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013) ("*Policemen's/BofA II*"), *abrogated on other grounds by PABF*, 775 F.3d 154). Instead, Plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference" that there were breaches of the R&Ws with respect to specific loans. *See id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiff has alleged "widespread lending misconduct" evidenced, in part, by "historically unprecedented default rates." Comp. ¶¶ 69, 71. For example, all but one of the trusts at issue here had a default rate of more than 38%, and three trusts had default rates above 58%. *Id.* at 37. Plaintiff also points to staggering economic losses: In just a few years, the ten trusts lost over $545 million dollars combined. *Id.* ¶ 71. In addition to high default rates and large economic losses, Plaintiff includes in its Complaint an extensive timeline of civil lawsuits, governmental investigations, and investigative journalism revealing pervasive problems in RMBS securitization, including information specific to Defendant. *See* Comp. apps. 1, 2.

Plaintiff's detailed allegations of high default rates, staggering economic losses, and widespread investigation into RMBS securitization are sufficient to "allow[] the court to draw the reasonable inference" that R&Ws were breached on a loan-by-loan basis. *Iqbal*, 556 U.S. at 678; *see also Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-CV-10104 (VEC), 2015 WL 5710645, at *4 (S.D.N.Y. Sept. 29, 2015); *HSBC*, 109 F. Supp. 3d at 602. "Indeed, it would be *im*plausible to assume that somehow all of the mortgage loans underlying the [Trusts] miraculously avoided the pervasive practices of the industry at the time." *Fixed Income Shares*, 2015 WL 5244707, at *10 (quoting *Policemen's/BofA II*, 943 F. Supp. 2d at 442) (internal

quotation marks omitted).  As a result, Plaintiff has sufficiently alleged breaches of R&Ws to survive Defendant's motion to dismiss on this ground.

### 3.  Plaintiff adequately pleads Defendant's actual knowledge of defective loans

Defendant further argues that even Sellers breached their R&Ws (*i.e.*, even if mortgage loans did not comply with Sellers' R&Ws), Plaintiff does not adequately plead that Defendant had actual knowledge of such breaches.  Br. at 27.  Without actual knowledge of non-conforming loans, Defendant would have no obligation to require a Seller to substitute or repurchase the defective loan.  *See, e.g.*, FFML 2006-FF9 PSA § 2.03(d).

The question at this stage "is not whether in fact the Trustee had actual knowledge—that is a factual determination left for trial.  Instead, the question is whether plaintiffs have pled plausible facts supporting allegations of actual knowledge."  *HSBC*, 109 F. Supp. 3d at 602-03 (quoting *Policemen's/BofA II*, 943 F. Supp. 2d at 442–43) (emphasis and alterations omitted); *see also Fixed Income Shares*, 2015 WL 5244707, at *10 ("Although none of these allegations demonstrates [] knowledge of deficiencies with respect to any particular loan, they are sufficient to meet [plaintiff's] burden at the motion-to-dismiss stage.").  For that reason, cases cited by Defendant about the standard for demonstrating actual knowledge at the summary judgment stage are inapposite.  *See* Br. at 30-31 (citing *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 33 F. Supp. 3d 455, 459, 480 (S.D.N.Y. 2014)).  As explained above, Plaintiff's allegations of high default rates, large economic losses, and widespread investigation into RMBS securitization "allow[] the court to draw the reasonable inference" that Defendant had actual knowledge of breaches of R&Ws on a loan by loan basis.  *Iqbal*, 556 U.S. at 678; *see also Phoenix Light*, 2015 WL 5710645, at *4; *Fixed Income Shares*, 2015 WL 5244707, at *10;

*HSBC*, 109 F. Supp. 3d at 603.  For this reason, Plaintiff has adequately pled Defendant's actual knowledge of breaches.

### C. Breach of Post-Event of Default Obligations

In addition to alleging that Defendant breached its limited obligation to enforce R&Ws, Plaintiff further alleges that Defendant breached its obligation under the PSA to act as a prudent person to protect investors' interests after an "Event of Default" had occurred.  Comp. ¶¶ 207(e), 210; *see also* FFML 2006-FF9 PSA § 8.01 ("In case a Master Servicer Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise . . . under the circumstances. . . .").  Defendant first argues that no Event of Default, as that term is defined in the PSAs, has occurred.  Defendant further argues that Plaintiff has not alleged Defendant's actual knowledge of an Event of Default.  The Court will address each of these arguments in turn.

