```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

          Plaintiffs,

-against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

          Defendant.

14-CV-04394 (AJN) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Defendant Deutsche Bank National Trust Company (Deutsche Bank), in its capacity as trustee for certain residential mortgage-backed securities (RMBS) trusts, seeks an order compelling plaintiff Royal Park Investments SA/NV (Royal Park) to obtain and produce documents held by the non-parties from which Royal Park derived the rights upon which it now sues. The parties briefed the issue in letters dated December 15 and 17, 2015, and January 28, 2016, and presented helpful argument at a conference held on February 4, 2016. For the reasons that follow, the application is **GRANTED** to the extent described below.

## Background

Royal Park, headquartered in Brussels, is a Belgian limited liability company formed as a special purpose vehicle during the 2008 financial crisis to take over certain distressed assets held by Fortis Bank SA/NV and its affiliates (Fortis Bank). Compl. ¶ 30. Once the largest financial institution in Belgium, Fortis Bank nearly failed in late 2008, due in part to mounting losses on its structured credit portfolio following the collapse of the U.S. housing market. On May 12, 2009, as part of a larger bailout package financed in part by the Belgian government, Royal Park acquired a portion of that structured credit portfolio, Compl. ¶¶ 30-32, thus becoming

what is colloquially known as a "bad bank" holding "toxic assets." Royal Park, in turn, was (and still is) owned by the government of Belgium (43.53%), which had previously nationalized Fortis Bank; Fortis Holding (44.70%), a former parent company of Fortis Bank, which has since been renamed Ageas and carries on Fortis's Belgian insurance business; and BNP Paribas (11.76%), a French bank that acquired 75% of Fortis Bank from the Belgian government in 2008. Def. Letter dated Dec. 15, 2015, Ex. E.[1] Among the assets that Royal Park acquired were the RMBS certificates at issue here, which derived their value from pools of residential mortgages held in ten different trusts (the Trusts) in the United States. Deutsche Bank, headquartered in California, serves as the trustee of the Trusts and has done so since their inception. Compl. ¶ 33.

Royal Park alleges that when it acquired the RMBS certificates it obtained not merely an economic interest in those securities but "all litigation rights and claims the initial purchasers had," enabling it to stand in the shoes of the original investors and bring whatever claims they could have brought. Compl. ¶ 32; *see also* Joint Initial Rep. ¶ 7(g), Apr. 2, 2015 ("the Complaint alleges that plaintiff obtained *all of* its rights, claims and causes of action herein from another entity or entities") (emphasis added). Royal Park has made similar allegations in other cases, with respect to other components of the Fortis Bank structured credit portfolio.[2] The "litigation

---

[1] As discussed below, Royal Park is the plaintiff in numerous lawsuits in the United States, generally seeking to recover damages from U.S.-based financial institutions whose actions or inactions are alleged to have caused or contributed to the losses in the Fortis Bank structured credit portfolio. The pleadings in some of these lawsuits tell the story of the Fortis Bank crisis and bailout in considerable detail. *See, e.g.*, First Am. Compl. ¶¶ 44-61, *Royal Park Inv. SA/NV v. Bank of America Corp.*, No. 13 Civ. 3295 (C.D. Cal. Jan. 17, 2014) (Bank of America Compl.); *see also* Summons & Compl. ¶ 9, *Royal Park Investments SA/NV v. Oppenheimer Funds, Inc.*, No. 653111/2011 (N.Y. Sup. Ct. Nov. 9, 2011) (Royal Park was "created as a so-called 'bad bank' to assume and manage certain of Fortis Bank's structured credit risks").

[2] The most detailed allegations concerning the assignment appear in *Bank of America, supra*, where Royal Park alleges that it is an assignee of Fortis Bank's claims both as a matter of

2

rights and claims" could, at least potentially, have more value than the RMBS certificates themselves, which "are now total losses, having been completely written down to the point that they are worthless." Compl. ¶ 31. Royal Park's "main area of operations currently consists of getting the best results for the company's interests in the legal proceedings being conducted in the United States of America." Def. Letter dated Dec. 15, 2015, Ex. D.

In this case, Royal Park alleges that Deutsche Bank violated its duties to the investors in the RMBS certificates by failing to act when it learned that other participants in the complex RMBS structure were in breach of their own obligations regarding the quality or performance of the underlying loans. Royal Park originally sought to pursue this action both directly, on behalf of itself and a putative class of similarly-situated RMBS investors, and derivatively, on behalf of the Trusts themselves.

