UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
ROYAL PARK INVESTMENTS SA/NV,            :    Civil Action No. 1:14-cv-04394-AJN-BCM
Individually and on Behalf of All Others       :
Similarly Situated,                                    :    CLASS ACTION
                                                             :
                                     Plaintiff,         :    PLAINTIFF ROYAL PARK INVESTMENTS
                                                             :    SA/NV'S MEMORANDUM OF LAW IN
               vs.                                       :    SUPPORT OF ITS MOTION FOR CLASS
                                                             :    CERTIFICATION AND APPOINTMENT OF
DEUTSCHE BANK NATIONAL TRUST           :    CLASS REPRESENTATIVE AND CLASS
COMPANY, as Trustee,                            :    COUNSELS
                                                             :
                                     Defendant.       :
                                                             :
——————————————————————— x

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................................1

II.   STATEMENT OF FACTS ............................................................................................3

    A.   Defendant's Obligations to the Class.......................................................................3

    B.   Defendant's Breaches of Contract and the Duty of Trust.........................................5

III.  ARGUMENT.................................................................................................................6

    A.   This Case Meets the Requirements of Rule 23(a) ...................................................7

        1.   The Class Is Numerous ...............................................................................7

        2.   There Are Questions of Law and Fact Common to the Class.....................8

        3.   Plaintiff's Claims Are Typical of the Class ...............................................10

        4.   Plaintiff Is Adequate .................................................................................12

    B.   The Requirements of Rule 23(b)(3) Are Also Satisfied .........................................14

        1.   Common Questions of Law and Fact Predominate Under
            Rule 23(b) ..................................................................................................14

        2.   A Class Action Is Superior ........................................................................19

    C.   The Court Should Appoint Plaintiff's Counsel as Class Counsel Under
        Rule 23(g) ...............................................................................................................21

IV.   CONCLUSION.............................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs., Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) ...................................................................16

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................20

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A*,
  269 F.R.D. 340 (S.D.N.Y. 2010) ........................................................... *passim*

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................21

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)............................................................................6

*Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-
  Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)............................................................................7

*Dodona I, LLC v. Goldman Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014) .........................................................7, 8, 11

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) ...................................................................15

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11 Civ. 8405(CM), 2013 U.S. Dist. LEXIS 99959
  (S.D.N.Y. July 12, 2013) ..........................................................1, 9, 11, 15

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) .....................................................................7

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) .......................................................... *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) ..............................................................................20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)............................................................................10

*In re IndyMac Mortgage-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) .......................................................... *passim*

1150038_2

*In re U.S. Foodservice Inc. Pricing Litig.*,
  No. 3:07-md-1894 (CFD), 2011 WL 6013551
  (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013)...................................................9

*In re U.S. Foodservice Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013), *cert. denied*,
  __ U.S. __, S. Ct. 1938 (2014).......................................................................................*passim*

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007).....................................................................................7, 10

*Kalkstein v. Collecto, Inc.*,
  304 F.R.D. 114 (E.D.N.Y. 2015)........................................................................................13

*Kottler v. Deutsche Bank AG*,
  No. 05 Civ. 7773 (PAC), 2010 WL 1221809
  (S.D.N.Y. Mar. 29, 2010) ...................................................................................................10

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008).........................................................................................19

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..................................................................................................8

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
  (S.D.N.Y. Mar. 17, 2014) ............................................................................................12, 17

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913
  (S.D.N.Y. Dec. 27, 2013) .....................................................................................................7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)................................................................................................17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)............................................................................................................19

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................................................*passim*

*Roach, v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015).................................................................................................19

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)............................................................................................8, 10

- iii -

*Royal Park Invs. SA NV v. HSBC Bank USA, N.A.,*
109 F. Supp. 3d 587 (S.D.N.Y. 2015).................................................................................14

*Seekamp v. It's Huge, Inc.,*
No. 1:09-CV-00018, 2012 U.S. Dist. LEXIS 33295
(N.D.N.Y. Mar. 13, 2012)...................................................................................1, 9, 15, 20

*Sgalambo v. McKenzie,*
268 F.R.D. 170 (S.D.N.Y. 2010) .........................................................................................21

*Steinberg v. Nationwide Mut. Ins. Co.,*
224 F.R.D. 67 (E.D.N.Y. 2004)...........................................................................................15

*UFCW Local 1776 v. Eli Lilly and Co.,*
620 F.3d 121 (2d Cir. 2010)................................................................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011).............................................................................................................8

*Wallace v. Intralinks,*
302 F.R.D. 310 (S.D.N.Y. 2014) .........................................................................................12

*Wu v. Pearson Educ., Inc.,*
277 F.R.D. 255 (S.D.N.Y. 2011) .........................................................................................16

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................................... *passim*
Rule 23(a)...........................................................................................................6, 7, 14, 22
Rule 23(a)(1)...............................................................................................................................7
Rule 23(a)(2)...............................................................................................................................8
Rule 23(a)(3).............................................................................................................................10
Rule 23(a)(4)..............................................................................................................12, 14, 22
Rule 23(b) ...........................................................................................................................6, 14
Rule 23(b)(3)........................................................................................................... *passim*
Rule 23(g) ...............................................................................................................21, 22
Rule 23(g)(1)(A) ................................................................................................................21
Rule 23(g)(4)..............................................................................................................................21
Rule 30(b)(6)............................................................................................................................13

