# Morgan Lewis

**Bernard J. Garbutt III**
+1.212.309.6084
bernard.garbutt@morganlewis.com

July 7, 2017

**BY ECF**

Honorable Barbara Moses, U.S.M.J.
United States District Court for the Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re:   Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co., No. 14-cv-4394

Dear Magistrate Judge Moses:

We represent the Trustee, and write to request that the Court order RPI to produce the documents of three of the Assignor Custodians that purportedly come from Belgium:[1] (1) <u>with</u> custodial information; and (2) <u>without</u> redactions over the names in the documents. These documents are all <u>work</u> emails, are all at least eight years old, and, if they do contain any truly personal information (<u>e.g.</u>, under FRCP 5.2 social security numbers, birth dates, and bank account numbers), such information can be redacted.  As these documents were produced, with redactions over the names, there is no way to determine who sent or received these documents, rendering the documents unusable at depositions (or otherwise in this case), which was the whole point of this year-and-a-half battle.  In other words, having these redacted documents is the same as having no documents at all.

This is yet another dispute arising from RPI's attempt to assert claims as an alleged assignee even though RPI cannot fulfill its alleged assignors' discovery obligations.  On February 5, 2016, this Court ordered RPI to produce documents from RPI's alleged assignors "to the same extent that it is required to produce documents from its own files." Dkt.# 104, p. 12.  As this Court has explained, "[i]t is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees free of the obligations that go with litigating a claim."  Dkt.# 261, p. 16.  On August 12, 2016, the Court ordered RPI to produce documents from the custodial files of the Assignor Custodians.  Dkt.# 253.

After an extensive period of non-compliance, on May 4, 2017, RPI finally produced some Belgian Documents.  The metadata for these documents (<u>i.e.</u>, emails and their attachments) list a custodian of only "Central Files," and there are redactions over:  (1) the names in the To, From, CC, and BCC fields; (2) the names in the bodies of the emails; and (3) the

---

[1] The documents at issue (the "Belgian Documents") are for three of the six Assignor Custodians, De Doncker, Bauer, and Overfeldt.  Capitalized terms used herein shall have the meanings assigned in the Trustee's June 1, 2017 letter, Dkt.# 386.  All emphasis is added, and all quotations and citations are omitted. On June 15, 2017, the parties met and conferred for 30 minutes concerning this and other discovery issues.

**Morgan, Lewis & Bockius LLP**

101 Park Avenue
New York, NY  10178-0060         ☏ +1.212.309.6000
United States                    📠 +1.212.309.6001

Honorable Barbara Moses, U.S.M.J.
July 7, 2017
Page 2

names in the attachments (the "Name Redactions").  See, e.g., Exh. 1 hereto.[2]

On May 19, 2017, the Trustee asked for RPI's bases for these redactions.  The Trustee followed up on June 9th.  On June 13th, RPI responded by email stating that Cleary Gottlieb (who represents BNPP and BNPPF), explained that the "Belgian Data Privacy Act of December 8, 1992, as amended [the "Act"] …, prohibits an EU-based entity from transmitting 'personal data' **to a country outside of the European Union** without first obtaining the relevant data subjects' unambiguous consent, **absent certain exceptions** that do not apply here."  Exh. 2 (emphasis added).

The Belgian Documents are RPI's documents.[3]  RPI "bear[s] the risks and burdens of discovery from BNP Paribas," Dkt.# 104, p. 2, and RPI "fully understood the importance of acquiring potentially discoverable documents from its assignors – and the risks of failing to do so – when it … knowingly waived its rights to compel documents from its assignors."  Dkt.# 261, p. 16.  Thus, as the Court has held, any difficulty RPI now has in obtaining discoverable information from its alleged assignors is a problem of RPI's "own making."  May 1st Tr. at 25:5-9.  For the reasons explained below, RPI should produce the Belgian Documents with custodial information and without the Name Redactions.

