UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

ROYAL PARK INVESTMENTS SA/NV,                    :
Individually and on Behalf of All Others         :
Similarly Situated,                              :
                                                 :
                     Plaintiff,                  :
                                                 :
           -against-                             :
                                                 :          Case No. 14-cv-4394-AJN-BM
DEUTSCHE BANK NATIONAL TRUST                     :
COMPANY, as Trustee,                             :
                                                 :
                     Defendant.                  :
                                                 :
---------------------------------------------------- X


**OPPOSITION TO THE MOTION OF PLAINTIFF ROYAL PARK INVESTMENTS
SA/NV REGARDING SAMPLING-RELATED EXPERT DISCOVERY BY
DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**

Bernard J. Garbutt III
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001


*Attorneys for Defendant*
*Deutsche Bank National Trust Company, as Trustee*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.    EVERY JUDGE TO CONSIDER SAMPLING IN A CASE AGAINST AN RMBS TRUSTEE HAS CORRECTLY REJECTED IT ................................................. 2

II.    SAMPLING IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE ................. 5

    A.    Sampling Will Not Help RPI Prove Its Claims ................................................. 5

        1.    Prior To An EOD, The Trustee Has No Duty To Investigate Under The Circumstances Alleged Here ............................................. 6

        2.    RPI Cannot Show That An EOD Would Have Triggered A Duty To Conduct An Investigation Into Potential R&W Breaches ................. 13

        3.    Even If The Trustee Had Assumed A Duty To Investigate, RPI Could Not Satisfy Its Loan-By-Loan Trust-By-Trust Burden Through Sampling ................................................................................ 15

            a.    RPI Must Prove Its Claims Loan-By-Loan And Trust-By-Trust ............................................................................ 15

            b.    Sampling Cannot Prove The Trustee's Liability ........................ 16

            c.    Loan-Specific (Non-Sampling) Information Is Also Necessary To Prove Causation And Damages............................ 19

            d.    RPI Cannot Distinguish The Decisions Rejecting RPI's Requests For Sampling-Related Expert Discovery In Other Cases ................................................................................ 20

        4.    RPI's Authorities Regarding Sampling Are Distinguishable ................. 21

    B.    Sampling-Related Expert Discovery Would Be Costly And Burdensome.......... 22

III.    RPI'S MISLEADING RECITATION OF THE EVIDENCE IS IRRELEVANT TO RPI'S MOTION ............................................................................................... 22

CONCLUSION........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

ACE Sec. Corp. v. DB Structured Prods., Inc.,
   25 N.Y.3d 581 (2015) ................................................................................20

AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.,
   11 N.Y.3d 146 (2008) ..................................................................................8

Assured Guar. Mun. Corp. v. Flagstar Bank, FSB,
   920 F. Supp. 2d 475 (S.D.N.Y. 2013)....................................................12, 21

Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.,
   No. 650605/2010, 2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014) .......................21

Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.,
   No. 11-cv-0505-CM-GWG, 2013 WL 3146824 (S.D.N.Y. June 19, 2013),
   vacated, 821 F.3d 297 (2d Cir. 2016) ...................................................................11

Beal Sav. Bank v. Sommer,
   8 N.Y.3d 318 (2007) ..................................................................................8

BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon,
   180 F. Supp. 3d 246 (S.D.N.Y. 2016).........................................................9

CFIP Master Fund, Ltd. v. Citibank, N.A.,
   738 F. Supp. 2d 450 (S.D.N.Y. 2010)........................................................8

Commerce Bank v. Bank of N.Y. Mellon,
   35 N.Y.S.3d 63 (1st Dep't 2016) ...............................................................10

Commerce Bank v. U.S. Bank Nat'l Ass'n,
   No. 4:13-cv-517, slip op. (W.D. Mo. Jan. 5, 2017) ..................................10

Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods.,
   Inc.,
   958 F. Supp. 2d 488 (S.D.N.Y. 2013).........................................................12

Deutsche Bank Nat'l Trust Co v. WMC Mortg., LLC,
   No. 12 Civ. 933 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2014) .................21

Doe v. Am. Nat'l Red Cross,
 923 F. Supp. 753 (D. Md. 1996) ..................................................................................12

Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,
 No. 11 Civ. 6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ................................21

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,
 104 F. Supp. 3d 441 (S.D.N.Y. 2015) ........................................................................21

Fixed Income Shares: Series M v. Citibank N.A.,
 130 F. Supp. 3d 842 (S.D.N.Y. 2015) ........................................................................16

India.com, Inc. v. Dalal,
 412 F.3d 315 (2d Cir. 2005) ......................................................................................8

Jeandron v. Bd. of Regents of Univ. Sys. of Md.,
 510 F. App'x 223 (4th Cir. 2013) .............................................................................12

LaSalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.,
 No. 02-cv-7867, 2003 WL 22047891 (S.D.N.Y. Aug. 29, 2003) ............................................13

Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC,
 No. 12 Civ. 1538 (CSH), 2015 WL 9581729 (D. Conn. Dec. 30, 2015) ................................21

MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.,
 No. 12-cv-7322, 2015 WL 797972 (S.D.N.Y. Feb. 25, 2015) .................................................22

MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC
 Mortg. Corp.,
 No. 11-cv-2542, 2012 WL 4511065 (D. Minn. Oct. 1, 2012) .................................................11

MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,
 No. 602825/08, 2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010) ........................................21

Morgan Guar. Tr. Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.,
 No. 00-cv-8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002) .................................................13

Phoenix Light SF Ltd. v. Bank of N.Y. Mellon,
 No. 14-cv-10104-VEC, 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) ...........................16, 18

Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.,
 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016) ...............................................................16

Policemen's Annuity & Ben. Fund of Chi. v. Bank of Am., N.A.,
 943 F. Supp. 2d 428 (S.D.N.Y 2013) .........................................................................12

Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.,
 907 F. Supp. 2d 536 (S.D.N.Y. 2012) ........................................................................12

Process America v. Cynergy Holdings, LLC,
    839 F.3d 125 (2d Cir. 2016)...........................................................................22

Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.,
    14 N.Y.3d 419 (2010) .....................................................................................8

Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank
    of N.Y. Mellon,
    775 F.3d 154 (2d Cir. 2014)........................................................3, 12, 15, 16

Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n,
    No. 14-cv-08175-LGS-SN, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) .................... passim

Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.,
    247 F. Supp. 3d 377 (S.D.N.Y. 2017)............................................................11

Royal Park Invs. SA/NV v, Bank of N.Y. Mellon,
    No. 14-cv-6502, 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016)...........................16

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,
    No. 14-cv-04394-AJN-BCM, 2016 WL 4613390 (S.D.N.Y. Aug. 31, 201)......................9, 15

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,
    No. 14-cv-4394-AJN-BCM, 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016).....................2, 8, 15

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)..................................................9, 13, 16

Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.,
    No. 14-cv-09764-KPF-SN, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017) .................... passim

Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.,
    No. 14-cv-09764-KPF-SN, 2017 WL 953550 (S.D.N.Y. Mar. 10, 2017)...................... passim

Syncora Guarantee Inc. v. EMC Mortg. Corp.,
    No. 09 Civ. 3106 (PAC), 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ...............................21

U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016).............................................................22

VNB Realty, Inc. v. U.S. Bank, N.A.,
    No. 13-cv-4743, 2014 WL 1628441 (D.N.J. Apr. 23, 2014)..............................10

