**Robbins Geller Rudman & Dowd LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Lucas F. Olts
lolts@rgrdlaw.com

November 13, 2017

The Honorable Barbara C. Moses          <u>VIA ECF</u>
Southern District of New York
500 Pearl Street, Courtroom 20A
New York, NY 10007

    Re:     *Royal Park Investments SA/NV v. Deutsche Bank National Trust Company*
            No. 1:14-cv-04394-AJN-BCM (S.D.N.Y.)

Dear Magistrate Judge Moses:

      We write on behalf of plaintiff Royal Park Investments SA/NV ("RPI") in the above referenced matter, to respectfully renew RPI's August 10, 2017 motion (Dkt. No. 435) (the "Motion") and request an order compelling defendant Deutsche Bank National Trust Company ("DB") to: (a) amend its "metadata" privilege log to include a "general subject matter" description in accordance with Local Civil Rule ("LR") 26.2; (b) produce documents improperly logged on its "traditional" log; and (c) immediately produce all remaining documents that have been improperly redacted or withheld under the "bank examiner privilege."[1] Instead of taking the last three months to address the issues with its logs, DB has made nearly no substantive changes and has completely failed to correspond with the appropriate regulators to resolve the bank examiner privilege issue. In light of these failures, this motion should be granted.

      In the three months since the filing of the Motion, RPI consented twice to extensions for DB to file its opposition so that the parties could meet and confer and DB could make changes to its logs. RPI ultimately withdrew its Motion without prejudice to re-file based on the representation that DB would produce amended privilege logs and provide a basis for its bank examiner privilege claims.[2] On August 31, 2017, DB provided its first revised versions of both its metadata and

---

[1]     RPI expressly incorporates the factual history, legal authority and arguments set forth in the Motion. *See* Dkt. No. 435.

[2]     On August 17, 2017, DB requested its first extension "in an attempt to reduce or eliminate the issues raised" in RPI's Motion. Dkt. No. 439; Dkt. No. 441. On September 13, 2017, DB requested its second extension, whereby its opposition would now be due on September 28, 2017, which the Court granted with the admonition that "[n]o further extensions will be granted." Dkt. No. 463; Dkt. No. 469. On September 27, 2017, DB requested that RPI withdraw its Motion with option to re-file so that DB could continue to resolve the issues with its logs and the bank examiner privilege documents. Ex. 1. RPI objected to this approach, as the "delay in progress on resolving the issues raised by [its] motion [wa]s due solely to DB's failure to address th[o]se issues in a timely manner." *Id.* at 1. Yet, on September 28, RPI agreed to withdraw its Motion on the representation that DB would produce amended privilege logs and with the understanding that RPI could renew its motion should the logs be deemed insufficient. Dkt. No. 482. The

**Robbins Geller Rudman & Dowd LLP**

The Honorable Barbara C. Moses
November 13, 2017
Page 2

traditional privilege logs. Ex. 1. The sole changes made to both logs were: (a) the addition of certain authors and dates in the traditional log; and (b) the removal of 1,196 entries (179 on the traditional log and 1,017 on the metadata log). The parties met and conferred on the outstanding issues on September 26, 2017, whereby DB confirmed that: (a) it was still undergoing technical difficulties to provide additional data on authors and dates for its traditional log; (b) the 1,196 entries removed from DB's revised logs "were removed primarily based upon a determination after an additional review that the documents were not responsive," and that they would not be produced to RPI and (c) DB had not provided any documents to the Office of the Comptroller of the Currency ("OCC") prior to asserting that they were subject to the bank examiner privilege, and that it had only sent the first batch of documents to the OCC for its review the day before. Ex. 1. On September 28, 2017, the OCC informed both parties that it would only assert the bank examiner privilege over a total of three documents, but that it was awaiting the transmission of "70 or so" remaining documents that DB was unable to provide due to technical error ("Technical Error Documents"). Ex. 2.

On November 3, 2017, DB provided RPI with its further amended traditional and metadata privilege logs, and represented that the OCC had decided to assert the bank examiner privilege over the remaining Technical Error Documents.[3] Ex. 3. As with its previous amended logs, the only changes to the further amended logs were: (a) the addition of certain authors, recipients and dates in the traditional log; and (b) the removal of 138 entries (125 on the traditional log and 13 on the metadata log) that DB determined were not privileged – only some of which DB agreed to produce to RPI. Ex. 4.

*DB Has Made No Substantive Changes to Its Metadata Log, Which Fails to Sufficiently Describe the General Subject Matter of Documents*. Other than the removal of 1,030 entries, no substantive changes have been made to DB's metadata log since RPI filed its Motion. This is despite the fact that RPI has objected to DB's use of a metadata log since at least February 2017.[4]

---

Court granted the joint application, allowing RPI to re-file its motion "in no event later than November 13." Dkt. No. 483 at 2.

[3]   The parties also met and conferred on November 3, 2017, whereby DB confirmed that it *still* had not submitted three documents to the Federal Reserve Board ("Fed") and one document to the Consumer Finance Protection Bureau ("CFPB") for their review of the bank examiner privilege. Ex. 5. RPI requested that DB forward written confirmation from the OCC evidencing its assertion of the bank examiner privilege over the Technical Error Documents. *Id*. While DB erroneously provided RPI with a copy of the OCC's prior September 28 correspondence, it has yet to provide written confirmation of the OCC's further assertion of privilege – despite repeated requests from RPI. Exs. 6-7.

