UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

        Plaintiff,

-against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

        Defendant.

14-CV-04394 (AJN) (BCM)

ORDER



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/2/18

**BARBARA MOSES, United States Magistrate Judge.**

By letter-application dated September 7, 2017 (Dkt. No. 451), defendant Deutsche Bank National Trust Company (Deutsche Bank) seeks an order compelling plaintiff Royal Park Investments SA/NV (RPI) to produce:

(1)     Additional documents related to search terms that the parties negotiated, and that defendant agreed to narrow, based on what defendant now claims was erroneous hit report information provided by plaintiff;

(2)     Four specific documents that defendant believes to be in the possession of RPI's assignor BNP Paribas Fortis (BNPPF); and

(3)     All of the relevant and non-privileged documents in the files of six BNPPF custodians that "hit upon" a list of search terms as to which RPI has been unable to provide a fully deduplicated hit report.

Upon review of defendant's letter-application, plaintiff's opposition letter dated September 11, 2017 (Dkt. No. 456), and defendant's reply letter dated September 13, 2017 (Dkt. No. 465), the Court will GRANT the application in part and DENY it in part as follows.

1. **Production Related to Agreed Search Terms**

At a discovery hearing on June 8, 2017, the Court ordered RPI to provide a hit report for certain search terms, proposed by Deutsche Bank, related to an earlier document demand served by Deutsche Bank. *See* Def. Ltr. dated Sept. 7, 2017, Ex. 1 (Tr. of June 8, 2017 Hr'g) at 35:24-

37:18. The Court further instructed that if RPI identified any overbreadth concerns after running the hit report, the parties were to meet and confer regarding narrowing the scope of the search terms. *Id.* at 37:16-18; Order dated June 9, 2017 (Dkt. No. 393) at 2.

Plaintiff duly ran the hit report, which generated 24,268 documents (including document "family" members). Def. Ltr. dated Sept. 7, 2017, Ex. 2. Based on plaintiff's representation that the 24,268-document hit report *excluded* documents that had already been produced in the case, *see id.* Ex. 3, the parties compromised on narrower search terms, which resulted in a new hit report, run on June 14, 2017, showing only 5,772 documents (including document family members). *Id.* Ex. 4. Of the 5,772 documents returned by the modified search terms, RPI ultimately produced only 129 as "relevant" (that is, responsive to Deutsche Bank's document demands and within the scope of discovery permitted by the Court) and "non-privileged." Def. Ltr. dated Sept. 7, 2017, at 2; Pl. Ltr. dated Sept. 11, 2017, at 2.

Deutsche Bank now complains that it was misled. It says that RPI's counsel admitted, during an August 31, 2017 meet and confer, that plaintiff's hit reports *included* previously-produced documents, "and thus overstated the number of hits," inducing Deutsche Bank to narrow its search terms on false premises. Def. Ltr. dated Sept. 7, 2017, at 2; *see also id.* Ex. 6 (confirming email from Deutsche Bank). As a remedy, Deutsche Bank proposes that RPI now be ordered to produce *all* of the non-privileged documents returned by defendant's *original* set of search terms and not previously produced; that is, all 24,268 documents reflected on plaintiff's first hit report (excepting only those protected by privilege and those that were in fact previously produced).

RPI, for its part, reiterates that its June 14 hit report *excluded* previously-produced documents, and denies having represented "anything to the contrary." Pl. Ltr. dated Sept. 11, 2017, at 1. According to RPI, the reason it only produced 129 of the 5,772 documents reflected on that

hit report is that only those 129 were relevant and non-privileged, thus proving merely that Deutsche Bank's search terms, even after narrowing, remained "overbroad" and "marginally relevant." *Id.* at 2. In its reply letter, defendant expresses skepticism that only 129 documents could have been relevant and non-privileged, and reiterates its request to see all documents that "hit upon" (were returned by) the original list of search terms. Def. Ltr. dated Sept. 13, 2017, at 1.

