UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | | |
|---|---|---|
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | : : : | No. 14-cv-04394-AJN-BCM |
| Plaintiff, | : : | |
| v. | : : | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, | : : : | |
| Defendant. | : | |

-------------------------------------------------------------X

## MEMORANDUM OF LAW OF
## DEUTSCHE BANK NATIONAL TRUST COMPANY,
## AS TRUSTEE, IN OPPOSITION TO THE FRCP 72(a) OBJECTIONS AND
## MOTION TO VACATE OF PLAINTIFF ROYAL PARK INVESTMENTS SA/NV

Bernard J. Garbutt III, Esq.
Nathan T. Shapiro, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
bernard.garbutt@morganlewis.com
nathan.shapiro@morganlewis.com

Attorneys for Defendant
Deutsche Bank National Trust Company, as Trustee

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT BACKGROUND ................................................................................ 3

    A.    RPI Failed To Adequately Collect Documents From Fortis Bank (Now BNPPF) Upon RPI's Creation ............................................................... 3

    B.    M.J. Moses Has Repeatedly Held That BNPPF's Documents Are Relevant ....... 4

    C.    For The BNPPF Custodians, RPI Produced Only Relevant Documents, Yielded By Narrow Search Terms Ordered By M.J. Moses, Which Documents Were Then Reviewed By BNPPF's Own Counsel For Relevance .................................................................................................... 5

    D.    The Trustee's Motion To Compel And M.J. Moses's 12/29/17 Order................. 6

LEGAL STANDARDS ON THESE FRCP 72(A) OBJECTIONS ............................................. 7

ARGUMENT ................................................................................................. 8

I.    M.J. MOSES'S COMITY ANALYSIS WAS CORRECT, AND THUS *CANNOT* BE CLEARLY ERRONEOUS OR CONTRARY TO LAW ........................................... 8

    A.    The Belgian Documents Are Relevant Under The Law Of The Case, And They Are The *Only* Documents RPI Produced For The Belgian Custodians........ 9

    B.    The 12/29/17 Order Is Sufficiently Specific Because The Documents At Issue Have Already Been Identified And Collected ........................................... 10

    C.    Although The Belgian Documents Are Located In Belgium, Many Of The Communications Originated In The United States ............................................. 11

    D.    RPI Concedes That There Is No Alternative Method Available To The Trustee To Secure The Unredacted Belgian Documents.................................... 11

    E.    The U.S.'s Interests In Fair Adjudication And Preventing Unfair Discovery Disadvantages Outweighs Any Belgian Privacy Interest................... 11

    F.    Producing The Unredacted Belgian Documents Would Impose No Hardship Whatsoever *On RPI*................................................................. 13

    G.    RPI, The "Resisting Party," Has Not Acted In Good Faith By Failing To Comply With Its Ordinary Party Discovery Obligations Under *Winnick* ............ 15

II.    M.J. MOSES CORRECTLY FOUND THAT ARTICLES 5 AND 22 OF THE DPA PERMITTED PRODUCTION OF THE BELGIAN DOCUMENTS IN THE U.S., RPI PRODUCED ITS OWN DOCUMENTS FROM BELGIUM WITHOUT REDACTIONS, AND, GIVEN THAT BNPPF'S DOCUMENTS ARE RPI'S OWN DOCUMENTS, THE BELGIAN DOCUMENTS MUST ALSO BE PRODUCED WITHOUT REDACTIONS .................................................... 17

III.    RPI'S *NEW* ARGUMENT THAT ART. 22'S LITIGATION EXCEPTION ONLY APPLIES WHEN THE LITIGATION IS IN EUROPE WAS WAIVED, AND ALSO HAS NO BASIS UNDER CURRENT BELGIAN LAW ......................... 19

## <u>TABLE OF CONTENTS</u>
(continued)

**<u>Page</u>**

IV.    RPI'S ARGUMENTS UNDER ARTICLE 4 OF THE DPA ALL FAIL........................ 20

    A.    M.J. Moses Actually Did Consider The Article 4 Arguments By RPI's Expert Mr. Kairis; She Simply Rejected Them, Which Was Within Her Discretion ........................................................................................................ 21

    B.    In Any Event, The Submission Of The Kairis Decl. Was Improper In The First Instance, And The Trustee Never Got An Opportunity To Respond .......... 21

    C.    RPI's Arguments Under The Purpose Compatibility Standard Of Article 4 Are Unsupported By Facts And Are Contrary To Belgian Law.......................... 23

CONCLUSION............................................................................................................... 25

**TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

<u>Alpex Computer Corp. v. Nintendo Co.,</u>
1992 WL 51534 (S.D.N.Y. Mar. 10, 1992) ...........................................................7, 8

<u>Anwar v. Fairfield Greenwich Ltd.,</u>
982 F. Supp. 2d 260 (S.D.N.Y. 2013)..........................................................................8

<u>British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.,</u>
2000 WL 713057 (S.D.N.Y. June 2, 2000) .......................................................11, 21

<u>Capitol Records, LLC v. Escape Media Grp., Inc.,</u>
2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ............................................................7

<u>Gucci Am., Inc. v. Weixing Li,</u>
768 F.3d 122 (2d Cir. 2014)........................................................................................8

<u>Hewitt v. Metro-N. Commuter R.R.,</u>
2017 WL 1155068 (S.D.N.Y. Mar. 24, 2017) ............................................................7

<u>JPMorgan Chase Bank v. Winnick,</u>
228 F.R.D. 505 (S.D.N.Y. 2005) ....................................................................... passim

<u>Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,</u>
313 F.3d 70 (2d Cir. 2002)..........................................................................................8

<u>Khatabi v. Bonura,</u>
2016 WL 8838889 (S.D.N.Y. Apr. 21, 2016)...........................................................20

<u>Kriss v. Bayrock Grp., LLC,</u>
2016 WL 406375 (S.D.N.Y. Feb. 1, 2016).................................................................8

<u>Laydon v. Mizuho Bank, Ltd.,</u>
183 F. Supp. 3d 409, 419-20 (S.D.N.Y. 2016) .............................................. passim

<u>Leibovitch v. Islamic Republic of Iran,</u>
188 F. Supp. 3d 734 (N.D. Ill. 2016) .......................................................................12

<u>Minipeco, S.A. v. ContiCommodity Servs. Inc.,</u>
116 F.R.D. 517 (S.D.N.Y. 1987) ..............................................................................12

<u>Old Ladder Litig. Co. v. Investcorp Bank B.S.C.,</u>
2008 WL 2224292 (S.D.N.Y. May 29, 2008) ..........................................................21

In re Payment Card Interchange Fee and Merchant Discount Litig.,
    2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010)............................................................12

Perkins v. Chelsea Piers Mgmt.,
    2012 WL 4832814 (S.D.N.Y. Oct. 10, 2012) ......................................................9, 11

Pershing Pacific West LLC v. MarineMax, Inc.,
    2013 WL 941617 (S.D. Cal. Mar. 11, 2013) ............................................................10

Philips v. Ford Motor Co.,
    2016 WL 8505624 (N.D. Cal. June 10, 2016) ..........................................................10

Reino De Espana v. Am. Bureau of Shipping,
    2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005)................................................9, 11, 15

Reino De Espana v. Am. Bureau of Shipping,
    2006 WL 2239641 (S.D.N.Y. Aug. 4, 2006)..............................................................7

Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat,
    902 F.2d 1275 (7th Cir. 1990) ..................................................................................12

Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.,
    No. 14-cv-8175-LGS-SN (S.D.N.Y.) .............................................................. passim

Royal Park Invs. SA/NV v. U.S. Bank N.A.,
    No. 14-cv-2590 (S.D.N.Y.)........................................................................................17

S.A. v. ContiCommodity Servs. Inc.,
    116 F.R.D. 517 (S.D.N.Y. 1987) ..............................................................................12

S.E.C. v. Gibraltar Glob. Sec., Inc.,
    2015 WL 1514746 (S.D.N.Y. Apr. 1, 2015)..............................................................11

Schiller v. City of N.Y.,
    2009 WL 497580 (S.D.N.Y. Feb. 27, 2009)..............................................................6