### 1. Defendant's failure to provide the requisite written notice of breach did not prevent an "Event of Default" from occurring

Under the PSAs, an Event of Default occurs 30 days "after the date on which written notice of . . . failure [to perform contractual duties], requiring the same to be remedied, shall have been given to the . . . Servicer by the Trustee or . . . by the holders of Certificates evidencing at least 25.00% of the Voting Rights."  *See, e.g.*, FFML 2006-FF9 PSA § 9.06(b).  Thus, in order to trigger Defendant's obligation to "exercise . . . [its] rights and powers. . . [with] the same degree of care and skill . . . as a prudent person would exercise," *see id.* § 8.01, the Trustee or 25% of Certificateholders must provide written notice of breach to the Servicer.

Defendant argues that Plaintiff's failure to allege that such notice was provided precludes it from stating a breach of contract claim related to its post-Event of Default obligations.  Br. at 19.

Plaintiff counters this argument by again invoking the prevention doctrine.  As noted above, "a party may not insist upon performance of a condition precedent when its non-performance has been caused by the party [it]self." *Tyco Int'l Group*, 545 F. Supp. at 324 n. 81 (quoting *Lomaglio*, 892 F. Supp. at 93).  In other words, a party may not circumvent its obligations by preventing the conditions in which it is obligated to act from occurring.  Because Defendant was one of two parties responsible for providing written notice to the Servicer upon discovering a breach, Plaintiff argues, Defendant's failure to provide such notice despite possessing the requisite knowledge excuses noncompliance with the condition.  Opp. Br. at 16-17.  Defendant argues that the prevention doctrine does not apply first because it had no duty to provide such notice and second because another party could have provided notice.  Br. at 19; Reply Br. at 7-8.

Several courts in this district have considered the arguments currently advanced by Defendant.  For example, the court in *HSBC* considered a very similar provision.[3]  *See HSBC*, 109 F. Supp. 3d at 605 (Scheindlin, J.).  As Judge Scheindlin pointed out, "[t]he implied covenant of good faith and fair dealing requires a promisor to reasonably facilitate occurrence of a condition precedent by either refraining from conduct which would prevent or hinder the occurrence of the condition, or by taking positive action to cause its occurrence."  *Id.* (citing *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992)).  She further noted that the defendant in that case "took no steps to fulfill the condition, though it

---

[3] Under § 8.01(b)(i) of that agreement, an Event of Default occurred 30 days "after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Depositor or the Trustee or . . . the Holders of Certificates entitled to at least . . . 25%[] of the Voting Rights."  *See* 14-CV-9366, Dkt. No. 44 Ex. 9 at 3.

had the power and (plaintiffs allege) the knowledge to do so." *Id.* For this reason, Judge Scheindlin held that the defendant's failure to provide written notice did not prevent the occurrence of an Event of Default. *Id.*

Another court in this district considered a similar provision[4] in *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 291 F.R.D. 47 (S.D.N.Y. May 31, 2013) (Koeltl, J.), *abrogated on other grounds by PABF*, 775 F.3d 154 (2d Cir. 2014). Like the provision at issue here, the *Oklahoma Police Pension* PSA provided that written notice to trigger an Event of Default could be provided by the Trustee or 25% of Certificateholders. *Id.* at 70. Judge Koetl nevertheless held that a "trustee cannot rely on its own failure to give notice to escape its own liability." *Id.*

Responding to these two cases, Defendant points to *Millennium Partners, L.P. v. U.S. Bank National Ass'n*, where the court held that "Plaintiffs [] d[id] not plead that the requisite written notice was given to trigger an Event of Default," necessitating dismissal. No. 12-CV-7581 (HB), 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17, 2013). The plaintiffs in that case did not raise the prevention doctrine argument, *see* 12-CV-7581, Dkt. No. 20, at 16, and as a result, this case is not helpful in evaluating Plaintiff's prevention doctrine claim here.

The Court finds the analysis in the cases cited by Plaintiff to be persuasive. Defendant was one of only two parties authorized to provide written notice to the Servicer to trigger an Event of Default. *See* FFML 2006-FF9 PSA § 9.06(b). Plaintiff alleges that Defendant had actual knowledge of widespread improprieties on the part of Servicers that continued

---

[4] Under that agreement, an Event of Default occurred if "[t]he Master Servicer fail[ed] to . . . perform . . . any other material covenants and agreements . . . and such failure continue[d] unremedied for a period of 60 days after the date on which written notice of such failure . . . shall have been given . . . by the Trustee or . . . by the Holders of Certificates evidencing Fractional Undivided Interests aggregating not less than 25% of the Trust Fund." *Oklahoma Police Pension*, 291 F.R.D. at 70.