On March 2, 2015, Deutsche Bank moved to dismiss the complaint. Pursuant to Section II(A) of this Court's Pilot Project for Complex Civil Cases, certain forms of discovery were stayed pending the outcome of the motion. Document discovery pursuant to Fed. R. Civ. P. 34 was not stayed, however, and gave rise to the present dispute. On February 3, 2016, the Hon. Alison J. Nathan granted defendant's motion to dismiss in part, dismissing Royal Park's derivative claims with prejudice. Plaintiff's direct claims (except those arising under the Trust Indenture Act, which were withdrawn) survive.

### The Discovery Dispute

The parties agree that Royal Park must produce responsive documents held in its own

---

Belgian law and pursuant to the express terms of the "Protocole d'Accord," the "Portfolio Transfer Agreement," and other documents governing the transfer of the distressed assets. Bank of America Compl. ¶¶ 40-42. One of those documents—a "subsequent letter signed by the parties to the PTA"—confirmed their common intention to "transfer and assign to [Royal Park] all litigation rights, causes of action and claims arising out of, in connection with, and/or relating to such securities and other assets." *Id.* ¶ 42.

files. The question for the Court is whether Royal Park must also obtain and produce documents held by the assignors of the rights upon which it now sues; that is, the original RMBS purchasers or their successors in interest. Although Deutsche Bank's written submissions identify a large group of non-parties potentially possessing relevant information—including all three Royal Park shareholders and various "CDO [collateralized debt obligation] investment managers"—the present record does not permit the Court to conclude that any of these entities other than BNP Paribas is in fact an assignor of the rights asserted by Deutsche Bank. As to BNP Paribas, Royal Park confirms that it "acquired certain Fortis Bank entities that were the assignors of the [RMBS] [c]ertificates." Pl. Letter dated Dec. 17, 2015, at 1. As noted above, BNP Paribas is also a minority owner of Royal Park. Def. Letter dated Dec. 15, 2015, Ex. E; *see also* Pl.'s Fed. R. Civ. P. 7.1 Disclosure Statement dated Dec. 1, 2014.

Deutsche Bank contends that an assignee pressing an affirmative claim in litigation must, as a matter of fairness, assume the obligations as well as the rights of its assignor, including discovery obligations. Any other rule, Deutsche Bank argues, would permit a potential plaintiff to cripple its adversary's ability to litigate effectively simply by assigning its claims to a discovery-proof special-purpose vehicle. In addition, Deutsche Bank suggests, based on documents already produced in discovery, that Royal Park "may have contractual rights" to demand that BNP Paribas turn over responsive documents.

Royal Park protests that it cannot be ordered to produce that which it does not own and cannot obtain, and argues that Deutsche Bank has "failed to demonstrate" that Royal Park has the practical ability to compel BNP Paribas (or any other non-party) to turn over the documents sought. In addition, seeking to dispel any notion that it deliberately acquired litigation rights in the RMBS without the corresponding litigation responsibilities, Royal Park points out that it

obtained its interest in the RMBS "years before" the commencement of this litigation.

## Analysis

In *J.P. Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005), this Court considered and rejected the same arguments that Royal Park makes here:

> Viewed from any angle, plaintiff's position cannot be correct. It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear.

*Id.* at 506. *Winnick* thus held that the assignee of a claim in litigation has a duty to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves. "It would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants." *Id.* at 507.