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiff Royal Park Investments

SA/NV ("Plaintiff" or "Royal Park") respectfully moves the Court to certify this action as a class

action and the following Class:

> All persons and entities who held Certificates in the Covered Trusts and were
> damaged thereby. Excluded from the class are defendant, the loan originators, the
> Warrantors, the Master Servicers and the Servicers to the Covered Trusts, and their
> officers and directors, their legal representatives, successors or assigns, and any
> entity in which they have or had a controlling interest.[1]

In addition, Plaintiff moves the Court to appoint Plaintiff as Class Representative, and

appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.    PRELIMINARY STATEMENT

Plaintiff's two causes of action in this case – breach of contract and breach of trust – are

ideally suited for class certification under Rule 23.   Courts in this Circuit recognize that cases

alleging breach of fiduciary duty/trust and breach of contract are readily amenable to class

certification and resolution.[2]   This case is no different.   Plaintiff alleges that as trustee for the

Covered Trusts, defendant Deutsche Bank National Trust Company ("Deutsche Bank" or "Trustee")

---

[1]    The "Covered Trusts" are:  (1) First Franklin Mortgage Loan Trust 2006-FF9; (2) GSR Mortgage
Loan Trust 2007-AR2; (3) HSI Asset Securitization Corporation Trust 2007-WF1; (4) HarborView
Mortgage Loan Trust 2006-8; (5) Morgan Stanley ABS Capital I Inc. Trust 2007-NC2; (6) Morgan
Stanley ABS Capital I Inc. Trust 2007-NC3; (7) Morgan Stanley IXIS Real Estate Capital Trust 2006-
1; (8) NovaStar Mortgage Funding Trust, Series 2006-4; (9) Saxon Asset Securities Trust 2006-2; and
(10) Soundview Home Loan Trust 2007-NS1.  *See* Class Action Complaint and Verified Derivative
Action for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust ("Complaint"),
Dkt. No. 1, ¶2.  All "¶" or "¶¶" references and defined terms contained herein refer to the Complaint
unless otherwise noted.

[2]    *See, e.g.*, *In re U.S. Foodservice Pricing Litig.*, 729 F.3d 108, 123-27 (2d Cir. 2013), *cert. denied*,
__ U.S. __, 134, S. Ct. 1938 (2014); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 (LEK/DRH),
2012 U.S. Dist. LEXIS 33295 (N.D.N.Y. Mar. 13, 2012); *Fleisher v. Phoenix Life Ins. Co.*, No. 11
Civ. 8405(CM), 2013 U.S. Dist. LEXIS 99959, at *28 (S.D.N.Y. July 12, 2013); *Bd. of Trs. of the
AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340 (S.D.N.Y. 2010) ("*AFTRA*").

- 1 -

assumed substantially identical duties under the Governing Agreements[3] for each of the Covered Trusts and breached those duties in an identical manner.  The evidence obtained to date demonstrates that the Governing Agreements imposed substantially identical obligations on Deutsche Bank as trustee, that all of the Covered Trusts were administered by a small group of employees within Deutsche Bank, and that Deutsche Bank implemented a single set of uniform procedures governing its day-to-day administration of the Covered Trusts.[4]

Plaintiff's claims therefore present a single, predominant issue of liability that is common to all Class members, and each of Rule 23's requirements are readily met:

- *Numerosity* is established as there are at least 856 investors in the Class.[5]

- *Commonality* also is satisfied because: (1) each Class member's claims arise out of the same common course of conduct by Deutsche Bank; (2) Deutsche Bank employed the same single set of policies and procedures to administer each of the Covered Trusts; (3) Defendant's role as trustee was fundamentally identical with respect to each of the Covered Trusts; (4) Defendant breached substantially identical provisions of each of the Governing Agreements for the Covered Trusts; and (5) damages can be calculated on a class-wide basis using the methodology set forth in the report of Plaintiff's Expert, W. Scott Dalrymple, CFA.  *See* Olts Decl., Ex. A, ¶¶49-58.

---

[3]   The "Governing Agreements" consisted of Pooling and Servicing Agreements ("PSAs") and other agreements related thereto, such as the Mortgage Loan Purchase Agreements and Servicing Agreements.  The GSR Mortgage Loan Trust 2007-AR2 Covered Trust's Governing Agreement is called a "Master Servicing and Trust Agreement" as opposed to a PSA, yet serves the same function as the other Covered Trusts' PSAs.

[4]   The fact that this action includes 10 residential mortgage-backed securities ("RMBS") trusts is not a bar to certification.  Numerous courts have found that analogous class actions involving multiple RMBS trusts are particularly appropriate for class treatment.  *See, e.g., Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) (granting class certification across nine offerings in a RMBS class action); *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten offerings); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 offerings).

[5]   *See* Declaration of Lucas F. Olts in Support of Plaintiff Royal Park Investments SA/NV's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Olts Decl."), Ex. A, ¶¶40-48 (Expert Report of W. Scott Dalrymple, CFA).

1150038_2

- *Adequacy* and *Typicality* are satisfied because: (1) Plaintiff and the Class assert identical claims under New York common law, arising from the same alleged course of conduct by Defendant; (2) Plaintiff is not subject to any unique defenses and shares Class members' interest in maximizing the Class' recovery; and (3) Plaintiff has and will continue to actively monitor and supervise this action, has a full understanding of the responsibilities of a class representative, and has retained experienced counsel with a proven track record in class actions like this one.