**Belgian Law Permits RPI To Produce The Belgian Documents Without The Name Redactions.**  As noted above, the Act permits BNPP and BNPPF to transmit the unredacted Belgian Documents to RPI in Belgium (which is within the EU).  See Exh. 3 (English translation of excerpts of the Act, filed by RPI in its case against U.S. Bank).  After that transmittal, an exception to the Act permits RPI to transmit the unredacted Belgian Documents to the U.S. and produce them in this case.  Article 22 of the Act provides that personal data may be transferred to the U.S. "if the transfer is necessary or legally required on important public interest grounds, or for the establishment, exercise or defence of legal claims."  Thus, RPI is permitted to transfer the unredacted Belgian Documents to the Trustee for the purpose of litigating this case.  In fact, RPI, itself a Belgian company, and therefore subject to the Act, produced its own documents to the Trustee in this case without redacting names, apparently relying upon this litigation exception.[4]  And, in any event, the protective order in this case, Dkt.# 77 (the "Protective Order"), will continue to protect any purported Belgian privacy interest.  Laydon v.

---

[2] On June 16, 2017, RPI produced 307 more documents with a listed custodian of only "Central Files," and with the Name Redactions, even though the Court ordered RPI to produce "the relevant and discoverable documents from the files of De Doncker, Bauer, and Overfeldt as custodians."  Transcript of June 8, 2017 hearing ("June 8th Tr."), at 7:9-10:18; Dkt.# 393, ¶ 1.

[3] See June 8th Tr. at 8:12-21 (The assignors' documents "are considered the plaintiff's documents for discovery purposes."); see also Dkt.# 261, p. 17 (RPI's obligation to produce its assignors' documents is "ordinary party discovery.").

[4] RPI has already produced documents that RPI collected from Fortis Bank and BNPPF without redacting names.  In 2009, RPI collected some documents from Fortis Bank, presumably in Belgium.  Over the years that followed, RPI continued to collect some documents from BNPPF, also presumably in Belgium.  RPI produced these documents without redacting names.  RPI's current productions should be no different.

Honorable Barbara Moses, U.S.M.J.
July 7, 2017
Page 3

Mizuho Bank, Ltd., 183 F. Supp. 3d 409, 425 (S.D.N.Y. 2016) (Pitman, M.J.) ("[T]he UK's interest in protecting the privacy of its citizens is mitigated by the protective order in place in this case … ."). RPI can produce the Belgian Documents without redactions.

**U.S. Law Requires RPI To Produce The Belgian Documents Without The Name Redactions.** "Where the alleged obstacle to production is foreign law, the burden of proving what that law is and demonstrating why it impedes production falls on the party resisting discovery." Id. at 413. If a foreign law conflicts with U.S. law, "courts perform a comity analysis to determine the weight to be given to the foreign jurisdiction's law." Id.

RPI has been ordered to produce the Belgian Documents, under U.S. law. As discussed above, there is no conflict between U.S. law and Belgian law. Belgian law permitted RPI to produce the Belgian Documents in this case without the Name Redactions. RPI could have arranged with BNPP and Cleary Gottlieb to transmit the Belgian Documents to RPI in Belgium, and then RPI could have relied upon the litigation exception to produce them, unredacted, to the Trustee in this case. Thus, RPI cannot demonstrate (as it must) why Belgian law actually "impedes production" of the unredacted documents in this case.

Even if the Act conflicted with U.S. law under these circumstances, courts in this circuit analyze seven factors in determining whether to nevertheless order the production of the documents. Those factors are: (1) the importance to the litigation of the documents requested; (2) the degree of specificity of the request; (3) whether the information originated in the U.S.; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the U.S., or compliance with the request would undermine the important interests of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery. Laydon, 183 F. Supp. at 419-20.[5]

Here, the seven factors support an order requiring RPI to produce the documents without redaction. **First**, the unredacted documents are important to the litigation. The parties heavily litigated whether the Assignor Custodians' documents are relevant, and this Court held that they are. However, the Belgian Documents are useless without names, and the Trustee cannot use them in depositions, or otherwise in this case. These are the only documents RPI produced for three of the six Assignor Custodians. If RPI does not produce usable versions of these documents, the Trustee will effectively be without documents from the custodial files of half of the Assignor Custodians that the Court ordered. **Second**, the request here is specific: RPI should produce the Belgian Documents without the Name Redactions. **Third**, although these documents may have been produced