W. & S. Life Ins. Co. v. Bank of N.Y. Mellon,
    No. A1302490, 2017 WL 3392855 (Ohio Comm. Pl. Aug. 4, 2017)............................. passim

W. & S. Life Ins. v. Deutsche Bank Nat'l Tr. Co.,
    No. A1506819, 2016 WL 3625555 (Ohio Ct. Com. Pl., Hamilton Cty. June
    24, 2016) ...................................................................................................................9, 16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26...................................................................................................................2, 11

Defendant Deutsche Bank National Trust Company, as trustee (the "Trustee" or "DBNTC"), respectfully submits this memorandum of law in opposition to the motion of Plaintiff Royal Park Investments SA/NV ("RPI" or "Plaintiff") regarding sampling-related expert discovery (Dkt. #474).[1]

## PRELIMINARY STATEMENT

Judge Failla and Judge Netburn have already denied RPI's request to permit sampling-related expert discovery in its cases against other RMBS trustees.  Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A., No. 14-cv-09764-KPF-SN, 2017 WL 3610511, *11 (S.D.N.Y. Aug. 21, 2017) ("RP/WF II"); Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A., No. 14-cv-09764-KPF-SN, 2017 WL 953550, at *1 (S.D.N.Y. Mar. 10, 2017) ("RP/WF"); Royal Park Invs. SA/NV v. HSBC Bank USA Nat'l Ass'n, No. 14-cv-08175-LGS-SN, 2017 WL 945099, at *1 (S.D.N.Y. Mar. 10, 2017) ("RP/HSBC").[2]  The same result is compelled here.

RPI alleges that certain unidentified loans in the ten RMBS trusts at issue here (the "Covered Trusts") breached loan-level representations and warranties ("R&W") made by entities that directly or indirectly conveyed loans into the trusts ("Warrantors").  RPI claims the Trustee purportedly breached its obligations by, inter alia, failing to conduct an investigation to identify loans with R&W breaches and thereafter force the Warrantors to repurchase the defective loans.  Recycling arguments that Judge Failla and Judge Netburn rejected, RPI contends this Court should permit sampling-related expert discovery because statistical sampling would somehow prove which loans with R&W breaches the Trustee supposedly would have identified and been required to put back if it had conducted an investigation.  RPI misses the mark.

---

[1]      RPI's memorandum of law in support of its motion is cited herein as "P. Br. _."  Exhibits to the Declaration of Kevin J. Biron in Support of the Trustee's Opposition are cited herein as "Ex. __."

[2]      These decisions denied requests by numerous plaintiffs, including RPI, for sampling-related expert discovery in 12 separate cases against Wells Fargo and HSBC in their capacities as RMBS trustees.

As Judge Nathan previously recognized in this case, the Second Circuit has held that – to prevail on claims against an RMBS trustee like those asserted here – a plaintiff must prove the trustee's alleged misconduct "loan-by-loan and trust-by-trust."  Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-4394-AJN-BCM, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("RP/DBNTC") (quoting Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon, 775 F.3d 154, 162 (2d Cir. 2014) ("PABF v. BNYM")).[3]  Put differently, even if the Trustee had a duty to investigate (it did not), RPI still could not prove its claims through statistical sampling.  Accordingly, as both Judge Failla and Judge Netburn concluded, RPI's request to conduct sampling-related expert discovery should be denied because such discovery is not proportional to the needs of this case.

## ARGUMENT

A party is not entitled to discovery that is not "proportional to the needs of the case, considering [among other things] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).   Here, the Court should reject RPI's request to impose burdensome and costly sampling-related expert discovery because RPI must prove its claims "loan-by-loan and trust-by-trust," which cannot be accomplished via sampling.

## I.      EVERY JUDGE TO CONSIDER SAMPLING IN A CASE AGAINST AN RMBS TRUSTEE HAS CORRECTLY REJECTED IT

RPI's arguments are neither novel nor meritorious.  Judge Failla and Judge Netburn already denied requests by RPI to conduct sampling-related expert discovery, and following a bench trial in the Hamilton County, Ohio Court of Common Pleas, another judge recently held

---

[3]      Unless noted otherwise, all emphasis is added, and all quotations and citations are omitted.

that a plaintiff could not prove its claims against an RMBS trustee through sampling.  Relevant

portions of those decisions are summarized below.

Magistrate Judge Netburn (S.D.N.Y.):  In two opinions issued earlier this year, Judge

Netburn denied RPI's request to "re-underwrite a sample of loans to establish pervasive breach

rates across the underlying loans of the trusts at issue to prove liability and damages" because

engaging in sampling-related expert discovery would not have been proportional to the needs of

the case.  RP/WF, 2017 WL 953550, at *1; RP/HSBC, 2017 WL 945099, at *1.  Citing to the

Second Circuit's decision in PABF v. BNYM, 775 F.3d at 162, Judge Netburn recognized that

RPI must prove its claims against an RMBS trustee "loan-by-loan and trust-by-trust" and

rejected RPI's supposition that replacing loan-specific proof with extrapolated pool- or trust-

wide breach rates could satisfy the Second Circuit's standard.  RP/WF, 2017 WL 953550, at

*4-6, *9; RP/HSBC, 2017 WL 945099, at *4-6, *9.  As Judge Netburn explained, sampling

cannot capture the required loan-level specificity, including the materiality of any particular

R&W breach, because although sampling may identify deficiencies in a drawn loan pool, it

"cannot reliably prove which loan defects had a material and adverse effect on the value of a

particular loan."  RP/HSBC, 2017 WL 945099, at *5.  Judge Netburn also explained:

> While sampling may identify deficiencies within a drawn loan pool,
> [HSBC's / Wells Fargo's] duties as trustee, including its obligation to
> enforce the repurchase remedy, are triggered only when it knew or
> received written notice of a defect for a particular loan in the
> trust.  Conducting a sampling review seven or eight years after the fact
> cannot establish which specific loans [HSBC / Wells Fargo] would have
> actually found to be in breach had it performed an investigation at the
> time.

RP/HSBC, 2017 WL 945099, at *8; RP/WF, 2017 WL 953550, at *8.

Judge Failla (S.D.N.Y):  Finding "no error in Judge Netburn's thorough reasoning," Judge Failla denied RPI's motion to vacate the RP/WF decision.[4]  RP/WF II, 2017 WL 3610511, at *11.  Judge Failla confirmed that "it remains the law in RMBS cases of this kind that '[t]o prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis.'"  Id. at *7.  And, Judge Failla "concur[red] with Judge Netburn's conclusion that the minimal benefits that sampling could provide to the Consolidated Plaintiffs are outweighed by the discovery's burden and expense in light of the fact that 'the contemplated sampling will cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will likely result in challenges to the admissibility of the evidence.'"  Id. at *11.

Judge Martin (Hamilton County, Ohio Court of Common Pleas):  Following a bench trial, Judge Martin entered a verdict for the RMBS trustee-defendant in a case brought by investors based on allegations substantially similar to those made in this case.  W. & S. Life Ins. Co. v. Bank of N.Y. Mellon, No. A1302490, 2017 WL 3392855, at *1 (Ohio Comm. Pl. Aug. 4, 2017) ("WS/BNYM").  In finding for the RMBS trustee, Judge Martin rejected the applicability of sampling to these cases: "[b]ecause plaintiffs must prove their case 'loan by loan,' the use of sampling to prove breaches in this case is impermissible:  a breach in one loan says nothing about a breach in another, much less whether that breach has a 'material and adverse effect' on Certificateholders."  Id. at 10.