[4]   DB first informed RPI that it planned to produce a metadata privilege log that would export top-line metadata from electronically-stored information on February 14, 2017. Ex. 9. RPI immediately expressed its concerns with a metadata log in its February 24, 2017 response, particularly that, among other issues, "email subject lines may describe the subject matter too broadly to be useful, or not at all." Ex. 10 at 1. On a March 24, 2017 meet-and-confer call, RPI reiterated its concern that a metadata log "would not provide an accurate description of the 'general subject matter' of

1328226_1

**Robbins Geller**
**Rudman & Dowd LLP**

The Honorable Barbara C. Moses
November 13, 2017
Page 3

The only information on the metadata log that provides a semblance of a general subject matter description are the email "Subject" line and "File Name" metadata exported from each document – making it impossible to evaluate the privilege claim for countless entries on the log. The automated subject matter descriptions are especially problematic for entries where ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The lack of a general subject matter description also compounds the problems arising from DB's failure to distinguish between attorneys and "Legal Staff" (defined as "legal department or law firm staff such as paralegals and legal secretaries") (Ex. 4) – ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Further, for communications implicating solely in-house counsel, the lack of a general subject matter description makes it impossible to "distinguish between communications serving primarily a business function, which are not protected, and communications made for the purpose of seeking legal advice." *See Varughese v. Mount Sinai Med. Ctr.*, No. 12 Civ. 8812 (CM) (JCF), 2014 WL 349698, at *2 (S.D.N.Y. Jan. 31, 2014). DB should be ordered to amend its metadata privilege log to manually provide a general subject matter description, or otherwise produce these documents.[5]

***The Traditional Log Still Suffers from Deficiencies.*** Numerous entries on DB's traditional log still lack the basic information required by LR 26.2(a). Indeed, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ DB has also now confirmed that it used an automated process to generate the disjointed entries in the "Description" column (Ex. 4), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ DB should be ordered to produce these documents. *See A.I.A.*

---

each document . . . thereby hampering the parties' ability to evaluate claims of privilege." Ex. 11 at 1. At a May 1, 2017 hearing, the Court similarly identified the lack of a column for "general subject matter" as an obvious deficiency in the exemplar metadata log that DB had provided. 5/1/17 Hearing Tr. at 33:7-11. RPI's repeated concerns with DB's methodology proved to be well founded, and after a review of DB's original logs RPI requested that DB amend its logs in a July 11, 2017 letter. Ex. 12. Despite RPI's repeated attempts to meet and confer on the issue, DB failed to respond, prompting RPI to file the Motion.

[5] In order to alleviate the burden of manually complying with the Local Rules, RPI does not challenge or seek additional information for communications authored by: (a) DB's Office of the General Counsel regarding document retention (2,336 entries); or (b) trial counsel at Morgan, Lewis & Bockius LLP and sent exclusively to DB.

1328226_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Barbara C. Moses
November 13, 2017
Page 4

*Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978 (LMM) (HB), 2002 WL 31385824, at *8 (S.D.N.Y. Oct. 18, 2002) (the "failure to list privileged documents on the required log of withheld documents in a timely and ***proper manner*** operates as a waiver of any applicable privilege") (emphasis added).

  **DB Has Failed to Timely Communicate with Regulators and Continues to Improperly Withhold Documents Under the Bank Examiner Privilege**. DB's amended log has reduced the number of documents it is withholding or redacting pursuant to the bank examiner privilege from 1,102 documents to 76 documents.[6] *See* Ex. 16. DB has yet to produce any of the 1,028 documents over which it no longer asserts this privilege, claiming that these documents are largely non-responsive. Ex. 1. Setting aside DB's delay in producing admittedly non-privileged documents, DB has no good cause to withhold or redact the documents remaining on its logs. First, RPI is aware of only *three* documents over which the OCC has made an assertion of privilege. Ex. 2. While DB has represented that OCC decided to assert the bank examiner privilege over the remaining documents, it has provided no written confirmation despite several requests. Exs. 6-7. Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ whereas the bank examiner privilege protects only "communications ***between banks and their examiners***." *See Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 281 (S.D.N.Y. 2013) (emphasis added). Finally, DB has failed to timely provide the documents in question to the appropriate regulators – instead waiting for months to provide the relevant documents to the OCC,[7] Fed and CFPB that it knew were subject to the Motion. Accordingly, DB should be ordered to produce all documents withheld or redacted under the bank examiner privilege, other than the three documents for which there is evidence that the OCC has decided to assert the privilege.

          Respectfully submitted,

          LUCAS F. OLTS

LFO:tdv
cc: All Counsel of Record (via ECF)

---

[6] Of those, 72 implicate the OCC, 3 implicate the Fed, and 1 implicates the CFPB.

[7] RPI notes that 12 CFR §4.37(b)(3)(i) required DB to "***[i]mmediately*** notify the Director of the OCC's Litigation Division at the Washington, DC office and inform the Director of all relevant facts, including the documents and information requested" by RPI's Motion back in August. (Emphasis added.) DB failed to do so.

1328226_1