On this record, the Court will not compel further production by RPI. There is no admissible evidence to support defendant's contention that either the 24,268-document hit report or the 5,772-document hit report *included* previously produced documents. Nor, for that matter, is there any admissible evidence to support defendant's unsworn assertion that plaintiff's counsel so admitted (which would have contradicted plaintiff's written representations) during the parties' meet and confer in August. Finally, nothing in the record now before the Court suggests that plaintiff has withheld responsive and non-privileged documents hit on by the modified search terms. The fact that the hit report returned 5,772 documents, of which only 129 were produced, would be suspicious only if defendant had an independent reason to expect a higher responsiveness rate. No such reason has been proffered. Consequently, this branch of defendant's application is DENIED.

### 2. Production of Four Specific Documents

Defendant seeks an order compelling RPI to obtain from BNPPF, and produce to it, four specific documents that Deutsche Bank believes to be responsive to its discovery demands, but which RPI does not have in its own files.

In approaching this branch of defendant's application, I begin by considering whether Deutsche Bank would have the right to compel production of the same documents if RPI had physical custody of them. *See* Memorandum and Order dated August 31, 2016 (the 8/31/16 Order) (Dkt. No. 261), at 17 ("Because RPI stands in the shoes of its assignors, it is required to produce documents from their files 'to the same extent that it is required to produce documents from its

own files.'") (quoting Memorandum and Order dated February 5, 2016 (Dkt. No. 104), at 12). This does not mean, however, that RPI is obligated to produce *every* potentially relevant document that may still reside in the files of BNPPF. Relevance "is a matter of degree," *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016), and while that standard is applied "liberally" before trial, *id.*, "discovery is not boundless." *Id.* at 17. The court must always consider whether the discovery sought is "proportional to the needs of the case," taking into account, among other things, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). If the documents would be "cumulative or duplicative" of other evidence, or if the party seeking to compel their production had "ample opportunity" to obtain them earlier, Fed. R. Civ. P. 26(b)(2)(C), relevance alone may not support an order compelling additional production.

### a. CDO-Related Documents

The first document at issue is a Confidential Engagement Letter dated August 3, 2006 (Letter) between Fortis Securities LLC (Fortis Securities) and Investec Bank (UK) Limited (Investec) regarding the "warehousing" of assets for the Clifton I Collateralized Debt Obligation (CDO), which was collateralized by three of the residential mortgage-backed securities (RMBS) certificates at issue in this action (Certificates). Although it is not entirely clear from the parties' letter-briefs, it appears that the Letter was executed before Fortis Securities purchased and "warehoused" those Certificates. In defendant's view, what makes the Letter discoverable is that it "defined Fortis's rights to sell or hedge its RMBS exposures *after* Fortis had purchased" the Certificates "but before the CDO closed," during which period Fortis "bore full risk" for the collateral. Def. Ltr. dated Sept. 7, 2017, at 3 (emphasis in the original). Therefore, defendant reasons, the Letter goes to RPI's duty to mitigate its alleged losses and is within the scope of my 8/31/16 Order, which permitted it, within certain temporal limitations, to "inquire into RPI's

decisions to buy, sell, and/or hold the RMBS at issue in this case, its analysis of the risks and benefits associated with the choices it made . . . and its efforts, if any, to hedge or insure its position." 8/31/16 Order, at 39 (internal quotations and citations omitted). Defendant adds that RPI has already produced comparable Confidential Engagement Letters for other relevant CDOs. Def. Ltr. dated Sept. 7, 2017, at 3.

The second document at issue is a Bond Warehousing Agreement between Fortis Securities and Fortis Investment Management USA, Inc. regarding another CDO, known as Orient Point III, which never closed. Four Certificates originally purchased for the Orient Point III CDO are now at issue in this action. Def. Ltr. dated Sept. 13, 2017, at 3; *id.* Ex. 13. Like the Confidential Engagement Letter discussed above, the Orient Point III Bond Warehousing Agreement is discoverable – according to Deutsche Bank – because it "defined Fortis's rights to sell or hedge its RMBS exposures *after* Fortis purchased" those RMBS Certificates. Def. Ltr. dated Sept. 7, 2017, at 3 (emphasis in the original). Defendant adds that RPI has already produced comparable Bond Warehousing Agreements for other relevant CDOs. *Id.*