Strauss v. Credit Lyonnais, S.A.,
    242 F.R.D. 199 (E.D.N.Y. 2007)................................................................................9

Zervos v. Verizon New York, Inc.,
    252 F.3d 163 (2d Cir. 2001)......................................................................................7

**Statutes**

Belgian Data Protection Act ................................................................................ passim

**Other Authorities**

FRCP 72............................................................................................................... passim

## PRELIMINARY STATEMENT

Defendant Deutsche Bank National Trust Company, as trustee (the "Trustee"), submits this memorandum of law in opposition to the FRCP 72 objections and motion to vacate (the "Objections") of Plaintiff Royal Park Investments SA/NV ("Plaintiff" or "RPI").[1]

Magistrate Judge Moses's December 29, 2017 order (Dkt.# 524, the "12/29/17 Order") is correct in every respect and should not be overruled.  Every judge in this District that has considered the issues raised by RPI's Objections (i.e., Judges Schofield, Netburn, and Moses) has ruled that RPI must produce the "Belgian Documents"—everyday business emails that are all approximately nine years or more old—without redacting the names and email addresses.[2]  Indeed, just days ago, Judge Schofield ruled that:

> [RPI] cannot meet its Winnick obligation by producing heavily redacted documents that shield key facts from discovery.  Instead, [RPI] is obligated to make useable productions that disclose relevant facts.  This reasoning is convincing and not clearly erroneous.
>
> ***
>
> Judge Netburn found … that the comity analysis weighs in favor of compelling [RPI] to produce the BNP documents unredacted, with custodial information restored.  The decision whether to grant comity is "within the court's discretion" and is reviewed only for abuse of discretion.  …  Judge Netburn['s] … analysis is well-reasoned, supports the directive to compel production, and is well within the range of permissible decisions.

Schofield 2/6/18 Order, at 3 & 4.

For the reasons in these three decisions, and the reasons below, RPI's Objections should be overruled.  RPI's Objections essentially rest upon two arguments, each of which fails.  **First**,

---

[1]    References to "RPI's Memo" are to the "Memorandum of Law in Support of Plaintiff Royal Park Investments SA/NV's Rule 72 Objections and Motion to Vacate the Magistrate Judge's Opinion and Order Concerning Disclosure of Personal Data from Documents Located in Belgium," dated January 19, 2018, Dkt.# 532.  Unless otherwise stated, all emphasis is added and all citations and quotations are omitted.  References to "Exh. __" are to the exhibits to the "Declaration of Bernard J. Garbutt III," dated February 9, 2018.

[2]    "Opinion and Order," dated February 6, 2018, Dkt.# 455, in Royal Park Invs. SA/NV v. HSBC Bank USA, N.A., No. 14-cv-8175-LGS-SN (S.D.N.Y.) ("RPI/HSBC") (the "Schofield 2/6/18 Order"); "Order," dated July 24, 2017, Dkt.# 392, in RPI/HSBC, reconsideration denied, RPI/HSBC, Dkt.# 403 (Netburn, J.).

RPI argues that Magistrate Judge Moses ("M.J. Moses") "conducted an inadequate comity analysis" because she concluded that the interests of the U.S. and the Court in the application of their own discovery rules outweigh any privacy interests of Belgium. RPI's Memo, at 1.

**Second**, RPI argues that M.J. Moses "erred by concluding that U.S. law and Belgian law are not in true conflict" because: (i) she "provide[d] no analysis or consideration whatsoever as to Article 4 of the" Belgian Data Protection Act (the "DPA"); and (ii) the litigation exception under Article 22 of the DPA does not apply to litigation outside the E.U. RPI's Memo, at 1 & 8-10.

RPI is wrong on both counts. As an initial matter, because the 12/29/17 Order is non-dispositive, M.J. Moses's thoughtful rulings are entitled to substantial deference and cannot be set aside unless they are "clearly erroneous" or "contrary to law." FRCP 72(a). Not only are M.J. Moses's rulings neither clearly erroneous nor contrary to law, they are <u>correct</u>.

**First**, assuming <u>arguendo</u> there is a conflict between U.S. and Belgian law (there is <u>not</u>), M.J. Moses carefully considered all seven international comity factors and correctly concluded that comity does not require the Court to subvert the interests of the U.S. and the Court in the application of their own discovery rules to accommodate any privacy interests of Belgium. This comity analysis is reviewable only for abuse of discretion. As an aside, RPI's purported fear that it or its alleged assignor here, BNP Paribas Fortis ("BNPPF," whose parent (BNP Paribas) is itself a shareholder of RPI) will be fined by Belgium for transferring documents out of Belgium is a red herring. Belgium owns 44% of RPI. The notion that Belgium would fine its own company or a subsidiary of another RPI shareholder is not only speculative, it is illogical.

**Second**, M.J. Moses correctly held under Articles 5 and 22 of the DPA that Belgian law permits the transfer of the Belgian Documents to the U.S. for production in this case. RPI, a Belgian company, produced, from Belgium, its own documents in this case without privacy

2

redactions, thereby conceding it was permissible under Belgian law for RPI to do so.  Under
JPMorgan Chase Bank v. Winnick, 228 F.R.D. 505 (S.D.N.Y. 2005) (Lynch, J.), RPI must
produce BNPPF's documents "to the same extent it is required to produce documents from its
own files pursuant to [FRCP] 34."[3]  M.J. Moses repeatedly held that, for purposes of discovery
herein, BNPPF's documents are RPI's documents.  Given that BNPPF's documents are RPI's
documents, RPI should produce the unredacted Belgian Documents.  As Judge Schofield ruled,
"[RPI] cannot meet its Winnick obligation by producing heavily redacted documents that shield
key facts from discovery."  Schofield 2/6/18 Order, at 3.  Under Winnick, these discovery
obligations are RPI's, not BNPPF's, and thus considerations particular to BNPPF are irrelevant.

**Third**, RPI did not argue before M.J. Moses that Article 22 of the DPA, which permits a
party in Belgium to transfer documents to the U.S. under a litigation exception, does not apply
here because this litigation is outside the E.U.  Accordingly, RPI waived that argument.  In any
event, the argument has no basis under Belgian law.

**Fourth**, M.J. Moses did consider the arguments contained within RPI's belated, second
expert report, which argued, under Article 4 of the DPA, that transferring the Belgian Documents
without first redacting names and email addresses is incompatible with BNPPF's purposes for
collecting and retaining the data in the first place.  She simply rejected them.  In any event, RPI's
arguments under Article 4 are unsupported by any facts and are contrary to Belgian law.

## RELEVANT BACKGROUND

A.      **RPI Failed To Adequately Collect
Documents From Fortis Bank (Now BNPPF) Upon RPI's Creation**

RPI is a limited liability company incorporated and headquartered in Belgium.  Comp.,

---

[3]        "Discovery and Scheduling Order," dated August 12, 2016, Dkt.# 253 (the "8/12/16 Order"), at 1-2; see
also 12/29/17 Order, at 3 (quoting "Memorandum and Order," dated February 5, 2016, Dkt.# 104 (the "2/5/16
Order"), at 12); "Memorandum and Order," dated August 31, 2016, Dkt.# 261 (the "8/31/16 Order"), at 18.

¶ 30.  In 2008, Belgium brokered a bailout of Fortis Holding.  2/5/16 Order, at 1-2.  In the

bailout, BNP Paribas agreed to acquire Fortis Bank and its affiliates (subsidiaries of Fortis

Holding) on the condition that Fortis Bank create a "special purpose vehicle" (i.e., RPI) and

transfer to it a portfolio of assets that BNP Paribas did not want on its books.  See id.  RPI is

owned by three shareholders:  Belgium (44.53%); Fortis Holding (44.71%, since renamed

"Ageas"); and BNP Paribas (11.76%).  2/5/16 Order, at 2.

On May 12, 2009, RPI executed a "Portfolio Transfer Agreement" (the "PTA"), under

which RPI was allegedly assigned an interest in all of the RMBS certificates at issue here (the

"Certificates") from Fortis Bank and its affiliates (now BNPPF).  Dkt.# 308-15.  At the time, RPI

took some documents relating to the Certificates from Fortis Bank.  But RPI left behind many

others, even though "RPI contemplated the present litigation—or litigation very much like it—as

early as 2009."  8/31/16 Order, at 7-8 & 21.  Those documents remain at BNPPF today.