unremedied, plausibly establishing a breach of the Master Servicers obligations under § 9.06(b).
Comp. ¶ 15.  Defendant's failure to provide written notice despite its knowledge of the Master
Servicer's default constitutes, at best, a violation of the implied covenant of good faith and fair
dealing,[5] which requires that the Defendant "refrain from hinder[ing] the occurrence of the"
Event of Default.  *HSBC*, 109 F. Supp. 3d at 605 (citing *Cauff*, 807 F. Supp. at 1022).  Because a
"trustee cannot rely on its own failure to give notice to escape its own liability," Defendant's
failure to provide written notice to the Servicer did not prevent an "Event of Default" from
occurring.  *Oklahoma Police Pension*, 291 F.R.D. at 70; *see also Phoenix Light*, 2015 WL
5710645, at *5; *HSBC*, 109 F. Supp. 3d at 605.

### 2.  Plaintiff adequately pleads Defendant's actual knowledge of Servicer default

Defendant's final argument on the breach of contract claim is that Plaintiff fails to plead
Defendant's actual knowledge of Servicer default.  Br. at 20.  As discussed at length above, the
question at the motion to dismiss stage "is not whether in fact the Trustee had actual
knowledge—that is a factual determination left for trial.  Instead, the question is whether
plaintiffs have pled plausible facts supporting allegations of actual knowledge."  *HSBC*, 109 F.
Supp. 3d at 602-03 (quoting *Policemen's/BofA II*, 943 F. Supp. 2d at 442–43) (emphasis and
alterations omitted); *see also Fixed Income Shares*, 2015 WL 5244707, at *10.  Plaintiff's
allegations of widespread RMBS abuse detailed above are sufficient to "allow[] the court to draw
the reasonable inference" that Defendant had knowledge of events which would trigger its duty
to provide notice and adequately plead the requisite knowledge.  *Iqbal*, 556 U.S. at 678.

---

[5] Although no court has definitively answered the question, it does not appear that the implied covenant of good
faith and fair dealing can be waived under New York law.  *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d
98, 102 (2d Cir. 2015); *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 467 (S.D.N.Y. 2013).

## IV.    BREACH OF TRUST

In addition to its breach of contract claim, Plaintiff brings a common law breach of trust claim predicated on a violation of the duty to avoid conflicts of interest. Comp. ¶¶ 215-216. Defendant argues that this claim is duplicative of Plaintiff's breach of contract claim. Additionally, Defendant argues that Plaintiff fails to adequately allege a conflict of interest. Neither of these arguments is persuasive.

### A. Plaintiff's Breach of Trust Claim is Not Duplicative

Defendant argues that dismissal of Plaintiff's breach of trust tort claim is appropriate because that claim is duplicative of Plaintiff's contract claim. Br. at 38-39. If "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). However, "[w]here an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Id*. Thus, whether Plaintiff's tort claim is duplicative turns on whether Plaintiff's conflict of interest involves a contractual or extra-contractual duty. *See Fixed Income Shares*, 2015 WL 5244707, at *13.

"It is [] well-established under [New York] common law that the duties of an indenture trustee are strictly defined and limited to the terms of the indenture, although the trustee must nevertheless refrain from engaging in conflicts of interest." *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (citations omitted). For this reason, breach of the duty to avoid conflicts of interest "may subject [a] trustee to tort liability" in addition to contract liability. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d

162, 192 (S.D.N.Y. 2011) (citing *AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 896 N.E. 2d 61, 68 (N.Y. 2008). This demonstrates that the duty to avoid conflicts of interests is independent of contractual obligations under the terms of the PSA. As a result, the allegation of a conflict of interest is not duplicative of the contract claim and the breach of trust claim need not be dismissed on that ground. *See Fixed Income Shares*, 2015 WL 5244707, at *13; *HSBC*, 109 F. Supp. 3d at 610.

## B. Plaintiff Adequately Alleges a Conflict of Interest

Defendant further argues that Plaintiff has not adequately pled a conflict of interest. Although Plaintiff pleads a number of conflicts of interest, *see* Comp. ¶¶ 20-23, Plaintiff focuses on the "ongoing and prospective business relationships with" its various counterparties related to Defendant's role as a Seller of other mortgage loan pools. *Id.* ¶ 20. Plaintiff alleges that this created a conflict because Defendant feared that requiring a Seller to substitute or repurchase loans would cause those Sellers to retaliate by forcing Defendant to substitute or repurchase loans it had sold. *Id.* This particular conflict of interest has previously been credited in this district. *See Fixed Income Shares*, 2015 WL 5244707, at *13 ("Plaintiffs allege that Citibank was 'economically beholden' to those sellers and servicers because it 'faced repurchase liability for the sale and securitization of its own loans' if Citibank took action against them."); *HSBC*, 109 F. Supp. 3d at 610 (describing alleged conflict as Defendant's hope that its actions would cause counterparties to "return the favor when the roles were reversed"). The alleged quid pro quo system where Defendant turns a blind eye to breaches of R&Ws in the hopes that counterparties would later "return the favor," if true, would demonstrate that the Defendant "received a[] benefit from its decision" not to act on the breaches of R&Ws, constituting a conflict of interest. *Ellington Credit Fund*, 837 F. Supp. 2d at 193 (S.D.N.Y. 2011); *HSBC*, 109