Numerous courts in this and other circuits have come to the same conclusion—both before and after *Winnick*. *See, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-md-2343, 2014 WL 129814, at *2 (E.D. Tenn., Jan. 10, 2014) ("[I]t would be wholly unfair for Plaintiffs to step into the shoes of the assignors for the purposes of bringing their claims and not also assume a claimant's attendant discovery obligations."); *Travelers Indem. Co. of Am. v. Kendrick Bros. Roofing, Inc.*, No. 10 Civ. 00604, 2013 WL 6681240, at *2 (D. Idaho Dec. 18, 2013) ("Travelers, as the assignee of Okland's claims and the plaintiff in this lawsuit, therefore bears the same discovery obligations that Okland would carry had it remained the plaintiff."); *JPMorgan Chase Bank, N.A. v. KB Home*, No. 08 Civ.1711, 2010 WL 1994787, at *6 (D. Nev. May 18, 2010) ("It would be unfair to allow JPMorgan and the current debt holders to stand in the shoes of the original lenders in order to pursue this action without requiring them to produce discovery that

the original lenders would be required to produce if they had brought the action themselves."); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 149 (S.D.N.Y. 1997) (ordering defendant DIB to produce documents in the possession of Stanbic, the successor-in-interest to DIB's assignor Meridien Tanzania, because it would be "patently unfair if DIB were able to continue to discover relevant information from [plaintiff] BNY while relegating BNY to seek information from Stanbic as a non-party"); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33-34 (S.D.N.Y. 1984) (holding that the French government, as the "principal" of the entity bringing the lawsuit, should be treated as a party for discovery purposes, but declining to issue an order to compel as a matter of comity). Most recently, on facts indistinguishable from the case at bar, the Hon. Shira A. Scheindlin of this Court, citing *Winnick*, ordered Royal Park to "search for and produce relevant documents held by BNP Paribas." *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, No. 14 Civ. 8175 (SAS), slip op. at 5 (S.D.N.Y. Dec, 4, 2015).

Royal Park, for its part, does not cite any case holding that the assignee of a litigation claim may pursue that claim, free of the obligation to provide otherwise-discoverable documents, simply because those documents remain in the hands of its non-party assignor. Instead, Royal Park argues that *Winnick* is "non-binding," "factually distinguishable," and conflicts with *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2007), which plaintiff describes as "controlling Second Circuit authority." Pl. Letter dated Dec. 17, 2015, at 1, 2.

In *Shcherbakovskiy,* the district judge sanctioned plaintiff and counterclaim defendant Grigory Shcherbakovskiy for failing to turn over documents belonging to nonparty IPT, a Russian company of which Shcherbakovskiy was the "non-executive Chairman" and a minority owner. The district judge never held a hearing or reviewed the evidence concerning the degree to

6

which Shcherbakovskiy had any legal or practical ability to obtain and produce IPT's documents.[3] Instead, announcing from the bench that he took "a dim view of this fellow saying he can't, that he has no access to these records," the district judge ordered Shcherbakovskiy to produce the IPT documents in 20 days. 490 F.3d at 137. When Shcherbakovskiy failed to comply, the district judge dismissed his claims outright and entered a default judgment in favor of Da Capo on its counterclaims. *Id.* at 134.

On appeal, the Second Circuit reversed and remanded, applying the familiar rule that "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain," 490 F.3d at 138, and faulting the district court for failing to consider (a) the evidence as to whether Shcherbakovskiy in fact exercised the degree of control over IPT necessary to support a sanctions order for failing to produce its documents, and (b) the efficacy of lesser sanctions before imposing the "drastic" penalty of dismissal. *Id.* at 139-40. The appellate panel noted that a sanction of this nature is warranted only where a party disobeys a discovery order "willfully, in bad faith, or through fault." *Id.* at 140 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d. Cir. 1988)).

Shcherbakovskiy, however, was suing to enforce his own rights, not IPT's. He never alleged that he was IPT's assignee or agent, nor that he acquired any of his legal claims from IPT. Moreover, the issue in *Shcherbakovskiy* was sanctions—specifically, the ultimate sanction of dismissal, which requires a showing of willful or bad faith conduct. *Shcherbakovskiy*, 490 F.3d at 140; *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986) ("[t]he sanction of

---

[3] Shcherbakovskiy attempted to argue that as the "non-executive" chairman of IPT, he did not control the board, was not a majority shareholder, and had no means under Russian law of compelling the company to produce the documents sought, which in any event concerned sensitive technology, the disclosure of which might subject him to criminal penalties. *Shcherbakovskiy*, 490 F.3d at 134.