- Finally, *superiority* is satisfied because a class action is preferable to any other method for adjudicating this controversy, as multiple lawsuits would be costly and inefficient, and no manageability issues arise from allowing this case to proceed as a class action in this forum.

## II.   STATEMENT OF FACTS

This action arises from Deutsche Bank's failure to fulfill its contractual and common law obligations as Trustee for the Covered Trusts, causing damages to Plaintiff and the Class.

### A.   Defendant's Obligations to the Class

Under the Governing Agreements for the Covered Trusts, Deutsche Bank is granted certain rights that it is obligated to exercise for the benefit of the Class.  ¶46.  Specifically, if Deutsche Bank discovers that one of the loans underlying the Trusts (the "Loans") breaches one of the representations and warranties ("R&Ws") made by a "Depositor," "Loan Sellers/Sponsors," and/or an originator or Other Transferor of the Loans (*i.e.*, one of the "Warrantors") concerning the Loan's characteristics, Deutsche Bank is required to notify the breaching Warrantor of the violation and, if the breach is not timely cured, to enforce the breaching Warrantor's obligation to substitute or repurchase the defective Loan.  ¶¶49-51.

In addition to its contractual obligations to enforce R&W claims against the Warrantors, the Governing Agreements also require Deutsche Bank to take steps to protect Class members whenever it becomes aware of loan servicing failures by the Covered Trusts' "Master Servicers" or

- 3 -

"Servicers"[6] amounting to "Events of Default." ¶¶52, 58-60.  An Event of Default occurs whenever a Master Servicer or Servicer fails to "observe or perform, in any material respect, any . . . covenants, obligations or agreements of the Master Servicer as set forth" in the Governing Agreements related to the servicing of the Loans.  ¶56.  An Event of Default also occurs when the Master Servicer or Servicer discovers breaches of the Warrantors' representations and warranties, but does not promptly notify Deutsche Bank of those breaches.  ¶57.

When Deutsche Bank becomes aware of an Event of Default, it is required by the Governing Agreements to act promptly to protect the Covered Trusts and the Class.  ¶58.  Upon an Event of Default, the Governing Agreements require Deutsche Bank to: (1) notify and demand that the offending Master Servicer or Servicer cure the Event of Default; and (2) give notice of uncured Events of Default to the Class.  *Id.*  In addition, if the offending Master Servicer or Servicer does not timely cure the Event of Default, the Governing Agreements give Deutsche Bank the power to institute legal action, terminate the offending Master Servicer or Servicer, or take over its servicing duties.  *Id.*  Deutsche Bank is also required to notify investors in the Certificates of any uncured Events of Default so that the beneficiaries of the Trusts, including members of the Class, can direct Deutsche Bank how to proceed vis-a-vis the offending Master Servicer or Servicer.  *Id.*  The occurrence of an Event of Default also gives rise to a heightened duty requiring that Deutsche Bank act as a fiduciary for Class members, *i.e.*, as a reasonably prudent person would act with regard to his own property under the circumstances.  ¶¶59, 210.

---

[6]   For the Covered Trusts, the Master Servicers and Servicers were:  National City Home Loan Services, Inc.; Countrywide Home Loans Servicing LP; PHH Mortgage Corporation; Wells Fargo Bank, N.A.; IndyMac Bank, FSB; GMAC Mortgage Corporation; Paul Financial, LLC; Washington Mutual Bank; Saxon Mortgage Services, Inc.; JPMorgan Chase Bank, N.A.; HomEq Servicing Corporation; NovaStar Mortgage, Inc.; Nationstar Mortgage, LLC; and these entities' successors. *See* ¶117.

**B.       Defendant's Breaches of Contract and the Duty of Trust**

By January 2009, Deutsche Bank discovered and had actual knowledge of R&W breaches, but failed to act as contractually obligated under the Governing Agreements. ¶¶69-71. For example, in addition to numerous lawsuits, governmental actions and congressional testimony publicizing the widespread lending failures by the Warrantors, the disastrous performance by the Loans and astoundingly high delinquency rates caused Deutsche Bank to have actual knowledge of R&W breaches. *Id.* By January 2009, the Covered Trusts were each experiencing defaults in excess of 38% and significant losses that far exceeded historical losses – exceeding $545 million in losses in just a few years. ¶71. In the following years, additional events revealed pervasive R&W breaches by many of the Warrantors to the Covered Trusts. ¶¶72-73. By April 2011, Deutsche Bank's knowledge of R&W breaches was absolute, when the extensive widespread lending abuses and intentional fraud committed by many of the Warrantors to the Covered Trusts and continued historically unprecedented default rates for the Loans were revealed. ¶¶73-114. Despite actual knowledge of rampant R&W breaches, Deutsche Bank failed to take the action it was contractually obligated to take under the Governing Agreements to protect the Covered Trusts and the Class. ¶115.

As early as October 2010, Deutsche Bank had also obtained actual knowledge of rampant Events of Default impacting the Covered Trusts. *See* ¶¶142-147. Specifically, by this time the Master Servicers and Servicers were engaged in widespread improper and/or illegal foreclosure proceedings and other loan servicing misconduct with respect to the Loans – and Deutsche Bank actively participated in the misconduct. *See* ¶¶148-157. Deutsche Bank was also aware that the Master Servicers/Servicers knew of countless Loans littering the Covered Trusts that breached the Warrantors' R&Ws and were likely to default, but failed to report them. *See* ¶158. These Events of Default triggered Deutsche Bank's fiduciary duty to act prudently on Class members' behalf.