---

[5] See also Wultz v. Bank of China Ltd., 298 F.R.D. 91, 96 (S.D.N.Y. 2014) (Scheindlin, J.). "Courts also often consider whether the person resisting discovery is a party to the litigation and, where the issue is the application of another country's privacy laws, whether such privacy requirements are absolute." Laydon, 183 F. Supp. 3d at 420. RPI is a party, and Belgian law is not absolute, the Act has a litigation exception.

Honorable Barbara Moses, U.S.M.J.
July 7, 2017
Page 4

from Belgium, discovery in this case unequivocally demonstrates that the Belgian Fortis employees frequently communicated with their U.S. counterparts about U.S. RMBS and, specifically, about the RMBS at issue here.  Thus, much information originated in the U.S. **Fourth**, the Trustee has no other means of identifying the names that were redacted.  But that is not the Trustee's burden.  The Court has already ruled that, as between the Trustee and RPI, RPI is better situated to secure this type of information.  Dkt.# 104, p. 10 ("Regardless of the precise extent or degree of Royal Park's access to the materials held by BNP Paribas (contractual, practical, or otherwise), it is surely in a better position than its adversary to identify and obtain those materials for use in this litigation.").

**Fifth**, the "United States has an obvious interest in having its own procedural rules applied to discovery."  Laydon, 183 F. Supp. 3d at 423.  In contrast, any contrary Belgian interest is minimal.  As explained above, the Act has a litigation exception, and does not prohibit RPI from producing the Belgian Documents without redactions.  Thus, the Act is not "all-consuming."[6]  BrightEdge Techs. v. Searchmetrics, GmbH., 2014 WL 3965062, at *5 (N.D. Cal. Aug. 13, 2014) (given the exception to the privacy law, "this factor weighs in favor of compelling production.").  Any remaining Belgian privacy interest is further served by the Protective Order.  Laydon, 183 F. Supp. 3d at 425.  **Sixth**, RPI "would [not] suffer a hardship so significant" that the international principles of comity would require a U.S. court to "displace the Federal Rules of Civil Procedure."  Id., at 426.  The mere risk of violating a Belgian law is not enough.  Id.[7]  In opposing U.S. Bank's similar motion, RPI did not cite a single instance where Belgium enforced the Act.  RPI v. U.S. Bank N.A., No. 14-cv-2590-VM-JCF (S.D.N.Y.), Dkt.# 264.  And, RPI's own conduct in this litigation demonstrates that RPI does not consider producing its own documents without redactions to be a hardship; RPI has produced hundreds of thousands of documents without redacting names.  **Seventh**, RPI has not acted in good faith.  This Court held that RPI knowingly waived its right to obtain its assignors' documents after it "had its U.S. litigation campaign in mind."  Dkt.# 261, p. 16.  Magistrate Judge Francis held that RPI's bargaining away of its right to obtain documents from its Assignors was "willful," and that "[RPI] must accept the consequences."  RPI/U.S. Bank, Dkt.# 141, pp. 10-14.  Now, RPI is content to throw its hands up and defer to Cleary Gottlieb's privacy argument, because the Name Redactions prejudice only the Trustee.  RPI does not resist producing the Belgian Documents without redactions in good faith.  It just seeks to avoid the consequences of its "convenient conundrum."  Dkt.# 104, p. 10.  The Court should not countenance RPI's attempt to prevent the fair discovery, and the use of the Belgian Documents.

Respectfully submitted,
*Bernard J. Garbutt III*

---

[6]     Laydon, 183 F. Supp. 3d at 423 ("[T]he variety of ... provisions [in Germany's Federal Data Protection Law] permitting disclosure—several of which appear on their face to encompass disclosure under court order for litigation purposes—demonstrate that [that] interest is not all-consuming.").

[7]     RPI could even minimize any such risk by transmitting the Belgian Documents to Morgan Lewis's office in Brussels.