As demonstrated below, RPI cannot distinguish these decisions, and its motion should fail for these same reasons.

---

[4]    RPI also moved to vacate Judge Netburn's decision in RP/HSBC.  As of the filing of this opposition, Judge Schofield has not decided that motion.

## II.     SAMPLING IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE

### A.     Sampling Will Not Help RPI Prove Its Claims

RPI contends that the pooling and servicing agreements governing the Covered Trusts (the "PSAs") provide that:

- prior to an Event of Default (as defined in the PSAs, an "EOD") – upon gaining "actual" or "constructive" knowledge (i.e., knows or should know) that any loan in a Covered Trust breached an R&W – the Trustee purportedly had a duty to commence an investigation to identify all loans in the trust with R&W breaches; and

- "upon gaining actual knowledge of events of default," the Trustee purportedly had a duty to commence an investigation into potential R&W breaches.

P. Br. 1-2, 3-19.  RPI further contends that "direct, non-sampling evidence" will show that the Trustee had both actual and constructive knowledge of R&W breaches and actual knowledge of EODs, and sampling-related discovery is justified because "sampling will then show what [the Trustee] would have found upon proper investigation, in order to prove liability and establish damages." Id. at 3, 13-16, 19.[5]  RPI is wrong for at least three reasons:  (i) prior to an EOD, the Trustee has no duty to investigate which loans, if any, breached R&Ws; (ii) the occurrence of an EOD does not trigger a duty to conduct such an investigation; and (iii) even if the Trustee had a duty to investigate, RPI still could not satisfy its loan-by-loan trust-by-trust burden of proof through sampling.

---

[5]     RPI also contends that the reason the Trustee supposedly breached its obligations is because it had conflicts of interest "that prevented it from taking or threatening legal action against [the parties that made the R&Ws]." P. Br. 12-13.  Suffice to say the Trustee denies these baseless assertions, which are irrelevant to RPI's motion and demonstrably false as evidenced by legal action with respect to hundreds of RMBS trusts that the Trustee has taken against, and settlements that the Trustee has entered into with, many different warrantors that were clients.

### 1.    Prior To An EOD, The Trustee Has No Duty To Investigate Under The Circumstances Alleged Here

The PSAs require that the Trustee take certain actions "upon discovery" of an R&W breach.  For example, the PSA for one of the Covered Trusts provides that: "[u]pon discovery by the Mortgage Loan Seller, the Depositor, the Securities Administrator, the Trustee, the Master Servicer or the Servicer of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the others."  Ex. A, FFML 2006-FF9 PSA § 2.03(c).  RPI contends that the word "discovery" in this context somehow means that if the Trustee acquires actual or constructive knowledge of an R&W breach in a trust, an implied duty arises on the part of the Trustee to conduct an investigation to identify all loans in the trust that breach an R&W.  P. Br. 3-5.  As both Judge Failla and Judge Netburn found, RPI is mistaken.  See RP/WF II, 2017 WL 3610511, at *9-10; RP/WF, 2017 WL 953550, at *6-7; RP/HSBC, 2017 WL 945099, at *6-7.  Other courts agree.  See infra at 10.

RPI's proposed interpretation would contravene the plain and bargained-for contract language that limits the Trustee's duties.  See, e.g., RP/HSBC, 2017 WL 945099, at *7; RP/WF, 2017 WL 953550, at *7.  For example, the PSAs provide that:

- "[T]he Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Holders of Certificates evidencing not less than 25.00% of the Voting Rights allocated to each Class of Certificates . . . ." Ex. A, FFML 2006-FF9 PSA § 8.02(d) (emphasis added).[6]

- "[T]he Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by this Agreement or to institute, conduct or

---

[6]    See also Exs. B-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.02(a)(vi); HASC 2007-WF1 PSA § 8.02(d); HVMLT 2006-8 PSA § 8.02(v); MSAC 2007-NC2 PSA § 8.02(d); MSAC 2007-NC3 PSA § 8.02(d); MSIX 2006-1 PSA § 8.02(d); NHEL 2006-4 PSA § 8.02; SAST 2006-2 PSA § 8.2(iv); SVHE 2007-NS1 PSA § 8.02(a)(v).

-6-

defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificateholders, pursuant to this Agreement, unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which may be incurred therein or thereby . . . ." Id. § 8.02(i).[7]

- The Trustee "undertake[s] to perform such duties and only such duties as are specifically set forth in this Agreement." Id. § 8.01.[8]

- "[T]he duties and obligations of the Trustee shall be determined solely by the express provisions of the [PSA]. . . ." Id. § 8.01(a).[9]

- "[T]he Trustee shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement . . . ." Id.[10]

- "[N]o implied covenants or obligations shall be read into this Agreement against the Trustee." Id.[11]

Thus, imposing a constructive knowledge standard and a duty to investigate on the Trustee would expand its duties far beyond those set forth in the agreements (and the Trustee's compensation). See RP/HSBC, 2017 WL 945099, at *7 ("Equating 'discovery' with constructive knowledge is also inconsistent with the bargained-for terms of the PSAs, which

---

[7]     See also Exs. B-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.02(a)(iv); HASC 2007-WF1 PSA § 8.02(i); HVMLT 2006-8 PSA § 8.02(iii); MSAC 2007-NC2 PSA § 8.02(i); MSAC 2007-NC3 PSA § 8.02(i); MSIX 2006-1 PSA § 8.02(i); NHEL 2006-4 PSA § 8.02; SAST 2006-2 PSA § 8.2(x); SVHE 2007-NS1 PSA 8.02(a)(iii).

[8]     See also Exs. B-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.01; HASC 2007-WF1 PSA § 8.01; HVMLT 2006-8 PSA § 8.01; MSAC 2007-NC2 PSA § 8.01; MSAC 2007-NC3 PSA § 8.01; MSIX 2006-1 PSA § 8.01; NHEL 2006-4 PSA § 8.01(a)(i); SAST 2006-2 PSA § 8.1; SVHE 2007-NS1 PSA § 8.01.

[9]     See also Exs. B-G, I-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.01(a); HASC 2007-WF1 PSA § 8.01(a); HVMLT 2006-8 PSA § 8.01(i); MSAC 2007-NC2 PSA § 8.01(a); MSAC 2007-NC3 PSA § 8.01(a); MSIX 2006-1 PSA § 8.01(a); SAST 2006-2 PSA § 8.1(i); SVHE 2007-NS1 PSA 8.01(i).

[10]     See also Exs. B-G, I-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.01(a); HASC 2007-WF1 PSA § 8.01(a); HVMLT 2006-8 PSA § 8.01(i); MSAC 2007-NC2 PSA § 8.01(a); MSAC 2007-NC3 PSA § 8.01(a); MSIX 2006-1 PSA § 8.01(a); SAST 2006-2 PSA § 8.1(i); SVHE 2007-NS1 PSA 8.01(i).

[11]     See also Exs. B-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.01(a); HASC 2007-WF1 PSA § 8.01(a); HVMLT 2006-8 PSA § 8.01(i); MSAC 2007-NC2 PSA § 8.01(a); MSAC 2007-NC3 PSA § 8.01(a); MSIX 2006-1 PSA § 8.01(a); NHEL 2006-4 PSA § 8.01(a)(i); SAST 2006-2 PSA § 8.1(i); SVHE 2007-NS1 PSA 8.01(i).