RPI responds that Deutsche Bank already has the Bond Warehousing Agreement for the Clifton I CDO, and thus hardly requires the Letter, which preceded it, to understand Fortis Securities' "rights to sell or hedge" the RMBS Securities warehoused with respect to that CDO. Pl. Ltr. dated Sept. 11, 2017, at 3; *id.* Ex. 1. Further, according to RPI, Deutsche Bank moved to compel production of the Letter too late, given the Bond Warehousing Agreement (which referenced the Letter) was produced on April 28, 2016, *id.*, after which defendant tried (but failed) to obtain documents directly from Investec by subpoena. *See* Def. Ltr. dated Jan. 6, 2017 (Dkt. No. 319), at 1-2. As for the Orient Park III CDO, it is plaintiff's "understanding" that no Bond Warehousing Agreement exists, because Fortis Securities and Fortis Investment Management

5

USA, Inc., were affiliates. Pl. Ltr. dated Sept. 11, 2017, at 3. In reply, Deutsche Bank complains that RPI has no "evidence" that the document does not exist, and argues that RPI "should at least have BNPPF search for it." Def. Ltr. dated Sept. 13, 2017, at 3.

Once again, "Deutsche Bank misunderstands its burden on this application." Order dated Jan. 26, 2017 (Dkt. No. 324), at 5. "The party seeking an order to compel production of documents must make at least some showing that the documents it seeks exist." *Id.* (collecting cases). Since Deutsche Bank has offered no reason to believe that a Bond Warehousing Agreement exists for the Orient Park III CDO, it is not entitled to an order compelling RPI to produce it from BNPPF's files. As for the Clifton I CDO Confidential Engagement Letter, Deutsche Bank does not contend that it reflects any actual decision by Fortis Securities to "buy, sell, and/or hold the RMBS at issue in this case," 8/31/16 Order at 39; rather, the argument is that it contains information about Fortis Securities' "rights to sell or hedge its RMBS exposures" if and when it acquired any. Its relevance to the parties' claims in this action is thus somewhat attenuated. On balance, I will not require RPI to go back to BNPPF in an attempt to locate the Letter.[1]

### b. Delcuve Memo

The third document at issue is an October 9, 2006 memorandum from Sylviane Delcuve, in "Fortis's credit risk department" (the Delcuve Memo). Def. Ltr. dated Sept. 7, 2017, at 3. The Delcuve Memo is referenced in – but not attached to – an email exchange between Delcuve and Kuljot Singh, dated May 30-31, 2007, "cc'd" to (among others) Stefaan De Doncker, who worked for Fortis Ireland Group and is one of the six BNPPF document custodians previously designated

---

[1] I note in passing that neither party addresses whether the Letter (or any other document now at issue) fell within the temporal scope of my 8/31/16 Order, which generally prohibited discovery into matters that predate the purchase of the at-issue RMBS Certificates or that "predate, by more than six months, the earliest losses claimed by plaintiff to flow from the defendant's breach of contract or breach of trust." 8/31/16 Order at at 41.

in this action, meaning that RPI is obligated to search his email account and produce responsive documents found therein. *See* Discovery and Scheduling Order dated August 12, 2016 (the 8/12/16 Order) (Dkt. No. 253), at 2-3 (identifying BNPPF document custodians). Based on the content of the May 30-31 emails, Deutsche Bank believes that the memo expressed "Fortis's internal opinion regarding mezzanine RMBS," and notes that all of the RMBS at issue in this action are "mezzanine certificates," including five Certificates purchased prior to the date of the Delcuve Memo. Def. Ltr. dated Sept. 7, 2017, at 3-4. Deutsche Bank also points to deposition testimony from one of the other individuals "cc'd" on the May 30-31 emails, suggesting that the Delcuve Memo "reflected the Risk Department's limit on Fortis's ability to hold mezzanine RMBS." Def. Ltr dated Sept. 13, 2017, at 4. Thus, in defendant's view, the Delcuve Memo bears directly on decisions by RPI's assignor to "sell" or "hold" the RMBS at issue in this action, and should be produced.