RPI has known since before it filed this case that, as an alleged assignee of BNPPF, RPI

must comply with Winnick and its progeny, and produce documents from BNPPF.  Indeed, in

2012, RPI even sued BNPPF to obtain documents.  8/31/16 Order, at 9-12.  But RPI settled that

lawsuit and signed a settlement agreement under which RPI waived its contractual right under

the PTA to obtain additional documents from BNPPF.  8/31/16 Order, at 11-12 & 16.

### B.    M.J. Moses Has Repeatedly Held That BNPPF's Documents Are Relevant

RPI argues that the BNPPF documents are irrelevant.  RPI's Memo, at 1-4, & 12.  Yet,

the parties already litigated the relevance of the BNPPF documents, and, since 2016, M.J. Moses

has repeatedly held that the BNPPF documents at issue are relevant.  On February 5, 2016, M.J.

Moses ordered RPI to "produce otherwise-discoverable documents and things (including

electronically stored information) held by [BNPPF] to the same extent that it is required to

produce documents from its own files."  2/5/16 Order, at 12.  On April 29, 2016, the Trustee

4

filed a motion to compel RPI to produce documents from certain BNPPF custodians.  Dkt.# 126.

Also on April 29, 2016, RPI filed a motion for a protective order, arguing, inter alia, that BNPPF

did not have any relevant documents.  Dkt.# 130.  On August 12, 2016, M.J. Moses:  (1) ordered

RPI to produce documents from six BNPPF custodians (the "BNPPF Custodians"), including

three based in Belgium;[4] and (2) found that many categories of BNPPF's documents are relevant.

Dkt.## 253 & 268.  In M.J. Moses's 8/31/16 Order, she described relevant BNPPF documents,

and ordered RPI to produce them.  8/31/16 Order, at 18, 37, & 39.

RPI did not file FRCP 72 objections to any of M.J. Moses's relevance orders.  Thus,

those orders are the law of the case, and RPI cannot attempt to re-litigate this issue now.

### C.    For The BNPPF Custodians, RPI Produced Only Relevant Documents, Yielded By Narrow Search Terms Ordered By M.J. Moses, Which Documents Were Then Reviewed By BNPPF's Own Counsel For Relevance

After M.J. Moses held that BNPPF had relevant documents, and that RPI must produce

documents from BNPPF as RPI's own documents, the parties litigated over the methodology for

identifying those documents.  Initially, RPI on its own collected only documents that contained

the names of the RMBS trusts or CDOs at issue, or the CUSIPs for the RMBS at issue.  See

Dkt.## 386-3, 386-4, & 386-5.  On June 9, 2017, M.J. Moses held that this collection omitted

relevant documents.  Dkt.# 393, ¶ 3.  On August 11, 2017, M.J. Moses ordered RPI to use certain

specific, additional search terms to collect relevant documents for the BNPPF Custodians.  Dkt.#

436.  RPI did not object to either of those orders.  BNPPF's counsel reviewed BNPPF documents

for relevance before redacting and transferring the documents to RPI.  See, e.g., Dkt.# 386-6, ¶ 5.

Thus, the Belgian Documents all contain the name of a trust, CDO, and/or CUSIP at issue, or

one of the search terms M.J. Moses ordered, and were deemed relevant by BNPPF's counsel.

---

[4]    The three Belgian BNPPF Custodians are referred to as the "Belgian Custodians."  The documents that RPI produced for the Belgian Custodians—the subject of this motion—are referred to as the "Belgian Documents."

### D.     The Trustee's Motion To Compel And M.J. Moses's 12/29/17 Order

RPI produced some documents for the Belgian Custodians, but names and email addresses were redacted (the "Redactions").  The metadata for the Belgian Documents listed "Central Files" as the ESI custodian (rather than names).  On July 7, 2017, the Trustee moved to compel RPI to produce the Belgian Documents without Redactions, RPI opposed, and the parties submitted letter briefs and expert declarations.  Dkt.## 410, 417, 420, 426, 437, & 444.

On December 29, 2017, M.J. Moses granted the Trustee's motion.  12/29/17 Order, Dkt.# 524.  In the 12/29/17 Order, M.J. Moses held that:  (1) the DPA does not prohibit BNPPF from transferring to RPI the unredacted Belgian Documents (id., at 9-18); and (2) even if the DPA did prohibit such a transfer, under a thorough comity analysis, "RPI must produce the Belgian Documents without 'privacy' redactions."  Id., at 18-22.  As to the DPA, M.J. Moses held that the DPA permits BNPPF to transfer the unredacted Belgian Documents to the U.S. because:  (1) under Article 5(f) of the DPA, "the [transfer] at issue here is necessary for the promotion of the legitimate interests of the controller or the third party to whom the data is disclosed, and those interests are not overridden by the interests or fundamental rights and freedoms of the individuals whose names and email addresses have been redacted by BNPPF" (id., at 16);[5] and (2) under Article 22 of the DPA, the transfer of the unredacted Belgian Documents to the U.S. was permitted because the transfer was "necessary or legally required … for the establishment, exercise or defence of legal claims" (the "DPA Litigation Exception").  Id., at 17.

As to international comity, M.J. Moses fully analyzed all seven factors of the balancing test and concluded that comity does "not change [the] conclusion that RPI must produce the Belgian Documents without 'privacy' redactions."  Id., at 18; see also id., at 18-22.

---

[5]     RPI does not object herein to M.J. Moses's rulings under Article 5.  Thus, M.J. Moses's conclusions under Article 5 remain undisturbed.  Schiller v. City of N.Y., 2009 WL 497580, *3 n.7 (S.D.N.Y. Feb. 27, 2009).

The 12/29/17 Order gave RPI a deadline of January 31, 2018 to comply with that order. In connection with RPI's contemplated objections, on January 12, 2018, M.J. Moses reminded RPI that FRCP 72 objections do not stay RPI's obligation to comply with that order.  Dkt.# 528. On January 29, 2018, RPI filed a motion seeking a stay of the deadline to comply with the 12/29/17 Order.  Dkt.# 539.  For the reasons briefed by the parties (Dkt.## 539 & 541), M.J. Moses <u>denied</u> the stay.  Dkt.# 543.  Thus, RPI is currently in violation of the 12/29/17 Order.

## <u>LEGAL STANDARDS ON THESE FRCP 72(a) OBJECTIONS</u>

A district court "may only 'modify or set aside' [a] magistrate judge's [non-dispositive] order if it is "clearly erroneous or is contrary to law."  <u>Hewitt v. Metro-N. Commuter R.R.</u>, 2017 WL 1155068, *2 (S.D.N.Y. Mar. 24, 2017) (Nathan, J.); FRCP 72(a).  "Under this highly deferential standard, magistrate judges are afforded broad discretion," and "reversal is appropriate only if their discretion is abused."  Schofield 2/6/18 Order, at 2; <u>see</u> <u>also</u> <u>Reino De Espana v. Am. Bureau of Shipping</u>, 2006 WL 2239641, *2 (S.D.N.Y. Aug. 4, 2006).[6]

Even though the 12/29/17 Order is non-dispositive, RPI argues "there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."  RPI's Memo, at 5.  But, the two standards are distinct, with the "contrary to law" standard affording more deference.  <u>Capitol Records, LLC v. Escape Media Grp., Inc.</u>, 2015 WL 1402049, *2-3 (S.D.N.Y. Mar. 25, 2015) (Nathan, J.); <u>Alpex Computer Corp. v. Nintendo Co.</u>, 1992 WL 51534, *1 (S.D.N.Y. Mar. 10, 1992).

RPI argues that all of M.J. Moses's rulings should be reviewed <u>de novo</u> because they all pertain to foreign law.  RPI's Memo, at 5.  That is factually incorrect, because M.J. Moses's

---

[6]       "A court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." Schofield 2/6/18 Order, at 2-3 (quoting <u>Zervos v. Verizon New York, Inc.</u>, 252 F.3d 163, 169 (2d Cir. 2001)).

comity analysis is a question of U.S. law, and, as explained below, is reviewed only for abuse of

discretion. Even as to foreign law, courts have <u>directly rejected</u> RPI's argument (<u>Alpex</u>, 1992

WL 51534, *1),[7] and routinely review such rulings only for clear error.[8]

## ARGUMENT

RPI has the burden to show that M.J. Moses abused her discretion, and that the 12/29/17

Order was clearly erroneous or contrary to law. RPI cannot meet this burden.