F. Supp. 3d at 610. As a result, this allegation is sufficient to "allow[] the court to draw the reasonable inference" of a conflict of interest and adequately allege breach of trust. *Iqbal*, 556 U.S. at 678.

## V.   TIA CLAIMS

In its complaint filed June 18, 2014, Plaintiff raises claims under the Trust Indenture Act ("TIA"). Dkt. No. 1. On December 23, 2014, the Second Circuit held that the TIA does not apply to trusts governed by PSAs. *See PABF*, 775 F.3d at 169. In light of this development, Plaintiff concedes that its TIA claims are not actionable and has withdrawn them. Opp. Br. at 51 n. 62. As a result, the Court denies Defendant's motion to dismiss the TIA claim as moot.

## VI.   DERIVATIVE CLAIMS

As an alternative to the claims discussed above, Plaintiff brings a derivative action against Defendant "in the right and for the benefit of the Covered Trusts to redress losses suffered . . . by the Covered Trusts." Comp. ¶ 195. Defendant argues that the true nature of Plaintiff's action is direct rather than derivative in nature.

The New York Appellate Division has adopted the test articulated by the Delaware Supreme Court for distinguishing between derivative and direct actions. *See Yudell v. Gilbert*, 949 N.Y.S.2d 380, 381 (App. Div. 2012). Under that test, a court should look to "[w]ho suffered the alleged harm---the corporation or the suing stockholder individually---and who would receive the benefit of the recovery or other remedy" in determining whether an action is direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004); *Yudell*, 949 N.Y.S.2d at 384. A district court is "bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless [there is] persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion."

20

*Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).  Plaintiff does not point to and the Court does not see any reason why the Court of Appeals would reach a different conclusion on this issue.  As a result, the *Tooley* test governs the distinction between direct and derivative actions under New York law.  *See HSBC*, 109 F. Supp. 3d at 613.

Under the *Tooley* test, Plaintiff's claims are not derivative, because investors, not the Trusts, suffered the alleged harm and would receive the benefit of recovery.  In its opposition brief, Plaintiff concedes that investors, not the Trust, are the injured party.  *See* Opp. Br at 48 ("[A]ny conduct by the trustee that violates the [PSA] necessarily harms all bondholders . . . through an increased risk of default and a corresponding reduction in the market value of the bonds.") (internal quotation marks omitted).  This is further demonstrated by the fact that the R&Ws in question "inure to the benefit of Certificateholders," not the trusts.  *See, e.g.*, HVMLT 2006-8 PSA § 2.04.  This makes clear that Certificateholders, not the Trust, suffered the alleged harm.  *See HSBC*, 109 F. Supp. 3d at 613-14.

Relatedly, Plaintiff admits that any recovery would "ultimately belong to those who have a beneficial interest in" the trusts rather than the trusts themselves.  Opp Br. at 48; *see also* Reply Br. at 21 (recovery "would not belong to the Trusts because the Trusts themselves do not own assets and because the Trusts are REMIC pass-through vehicles that *cannot* hold cash and would merely pass on any cash received"); *HSBC*, 109 F. Supp. 3d at 614 (recovery "would simply pass through the trusts" to investors).  Because investors and not the trusts themselves "stand to receive the benefit" of the lawsuit, the suit is direct rather than derivative in nature.  *HSBC*, 109 F. Supp. 3d at 614.  For these reasons, the Plaintiff's derivative claims are dismissed.

## VII.   CONCLUSION

For the foregoing reasons, Defendant's motion is granted in part and denied in part. Plaintiff has withdrawn its TIA claim and its derivative claims are dismissed with prejudice. The remaining claims remain in the case. A case management conference will be scheduled by separate order. Per the Court's April 10, 2015 Order, the parties shall submit a letter regarding settlement within three weeks of the date of this decision. *See* Dkt. No. 63.

This resolves Dkt. No. 54.

SO ORDERED.

Dated: February _____, 2016
      New York, New York

_____
ALISON J. NATHAN
United States District Judge