dismissal should not be imposed . . . unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent") (quoting *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958)). *Shcherbakovskiy* thus stands for the unexceptional proposition that a party asserting his own claims cannot be sanctioned for violating an order to turn over documents belonging to a non-party without a showing that he had sufficient control to comply with that order but wrongfully failed or refused to do so.[4]

The Second Circuit did not consider what rule should apply where, as here, the party asked to produce documents is standing in the shoes of the non-party entity that possesses them, pressing its rights and seeking to recover on its claims. *See In re Lozano*, 392 B.R. 48, 61-62 (Bankr. S.D.N.Y. 2008) (*Shcherbakovskiy* "does not address the appropriateness of shifting the cost and burden of discovery to a plaintiff suing as agent or assignee of claims originally belonging to others," and therefore does not conflict with *Winnick*).[5] But a number of persuasive district court cases, discussed above, have addressed the issue presented here, and concluded—as does this Court—that a plaintiff-assignee may be compelled to produce otherwise-discoverable documents from the files of its assignors.

---

[4] On remand, the district court reinstated the sanctions against Shcherbakovskiy, and on appeal the Second Circuit affirmed. *Shcherbakovskiy v. Seitz*, 450 Fed. App'x 87 (2d Cir. 2011).

[5] In *Lozano*, the bankruptcy court denied a motion by two individual debtors to compel Saxon and Wells Fargo to produce documents belonging to non-party Fremont, concluding that neither *Winnick* nor *Shcherbakovskiy* required the production. *Shcherbakovskiy* was inapposite because the debtors did not show "that Saxon and Wells Fargo have the practical ability to obtain disputed documents from Fremont." 392 B.R. at 53. *Winnick* was also inapplicable, because in that case the order to compel rested "on the fact that the plaintiff is suing for damages, asserting the rights of non-parties." *Id.* at 62. Since neither Saxon nor Wells Fargo had sought any affirmative relief in the bankruptcy court—much less done so as agent or assignee of Fremont— they could not be compelled to produce Fremont's documents in discovery. *Id.* Royal Park, of course, meets both of those marks: it is the plaintiff here, and it affirmatively alleges that it acquired all of its litigation rights and claims from assignors, including BNP Paribas.

Because *Shcherbakovskiy* does not supply the rule of decision for this case, it is unnecessary to determine whether Royal Park has "access [to] and the practical ability to possess" the documents that Deutsche Bank seeks, as would be required if there were no assignor-assignee relationship in play. *Shcherbakovskiy*, 490 F.3d at 138, *quoting In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996). Royal Park is correct that the *Winnick* court did not make any factual determination as to the plaintiff's ability to obtain the relevant documents from its assignors. That was not an oversight, however; it was because the decision rested on a different ground:

> If plaintiff and the assignees failed to obtain rights to insist on cooperation from their assignors . . . and cannot persuade lending Banks to cooperate now, that is their problem, not defendants'.

228 F.R.D. at 507; *see also Bank of New York,* 171 F.R.D. at 148 (ordering discovery of documents held by defendant's assignor even though defendant claimed it lacked control over the documents sought by plaintiff and "the Assignment contains no explicit assurance that DIB would have the ability to obtain" those documents).[6]

Rule 34, like all of the Federal Rules of Civil Procedure, is subject to the injunction of Rule 1 that it "be construed to secure the just, speedy, and inexpensive determination of every action." *See Herbert v. Lando*, 441 U.S. 153, 177 (1979). Where, as here, the plaintiff asserts that

---

[6] In *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007), the court made an express finding that defendant NTL Europe had both the legal right and the practical ability to obtain documents from its former affiliate (and non-party) New NTL. *Id.* at 195-97. The issue in *NTL*, however, was not whether those documents should have been produced; it was whether the failure to produce them—due in part to an underlying failure to preserve them—was sufficiently egregious to warrant an adverse inference instruction for spoliation. *See id.* at 192 (a party seeking an adverse inference instruction for spoliation must demonstrate that the adverse party had "control over the evidence" and an obligation to preserve it; that the destruction or failure to produce was carried out with a "culpable state of mind," and that the missing or tardy evidence was relevant and could have been helpful to the party deprived of it) (citing *Phoenix Four, Inc. v. Strategic Res. Corp.*, 05 Civ. 4837, 2006 WL 1409413, at *4 (S.D.N.Y. May 23, 2006)).

9

it has acquired a non-party's litigation claims but did not acquire any corresponding rights to access or possess the non-party's otherwise-discoverable documents, it would undercut those goals, and elevate form above substance, to focus myopically on the present ability of the assignee-plaintiff to extricate itself from the convenient conundrum in which it claims to find itself.