Deutsche Bank, however, did not take the actions required of it under the Governing Agreements to protect the Covered Trusts and the Class. *See* ¶¶172-178. Instead, Deutsche Bank acted to preserve its long-standing and lucrative business relationships with the Master Servicers, Servicers, and Warrantors – namely, by ignoring, or assisting in conduct leading to, the Events of Default. *See* ¶179.

Consequently, thousands of defective Loans that breached representations and warranties were not replaced, repurchased, or cured and rampant Events of Default went unchecked, in violation of the Governing Agreements' nearly identical provisions. *See, e.g.*, Olts Decl., Ex. A, ¶¶21-24; *see also* ¶¶115, 159, 173. High rates of foreclosure on Loans in the Covered Trusts have substantially driven up the Covered Trusts' expenses and losses, and the Class has suffered significant damages as a result of Deutsche Bank's uniform common failures. *See, e.g.*, ¶¶183-185.

## III.   ARGUMENT

Plaintiff's claims present a single, common, predominant question of liability that is susceptible to common proof – whether Deutsche Bank's common course of conduct breached the Governing Agreements' uniform common law requirements. Indeed, the predominance of common issues of fact and law, and the impracticability of bringing individual actions to redress Defendant's wrongful conduct, renders this case well-suited for class certification.

Certification under Rule 23 requires a two-step analysis. First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Second, a plaintiff must demonstrate that the action satisfies at least one of the subcategories of Rule 23(b). In this action, the Plaintiff seeks certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the

controversy. Fed. R. Civ. P. 23(b)(3). As set forth below, each of the Rule 23(a) and 23(b)(3)
requirements are met.

### A.   This Case Meets the Requirements of Rule 23(a)

#### 1.   The Class Is Numerous

A class is properly certified under Rule 23 where "the class is so numerous that joinder of all
members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible;
joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient
method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009)
(citing *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)). The precise quantification or identification of
potential class members is unnecessary at class certification "'because a court may make common
sense assumptions regarding numerosity.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83
(S.D.N.Y. 2007). In the Second Circuit, the numerosity requirement is ***presumptively*** satisfied where
there are 40 or more class members. *See JPMorgan*, 301 F.R.D. at 131.

Notably, the numerosity requirement is satisfied even where putative class members have
purchased across multiple RMBS offerings. *See id.* ("'decisions in this district have concluded that a
class may be certified even where certain sub-groups of that class do not meet the presumptive 40-
member requirement'") (quoting *IndyMac*, 286 F.R.D. at 232); *Dodona I, LLC v. Goldman Sachs &
Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *N.J. Carpenters Health Fund v. Residential Capital,
LLC*, No. 08 CV 8781 (HB), 2013 U.S. Dist. LEXIS 180913, at *18 (S.D.N.Y. Dec. 27, 2013).

1150038_2

Here, using a conservative method of counting investors, Plaintiff's expert, W. Scott Dalrymple, has determined that there are at least 856 investors in the Covered Trusts. Olts Decl., Ex. A, ¶¶40-47.[7] Thus, the proposed Class meets the numerosity requirement.

Further, investors in the Covered Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from tens of thousands to hundreds of millions of dollars. *Id.*, ¶48; *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members"). The joinder of these investors would be impractical. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of even 100 sophisticated investors' claims would be impractical).

### 2. There Are Questions of Law and Fact Common to the Class

"Commonality" requires Plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe the commonality requirement liberally, and demand only that plaintiff's and the class members' claims "share a common question of law or of fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (emphasis in original). This threshold is not high; indeed, the Supreme Court has held that "'***[e]ven a single [common] question' will do***." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011);[8] *see also Dodona I*, 296 F.R.D. at 267 (describing commonality requirement as a "'low hurdle'"). A question is common if its answer will resolve an issue relevant to the claims on a class-wide basis "in one stroke" (*Wal-Mart*, 564 U.S. at 350), regardless of whether it will "overshadow potential individual issues." *In re*

---

[7]    These estimates are based on conservative assumptions and will only increase from additional discovery from other Depository Trust Company participants. *Id.*, ¶¶46-47.

[8]    Citations and footnotes are omitted and emphasis is added unless otherwise noted.

*U.S. Foodservice Inc. Pricing Litig.*, No. 3:07-md-1894 (CFD), 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

In the Second Circuit, courts routinely find commonality is satisfied in cases where: (a) a defendant has, through a course of common conduct, breached a fiduciary duty it owed to a particular group of people (*see, e.g., AFTRA*, 269 F.R.D. at 348); (b) where a defendant has breached an obligation in a form contract (*see, e.g., U.S. Foodservice*, 729 F.3d at 123-27; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *11; *Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *28); *or* (c) where a defendant has made a statement in RMBS documents that is allegedly untrue in light of a common course of conduct (*see, e.g., JP Morgan*, 301 F.R.D. at 116; *IndyMac*, 286 F.R.D. at 233-35; *Merrill Lynch*, 277 F.R.D. at 106).