Certain of the provisions referenced at pages 6-7 apply only before an EOD occurs. However, for reasons explained infra at Section II.A.2, RPI's arguments in favor of sampling fail regardless of whether or not RPI contends that an EOD has occurred.

limit HSBC's pre-EOD duties as trustee to the four corners of the governing agreements. . . .
Importing a 'should have known' standard is also inconsistent with cases that have emphasized
the limited role of an indenture RMBS trustee."); Racepoint Partners, LLC v. JPMorgan Chase
Bank, N.A., 14 N.Y.3d 419, 425 (2010) (rejecting interpretation that was inconsistent with the
"limited, 'ministerial' functions of indenture trustees" and emphasizing that "Plaintiffs' proposed
interpretation . . . would . . . greatly expand[] indenture trustees' recognized administrative duties
far beyond anything found in the contract"); AG Capital Funding Partners, L.P. v. State St. Bank
& Trust Co., 11 N.Y.3d 146, 157 (2008) (indenture trustees have limited, ministerial duties);
CFIP Master Fund, Ltd. v. Citibank, N.A., 738 F. Supp. 2d 450, 474 (S.D.N.Y. 2010)
(recognizing that the trustee was "compensated . . . in an amount that was pocket change in
comparison to all other economic aspects of this transaction").

     And, more fundamentally, RPI's argument that, notwithstanding that the PSAs provide
that the Trustee has no duty to investigate absent direction and indemnity, the phrase "upon
discovery" imposes a constructive knowledge standard and a duty to investigate on the Trustee,
violates well-settled law that a court:

> should construe . . . agreements so as to give full meaning and effect to the
> material provisions. A reading of the contract should not render any
> portion meaningless.  Further, a contract should be read as a whole, and
> every part will be interpreted with reference to the whole; and if possible it
> will be so interpreted as to give effect to its general purpose.

Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-25 (2007); see, e.g., India.com, Inc. v. Dalal, 412
F.3d 315, 323 (2d Cir. 2005) ("[U]nder New York law, effect and meaning must be given to
every term of the contract, and reasonable effort must be made to harmonize all of its terms.").

     Rather, as Judge Nathan, this Court, and numerous other judges have recognized,
"discovery" in this context means "actual knowledge" by the Trustee of loan-specific R&W
breaches.  See RP/DBNTC, 2016 WL 439020, at *6 ("Without actual knowledge of non-

conforming loans, [the Trustee] would have no obligation to require a Seller to substitute or repurchase the defective loan."); Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-04394-AJN-BCM, 2016 WL 4613390, at *13 (S.D.N.Y. Aug. 31, 201) ("RP/DBNTC II") ("[The Trustee's] contractual obligations as Trustee were triggered, if at all, by its own actual knowledge of the alleged R&W breaches and Events of Default . . . ."); see also BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon, 180 F. Supp. 3d 246, 259 (S.D.N.Y. 2016) (Daniels, J.) (plaintiffs must prove the trustee's "actual knowledge of breaches of representations and warranties"); Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015) (Scheindlin, J.) ("If, after discovery, plaintiffs cannot prove that HSBC had actual knowledge regarding the loans at issue here, HSBC may move for summary judgment."); WS/BNYM, 2017 WL 3392855, at *9 ("[T]he contracts require actual knowledge, not constructive knowledge. It is not enough that a party should know that a breach has occurred; 'discovery' as used in these contracts means actual knowledge." (second emphasis in original)); W. & S. Life Ins. v. Deutsche Bank Nat'l Tr. Co., No. A1506819, 2016 WL 3625555, at *3 (Ohio Ct. Com. Pl., Hamilton Cty. June 24, 2016) ("WS/DB") ("In addition, under the Agreements, Deutsche Bank's obligation to act with respect to breaches of representations and warranties arises when Deutsche Bank has actual knowledge of the breaches.").[12]

RPI does not dispute that it cannot establish actual knowledge of loan-specific R&W breaches by sampling.  See P. Br. 24 ("here plaintiff will **not** use sampling to prove 'discovery'

---

[12]    To the extent Judge Failla left open the possibility in RP/WF II that RPI could demonstrate "discovery" through a lesser showing than "actual knowledge," the Trustee respectfully disagrees.  In any event, Judge Failla determined that she need not decide this issue to deny RPI's motion to vacate Judge Netburn's decision rejecting sampling-related expert discovery.  2017 WL 3610511, at *10.

of breaches by [the Trustee]") (emphasis in original); see also RP/HSBC, 2017 WL 945099, at

*8 ("Sampling cannot establish that HSBC had actual knowledge of specific breaches on the

requisite loan-by-loan basis."); WS/BNYM, 2017 WL 3392855, at *10.

Courts also have rejected RPI's related argument that the Trustee has a duty to investigate

or "nose to the source."  See, e.g., Commerce Bank v. Bank of N.Y. Mellon, 35 N.Y.S.3d 63, 65

(1st Dep't 2016) ("[T]he trustee of an RMBS (residential mortgage-backed securities) trust does

not have a duty to 'nose to the source'") ("Commerce Bank/BNYM"); RP/WF II, 2017 WL

3610511, at *9 ("[B]ecause Defendant cannot be required to investigate under the parties'

contracts, Defendant cannot be held liable on the basis of constructive knowledge."); RP/HSBC,

2017 WL 945099, at * 7; Commerce Bank v. U.S. Bank Nat'l Ass'n, No. 4:13-cv-517, slip op. at

5-6 (W.D. Mo. Jan. 5, 2017) (attached hereto as Ex. K) ("[T]he trustee of an RMBS . . . does not

have a duty to nose to the source."); VNB Realty, Inc. v. U.S. Bank, N.A., No. 13-cv-4743, 2014

WL 1628441, at *6 n.3 (D.N.J. Apr. 23, 2014) (rejecting plaintiff's argument that RMBS trustees

have a duty to "nose to the source").[13]

None of the cases cited by RPI support its arguments concerning constructive knowledge

and a duty to investigate.  P. Br. 1-5.  As a threshold matter, RPI's citation to RP/WF II (see P.

Br. 4-5) is, to the say the least, confusing because that decision does not support any of RPI's

arguments.  Specifically, Judge Failla (i) denied RPI's motion to vacate Judge Netburn's

decision rejecting RPI's request for sampling-related expert discovery, (ii) confirmed that "the

Court would deny [RPI's motion to vacate] even if it employed a de novo review and conducted

---

[13]     RPI cites a few cases in which courts have found a duty to "nose to the source."  P. Br. 1, 3-4.  As
explained below, these cases are inapposite.  RPI fails to point out that these cases consist of: (i) a decision by Judge
Failla, who rejected sampling-related expert discovery in cases against RMBS trustees; (ii) a decision by Judge
Forrest, who, upon a motion for reconsideration, explained that "actual knowledge requires just that – actual notice,
not constructive notice;" and (iii) four cases that were not brought against RMBS trustees.

Judge Netburn's Rule 26 analysis anew," (iii) acknowledged that RMBS trustees "cannot be required to investigate under the parties' contracts" and (iv) held that Judge Netburn did not commit error in concluding that "proof of 'discovery' would require more than mere constructive knowledge or inquiry notice."  2017 WL 3610511, at *6-11.[14]

RPI also incorrectly asserts that <u>Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.</u>, No. 11-cv-0505-CM-GWG, 2013 WL 3146824, at *20 (S.D.N.Y. June 19, 2013), <u>vacated</u>, 821 F.3d 297 (2d Cir. 2016) supports its argument that "discovery" occurs when a trustee "knows or should know" of an R&W breach.  <u>See</u> P. Br. 3.  That case involved a servicer's obligations under a mortgage loan purchase agreement – not an RMBS trustee's duties under a PSA that expressly provides the trustee has no duty to investigate.[15]  And, more importantly, the Second Circuit explained that a party "discovers" a breach when the party actually becomes aware of the breach (<u>i.e.</u>, gains actual knowledge of it) as opposed to when the party is "simply suspicious" of a breach, which contradicts RPI's position.[16]  <u>See</u> <u>Bank of N.Y. Mellon Trust</u>, 821 F.3d at 310.  Thus, although RPI relied heavily on that case when briefing this sampling issue previously (as it did here), it is not surprising that this case did "not sway" Judge Failla.  <u>See</u> <u>RP/WF II</u>, 2017 WL 3610511, at *9.