I agree. RPI is correct that it would be unduly burdensome to add Singh and Delcuve as "custodians in this case" or to "load[ ] all their documents and index[ ] them" for search. Pl. Ltr. dated Sept. 11, 2017, at 3. But no such efforts should be required to locate a single memo already identified by date and author, particularly when the author still works at what is now BNPPF. *See* Def. Ltr dated Sept. 13, 2017, at 4; *id.* Ex. 20. RPI must produce the Delcuve Memo.

### c. *Committee Minutes*

The final document is the minutes of a March 22, 2007 meeting of the Fortis Merchant and Private Banking Risk Committee. RPI does not deny that the minutes are discoverable but points out that it has previously produced related documents, such as a memo written for the same meeting (entitled "US Housing Market Crisis Impact on Capital Market Group"), and argues that requiring it to produce the minutes themselves would be "not proportional to the needs of the case." Pl. Ltr. dated Sept. 11, 2017, at 4. In reply, defendant points out that the minutes were attached to

7

a March 30, 2007 email sent to De Doncker and two other BNPPF custodians. Def. Ltr. dated Sept. 13, 2017, at 4; *see also* Pl. Ltr. dated Sept. 11, 2017, Ex. 3. Since discoverability is conceded, and since BNPPF not only has the minutes but knows exactly where to find them, they must be produced. This branch of defendant's application is therefore GRANTED to the extent that RPI must produce the Delcuve Memo and the Committee Minutes.

### 3. Untethered Trust & CUSIP Search Terms

The parties have been sparring for many months concerning RPI's efforts to collect and produce documents from the files of the six BNPPF custodians first designated in my 8/12/16 Order.[2] In an Order dated August 11, 2017 (the 8/11/17 Order) (Dkt. No. 436), I directed plaintiff to use certain search terms to collect potentially discoverable documents. In addition, I directed plaintiff to produce a hit report with regard to a list of additional search terms proposed by defendant (the Trust & CUSIP Search Terms).[3] On August 18 and 28, 2017, plaintiff produced two separate hit reports with regard to the Trust & CUSIP Search Terms: the August 18 hit report was run across the documents of three BNPPF custodians located in New York, returning over

---

[2] Three of the BNPPF custodians were based in Brussels, Belgium. The documents that RPI has produced thus far from their files (Belgian Documents) are heavily redacted, because – RPI asserts – Belgian privacy law prohibits BNPPF from revealing personal information such as the names and business email addresses of the individuals who authored and received otherwise-relevant and discoverable emails. On December 29, 2017, I issued a Memorandum and Order (the 12/29/17 Order) granting Deutsche Bank's application to compel the production of unredacted Belgian Documents. (Dkt. No. 524.) On January 19, 2018, RPI objected to the 12/29/17 Order pursuant to Fed. R. Civ. P. 72(a). (Dkt. No. 531.) RPI's objections are not yet fully briefed.

[3] The Trust & CUSIP Search Terms include (a) 19 search strings designed to "hit on" references to the RMBS trusts at issue in this action, and (b) 182 single-term searches corresponding to the 9-digit alphanumeric serial numbers (CUSIPs) used by the Committee of Uniform Security Identification Procedures to identify the securities at issue in this action. The Trust & CUSIP Search Terms are "untethered," meaning that the search will retrieve every document in the relevant database containing one or more of the 19 trust search strings, or one or more of the 182 CUSIPs, without requiring the presence of any additional, limiting or modifying terms. (*See* Dkt. No. 433, Ex. C.)

8

56,000 "total estimated documents" (including both emails and attachments that would have to be reviewed for production if RPI collected all of the documents that hit on the search terms), while the August 28 hit report was run across the documents of the three Belgian custodians, resulting in 4,071 total estimated documents. Def. Ltr. dated Sept. 7, 2017, at 4; *id.* Exs. 9, 10.

RPI acknowledges that both hit reports are imperfect. Due to the complexity of the search terms and the limitations of BNPPF's search capabilities, neither hit report was "deduplicated" against the documents previously produced in this litigation. Def. Ltr. dated Sept. 7, 2017, Ex. 9, at 1-2; *see also id.* Ex. 10, at 6-7 (explaining that the "deduplication process" used by BNPPF in Brussels was "largely manual," such that full deduplication "would require significant resources" and still might not be accurate). As a result, the figures for "total estimated documents" are inflated, in that they *include* documents that were previously collected in response to earlier searches. According to RPI, deduplicating the documents that hit on the Trust & CUSIP Search Terms against documents already produced "is impossible and will require a deduplication process after the documents have been collected." Pl. Ltr. dated Sept. 11, 2017, at 4. In addition, the New York hit report did not deduplicate the 19 trust search strings against each other, further inflating the reported totals. The 182 CUSIP search terms were deduplicated against each other, but RPI reported that it was unable to produce individual document counts for each of the 182 terms. Def. Ltr. dated Sept. 7, 2017, Ex. 9, at 1-2.