## I.   M.J. MOSES'S COMITY ANALYSIS WAS CORRECT, AND THUS *CANNOT* BE CLEARLY ERRONEOUS OR CONTRARY TO LAW

Assuming <u>arguendo</u> there is a conflict between U.S. and Belgian law (there is <u>not</u>), M.J.

Moses carefully considered all seven comity factors and correctly concluded that comity does

not require the Court to subvert the interests of the U.S. and the Court in the application of their

own discovery rules to accommodate any privacy interests of Belgium. As Judge Schofield held,

"[g]iven [RPI's] obligation under U.S. law to produce these documents in unredacted form, the

relevant question is whether considerations of international comity relieve [RPI] of its obligation

in light of the purportedly conflicting [DPA]." Schofield 2/6/18 Order, at 3. Judge Schofield

held they did not. <u>Id.</u> For the reasons below, this Court should reach the same result.

"The decision whether to grant comity is within the court's discretion and is reviewed

only for abuse of discretion." Schofield 2/6/18 Order, at 4 (quoting <u>Gucci Am., Inc. v. Weixing</u>

---

[7]        "Because the … determination of Japanese law is treated as a ruling on a question of law, Nintendo argues that this court's review of the Magistrate Judge's decision as to whether a privilege exists for Japanese patent agents is 'plenary.' Such a conclusion is mistaken, however. … In nondispositive matters a district court shall reverse a Magistrate Judge's findings if they are 'clearly erroneous or contrary to law.'" <u>Alpex</u>, 1992 WL 51534, *1.

[8]        <u>See</u>, <u>e.g.</u>, <u>Anwar v. Fairfield Greenwich Ltd.</u>, 982 F. Supp. 2d 260, 266 (S.D.N.Y. 2013). Both cases cited by RPI (RPI's Memo, p. 5) are inapposite. In <u>Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 313 F.3d 70 (2d Cir. 2002), the court reviewed a district court's decision regarding whether New York or Indonesian law applied, not a magistrate judge's non-dispositive discovery order. In <u>Kriss v. Bayrock Grp., LLC</u>, 2016 WL 406375, *1 (S.D.N.Y. Feb. 1, 2016), which is entirely unrelated to foreign law, the court reviewed portions of a magistrate judge's order <u>de novo</u> "in the fullness of caution" because those portions of the order "could [have] affect[ed] the Movants' ability to file and maintain other litigation" and the "Movants raise[d] First Amendment concerns which require heightened review."

Li, 768 F.3d 122, 141 (2d Cir. 2014)).  Courts analyze the following seven factors:  (1) the importance of the documents requested; (2) the degree of specificity of the request; (3) whether the documents originated in the U.S.; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the U.S., or compliance with the request would undermine the important interests of the state where the information is located; (6) the hardship of compliance on the party from whom discovery is sought; and (7) the good faith of the party resisting discovery.  Laydon v. Mizuho Bank, Ltd., 183 F. Supp. 3d 409, 419-20 (S.D.N.Y. 2016).

### A.    The Belgian Documents Are Relevant Under The Law Of The Case, And They Are The *Only* Documents RPI Produced For The Belgian Custodians

In a comity analysis, "the Court need only consider the relevancy of the requested documents.  The Court does not need to find … that the requested documents are 'vital' to a proper defense of this action."  Reino De Espana v. Am. Bureau of Shipping, 2005 WL 1813017, *7 (S.D.N.Y. Aug. 1, 2005).[9]  Given M.J. Moses's prior relevance rulings (supra, pp. 4-5), RPI's relevance arguments (RPI's Memo, at 1-4, & 12) are offensive.

**First**, M.J. Moses already held the BNPPF documents are relevant.  8/31/16 Order. **Second**, then, M.J. Moses ordered RPI to use particular search terms to identify relevant documents for the BNPPF Custodians.  Dkt.# 436.  **Third**, BNPPF's counsel performed a relevance review of the Belgian Documents before producing them.  Dkt.# 386-6; see also 12/29/17 Order, at 14, n.13 ("the Belgian Documents have already been screened for litigation relevance.") & 19 (the Belgian Documents "are relevant").[10]

---

[9]    Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199 (E.D.N.Y. 2007) (RPI's Memo, at 12), is unpersuasive; that court granted a motion to compel after a comity analysis, despite an objection under French law.

[10]    Perkins v. Chelsea Piers Mgmt., 2012 WL 4832814, *1 (S.D.N.Y. Oct. 10, 2012) (RPI's Memo, at 12) is inapposite.  That court denied a motion to compel because the movant failed to explain why the documents sought

(Continued note)

Moreover, the redacted information (names) is also relevant, and renders the documents unusable. See, e.g., Exh. 2. Contrary to RPI's argument, M.J. Moses did consider this, noting:  (i) that certain of the emails "lack[] any intelligible content;" (ii) "the extent to which the redactions have rendered the emails, in some cases, wholly unintelligible;" and (ii) that documents "will have no value at all unless the redactions are removed."  12/29/17 Order, at 5, n.3 & 14 n.13. Judge Schofield reached the same conclusion, finding it "convincing" that the name redactions "shield key facts from discovery," and that providing unredacted documents would make the productions "useable" and would "disclose relevant facts."  Schofield 2/6/18 Order, at 3.

Thus, this factor supports overruling RPI's Objections.

### B.    The 12/29/17 Order Is Sufficiently Specific Because The Documents At Issue Have Already Been Identified And Collected

As M.J. Moses found, the documents at issue are sufficiently specific.  12/29/17 Order, at 20.  The parties know exactly the 1,478 documents at issue.  RPI's Memo, at 2.  The "number of individuals affected" (RPI's Memo, at 13) is irrelevant; the proper analysis is whether the request is "sufficiently specific in identifying the documents sought."  Pershing Pacific West LLC v. MarineMax, Inc., 2013 WL 941617, *7, (S.D. Cal. Mar. 11, 2013); Philips v. Ford Motor Co., 2016 WL 8505624, *3 (N.D. Cal. June 10, 2016).  The 12/29/17 Order requires RPI to re-produce, without redactions, documents that have already been identified and collected.  In Philips, 2016 WL 8505624, *3, the court found that a request that a party re-produce, with unredacted names, documents that it already produced was sufficiently specific.  Thus, this factor supports overruling RPI's Objections.[11]

_____

were relevant.  M.J. Moses held long ago that the Belgian Documents are relevant.  See, e.g., 8/31/16 Order.

[11]      The SWIFT matter (RPI's Memo, at 14) is inapposite, both because the facts do not resemble the facts here, and because the Belgian Data Protection Commission ultimately held that SWIFT did not violate Belgian law.  Dkt.# 437-4 ("1st Vandendriessche Decl."), ¶¶ 10, 77-79 & nn.10, 18-19; 12/29/17 Order, at 12-13 & n.11.

### C.    Although The Belgian Documents Are Located In Belgium, Many Of The Communications Originated In The United States

This factor is not determinative, and is counterbalanced by the next factor regarding the unavailability of the documents otherwise. British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A., 2000 WL 713057, *9 (S.D.N.Y. June 2, 2000). Moreover, the Belgian Custodians frequently communicated with their U.S. counterparts, who purchased and monitored all 13 of the RMBS at issue here. Cf. S.E.C. v. Gibraltar Glob. Sec., Inc., 2015 WL 1514746, *5 (S.D.N.Y. Apr. 1, 2015) ("Although the information requested is maintained in the Bahamas, it all relates to individuals in the United States. Some communications originated with those individuals … ."). Even if this factor does not favor the Trustee, neither does it favor RPI.