Although the Court need not predict—at this stage—whether Royal Park will prove to have sufficient "practical ability" to obtain the discovery material held by BNP Paribas, the ongoing relationship between the two suggests that Royal Park may not be entirely powerless. As a 12% shareholder of Royal Park, BNP Paribas has an economic interest in the outcome of this litigation, and therefore an economic motivation to provide Royal Park with the access it needs to comply with its discovery obligations. As Judge Scheindlin noted in *HSBC Bank*, slip op. at 4-5, "[t]hat BNP Paribas—*one of Royal Park's three shareholders*—has thus far refused to comply with Royal Park's informal requests for assistance does not prove that Royal Park has no practical ability to provide BNP Paribas documents" to its adversary. (Emphasis in the original.) *See also* Pl. Letter dated Dec. 17, 2016, at 3 (advising the Court that "conversations are still ongoing" with BNP Paribas and that Royal Park is "making substantial efforts" to secure its assignor's cooperation).

Regardless of the precise extent or degree of Royal Park's access to the materials held by BNP Paribas (contractual, practical, or otherwise), it is surely in a better position than its adversary to identify and obtain those materials for use in this litigation. Therefore, rather than require Deutsche Bank to pursue international non-party discovery against BNP Paribas—an effort guaranteed to be expensive, time-consuming, and cumbersome, with no corresponding guarantee of success—the Court will direct plaintiff Royal Park to produce documents held by

BNP Paribas to the same extent that it would be required to produce those documents from its own files pursuant to Fed. R. Civ. P. 34.

The Court's decision to grant the motion to compel does not rest on any finding of bad faith by Royal Park. As in *Winnick*, the assignment here occurred before the litigation was filed. As in *Winnick*, however, "this distinction is without difference," because regardless of when the assignment occurred, "the prejudice to defendants is equal either way." 228 F.R.D. at 507; *see also In re Infant Formula Antitrust Litig.*, 1992 WL 503465, at *9-10 (N.D. Fla. Jan. 13, 1992) (treating both assignor and assignee as parties for discovery purposes is proper "when to do otherwise would frustrate discovery, regardless of whether this frustration is intentional or not") (citation omitted). As explained in *Compagnie Francaise*, "Generally, courts only consider the good faith of a party resisting discovery in deciding whether to impose sanctions after a production order is violated." 105 F.R.D. at 31. Therefore, "[p]laintiffs' good faith, to the extent it exists, does not preclude this Court from issuing a production order." *Id.* at 31-32; *see also NTL*, 244 F.R.D at 198-99.

The Court notes, however, that if intent did matter—at this stage—that factor would not necessarily weigh in Royal Park's favor. Although the assignment occurred well before this action was filed, the present litigation—or litigation very much like it—seems to have been contemplated at the time of that assignment. As noted above, Royal Park was formed "for the express purpose of 'optimizing the run-off situation and maximizing recoveries in the interest of its shareholders.'" Bank of America Compl. ¶ 63; *see also id.* ¶ 50(c) n.13 (Royal Park "was intended to be, and now is, the vehicle through which the old Fortis Holding (now known as Ageas) could recover losses on the ring-fenced portfolio for its shareholders"). By 2011, Royal Park had filed the first of many cases in the New York State courts, this District, and the Central

District of California (some of which were removed from state court). The defendants in these cases include JP Morgan, Deutsche Bank, Goldman Sachs, Crédit Suisse, Royal Bank of Scotland, Merrill Lynch, Morgan Stanley, Bank of America, Barclays, Citi Group, UBS, and Bank of America/Countrywide. *See On the Subject of RPI*, Royal Park Invs., http://www.royalparkinvestments.com/EN/on-the-subject-of-rpi (last visited Feb. 5, 2016). Moreover, litigation is not merely Royal Park's "main area" of operations; since 2013, when it sold the bulk of its securities portfolio to Lone Star for €6.7 billion (retaining only the securities that are the subject of its various lawsuits), litigation has been Royal Park's only business. *Id.*

The most basic question posed by the instant dispute is "who should properly bear the risks and burdens of discovery" from BNP Paribas. *Winnick*, 228 F.R.D. at 507. As between Royal Park and Deutsche Bank, the answer is clear. Consequently, it is hereby **ORDERED** that Royal Park produce otherwise-discoverable documents and things (including electronically stored information) held by BNP Paribas to the same extent that it is required to produce documents from its own files.

Dated: New York, New York
February 5, 2016

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge.**