The evidence demonstrates that the commonality requirement is satisfied.  Plaintiff alleges that Deutsche Bank breached identical or substantially identical contractual terms to which all Class members were beneficiaries, and that such breaches gave rise to both contractual and common law claims.  *See, e.g.*, ¶¶5, 34, 44.  Indeed, the Governing Agreements for *all* of the Covered Trusts contain substantially *identical* terms.[9]  Moreover, the Complaint alleges that Deutsche Bank engaged in a common course of behavior, undertaken by the same group of individuals at Deutsche Bank using common (yet flawed) policies and procedures.  *See, e.g.*, Olts Decl., Ex. B at 22:14-24.  Thus, each Class member must answer the same common questions in order to prove his individual breach of contract claim, including:

- Whether Defendant discovered that the Loans breached representations and warranties made by the Warrantors;

- Whether Defendant had knowledge of the Master Servicers' and Servicers' Events of Default;

---

[9]   *See, e.g.*, Olts Decl., Ex. A, ¶¶21-24.

- Whether Defendant violated its contractual duties by failing to declare Events of Default and enforce the representations and warranties rights; and

- Whether Class members were damaged as a result of Defendant's conduct, and, if so, to what extent.

Similarly, Class members would also face common questions in order to establish their individual common law and breach of duty claims. For example, each Class member would face the following common questions:

- Whether Deutsche Bank owed a duty to Certificateholders to avoid conflicts of interest;

- Whether Deutsche Bank had actual knowledge of Events of Default;

- Whether Deutsche Bank failed to act prudently in exercising its rights and power under the Governing Agreements after becoming aware of Events of Default; and

- Whether Deutsche Bank was conflicted because of its repeated business and lucrative relationship with the Master Servicers.

Accordingly, Rule 23's commonality requirement is satisfied.

### 3.     Plaintiff's Claims Are Typical of the Class

The typicality requirement of Rule 23(a)(3) is met because Plaintiff's claims are typical of the claims of the proposed Class. *See* Fed. R. Civ. P. 23(a)(3); *Vivendi*, 242 F.R.D. at 84-85 ("'[T]he typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions.'"). Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37; *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 WL

1221809, at *2 (S.D.N.Y. Mar. 29, 2010) ("The focus of the typicality inquiring is not on the plaintiffs' behavior, but rather on the defendant's actions."); *see also Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *35; *Merrill Lynch*, 277 F.R.D. at 106 ("minor variations" in plaintiff's claims do not defeat typicality). Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Dodona I*, 296 F.R.D. at 267.

As discussed above, Plaintiff's claims here indisputably arise from the same course of events as do the other Class members' claims. *See, e.g.*, §II.B., *supra*. Uniform practices employed by Deutsche Bank that were applied across all of the Covered Trusts – namely, failure to give notice to the Master Servicers or Servicers of servicing breaches, Events of Default, and failure to enforce representations and warranties rights – give rise to Plaintiff's and the Class' claims equally. *Id.*

Here, Plaintiff and all other Class members assert identical legal theories arising from the same course of conduct by Defendant. Specifically, Plaintiff and the Class allege that Deutsche Bank breached the same contractual and common law duties it owed to all Class members under the Governing Agreements for each Covered Trust. In other words, the course of conduct that gives rise to each Class member's claims is identical: Deutsche Bank repeatedly failed to give notice to each Trust's Master Servicer or Servicer of its failure to fulfill its obligations, failed to declare Events of Default when it knew they had occurred, and failed to take any action regarding Loans that breached their representations and warranties despite discovering such breaches. Courts have found the typicality requirement satisfied under similar circumstances. *See Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, N.A.*, No. 12-cv-02865-KBF (S.D.N.Y. Jan. 30, 2015) (approving settlement class of breach of contract claims against trustee); *U.S. Foodservice*,

729 F.3d at 125; *Merrill Lynch*, 277 F.R.D. at 106.  In sum, typicality is satisfied where, as here, "[t]he claims of the class members arise from the same course of events" and the contractual and common law duties owed to investors.  *JPMorgan*, 301 F.R.D. at 132.

### 4.      Plaintiff Is Adequate

"Rule 23(a)(4) requires a showing that the class representative will fairly and adequately protect the interests of other class members. . . .  The adequacy inquiry overlaps with the typicality inquiry, so that a finding of typicality usually suggests that the class representative will also satisfy the adequacy requirement."  *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014). "The adequacy requirement is not demanding."  *Id.*  "'Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at *18 (S.D.N.Y. Mar. 17, 2014) ("*DLJ*").

No antagonistic interests exist between Plaintiff and the Class, as Plaintiff "'possess[es] the same interest and suffer[ed] the same injury as the class members.'"  *Id.*  Royal Park acquired and held Certificates in each of the Covered Trusts, and was damaged as a result of Deutsche Bank's failure to comply with its contractual and common law obligations.  Each Class member also acquired and held certificates in the Covered Trusts and were similarly damaged.

Royal Park is a limited liability company created by the Belgian State, Ageas (formerly known as Fortis Holding SA/NV), and BNP Paribas for the sole purpose of acquiring and managing a portion of Fortis Bank SA/NV's structured credit portfolio, which included its interests in the Certificates at issue here (*i.e.*, the "legacy portfolio").  *See* ¶¶30, 32; *see also* Olts Decl., Ex. C.  The transfer of the portfolio to Royal Park was accomplished upon the execution of the May 12, 2009

"Portfolio Transfer Agreement," which effectuated the assignment to Royal Park of all right, title and interest in the Certificates, including any claims held by the initial purchasers against Deutsche Bank in this action.  ¶32.