---

[14]    Similarly, given the clear and unambiguous language in <u>RP/WF II</u>, it is unclear why RPI believes Judge Failla's prior decision in <u>Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.</u>, 247 F. Supp. 3d 377 (S.D.N.Y. 2017) supports RPI's position that the term "discovery" in PSAs "require[s] RMBS trustees to investigate upon learning facts constituting inquiry notice of breaching loans."  <u>See</u> P. Br. 1.

[15]    <u>MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. Corp.</u>, No. 11-cv-2542, 2012 WL 4511065, at *6–7 (D. Minn. Oct. 1, 2012), cited at P. Br. 4 n.4, is similarly distinguishable because, <u>inter alia</u>, the court was considering a mortgage loan purchase agreement and not a PSA expressly providing that the trustee has no duty to investigate.

[16]    While the Second Circuit recognized that a servicer may discover a breach "after [the servicer] has had a reasonable opportunity to investigate and confirm its suspicions," it did <u>not</u> hold that a mere opportunity to confirm suspicions is sufficient for a servicer to "discover" breaches or that a trustee has a duty to investigate.  <u>See Bank of N.Y. Mellon Trust</u>, 821 F.3d at 310.

Equally unavailing is RPI's reliance on <u>Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., N.A.</u>, 907 F. Supp. 2d 536 (S.D.N.Y. 2012) to support its argument that the Trustee has a pre-EOD "duty to investigate."  <u>See</u> P. Br. 3-4.  RPI fails to disclose that defendants moved for reconsideration, and the court clarified that "[i]t is certainly true that, as defendants argue, actual knowledge requires just that – actual notice, not constructive notice." <u>See</u> <u>Policemen's Annuity & Ben. Fund of Chi. v. Bank of Am., N.A.</u>, 943 F. Supp. 2d 428, 436-437, 443 (S.D.N.Y 2013), <u>abrogated on other grounds by</u> <u>PABF v. BNYM</u>, 775 F.3d 154.  The court went on to acknowledge that "[t]he PSA here, similar to other PSAs, shields the Trustee from a mandate to conduct an investigation, except under limited circumstances that are difficult to achieve: actual notice of an event of default or a request by 25% or more of the Certificate Holders."  <u>Id.</u> at 436-37.

The remaining cases cited by RPI in support of its "constructive knowledge" and duty to investigate arguments are likewise unpersuasive and distinguishable.  <u>See</u> P. Br. 3-4.  None addresses the duties of an RMBS trustee or a provision (like those in the PSAs) that expressly provides that the trustee has no duty to investigate.  <u>See</u> <u>Doe v. Am. Nat'l Red Cross</u>, 923 F. Supp. 753, 756 (D. Md. 1996) (interpreting the term "accrues" in Maryland statute and having nothing to do with RMBS); <u>Jeandron v. Bd. of Regents of Univ. Sys. of Md.</u>, 510 F. App'x 223, 227 (4th Cir. 2013) (same); <u>Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prods., Inc.</u>, 958 F. Supp. 2d 488, 490-94 (S.D.N.Y. 2013) (concerning knowledge by the party responsible for R&Ws, which served as securitization sponsor and was alleged to have conducted thorough due diligence); <u>Assured Guar. Mun. Corp. v. Flagstar Bank, FSB</u>, 920 F. Supp. 2d 475, 479, 512–13 (S.D.N.Y. 2013) (concerning knowledge by the party responsible for R&Ws, which served as sponsor, servicer, depositor, and originator of loans underlying RMBS

trusts and underwrote the loans at issue); LaSalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc., No. 02-cv-7867, 2003 WL 22047891, at *1, *6 (S.D.N.Y. Aug. 29, 2003) (concerning discovery by commercial mortgage loan seller that knew of significant issues concerning specific loan); Morgan Guar. Tr. Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co., No. 00-cv-8613, 2002 WL 818082, at *1, *5 (S.D.N.Y. Apr. 30, 2002) (concerning discovery by commercial mortgage loan buyer).

### 2.    RPI Cannot Show That An EOD Would Have Triggered A Duty To Conduct An Investigation Into Potential R&W Breaches

RPI's argument that the Court should permit sampling with respect to Covered Trusts if an EOD has occurred fares no better, as courts have also uniformly rejected sampling with respect to post-EOD claims.  See RP/WF II, 2017 WL 3610511, at *10-11; RP/HSBC, 2017 WL 945099, at * 9-10; RP/WF, 2017 WL 953550, at *9.

RPI points to a few examples of supposed EODs (P. Br. at 14-16),[17] but does not explain how, even if such EODs occurred and the Trustee had actual knowledge thereof, the Trustee had a duty to perform an expensive investigation of the loans in the trust.  First, as Judge Netburn emphasized:

> even in the post-EOD context, "[t]he trustee is not required to act beyond his contractually conferred rights and powers." Royal Park, 109 F. Supp. 3d at 597. Any investigatory duty assumed by the trustee is still limited by the terms of the governing agreements, which allow a trustee to refrain from expending or risking its own funds in conducting an investigation without securing satisfactory indemnification. See DBALT 2006-AR5 PSA § 9.02(a)(v). The plaintiffs have not established that the PSAs required [the Trustee] to assume the extremely burdensome task of

---

[17]    As explained in Section III infra, at the appropriate time, the Trustee will address the substance of the purported EODs identified by RPI.  However, it bears mention that most, if not all, of the purported EODs that RPI describes are not actually EODs.  As merely one example, RPI asserts a "Saxon EOD derived from 'calculated cumulative losses'" (P. Br. 14) but the governing PSA makes clear that cumulative losses are not among the enumerated circumstances that can ever cause an EOD for that trust.  Ex. I, SAST 2006-2 PSA § 7.1.

> performing a review of the trusts in order to find the specific breaching
> loans.

RP/HSBC, 2017 WL 945099, at * 9; see also RP/WF, 2017 WL 953550, at *9.  The PSAs at issue here also provide that "the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties."  Ex. A, FFML 2006-FF9 PSA § 8.02(f).[18]  And, as in the cases before Judge Netburn, RPI has not established that following an EOD, the Trustee was required to launch a costly investigation in search of loans with R&W breaches or even explained why doing so would have made any sense in light of the alleged EODs.

For example, one of RPI's theories is that an EOD allegedly occurred because a servicer (e.g., Wells Fargo) did not adequately maintain homes following foreclosure sales.  See P. Br. 15.  RPI does not—and cannot—explain why, as a result of this EOD, a prudent person would have decided to spend millions of dollars on an investigation into R&W breaches—i.e., an issue that is completely unrelated to the servicer's maintenance of homes.  Tellingly, RPI does not— and cannot—demonstrate that the sophisticated (and presumably prudent) investors who bore the economic risk of the RMBS transaction ever requested, let alone directed as the PSAs contemplate, that the Trustee do so.