RPI suggested that the parties "meet and confer on revised search terms that can be run by BNPPF." Def. Ltr. dated Sept. 7, 2017, Ex. 9, at 2. It believes that, after manual deduplication, the Trust & CUSIP Search Terms would return few, if any, discoverable documents not previously produced, and argues that it should not be required to undertake a laborious manual deduplication process, after collection, in order to determine just how few. Pl. Ltr. dated Sept. 11, 2017, at 4.

Deutsche Bank, however, seeks an order requiring RPI to "run" the Trust & CUSIP Search Terms; that is to collect *all* of the documents reflected by both hit reports for review and (if relevant, non-privileged, and non-duplicative) production. *Id.* at 4; *see also* Def. Ltr. dated Sept. 13, 2017, at 2.

Deutsche Bank's proposal is too harsh. My 8/11/17 Order did not direct RPI to *collect, review, and produce* all of the documents returned by the Trust & CUSIP Search Terms, but merely to produce a hit report, so that the parties could better assess the value (to defendant) and burden (to plaintiff) of taking the next steps. RPI's inability to produce a hit report that is sufficiently accurate and detailed to permit such an assessment (which Deutsche Bank does not challenge as a factual matter) does not automatically render those next steps appropriate from a proportionality standpoint. RPI's position, however, is equally untenable. The Court cannot conclude – essentially on RPI's say-so – that the Trust and CUSIP Search Terms will not return any relevant documents not previously produced.

Consequently, this branch of defendant's application is GRANTED IN PART, to the extent that:

1. RPI shall run the Trust & CUSIP Search Terms for the Belgian custodians and produce all relevant and non-privileged documents returned thereby. The documents shall be produced on or before **March 2, 2018**. RPI is reminded that the documents may not be redacted for privacy. RPI may – but is not obligated to – deduplicate the newly-collected documents against documents previously produced.

2. With respect to the New York custodians, Deutsche Bank may select a single trust search string as a test case, whereupon RPI shall run that search string for the New York custodians. Within 30 days after receiving Deutsche Bank's selection, RPI shall produce all relevant and non-privileged documents returned thereby. RPI may – but is not obligated to – deduplicate the newly-collected documents against documents previously produced.

3. If after receiving the results of these searches (and after meeting and conferring in good faith with RPI), Deutsche Bank continues to believe that the Court should order RPI to run the remainder of the Trust & CUSIP Search Terms for the New York custodians, it may renew its application, but must demonstrate, with specificity: (a) why it believes that additional responsive documents are likely to be identified thereby; (b) why the value of the additional discovery outweighs the costs and burden to RPI; and (c) why

it should not bear all or a portion of those costs. Any such application must be made within 14 days after Deutsche Bank receives the results of the test search described in paragraph 2 above.

The Court notes that the parties' letters underlying this Order were all heavily redacted, as were the attached exhibits, before they were filed on the public docket. Among other things, the parties redacted the names and descriptions of the four specific documents discussed above – as well as all of their arguments for and against production of those documents – notwithstanding that such information (even when submitted in connection with a discovery motion) could not possibly qualify for sealing under *Lugosh v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-21 (2d Cir. 2006), and its progeny.

In accordance with my Order dated September 15, 2017 (Dkt. No. 473), the parties must now meet and confer with regard to those letters and exhibits, and advise the Court by letter, no later than **February 16, 2017**, whether they will refile their papers in unredacted form. If not, they must specifically request a sealing order as to each affected document in compliance with Part II(I) of my Individual Practices.

Dated: New York, New York
February 2, 2018

SO ORDERED.

BARBARA MOSES
United States Magistrate Judge

11