### D.    RPI Concedes That There Is No Alternative Method Available To The Trustee To Secure The Unredacted Belgian Documents

M.J. Moses held that the Belgian Documents are "unavailable from any other source." 12/29/17 Order, at 19.[12] RPI concedes this. RPI's Memo, at 15. Yet, RPI quibbles with M.J. Moses's holding that this factor "weighs heavily in favor of production" (12/29/17 Order, at 20), and argues that the names are irrelevant. RPI's Memo, at 15. But, as shown above, the Belgian Documents are useless without names. Thus, this factor supports overruling RPI's Objections.

### E.    The U.S.'s Interests In Fair Adjudication And Preventing Unfair Discovery Disadvantages Outweighs Any Belgian Privacy Interest

M.J. Moses correctly held that this factor favors production. 12/29/17 Order, at 20. The U.S. has an "undoubtedly substantial interest in fully and fairly adjudicated matters before its courts, which is only possible with complete discovery." Reino De Espana, 2005 WL 1813017, *4. In particular, the U.S. "has an important interest in protecting its own nationals from unfair

---

[12]    Perkins v. Chelsea Piers Mgmt., 2012 WL 4832814, *1 (S.D.N.Y. Oct. 10, 2012) (RPI's Memo, at 12) is inapposite. That court denied a motion to compel because the movant failed to explain why the documents sought were relevant. M.J. Moses held long ago that the Belgian Documents are relevant. See, e.g., 8/31/16 Order.

disadvantage when they are being sued in the courts of their own nation." Id. Thus, as RPI "has chosen to bring suit in the" U.S. (id., *3), the U.S. has a strong interest in preventing RPI from availing itself of the court system while flouting the discovery rules.

Any competing Belgian privacy interest is, at best, marginal. **First**, as explained below, the DPA is not absolute or "all-consuming" because it contains many exceptions, including the Litigation Exception. Laydon, 183 F. Supp. 3d at 423 (favoring disclosure when the foreign act has exceptions). **Second**, the Protective Order in this case (Dkt.# 77) and limited scope of the Belgian Documents further serve to protect any Belgian privacy interest. Laydon, 183 F. Supp. at 425. **Third**, Belgium has not objected. Courts consider "whether the foreign government has raised an objection to the discovery sought." Id., at 424. "[A] foreign government's failure to express a view that the disclosure at issue threatens its national interests militates against a finding that strong national interests of the foreign country are at stake." Id. Here, Belgium has not expressed any privacy interest, even though Belgium is aware of this dispute. Instead, Belgium voted in favor of RPI bringing this litigation (Dkt.# 272, at 15), thereby evidencing that its interests under the DPA are subordinate to its interest in pursuing this litigation.

The cases RPI cites involve information qualitatively different from the information here—personal financial account information or government investigation documents—not solely names and email addresses from everyday business emails that are all nine years or more old.[13] RPI fails to cite a single case establishing that Belgium has a strong national interest in protecting this particular type and vintage of information. RPI argues that, under Reinsurance

---

[13] RPI's cases (RPI's Memo, at 8, 11, 14-17, & 19), unlike here, either involve foreign banking secrecy laws that protect customer account information and do not have litigation exceptions, or foreign governmental investigations. See, e.g., Leibovitch v. Islamic Republic of Iran, 188 F. Supp. 3d 734, 757 (N.D. Ill. 2016) (customer account information under Japanese and French bank secrecy laws); Minipeco, S.A. v. ContiCommodity Servs. Inc., 116 F.R.D. 517, 524 (S.D.N.Y. 1987) ("disclosure of customer account information" under Swiss "bank secrecy statutes"); In re Payment Card Interchange Fee and Merchant Discount Litig., 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) (E.U. Commission's investigation files at issue).

Co. of Am., Inc. v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1279-81, & n. 3 (7th Cir.

1990), because there are "severe penalties" for violating the DPA, the Court should not order

production.  RPI's Memo, at 17.  But that case involved national secrets under Romanian law,

not mere names and email addresses, and RPI fails to show that the DPA is "strictly enforced"

like the law at issue there.  Id.[14]  Moreover, the prospect of penalties being imposed by Belgium

(a RPI shareholder) upon either RPI or BNPPF (a subsidiary of another RPI shareholder) is not

only speculative, it is illogical.  Thus, this factor supports overruling RPI's Objections.

### F. Producing The Unredacted Belgian Documents Would Impose No Hardship Whatsoever *On RPI*

This factor analyzes the hardship of compliance upon the party from whom discovery is

sought.  Laydon, 183 F.Supp.3d at 419-20.  Here, the party from whom discovery is sought is

RPI (under Winnick), not BNPPF.  RPI has never made any showing that RPI would suffer any

hardship by production of the unredacted Belgian documents, and, as established below, RPI did

in fact produce unredacted documents in this case, and complains of no hardship.

M.J. Moses correctly held that this factor favors production.  12/29/17 Order, at 21.  RPI

fails to establish that producing the unredacted Belgian Documents presents "a hardship so

significant" to justify "displac[ing] the [FRCP]."  Laydon, 183 F. Supp. 3d at 426.

Although a complete non sequitur, RPI's arguments about a fine upon BNPPF are

speculative; RPI provides no example of any Belgian enforcement action for conduct similar to

producing the unredacted Belgian Documents.  And, RPI produced its own documents—more

than 300,000 of them, according to RPI (Dkt.# 417, at 2)—without redacting names or email

---

[14]     The single enforcement action cited by RPI (RPI's Memo, at 17-18), does not support RPI's argument because of entirely different facts.  According to RPI, Facebook used a "'cookie' technology that lets Facebook lodge on a person's Internet device for up to two years after they visit a Facebook page, whether or not they are a member of Facebook."  https://www.usatoday.com/story/tech/2015/11/10/facebook-faces-steep-fines-belgium-over-privacy/75500860/.  Covertly tracking the internet browsing habits of both users and non-users of Facebook for two years is very different than producing 1,478 relevant business emails without redacting the names.

addresses.  According to RPI's own estimates, this includes nearly 90,000 "documents [that RPI] collected from BNPPF at the time of RPI's formation[.]"  <u>Id.</u>  RPI did not redact names or email addresses in those documents either.  And, as M.J. Moses pointed out, "RPI ... produced duplicates or near-duplicates of many of the Belgian Documents from its own files (in Belgium) to [the Trustee] (in the United States), without any privacy redactions. ... [RPI] can and did make a decision, on its own behalf, that it was permitted to produce those documents without running afoul of the Belgian or E.U. privacy laws."  12/29/17 Order, p. 16.

M.J. Moses held that, because RPI produced its own documents without redacting names and email addresses, "RPI can hardly expect this Court to accept its argument (which BNPPF has done nothing to support) that the same conduct would be unlawful if undertaken by BNPPF."  12/29/17 Order, at 17.  M.J. Netburn reached this same conclusion, holding that "[t]he fact that [RPI] has already produced some of the disputed documents in unredacted form ... undermines its argument that it cannot now produce the redacted materials ... ."  <u>RPI/HSBC</u>, Dkt.# 392, at 1.

RPI also produced documents it obtained for this litigation from the work email accounts of its directors, who work at different companies based in the E.U.—including BNP Paribas (France), ENGIE (Belgium and France), and Ageas (Belgium) without redacting names.  <u>See</u> Trustee's August 14, 2017 letter to M.J. Moses (filed with redactions at Dkt.# 437) (unredacted version submitted as Exh. 4).[15]  These documents also include the names of individuals who never worked at Fortis or RPI, including, for example, European employees of ███████████, KPMG, and even an agency of the Belgian government, SFPI.  Exhs. 5, 6, 8-10.  RPI never argued that producing these documents would violate the DPA.  And, at his deposition, RPI's Chairman De Clercq testified that he did not obtain the permission of any of the individuals

---

[15] ███████████████████████████████████████████████

named in his emails before he turned them over to RPI.  Exh. 9, at 82:19-99:9.

Despite producing the documents described above without redacting names and email addresses, there is no evidence that RPI or these other entities have been fined under the DPA or the E.U. Directive, even though Belgium knows RPI produced these documents.