Royal Park's mission is to minimize the downside risk and maximize recoveries on the legacy portfolio, including the Certificates.  *See* Olts Decl., Ex. C.  Royal Park, like other members of the Class, suffered damages arising from Defendant's conduct in failing to enforce Representation and Warranty claims against the Warrantors and failing to protect investors in the Covered Trusts from loan servicing failures of which it was aware.  *See* ¶27.  Royal Park's interests are directly aligned with those of Class members – to maximize the amount recovered from Defendant for its failure to fulfil its duties to the Class.  *See, e.g., Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Moreover, since filing this action, Plaintiff has taken its role and obligations to the putative Class seriously and has acted to protect the interests of the Class.  At each stage, Plaintiff has actively participated in, supervised and monitored the litigation.  *See* Olts Decl., Ex. C.  Through its experienced counsel, Plaintiff has, *inter alia*, authorized the investigation of the facts and the filing of the Complaint, successfully opposed a motion to dismiss the Complaint, pursued discovery from Defendants and third parties, and has responded to substantial discovery requested by Deutsche Bank, including sitting for Federal Rule of Civil Procedure 30(b)(6) deposition.  *See id.*  Plaintiff has also certified that it is willing and able to provide further deposition and trial testimony, oversee further motion practice, and participate in settlement discussions.  *See* Olts Decl., Ex. C, ¶5. Additionally, Royal Park has already produced over 28,000 documents to date.  Royal Park's actions

- 13 -

thus far, and the common interest it shares with the Class in prosecuting this case to a successful resolution, fully satisfy Rule 23(a)(4)'s adequacy standard.

### B.       The Requirements of Rule 23(b)(3) Are Also Satisfied

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

### 1.       Common Questions of Law and Fact Predominate Under Rule 23(b)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).   "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"   *U.S. Foodservice*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).   This standard "'does not require a plaintiff to show that there are no individual issues.'"   *IndyMac*, 286 F.R.D. at 236.   Instead, it requires that "'a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class.'"   *See JPMorgan*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

To prevail on its breach of contract claims, the Class must demonstrate "'(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach.'"   *Royal Park Invs. SA NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596-97 (S.D.N.Y. 2015).   The primary common questions the Class must address to establish its breach of contract claims will be whether Deutsche Bank:   (1) failed to enforce R&W breaches, upon discovering them; (2) failed to notify Master Servicers and Servicers

- 14 -

of their failures to fulfill their obligations after learning of Events of Default; (3) failed to declare Events of Default when it learned of them; and (4) failed to act as a reasonable person would to protect its own assets after learning of Events of Default. With respect to the Class' breach of trust claims, the predominant question will be whether Deutsche Bank put its own interests ahead of the Class when it learned of Events of Default and R&W breaches and failed to act. All of these questions will necessarily be answered through common proof.

Indeed, the existence and scope of Deutsche Bank's contractual duties to Class members will be established through common evidence – specifically, the identical or substantially identical provisions of the Governing Agreements for the Covered Trusts. With respect to these obligations, the requirements imposed on and conduct expected of Defendant is the same for all of the Covered Trusts, and as to all Class members. *U.S. Foodservice*, 729 F.3d at 124.

In fact, each of the Covered Trusts' Governing Agreements used substantially identical language to outline Deutsche Bank's duties to Certificateholders. *See, e.g.*, Olts Decl., Ex. A, ¶¶21-24 & Attachments 1, 2. Thus, while there are several contracts at issue in the action, no individualized inquiries will be necessary. Under similar circumstances, courts in this Circuit have regularly found the predominance requirement to be satisfied. *See, e.g.*, *Fleisher*, 2013 U.S. Dist. LEXIS 99959, at *41-*42 ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms."); *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *36 ("'[A]ctions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action.'").[10]

---

[10]   *See also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment.") (collecting cases). Even where multiple contracts are at issue, class treatment

- 15 -

Common evidence will also be used to demonstrate that Deutsche Bank breached the obligations outlined above.  As recent deposition testimony has shown, Deutsche Bank used the same policies, practices and procedures with respect to its role as Trustee for each Covered Trust. Deutsche Bank's trust administration department is colloquially referred to as the "MBS Trust Administration Department."  *See, e.g.*, Olts Decl., Ex. B at 20:1-11.  The same trust administration group administers all of the Covered Trusts.  *Id.* at 22:14-24.  Only a few trust administrators were responsible for monitoring the performance of all of the Covered Trusts, uniformly performing monthly and annual reviews, making monthly distribution payments to investors and reviewing exception reports.  *Id.* at 37:17-38:13.  Each of the administrators applied the same internal controls over all trusts they administered.  *See id.* at 33:19-21; 35:15-20.  Moreover, between 2006 and 2014, there was a single set of policies and procedures utilized by Deutsche Bank to administer all of the Covered Trusts.  Olts Decl., Ex. B at 33:2-9; *see also* Olts Decl., Ex. D at 88:17-25 (acknowledging that all of the trusts administered by Deutsche Bank were covered by the single policies and procedures manual).  The policies and procedure manual, which applied to each Covered Trust (Olts Decl., Ex. B at 35:15-20), identified steps to take in response to a breach of R&W and upon a default, Event of Default, or potential Event of Default related to the Loans in the Covered Trusts. Olts Decl., Ex. D at 151:4-152:20, 158:2-8, 166:21-169:1, 180:16-181:1.