Nor has RPI referenced any industry standards or customs showing that a prudent trustee at the time would have investigated for breaches of R&Ws after an EOD.   This is particularly notable, given that Judge Netburn already spelled out this failure for RPI:

> plaintiffs have cited no evidence, such as industry standards or customs at
> the time, showing that performing some kind of sampling review,

---

[18]     See also Exs. B-J: GSR 2007-AR2 Standard Terms of the MSTA § 9.02(a)(xi); HASC 2007-WF1 PSA § 8.02(f); HVMLT 2006-8 PSA § 8.01(iv); MSAC 2007-NC2 PSA § 8.02(f); MSAC 2007-NC3 PSA § 8.02(f); MSIX 2006-1 PSA § 8.02(f); NHEL 2006-4 PSA § 8.01; SAST 2006-2 PSA § 8.2(vi); SVHE 2007-NS1 PSA 8.01.

> identifying and investigating loan breaches, and subsequently enforcing
> repurchase was what a prudent person would have done following an
> EOD. . . . The argument that [HSBC/Wells Fargo] should have performed
> an extensive sampling review of the loans at issue is simply too distant a
> leap for this Court to make without plausible allegations that other MBS
> trusts' trustees have taken similar action in similar circumstances
> (bolstering the actions a prudent person would have taken).

RP/HSBC, 2017 WL 945099, at * 9; RP/WF, 2017 WL 953550, at *9; see WS/BNYM, 2017

WL 3392855, at *21 ("Even assuming an Event of Default occurred (which has not been proven

on this record), there is no evidence in the record indicating what actions the Trustee was

required to take thereafter.  Plaintiffs claim that the Trustee should have taken some action that

would have allegedly reduced losses in their Trusts, however, there is no evidence of what that

action should have been, no legal authority that supports that the Trustee should have only acted

for the benefit of these Trusts and no others, and no testimony on exactly how all of this would

have played out.").[19]  Plaintiff was on notice of this defect in its argument but failed to cure it.

### 3. Even If The Trustee Had Assumed A Duty To Investigate, RPI Could Not Satisfy Its Loan-By-Loan Trust-By-Trust Burden Through Sampling

#### a. RPI Must Prove Its Claims Loan-By-Loan And Trust-By-Trust

Based on the Second Circuit's decision in PABF v. BNYM, 775 F. 3d 162, Judge Nathan

made clear that "to prevail on its claims, RPI must demonstrate such breach on a loan-by-loan

and trust-by-trust basis." Royal Park v. DBNTC, 2016 WL 439020, at *6; see also RP/DBNTC

II, 2016 WL 4613390, at *13 n.14 ("Indeed, although the allegations set forth in the Complaint

were sufficient to survive [the Trustee's] motion to dismiss, RPI will be required, at trial, to

establish R&W breaches on a loan-by-loan and trust-by-trust basis.").  Judge Nathan's statement

of the law is consistent with decisions of other courts in cases brought by investors against

---

[19]     The use of sampling to prepare a proof of claim following a servicer's bankruptcy (see P. Br. 17-18) is irrelevant to determining what a prudent person would have done following other types of EODs.

RMBS trustees, which uniformly have held that plaintiffs must prove their claims on a "loan-by-loan and trust-by-trust basis."  See, e.g., Phoenix Light SF Ltd. v. Bank of N.Y. Mellon, No. 14-cv-10104-VEC, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017) ("PL/BNYM"); WS/BNYM, 2017 WL 3392855, at *10; RP/WF II, 2017 WL 36010511, at *7; RP/HSBC, 2017 WL 945099, at *4-5; Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016); Royal Park Invs. SA/NV v, Bank of N.Y. Mellon, No. 14-cv-6502, 2016 WL 899320, at *4 (S.D.N.Y. Mar. 2, 2016); Fixed Income Shares: Series M v. Citibank N.A., 130 F. Supp. 3d 842, 851, 854 (S.D.N.Y. 2015); Royal Park v. HSBC, 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015); WS/DB, 2016 WL 3625555, at *3.

The Second Circuit reasoned that:

> whether [the party responsible for R&Ws] breached its obligations under the governing agreements (thus triggering [the trustee's] duty to act) requires examining its conduct with respect to each trust. Whether it was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a Loan's documentation was deficient requires looking at individual loans and documents.

PABF v. BNYM, 775 F. 3d at 162.  Accordingly, RPI's assertion that PABF v. BNYM is a "single inapposite case" that "did not establish a rule that plaintiffs must submit proof showing discrete trails of evidence for every individual loan" (P. Br. 22 n.22) is belied by PABF v. BNYM itself, and the numerous subsequent decisions cited above, including Judge Nathan's ruling in this case.

### b.    Sampling Cannot Prove The Trustee's Liability

As numerous courts have recognized, the loan-by-loan proof requirement "arises directly from the [PSAs]." WS/BNYM, 2017 WL 3392855, at *10; see also PL/BNYM, 2017 WL 3973951, at *8 ("[T]he remedy provisions for a breach of a representation or warranty required the Seller to cure the breach, and if it could not or did not cure, to 'remove such Mortgage Loan

... from the Trust Fund and substitute in its place a Substitute Mortgage Loan' or 'repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee.'"); RP/HSBC, 2017 WL 945099, at * 6 ("The repurchase remedy contemplated in Section 2.03 rests on the ability of an RMBS trustee to undertake defined, concrete measures (i.e., enforce the originator's or the seller's repurchase obligation) with respect to a specific defect, in a specific loan, in a specific trust"); WS/BNYM, 2017 WL 3392855, at *10 ("And the sole remedy that the PSA provides is for the Seller either to cure the breach, 'substitute … such Mortgage Loan' with a new loan, or 'purchase such Mortgage Loan' at its unpaid principal balance.") (emphasis in original).  Below are examples of relevant PSA provisions that require a loan-specific analysis to determine whether the Trustee breached its obligations:

- "Upon discovery by any of the parties hereto of a breach of any of a representation or warranty made by the Depositor under this Agreement that materially and adversely affect the value of any Mortgage Loan or the interests of the Trustee or the Certificateholders therein, the party discovering such breach shall give prompt written notice thereof to the other applicable parties . . . ." Ex. F, MSAC 2007-NC3 PSA § 2.03(f).[20]

- "Within 60 days of the earlier of either discovery by or notice to the Depositor of any breach of a representation or warranty set forth on Schedule III hereto that materially and adversely affects the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein, the Depositor shall use its best efforts to promptly cure such breach in all material respects and, if such defect or breach cannot be remedied, the Depositor shall purchase such Mortgage Loan at the Repurchase Price or, if permitted hereunder, substitute a Substitute Mortgage Loan for such Mortgage Loan." Id. § 2.03(g).[21]

---

[20]     See also Exs. B, D-H: GSR 2007-AR2 Standard Terms of the MSTA §2.03(a) – (d); HVMLT 2006-8 PSA § 2.03(a) – (b); MSAC 2007-NC2 PSA § 2.03(e), (f); MSAC 2007-NC3 PSA § 2.03(f); MSIX 2006-1 PSA § 2.03(e); NHEL 2006-4 PSA § 2.03(a);

[21]     See also Exs. A-E, G-J: FFML 2006-FF9 PSA § 2.03(d); GSR 2007-AR2 Standard Terms of the MSTA §2.03(a) – (d); HASC 2007-WF1 PSA § 2.03(d), (k); HVMLT 2006-8 PSA § 2.03(a) – (b); MSAC 2007-NC2 PSA § 2.03(g); MSIX 2006-1 PSA § 2.03(g) – (i); NHEL 2006-4 PSA § 2.03(a); SAST 2006-2 PSA § 2.3; SVHE 2007-NS1 PSA § 2.03(a), (e).