In any event, this factor cannot help RPI.  "Because plaintiffs in a civil suit who resist discovery have the option of either risking penalties for violation of foreign law or abandoning the lawsuit," the hardship factor is "less significant in cases where the producing party is the plaintiff."  Reino De Espana, 2005 WL 1813017, *8.  "Having chosen this Court as its forum," RPI may not assert that the DPA is "a bar to discovery pursuant to the rules of this Court."  Id. Thus, this factor supports overruling RPI's Objections.[16]

### G.    RPI, The "Resisting Party," Has Not Acted In Good Faith By Failing To Comply With Its Ordinary Party Discovery Obligations Under *Winnick*

M.J. Moses held that this factor weighed against RPI.  12/29/17 Order, at 21.  RPI judicially admits that "bad faith delays and dilatory tactics" weigh against the objecting party. RPI's Memo, at 21.  Contrary to RPI's assertions (RPI's Memo, at 21-22), RPI has not acted in good faith.  Since the 2/5/16 Order, the Trustee has had to move **seven** more times to obtain BNPPF documents.  See Dkt.## 111, 126, 353, 386, 410, 432, & 467.  Moreover, M.J. Moses has repeatedly found that RPI has failed to comply with its obligations to produce BNPPF documents.[17]  Most recently, in the 12/29/17 Order, M.J. Moses held:

[A]s I have previously noted, RPI contemplated the present litigation – or

---

[16]    RPI's argument that, in less than four months, "Belgium is tightening protection of personal data" by changing the DPA (RPI's Memo, at 20-21) is irrelevant.  RPI has been ordered to produce the Belgian Documents since August 2016, and specifically ordered to do so without redacting names since December 2017.  RPI moved to stay the 12/29/17 Order, and that was denied.  Dkt.# 543.  Any future change in the law is no hardship to RPI now.

[17]    See, e.g., Dkt.# 393, ¶ 3 ("RPI failed adequately to collect the emails of the assignor custodians" when it unilaterally chose to use overly narrow search terms to collect those documents, leaving out relevant documents); Dkt.# 544, at 6-11 (ordering RPI to run additional searches for BNPPF documents).

> litigation very much like it – as early as 2009, when it received the RMBS from
> the Fortis Entities along with an assignment of the sellers' claims.  Yet it
> repeatedly failed to secure, from its assignors, the documents necessary to litigate
> those claims in accordance with the [FRCP].  Its recent document production
> difficulties, therefore, are largely of plaintiff's making, which militates against it
> in any comity analysis.

12/29/17 Order, at 21.  M.J. Moses also held that the Belgian Documents are "relevant, long

overdue, [and] unavailable from any other source."  Id., at 19.  As mentioned above, RPI is

currently in violation of the 12/29/17 Order.

RPI's arguments to the contrary fail.  **First**, RPI argues that the 12/29/17 Order wrongly

"treats [RPI] as the resisting party, as opposed to BNPPF … ."  RPI is wrong.  As M.J. Moses

held, RPI "has done all of the 'resisting,' on grounds substantially undercut by its own

inconsistent conduct as to overlapping documents within its own possession."  12/29/17 Order,

21.  RPI argues that it merely "carried out its responsibility to interpose objections to the content

of defendants' discovery requests on behalf of BNPPF" (RPI's Memo, at 21 (citing Winnick, 228

F.R.D. at 508)), but Winnick does not impose such a responsibility.  Winnick holds that the

assignors "may themselves interpose objections … provided that by doing so they waive any

objection to being treated as parties to the litigations for purposes of discovery."  Id., at 508.

Here, BNPPF has not done so.  See 12/29/17 Order, at 10 n.8 & 16-17.

**Second**, courts also assess "whether a party's inability to produce documents as a result

of foreign law prohibitions was fostered by its own conduct prior to the commencement of the

litigation."  12/29/17 Order, at 21-22 (quoting Minipeco, 116 F.R.D. at 522-23).  Here, RPI's

purported inability to produce the unredacted Belgian Documents is solely its own fault.

As M.J. Moses held in the 8/31/16 Order:

> [RPI's] recent difficulties are largely of plaintiff's making. … [RPI] clearly had
> its U.S. litigation campaign in mind when it initiated a legal action against
> BNPPF in Brussels on November 20, 2012.  …

Even more significantly, RPI fully understood the importance of acquiring potentially discoverable documents from its assignors – and the risks of failing to do so – when it settled the Brussels action [against BNPPF] on April 26, 2013, and, in the process, released any and all claims "that arise under or relate in any way to any of the Instruments (as defined in the PTA) sold under the PTA." … Nonetheless, <u>having knowingly waived its rights to compel documents from its assignors, RPI cannot use its inability to do so, or the failure of its more recent efforts to obtain voluntary cooperation, as justification for a court order relieving it of the obligation to produce otherwise-discoverable documents from their files</u>.

8/31/16 Order, at 16.

During a May 1, 2017 hearing, M.J. Moses expressed the same view, stating that "[w]e've had <u>extensive</u> <u>litigation</u> involving why [RPI is] having a problem with … BNP Paribas and … that is largely a problem of the plaintiff's own making."  Dkt.# 381, at 25:5-9.[18]

As to the Belgian Documents, RPI has not acted in good faith; it has just sought to avoid the consequences of its own actions.  Thus, this factor favors overruling RPI's Objections.

## II.    M.J. MOSES CORRECTLY FOUND THAT ARTICLES 5 AND 22 OF THE DPA PERMITTED PRODUCTION OF THE BELGIAN DOCUMENTS IN THE U.S., RPI PRODUCED ITS OWN DOCUMENTS FROM BELGIUM WITHOUT REDACTIONS, AND, GIVEN THAT BNPPF'S DOCUMENTS ARE RPI'S OWN DOCUMENTS, THE BELGIAN DOCUMENTS MUST ALSO BE PRODUCED WITHOUT REDACTIONS

M.J. Moses held that BNPPF's documents are RPI's own documents for purposes of discovery in this case.  RPI, a Belgian company, produced, from Belgium, its own documents in this case without privacy redactions, and RPI conceded that it was appropriate, and permissible under Belgian law, for RPI to do so.  Given that BNPPF's documents are RPI's documents, RPI should produce the unredacted Belgian Documents.  Under <u>Winnick</u>, these discovery obligations are RPI's, not BNPPF's, and thus considerations particular to BNPPF are irrelevant.

As to the DPA, M.J. Moses correctly held that the DPA permits the transfer to the U.S. of

---

[18]    M.J. Moses is not alone in criticizing RPI's conduct.  In RPI's case against U.S. Bank, the court held that RPI's bargaining away of its right to obtain documents from BNPPF was "willful," and that "[RPI] must accept the consequences."  <u>Royal Park Invs. SA/NV v. U.S. Bank N.A.</u>, No. 14-cv-2590 (S.D.N.Y.), Dkt.# 141, at 10-14.

the unredacted Belgian Documents because: (1) under Article 5(f) of the DPA, "the [transfer] at issue here is necessary for the promotion of the legitimate interests of the controller or the third party to whom the data is disclosed, and those interests are not overridden by the interests or fundamental rights and freedoms of the individuals whose names and email addresses have been redacted by BNPPF" (id., at 16); and (2) under Article 22 of the DPA, the transfer of the unredacted Belgian Documents to the U.S. was under the DPA Litigation Exception. Id., at 17.

In light of the foregoing, there is no dispute that RPI (a Belgian entity) was required (under U.S. law) and permitted (under Belgian law) to produce its own documents without redactions. Indeed, RPI judicially admitted that "[a]s the plaintiff in this action, RPI's interests and obligations were to comply with its discovery requirements and orders in this case. For example, RPI produced documents relevant to this litigation without redactions other than those permitted for legal privileges." Dkt.# 426, at 1.

And, as M.J. Moses pointed out, RPI produced in the U.S. unredacted documents from its own files in Belgium, and RPI "can and did make a decision, on its own behalf, that it was permitted to produce those documents without running afoul of the [DPA]. … RPI can hardly expect this Court to accept its argument (which BNPPF has done nothing to support) that the same conduct would be unlawful if undertaken by BNPPF." 12/29/17 Order, at 16-17.[19]

In the 2/5/16 Order, M.J. Moses ordered RPI to produce documents from BNPPF "to the same extent that it is required to produce documents from its own files." Dkt.# 104, p. 12. M.J. Moses has repeatedly held that: (i) BNPPF's documents, such as the Belgian Documents, are

---

[19]        M.J. Netburn made the same observation: "[t]he fact that [RPI] has already produced some of the disputed documents in unredacted form … undermines its argument that it cannot now produce the redacted materials" without violating the DPA. RPI/HSBC, Dkt.# 392, at 1.