---

is nonetheless appropriate so long as the relevant provisions are similar, thereby causing individual issues not to predominate. *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011) (granting class certification when the Court was "called upon to consider contracts that [took] a number of different forms" because claims asserted "require[d] the interpretation of a single provision that varie[d] little in its form from contract to contract"); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (holding that "[b]ecause all of the dealer agreements were materially similar" whether the defendant breached its obligation to reduce the wholesale price of gas "was a question common to the class and the issue of liability was appropriately determined on a class-wide basis").

Thus, Deutsche Bank's conduct, which was subject to the common controls established by the policies and procedures manual, will predominate as to each Covered Trust. *See JP Morgan*, 301 F.R.D. at 136 (common questions predominate where "the class members' proof of liability will principally require an examination of the [Defendant's conduct] pursuant to the same basic process"); *Merrill Lynch*, 277 F.R.D. at 113 (same). Likewise, Deutsche Bank's alleged discovery that a vast number of underlying Loans violated R&Ws made in the Governing Agreements will also be subject to common proof. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012) (recognizing that class-wide evidence will be offered to prove that a given entity abandoned its stated underwriting guidelines). For example, the Class will commonly seek to prove that the Loans underlying the Trusts breached the R&Ws in the Governing Agreements through loan sampling and re-underwriting. Courts have regularly found loan sampling and re-underwriting to be an appropriate method to answer common questions of whether loans in multiple offerings were originated in breach of stated guidelines. *See DLJ*, 2014 U.S. Dist. LEXIS 35326, at *30 ("'[I]nformation . . . to the effect that underwriting guidelines were actually followed [is] largely subject to generalized proof'"); *JPMorgan*, 301 F.R.D. at 137 (same). Common evidence of the Trusts' massive economic losses, widely disseminated investigative reports of origination and servicing failures and predatory schemes at issue here will all be common to the Class, and will collectively demonstrate that Deutsche Bank knew of the problems in the Covered Trusts. *See* Memorandum and Order, dated February 31, 2016 at 13-14, 17 (Dkt. No. 100) ("MTD Order").

Moreover, a single group of individuals at Deutsche Bank was responsible for seeking out closing new deals for Deutsche Bank, developing relationships with deal parties to each Covered Trust, and administering those trusts. *See* Olts Decl., Ex. D at 55:17-56:22. Thus, when it comes to proving that Deutsche Bank's ongoing relationship with the Master Servicers, Servicers and/or

- 17 -

Warrantors for each Covered Trust prevented it from taking the actions against such entities necessary to fulfill its obligations under the Governing Agreements – such as seeking repurchase of defaulted loans from Warrantors – the Class will rely on common proof. Indeed, since Wells Fargo was the Master Servicer for seven of the ten Covered Trusts, many of the most essential facts at issue will be common across the Covered Trusts and all Class' members' claims. *See* ¶¶117, 149. In short, '"[e]ach of the Certificates purchased by the Plaintiffs and the Class were [administered] pursuant to [the] same process by the same Defendants.'" *Merrill Lynch*, 277 F.R.D. at 113. The alleged flaws "common to that process" would "be the subject of common proof." *Id.*

Lastly, each Class member's damages will be measured by a common methodology, based on Defendant's and third parties' published data with respect to the performance of the Loans and a re-underwriting analysis of a sample of the Loans. As set forth in the expert report of Mr. Dalrymple with respect to R&W breaches, the impact of Deutsche Bank's alleged failure to act can be measured by analyzing the extent to which losses in each Covered Trust were associated with Loans that breached the Warrantor's R&W's. Olts Decl., Ex. A, ¶36-39. The analysis includes an examination of Loans within a Covered Trust to identify those that were materially and adversely affected by the Warrantors' R&W's breaches and to determine the extent to which losses on these Loans would have been avoided if Deutsche Bank had enforced the Warrantors' obligations to repurchase, replace, or cure defective loans. *Id.* Specifically, this analysis involves modeling collateral cash flows assuming Warrantors had fulfilled their obligations to allow the trust to "put-back" loans whose value was affected by R&W breaches. *Id.* Similar to claims related to Deutsche Bank's alleged failure to enforce R&W provisions, the impact of the alleged servicing failures also involves the analysis of Loans within a Covered Trust to identify Master Servicers and Servicers Events of Default and assess the extent to which these resulted in higher losses or lower value to the collateral

- 18 -

pool. *Id.*, ¶56.  The damage calculations are capable of being performed in a formulaic manner such that each Class members' damages calculation is performed in the same manner.  *Id.*, ¶61.

Although the specific amount of each Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach, v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (upholding well-established rule in Second Circuit that "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)").  Thus, Plaintiff will be able to establish Deutsche Bank's liability and the amount of any damages through generalized proof and a class-wide, common methodology, respectively.  Thus, Rule 23(b)(3)'s predominance requirement is satisfied.[11]

## 2.      A Class Action Is Superior

Rule 23(b)(3) also requires plaintiff to establish "superiority," that is a class action is a better way to proceed versus some other method.  Courts have uniformly recognized that the class action device is superior to other available methods for the fair and efficient resolution of class actions. The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually. . . .  [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Moreover, as the Supreme Court explained:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

---

[11]   With respect to Plaintiff's tort claim – the breach of trust claim – Plaintiff seeks punitive damages, as well as the profits Deutsche Bank derived from its breach of trust/conflict of interest.  Both types of damages are readily determinable on a class-wide basis following the determination of compensatory damages, as described herein.