- "Repurchase Price: With respect to <u>any Mortgage Loan</u> repurchased by the Depositor or the Sponsor, an amount equal to the sum of (i) the <u>unpaid principal balance of such Mortgage Loan</u> as of the date of repurchase, (ii) interest on <u>such unpaid principal balance of such Mortgage Loan</u> at the Mortgage Rate from the last date through which interest has been paid and distributed to the Securities Administrator to the date of repurchase . . . . " <u>Id.</u> Art. I at p. 58.[22]

These provisions require that a plaintiff "first show which specific loans were in breach because any defect that would be cured by repurchase is loan-specific." <u>RP/HSBC</u>, 2017 WL 945099, at * 5; <u>RP/WF</u>, 2017 WL 953550, at *5.  As Judge Netburn emphasized:

> To prevail on their [R&W] breach of contract claims, plaintiffs must establish that [the trustee] failed to act as required under the PSA. The elements of such a claim require establishing loan-specific proof related to a particular defect, that defect was material to the value of the loan, that [the trustee] failed to act with respect to the loan-specific remedies available for a particular defect, and that such failure caused the plaintiffs harm.

<u>RP/WF</u>, 2017 953550, at *5; <u>RP/HSBC</u>, 2017 WL 945099, at *4.  Sampling to determine supposed trust-wide breach rates simply <u>cannot</u> yield the loan-specific proof necessary for RPI to prevail on its claims against the Trustee.  <u>See</u>, <u>e.g.</u>, <u>PL/BNYM</u>, 2017 WL 3973951, at *8 ("Taken together, these breach and remedy provisions make clear that breaches must be discovered (and remedied) relative to the particular mortgage loans in breach; as such, knowledge of 'pervasive breaches' does not suffice."); <u>RP/WF</u>, 2017 WL 953550, at *4-5; <u>RP/HSBC</u>, 2017 WL 945099, at *4-5.

Among other things, sampling cannot establish whether a R&W breach "materially and adversely affect[s] the value of any Mortgage Loan," which is necessary to prove a claim against

---

[22]     <u>See also</u> Exs. A-E, G-J: FFML 2006-FF9, Art. I at p. 44 (Definition of "Repurchase Price"); GSR 2007-AR2 Standard Terms of the MSTA §1.01 at p. 13-14 (Definition of "Purchase Price") & §2.03(e) – (f); HASC 2007-WF1 PSA Art. I at p. 41 (Definition of "Repurchase Price"); HVMLT 2006-8 PSA §1.01 at p. 37-38 (Definition of "Purchase Price"); MSAC 2007-NC2 PSA Art. I. at p. 58 (Definition of "Repurchase Price"); MSIX 2006-1 PSA Art. I. at p. 54 (Definition of "Repurchase Price"); NHEL 2006-4 PSA App. A-40-41 (Definition of "Repurchase Price"); SAST 2006-2 PSA Preliminary Statement at p. 37 (Definition of "Purchase Price"); SVHE 2007-NS1 PSA §1.01, at p. 44 (Definition of "Purchase Price").

the Trustee because "only those breaches that 'materially and adversely affect[] the value of <u>such</u> <u>Loan</u> or the interest therein of the Certificateholders' trigger a cure or repurchase obligation." <u>RP/HSBC</u>, 2017 WL 945099, at * 5; <u>RP/WF</u>, 2017 WL 953550, at *5; <u>see</u> <u>WS/BNYM</u>, 2017 WL 3392855, at *10 ("The materiality of a representation and warranty breach is also a loan-specific inquiry.").[23]  As Judge Netburn explained,

> Sampling will not adequately distinguish between breaches that are material and adverse as to a particular loan and those that are not. Sampling may fail to capture whether the nature of the breach had a material and adverse effect at the time a repurchase obligation, if any, was triggered, especially when the sample that plaintiffs here draw consists of current loan performance information. Sampling may also detect a technical breach or deviation from underwriting standards but fail to capture mitigating circumstances or compensating factors. For example, a missing verification of employment in a loan file is a technical deviation of the underwriting guidelines. Yet the defect may not have had any material and adverse effect (and is therefore not an R&W breach requiring a repurchase remedy) if the borrower was actually employed and earned a stable income.

<u>RP/HSBC</u>, 2017 WL 945099, at * 5; <u>RP/WF</u>, 2017 WL 953550, at *5.

> c.  Loan-Specific (Non-Sampling) Information Is
> <u>Also Necessary To Prove Causation And Damages</u>

Loan-specific proof also is required to establish causation and damages arising from the Trustee's alleged breaches.  For example, different loans in Covered Trusts have different Warrantors, and to prove its claim, RPI would need to show that the Warrantor for each specific defective loan that the Trustee was purportedly required to put-back would have had sufficient funds to pay the repurchase price for that specific loan.  <u>See, e.g.</u>, Ex. F, MSAC 2007-NC3 PSA Art. I at p. 58 & § 2.03(g).  The use of sampling to determine a trust-wide breach rate will not

---

[23]    <u>See also</u> Exs. A-J: FFML 2006-FF9 PSA § 2.03(d); GSR 2007-AR2 Standard Terms of the MSTA §2.03(a) – (d); HASC 2007-WF1 PSA § 2.03(d), (k); HVMLT 2006-8 PSA § 2.03(a) – (b); MSAC 2007-NC2 PSA § 2.03(e) – (g); MSAC 2007-NC3 PSA § 2.03(e) – (g); MSIX 2006-1 PSA § 2.03(e), (g) – (i); NHEL 2006-4 PSA § 2.03(a); SAST 2006-2 PSA § 2.3; SVHE 2007-NS1 PSA § 2.03(a), (e).

distinguish between loans outside the sample that had a Warrantor with sufficient funds from those that did not.

Sampling also is inappropriate because it would not demonstrate <u>when</u> the Trustee supposedly should have discovered, and ultimately taken action concerning, each alleged loan-level R&W breach.  Without knowing that timing, RPI could not demonstrate that the Trustee would have had any legal recourse at the time of alleged discovery.  For example, the Trustee may have discovered an alleged R&W breach after a repurchase claim was time-barred (see <u>ACE Sec. Corp. v. DB Structured Prods., Inc.</u>, 25 N.Y.3d 581, 599 (2015)) or, as discussed above, at a time when the Warrantor was insolvent or otherwise unable to repurchase breaching loans.

> d.   RPI Cannot Distinguish The Decisions Rejecting RPI's
> Requests For Sampling-Related Expert Discovery In Other Cases

RPI makes no real attempt to distinguish <u>RP/HSBC</u>, <u>RP/WF</u> and <u>RP/WF II</u>, other than to assert mistakenly that neither Judge Failla nor Judge Netburn addressed whether sampling could prove the R&W breaches that the Trustee "would have found upon reasonable investigation and the damages resulting therefrom."  <u>See</u> P. Br. 24.  In fact, Judge Netburn determined that "[c]onducting a sampling review seven or eight years after the fact cannot establish which specific loans [Wells Fargo/HSBC] would have actually found to be in breach had it performed an investigation at the time."  <u>RP/HSBC</u>, 2017 WL 945099, at *8; <u>RP/WF</u>, 2017 WL 953550, at *8.  Moreover, Judge Netburn observed that "to successfully enforce repurchase of a specific loan after a defined EOD . . . occurred, [Wells Fargo/HSBC] would have needed to locate the individual breaching loans themselves rather than determine trust-wide breach rates." <u>RP/HSBC</u>, 2017 WL 945099, at *9; <u>RP/WF</u>, 2017 WL 953550, at *9.  And, as Judge Failla noted, Judge Netburn "concluded: 'It is not clear how sampling can show that after performing

an investigation, [Defendant] would have located the <u>specific</u> breaching loans outside of a sample based on the existence and rate of defective loans within a given sample.'" <u>RP/WF II</u>, 2017 WL 3610511, at *10 (emphasis in original).