RPI's own documents;[20] (ii) RPI "bear[s] the risks and burdens of discovery from" BNPPF

(Dkt.# 104, p. 2); and (iii) any problem RPI has in obtaining the unredacted Belgian Documents

from BNPPF is of RPI's "own making."  Dkt.# 381, at 25:5-9; see also 12/29/17 Order, at 21.

It is the law of this case that BNPPF's documents are RPI's documents.  Under Winnick,

and M.J. Moses's long-standing orders as to which RPI did not object, RPI cannot treat the

Belgian Documents any differently than RPI's own.  RPI must produce them without redactions.

As Judge Schofield held, "[RPI] cannot meet its Winnick obligation by producing heavily

redacted documents that shield key facts from discovery."  Schofield 2/6/18 Order., at 3.  That

BNPPF refuses to provide the unredacted Belgian Documents to RPI, or why BNPPF refuses to

do so, is irrelevant to RPI's own discovery obligations.[21]  RPI's Objections should be overruled.

## III.   RPI'S *NEW* ARGUMENT THAT ART. 22'S LITIGATION EXCEPTION ONLY APPLIES WHEN THE LITIGATION IS IN EUROPE WAS WAIVED, AND ALSO HAS NO BASIS UNDER CURRENT BELGIAN LAW

RPI never argued before M.J. Moses that the Litigation Exception under Article 22 does

not apply here because this litigation is outside the E.U.  RPI's Memo, at 9.  The plain language

of Article 22, § 1, 4° of the DPA provides that "a transfer or a set of transfers of personal data to

a country outside the [E.U.] may take place … if the transfer is necessary or legally required on

important public interest grounds, or for the establishment, exercise or defence of legal claims."

"[W]here the alleged obstacle to production is foreign law, the burden of proving what

the law is and demonstrating why it impedes production falls on the party resisting discovery."

Laydon, 183 F. Supp. 3d at 413.  RPI fails to meet this burden, and this Court should reject RPI's

---

[20]      See Dkt.# 395, at 8:12-21 ("[N]otwithstanding the backroom problems, [BNPPF's documents] are considered [RPI's] documents for discovery purposes."); see also Dkt.# 261, p. 17 (RPI's obligation to produce BNPPF's documents is "ordinary party discovery.").

[21]      In that sense, to the extent RPI relies upon BNPPF's recalcitrance, that is simply a retread of RPI's argument that it lacks the "practical ability" to obtain documents from BNPPF, which M.J. Moses repeatedly rejected (see, e.g., 8/31/16 Order, at 15-16), and which orders RPI never objected to.

new argument.  **First**, RPI never argued before M.J. Moses that the Litigation Exception only applies if the litigation is within the E.U.  Thus, RPI waived this new Article 22 argument. Khatabi v. Bonura, 2016 WL 8838889, *5 (S.D.N.Y. Apr. 21, 2016).

**Second**, RPI's argument is not supported by any of the cited authority.  See Kairis Decl., ¶¶ 4, 9, & 14; Van Remoortel Decl., ¶ 60.  None of the cited paragraphs in the Kairis Decl. mention Article 22 at all.  And, although the Van Remoortel Decl., ¶ 60, mentions Article 22, it also mentions that "a detailed analysis [of Article 22] would fall outside the scope of this declaration."  Van Remoortel then concludes that "BNPPF can[not] invoke the" Litigation Exception as "there is no necessity for a transfer to the US of the fully unredacted Belgian Documents in bulk" (id.),[22] but is silent as to the location of the litigation.[23]  Notably, RPI's other authority, a potential change to E.U. law that is not yet in effect (RPI's Memo, at 20-21; see also supra, n.16), cannot support RPI's interpretation of the current Article 22.

**Third**, RPI's interpretation is illogical.  RPI argues that the Litigation Exception, which permits a party to transfer personal data to a country outside the E.U., only applies if the litigation is within the E.U.  It is hard to imagine a circumstance where a party would need to transfer data outside the E.U. for purposes of a litigation in the E.U.  RPI's reading is contrary to the plain language of the exception, and fails to explain why, under its interpretation, RPI was permitted to transfer its own documents to the U.S. for production in this litigation.

## IV.   RPI'S ARGUMENTS UNDER ARTICLE 4 OF THE DPA ALL FAIL

---

[22]     M.J. Moses rejected the argument about transferring the Belgian Documents "in bulk."  12/29/17 Order, at 18 n.15 ("[N]o one is asking BNPPF for 'all the files.'").  RPI did not object to this portion of the 12/29/17 Order.

[23]     RPI cites Laydon, 183 F. Supp. 3d at 417 for the proposition that "the Article 29 Working Party ... has confirmed that the pre-trial litigation requests emanating from the United States simply do not qualify for the litigation exception."  RPI's Memo, at 9.  But the WP29 opinion cited in Laydon does not address the Litigation Exception either.  See WP29, "Opinion 10/2006 on the processing of personal data by the Society for Worldwide Interbank Financial Telecommunication (SWIFT)," dated 22 November 2006 (submitted by the Trustee at 1st Vandendriessche Decl., Exh. H, Dkt.# 437-5, ECF at 71-84).

RPI's argues that, because M.J. Moses did not adopt the Article 4 analysis of RPI's expert, Mr. Kairis, the 12/29/17 Order must be set aside.  RPI's Memo, at 8-9.  But M.J. Moses considered that analysis, and the 12/29/17 Order is not clearly erroneous or contrary to law.

A.    **M.J. Moses Actually Did Consider The Article 4 Arguments By RPI's Expert Mr. Kairis; She Simply Rejected Them, Which Was Within Her Discretion**

When determining foreign law, "the Court may consider the opinions of experts, but it is not bound by their testimony, even if uncontradicted."  Old Ladder Litig. Co. v. Investcorp Bank B.S.C., 2008 WL 2224292, *3 (S.D.N.Y. May 29, 2008).  In Old Ladder Litig. Co., 2008 WL 2224292, *5, the court adopted the foreign law conclusions of plaintiff's expert, in the face of the defendant's unauthorized "supplemental declaration" that reached a different conclusion.  And, in British Int'l Ins., 2000 WL 713057, *7, the court disregarded both parties' expert reports, and "reach[ed] its own determination as to the scope of the disclosure permitted by Mexican law."  Here, M.J. Moses considered the Kairis Decl. (citing it five times in the 12/29/17 Order), but it was also within her discretion to disagree with it.

B.    **In Any Event, The Submission Of The Kairis Decl. Was Improper In The First Instance, And The Trustee Never Got An Opportunity To Respond**

RPI objects that M.J. Moses did not adequately consider RPI's Article 4 arguments, arguing that there was "extensive briefing on Article 4 as evidenced by the Kairis Declaration."  RPI's Memo, at 9.  At the end of briefing on the motion at issue, RPI submitted the Kairis Decl., with its Article 4 arguments.  Dkt.# 444.  Even though the Trustee sought the opportunity to respond, it was never given that chance.  Thus, there was not "extensive briefing" on Article 4.

On July 7, 2017, the Trustee filed its motion to compel, arguing, inter alia, that the DPA permitted the unredacted Belgian Documents to be transferred to RPI, or to the Trustee's counsel, within Belgium.  Dkt.# 410, at 2 & 4 n.7.  RPI filed its opposition, ignoring that argument.  Dkt.# 417.  The Trustee filed a reply.  Dkt.# 420.  Briefing would normally be

finished at that point, and neither side had submitted an expert declaration on Belgian law.

On July 17, 2017, M.J. Moses issued an order directing RPI to submit a "supplemental letter" to address only two questions: (a) why RPI itself had produced unredacted documents (including copies of some of the Belgian Documents) without raising any concerns regarding the DPA; and (b) why the Belgian Documents cannot be produced in unredacted form to RPI or the Trustee's counsel in Belgium.  Dkt.# 422, at 1-2.