*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

> (A)    the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

First, there is no overwhelming interest by Class members to proceed individually.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *AFTRA*, 269 F.R.D. at 355; *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *42 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").  Moreover, the sizes of Class members' investments vary widely, from as little as $10,000 to tens of millions of dollars.  *See* Olts Decl., Ex. A, ¶48.

Additionally, the maintenance of a class action in this District ensures an efficient expenditure of resources, will save an enormous amount in litigation costs for all parties and will allow the parties to more efficiently prosecute their claims and defenses.  *See Indymac*, 286 F.R.D. at 243; *Seekamp*, 2012 U.S. Dist. LEXIS 33295, at *41.  Further, because the proposed Class members

- 20 -

are located in geographically dispersed areas (*see* Olts Decl., Ex. A, ¶48), and because a majority of the certificates in the Covered Trusts were issued by registrants in this District which has overseen the majority of complex cases relating to mortgage-backed securities, the Southern District of New York is a desirable forum for this class action.

Finally, Plaintiff does not foresee any management difficulties that will preclude this case from being maintained as a class action.  Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but appears to be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.

### C.    The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g)

Rule 23(g)(4) requires the court to appoint counsel who will fairly and adequately represent the Class.  Additionally, in appointing class counsel, Rule 23(g)(1)(A) requires the court to consider the following factors:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A); *AFTRA*, 269 F.R.D. at 346.

Plaintiff is represented by Robbins Geller, whose lawyers have served as class counsel in hundreds of securities class actions.  *See* Olts Decl., Ex. E.  Courts in this Circuit have repeatedly recognized the expertise and ability of Robbins Geller lawyers to effectively litigate complex class actions.  *See, e.g., Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012) ("[C]ourts within this Circuit have repeatedly found Robbins Geller to be adequate and well-qualified for the purposes of litigating class action lawsuits."); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 174

- 21 -

(S.D.N.Y. 2010) (characterizing Robbins Geller as a "highly competent plaintiffs' firm[] with substantial securities class action experience"); *JPMorgan*, 301 F.R.D. at 135 (noting Robbins Geller's "experience[] in securities class action litigation" and finding it "qualified to conduct this [RMBS] lawsuit").

Moreover, since engaged to conduct this litigation, Robbins Geller has demonstrated its willingness to commit substantial time and resources to representing the proposed Class in this action and has undertaken significant discovery to uncover the evidence needed to support the Class' claims. The ability of Robbins Geller to fairly and adequately represent the interests of the Class further leads to the conclusion that the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that Plaintiff's counsel should be appointed as Class Counsel pursuant to Rule 23(g).

## IV.    CONCLUSION

For the foregoing reasons, Royal Park respectfully requests the Court to: (a) certify this Action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Royal Park as the representative of the proposed Class; and (c) appoint Robbins Geller as Class Counsel.

DATED: May 26, 2016                    Respectfully submitted,

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       ARTHUR C. LEAHY
                                       STEVEN W. PEPICH
                                       LUCAS F. OLTS
                                       DARRYL J. ALVARADO
                                       CODY R. LeJEUNE
                                       ASHLEY M. ROBINSON
                                       HILLARY B. STAKEM
                                       JENNIFER N. CARINGAL
                                       JUAN CARLOS SANCHEZ
                                       J. MARCO JANOSKI GRAY
                                       JEFFREY J. STEIN


                                       _____
                                              s/ LUCAS F. OLTS
                                            LUCAS F. OLTS

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
clejeune@rgrdlaw.com
arobinson@rgrdlaw.com
hstakem@rgrdlaw.com
jcaringal@rgrdlaw.com
jsanchez@rgrdlaw.com
mjanoski@rgrdlaw.com
jstein@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 8, 2016.

s/ Lucas F. Olts
LUCAS F. OLTS

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  lolts@rgrdlaw.com

1150038_2

## Mailing Information for a Case 1:14-cv-04394-AJN-BCM Royal Park Investments SA/NV v. Deutsche Bank National Trust Company

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Kevin James Biron**
  kevin.biron@morganlewis.com,nymanagingclerk@morganlewis.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com,lmix@rgrdlaw.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com

- **Elizabeth Allen Frohlich**
  efrohlich@morganlewis.com,lkaigh@morganlewis.com,tania.prado@morganlewis.com,jowyang@morganlewis.com,pwiese@morganlewis.com,lheaton@morganl

- **Bernard J. Garbutt , III**
  bgarbutt@morganlewis.com,nymanagingclerk@morganlewis.com

- **Tera Marie Heintz**
  theintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ashley Anelcha Krupski**
  akrupski@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Cody R. Lejeune**
  clejeune@rgrdlaw.com

- **Grant R. MacQueen**
  gmacqueen@morganlewis.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Ashley M Robinson**
  ashleyr@rgrdlaw.com,mwise@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Regina Schaffer-Goldman**
  rschaffer-goldman@morganlewis.com,nymanagingclerk@morganlewis.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Dennis Sinclitico , Jr**
  dsinclitico@morganlewis.com,cericson@morganlewis.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,HDeshmukh@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- {No manual recipients}