### 4.       RPI's Authorities Regarding Sampling Are Distinguishable

RPI argues that "[s]ampling has been widely accepted in New York (and elsewhere) as part of the proof that a defendant was probably liable and caused the asserted quantum of damages in RMBS cases." P. Br. 20. But none of those cases was against an RMBS trustee or had a corresponding requirement to prove breaches on a loan-by-loan basis. Recognizing this critical distinction, Judge Netburn ruled, and Judge Failla agreed, that the cases RPI relies on (<u>see</u> P. Br. 20-23), including <u>Assured v. Flagstar</u>, are factually distinct and therefore inapplicable:

> They involve claims sounding in fraud, which require a critical mass of breaching loans rather than loan-specific breaches. <u>See</u>, <u>e.g.</u>, <u>Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.</u>, 104 F. Supp. 3d 441 (S.D.N.Y. 2015); <u>Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.</u>, No. 11 Civ. 6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012). They involve a monoline plaintiff, which is not limited to a repurchase remedy. <u>See</u>, <u>e.g.</u>, <u>Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.</u>, No. 650605/2010, 2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014); <u>Flagstar</u>, 920 F. Supp. 2d 475; <u>Syncora Guarantee Inc. v. EMC Mortg. Corp.</u>, No. 09 Civ. 3106 (PAC), 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011); <u>MBIA Ins. Corp. v. Countrywide Home Loans, Inc.</u>, No. 602825/08, 2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010). They hinge on a trustee plaintiff suing a loan sponsor on the ground of pervasive breach. <u>See</u>, <u>e.g.</u>, <u>Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC</u>, No. 12 Civ. 1538 (CSH), 2015 WL 9581729 (D. Conn. Dec. 30, 2015); <u>Deutsche Bank Nat'l Trust Co v. WMC Mortg., LLC</u>, No. 12 Civ. 933 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2014).

<u>RP/HSBC</u>, 2017 WL 945099, at *6; <u>RP/WF</u>, 2017 WL 953550, at *6; <u>see also</u> <u>RP/WF II</u>, 2017 WL 3610511, at *10-11.[24] Judge Netburn concluded that "[n]one of these cases counsels this

---

[24]       In addition, to the extent RPI relies on "*SACO I v. EMC*, No. 651820/2012, ECF No. 196-4 (N.Y. Sup. Ct. Nov. 4, 2015)" and "*NCUA v. Morgan Stanley*, No. 13-6705, ECF No. 196-6, at 1-2 (S.D.N.Y. Dec. 3, 2014)," (cited at P. Br. 20 n.19), these citations appear to be in error as there are no decisions in those cases on the dates referenced.

Court to authorize costly expert discovery that will not satisfy the plaintiffs' burden of proof required by the Court of Appeals and the terms of the PSAs." RP/HSBC, 2017 WL 945099, at *6; RP/WF, 2017 WL 953550, at *6.[25, 26]

### B.    Sampling-Related Expert Discovery Would Be Costly And Burdensome

As in RP/HSBC and RP/WF, it is likely that the requested sampling-related expert discovery "will cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will [undoubtedly] result in challenges to the admissibility of evidence." RP/WF, 2017 WL 953550, at *4; RP/WF II, 2017 WL 3610511, at *11; see also RP/HSBC, 2017 WL 2017 WL 945099, at *4. As demonstrated above, incurring these costs is wholly unwarranted because sampling cannot satisfy RPI's burden of proof.

## III.   RPI'S MISLEADING RECITATION OF
## THE EVIDENCE IS IRRELEVANT TO RPI'S MOTION

RPI inexplicably devoted the majority of its brief to a misleading explanation of why it believes the evidence shows that the Trustee discovered breaches and breached its duties. In this

---

[25]     RPI's reliance on Process America v. Cynergy Holdings, LLC, 839 F.3d 125, 141 (2d Cir. 2016), is also misplaced. In an attempt to demonstrate why sampling is appropriate here, RPI cites the proposition that "[w]here a plaintiff 'has proven the fact of damages by a preponderance of the evidence, the burden of uncertainty as to the amount of damage is upon the wrongdoer.'" P. Br. 21. But Process America was not a case against an RMBS trustee and did not involve sampling. Moreover, the Second Circuit emphasized that the plaintiff must demonstrate "a stable foundation for a reasonable estimate of the damages." Id. Again, sampling cannot satisfy that standard here because the required analysis is loan-specific.

[26]     Plaintiff relies on repurchase litigation against warrantors, as it did in its briefing before Judges Netburn and Failla, to support its arguments for sampling. However, as those judges recognized, "those cases are inapposite" because "[t]hey hinge on a trustee plaintiff suing a loan sponsor on the ground of pervasive breach." RP/HSBC, 2017 WL 945099, at *6; RP/WF, 2017 WL 953550, at *6; see also RP/WF II, 2017 WL 3610511, at *10-11 ("Judge Netburn rejected as inapposite cases factually distinct from the instant cases where sampling was permitted, and found that none counseled her to authorize the discovery here in light of its expense, burden, and unhelpfulness. . . . This Court can find no error in Judge Netburn's thorough reasoning. This Court accepts, as did Judge Netburn, that in other cases, sampling has been sufficiently useful to justify its burden and expense. Not so here."). To the extent Plaintiff implies that pervasive breach is universally accepted even in repurchase litigation, that would be inaccurate. For example, in the only repurchase case to go to trial, Judge Castel expressly rejected sampling and the pervasive breach theory. See U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386, 401, 424-25, 476 (S.D.N.Y. 2016); MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc., No. 12-cv-7322, 2015 WL 797972, at *2-4 (S.D.N.Y. Feb. 25, 2015).

respect, it reads more like an opposition to a summary judgment motion than a motion requesting permission to conduct sampling-based expert discovery.  Suffice to say, the Trustee disagrees with RPI's characterization of the evidence.  At the proper time and on the proper motion (summary judgment), the Trustee will refute RPI's arguments about the evidence.[27]  What the evidence as to the Trustee's alleged discovery of breaches actually will show at summary judgment – whether supporting RPI's or the Trustee's arguments – has no bearing on whether this Court should allow RPI to take sampling discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny RPI's motion regarding sampling-related expert discovery.

Dated: New York, New York
      October 16, 2017

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Kevin J. Biron*

Bernard J. Garbutt III
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:   (212) 309-6000
Fax:   (212) 309-6001
Bernard.Garbutt@morganlewis.com
Kevin.Biron@morganlewis.com

*Attorneys for Defendant*
*Deutsche Bank National Trust Company, as*
*Trustee*

---

[27]     For example, RPI argues that the Trustee disclaims any obligation to recognize when an EOD occurs, "no matter how flagrant." (P. Br. at 18).  In support of this argument, ███████████████████████████████████████████████████████████████████████████████