On July 24, 2017, RPI submitted more than a "supplemental letter," it submitted an expert declaration for the first time, i.e., the Van Remoortel Decl., which raised new Belgian law arguments.  Dkt.# 417.  In particular, the Van Remoortel Decl. raised new theories relating to the transfer of personal data within the E.U., now based upon Article 5.  On July 31, 2017, M.J. Moses granted the Trustee's request to "submit a responding expert declaration …, limited to the issue of Belgian law," but also ordered that RPI "may file an expert declaration in reply, limited to the same issue" (Dkt.# 430) even though, as movant, the Trustee should have had the last word.  On August 14, 2017, the Trustee filed its letter and the 1st Vandendriessche Decl., which responded to Mr. Van Remoortel's arguments.  Dkt.# 437 & Dkt.# 437-4.

On August 28, 2017, RPI submitted the Kairis Decl., Dkt.# 444-1, which RPI first filed on August 25, 2017 in RPI/HSBC, as an exhibit to its FRCP 72 objection to M.J. Netburn's Belgian redaction order that case.  RPI/HSBC, Dkt.# 410-4.  The Kairis Decl. was not prepared for this action (see Dkt.# 444, at 1 n.2), and it did not respond to the 1st Vandendriessche Decl. Instead, it presented brand new arguments, based upon Article 4.

On August 31, 2017, the Trustee filed a letter requesting that M.J. Moses:  (1) strike and disregard the Kairis Decl.; or (2) grant the Trustee permission to file another declaration

responding to the new arguments raised in the Kairis Decl. Dkt.# 446.[24] M.J. Moses denied that request. Dkt.# 447. Thus, RPI improperly submitted the Kairis Decl., and the Trustee never had the opportunity to respond to it or the arguments based upon it. Accordingly, in response, the Trustee submits herewith the "Second Declaration of Johan Vandendriessche," dated February 9, 2018, Exh. 11 (the "2d Vandendriessche Decl.").[25]

## C. RPI's Arguments Under The Purpose Compatibility Standard Of Article 4 Are Unsupported By Facts And Are Contrary To Belgian Law

RPI's Article 4 argument (RPI's Memo, at 8-9) fails for several reasons.

Article 4 contains two requirements. First, when a party collects "personal data" (including names and email addresses), the personal data must be "collected for specified, explicit and legitimate purposes." 2d Vandendriessche Decl., ¶ 37. "Personal data can be collected for **more than one purpose**," and the purposes need not even be related to one another. 2d Vandendriessche Decl., ¶¶ 38-39. But the purposes must be "explicit," i.e., "clearly revealed, explained or expressed in some intelligible form." 2d Vandendriessche Decl., ¶¶ 38-39. Second, when a party "processes" (i.e., transfers) personal data, the personal data "must not be further processed in a way incompatible with those purposes." 2d Vandendriessche Decl., ¶ 37. RPI admits that, under Article 4, purpose compatibility is not a rigid prohibition, but, rather, is "assessed on a case-by-case basis" with "flexibility." RPI's Memo, at 8.

As to the first requirement, Mr. Kairis fails to establish BNPPF's specific purposes for

---

[24]     The Trustee pointed out that Mr. Kairis is not an independent expert on Belgian law, but an attorney at the law firm Liedekerke Wolters Waelbroeck Kirkpatrick, which has represented RPI on matters relevant to these matters and is listed on RPI's privilege logs. Dkt.# 446, at 3-4.

[25]     RPI should not be heard to complain about the submission of the 2d Vandendriessche Decl. in opposing RPI's Objections because RPI, itself, submitted the very same Kairis Decl. for the very first time with its FRCP 72 objections to M.J. Netburn's order in RPI/HSBC that RPI must produce the unredacted Belgian Documents to HSBC. There, RPI argued that it was appropriate to submit an expert report for the first time on a FRCP 72 objection because, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." RPI/HSBC, Dkt.# 420, at 3-4. RPI should not be permitted to take an inconsistent position here.

originally collecting the Belgian Documents.  2d Vandendriessche Decl., ¶¶ 40-41.  Instead, Mr. Kairis speculates, without any supporting evidence, that "the personal data have in all likelihood been initially collected by BNPPF for purposes of administration and carrying out its activities in a normal course of business." Kairis Decl., ¶ 13.  RPI, too, provides no factual support for its argument that, "the personal data sought by [the Trustee] was originally collected by BNPPF for ordinary business purposes in Belgium."  RPI's Memo, at 9 (citing Kairis Decl, ¶ 13).  Having failed to establish BNPPF's specific purposes for originally collecting the Belgian Documents, RPI cannot demonstrate that transferring them would be incompatible with those purposes.

As to the second requirement, even if Mr. Kairis's speculation as to BNPPF's purpose for originally collecting the Belgian Documents is correct, i.e., that "the personal data have in all likelihood been initially collected by BNPPF for purposes of administration and carrying out its activities in a normal course of business" (Kairis Decl., ¶ 13), transferring the Belgian Documents is compatible with that purpose for the following four reasons.

**First**, there is a close connection between BNPPF collecting its employees' business emails "for purposes of administration and carrying out [BNPPF's] activities in a normal course of business" and using those emails in connection with a legal dispute relating to BNPPF's business activities, such as this Action.[26]  **Second**, given the nature and the context of the Belgian Documents, the individuals whose personal data appears within (and was redacted from) those documents (the "Data Subjects") likely have a reasonable expectation that the Belgian Documents may be used in connection with a legal dispute relating to BNPPF's business activities, such as this Action.[27]  **Third**, the Belgian Documents do not pose a privacy risk.

---

[26]    2d Vandendriessche Decl., ¶ 46.  According to Prof. Vandendriessche, Belgian companies regularly submit their employees' emails to Belgian courts in legal disputes.  Id.

[27]    2d Vandendriessche Decl., ¶ 48.  And, as Prof. Vandendriessche notes, any Data Subjects based in the U.S.
(Continued note)

Indeed, they are all <u>business</u> emails, are relevant to issues in this Action, and do not concern any information about the private lives of the Data Subjects.[28]  **Fourth**, even if the Data Subjects could face potential harm from the production of the Belgian Documents without redacted names, that harm would be limited by the Protective Order.  2d Vandendriessche Decl., ¶ 55.

Mr. Kairis concludes that transferring the unredacted Belgian Documents is incompatible with BNPPF's purpose for originally collecting them, but his conclusion is based entirely upon his unsupported speculation as to BNPPF's purposes for collecting them.  <u>See</u> Kairis Decl., ¶ 13. Likewise, RPI concludes that "the transfer of unredacted documents would not pass muster under the [DPA] as the new purpose was not reasonably contemplated by the data subjects, who were operating under a legal system that has strong privacy protections in place."  RPI's Memo, at 9. But RPI has <u>never</u> cited any evidence of what any of the Data Subjects "reasonably contemplated."  Indeed, in M.J. Moses's rulings under Article 5 of the DPA—to which RPI does not object—she <u>directly</u> <u>rejected</u> this same argument.[29]

Thus, Article 4 does not prohibit the production of the unredacted Belgian Documents.

## CONCLUSION

For all the foregoing reasons, the Court should overrule RPI's Objections.

Dated: New York, New York          Respectfully submitted,
       February 9, 2018            MORGAN, LEWIS & BOCKIUS LLP
                                   By: */s/ Bernard J. Garbutt III*

---

"have no expectation that, due to Belgian law, their work emails would be redacted."  Id., ¶ 49.  U.S.-based workers expect that their work emails would be produced in litigation.

[28]      2d Vandendriessche Decl., ¶ 51-52.  Moreover, because RPI admits that it already produced thousands of documents that it obtained from Fortis Bank (the predecessor to BNPPF) as well as from BNPPF itself, without redacting names, the Data Subjects have already had their names revealed in other documents produced by RPI.

[29]      See 12/29/17 Order, at 15-16 ("Even assuming that most of the data subjects have no particular connection to this forum or the pending lawsuit, I am not persuaded that their 'reasonable expectations' militate against the production of the unredacted Belgian Documents.  Plaintiff makes no showing, for example, that any of the data subjects were given any assurances at the time the data was collected (that is, when they wrote or received the business emails now at issue) that their names and their work email addresses (many of them now obsolete) would be kept confidential in any later production of those emails for litigation purposes.").