UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                      Plaintiff,

       vs.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

                  Defendant.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:14-cv-04394-AJN-BCM

CLASS ACTION

PLAINTIFF ROYAL PARK INVESTMENTS
SA/NV'S MEMORANDUM OF LAW IN
SUPPORT OF ITS RENEWED MOTION
FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS
REPRESENTATIVE AND CLASS
COUNSEL

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................1

II.  STATEMENT OF FACTS ..............................................................................3

III. ARGUMENT ..................................................................................................3

    A.   The Proposed Class Definition Meets the Temporal Limitations
        Requirement of *Brecher*..............................................................................3

    B.   The Proposed Class Is Ascertainable .........................................................4

        1.   The Standard for Demonstrating Ascertainability Is Not
            Demanding ...................................................................................4

        2.   Class Members Can Be Identified Through Deutsche Bank's Own
            Records and Trading Data ............................................................6

        3.   Class Members Are Identifiable Through a Claims Process ......................8

        4.   The Issue of Potential Assignment of Claims Is Not a Bar to
            Ascertainability ...........................................................................12

    C.   This Case Meets the Requirements of Rule 23(a) ...................................13

        1.   The Class Is Numerous ...............................................................13

        2.   There Are Questions of Law and Fact Common to the Class....................14

        3.   Plaintiff's Claims Are Typical of the Class ...............................14

        4.   Plaintiff Is Adequate ..................................................................15

    D.   The Requirements of Rule 23(b)(3) Are Also Satisfied ........................15

        1.   Common Questions of Law and Fact Predominate Under
            Rule 23(b) ...................................................................................16

        2.   A Class Action Is Superior ........................................................17

    E.   The Court Should Appoint Plaintiff's Counsel as Class Counsel Under
        Rule 23(g) .................................................................................................18

IV.  CONCLUSION................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................................4

*Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n*
*of America-College Ret. & Equities Fund*,
  290 F.R.D. 452 (D. Vt. 2013) ....................................................................................3

*Brecher v. Republic of Arg.*,
  806 F.3d 22 (2d Cir. 2015).............................................................................. *passim*

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................................3, 5, 12

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013)...............................................................................................17

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)...........................................................................................3

*Dover v. British Airways, PLC (UK)*,
  No. 12 CV 5567 (RJD) (CLP), 2017 U.S. Dist. LEXIS 51530
  (E.D.N.Y. Mar. 31, 2017) .........................................................................................5, 7

*Dunnigan v. Metro. Life Ins. Co.*,
  214 F.R.D. 125 (S.D.N.Y. 2003) ..............................................................................4, 5

*Ebin v. Kangadis Food, Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ..............................................................................4, 5

*Farey-Jones v. Buckingham*,
  132 F. Supp. 2d 92 (E.D.N.Y. 2001) ..........................................................................12

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) .....................................................................13, 16, 17

*Freeland v. Iridium World Commc'ns Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006).......................................................................................5

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ................................................................................16

*In re Facebook, Inc.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ..................................................................................4

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)............................................................................14

*In re IndyMac Mortg.-Backed Sec. Litig*,
   286 F.R.D. 226 (S.D.N.Y. 2012) ...............................................................16

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097
   (N.D. Cal. Feb. 21, 2017)....................................................................5, 8, 13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) .................................................................4

*In re U.S. FoodServ. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)........................................................................16

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..........................................................................6

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ...............................................................4, 5

*Jacob v. Duane Reade, Inc.*,
   293 F.R.D. 578 (S.D.N.Y. 2013) ...............................................................17

*Kurtz v. Kimberly-Clark Corp.*,
   No. 14-CV-1142, 2017 U.S. Dist. LEXIS 44576
   (E.D.N.Y. Mar. 27, 2017) ..........................................................................4, 8

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326
   (S.D.N.Y. Mar. 17, 2014) ...........................................................................15

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................13

*Seijas v. Republic of Arg.*,
   606 F.3d 53 (2d Cir. 2010)....................................................................10, 11

*Seijas v. Republic of Arg.*,
   No. 04-cv-400 (TPG), 2017 U.S. Dist. LEXIS 64398
   (S.D.N.Y. Apr. 27, 2017)............................................................................11

- iii -

Page

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ........................................................................................16

*Wallace v. Intralinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) .................................................................................15

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23 .............................................................................................................. *passim*
    Rule 23(a) .......................................................................................................13, 15, 18
    Rule 23(a)(1) ..............................................................................................................13
    Rule 23(a)(4) ..............................................................................................................15
    Rule 23(b) ...................................................................................................................16
    Rule 23(b)(3) ..................................................................................................... *passim*
    Rule 23(c)(2)(B) ...........................................................................................................5
    Rule 23(c)(4) ..............................................................................................................17
    Rule 23(g) ...................................................................................................................18
    Rule 23(g)(4) ..............................................................................................................18

Code of Federal Regulations
    Rule 240.10b-5 ...........................................................................................................12

New York General Obligations Law
    §13-101 .......................................................................................................................12

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiff Royal Park Investments SA/NV ("Plaintiff" or "Royal Park") respectfully moves the Court to certify this action as a class action and to certify the following Class:

> All persons and entities who held Certificates in the Covered Trusts at any time between the date of issuance to no later than 60 days after notice of class certification and opportunity to opt-out is issued and were damaged as a result of Deutsche Bank National Trust Company's conduct alleged in the Complaint. Excluded from the class are defendant, the loan originators, the Warrantors, the Master Servicers and the Servicers to the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.[1]

In addition, Plaintiff moves the Court to appoint Plaintiff as Class Representative, and appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

## I.   PRELIMINARY STATEMENT

As established in Plaintiff's first motion for class certification (Dkt. No. 185), the existence of Deutsche Bank National Trust Company's ("Deutsche Bank" or "Trustee") breaches of contract and trust, when those breaches occurred, Deutsche Bank's knowledge, and how the Covered Trusts were damaged are all predominately factual questions common to all Class members. Dkt. No. 185 at 8-10.[2] Each of these questions will be answered with class-wide proof. *Id.* at 14-19. Plaintiff's

---

[1]    The "Covered Trusts" are: (1) First Franklin Mortgage Loan Trust 2006-FF9; (2) GSR Mortgage Loan Trust 2007-AR2; (3) HSI Asset Securitization Corporation Trust 2007-WF1; (4) HarborView Mortgage Loan Trust 2006-8; (5) Morgan Stanley ABS Capital I Inc. Trust 2007-NC2; (6) Morgan Stanley ABS Capital I Inc. Trust 2007-NC3; (7) Morgan Stanley IXIS Real Estate Capital Trust 2006-1; (8) NovaStar Mortgage Funding Trust, Series 2006-4; (9) Saxon Asset Securities Trust 2006-2; and (10) Soundview Home Loan Trust 2007-NS1. *See* Class Action Complaint and Verified Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust ("Complaint"), Dkt. No. 1, ¶2. All "¶" or "¶¶" references and defined terms contained herein refer to the Complaint unless otherwise noted. Emphasis is added and citations and footnotes are omitted throughout unless otherwise indicated.

[2]    Pursuant to *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 1:14-cv-04394-AJN-BCM, Dkt. No. 350 at 28 (S.D.N.Y. Mar. 21, 2017) ("3/21/17 Order"), Plaintiff hereby incorporates by reference Plaintiff Royal Park Investments SA/NV's Memorandum of Law in Support of Its Motion for Class Certification and Appointment of Class Representative and Counsel (the "June 8

claims therefore present a single, predominant issue of liability that is common to all Class members, and each of Rule 23's requirements are readily met. *Id*. at 7-21.

In compliance with the Court's March 21, 2017 Order, Plaintiff has revised the proposed class definition to include temporal limitations and an explicit link between putative class members' alleged injuries to the particular misconduct ascribed to Deutsche Bank in the Complaint. *See* 3/21/17 Order at 22, 25.   Plaintiff has also submitted additional evidence demonstrating the ascertainability of the proposed class, including (i) ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

(ii) testimony and documents from Deutsche Bank establishing that the Trustee possesses lists of all prior Certificate holders, if any, not represented by DTC; (iii) the declaration of Peter L. Crudo, Executive Vice-President of Gilardi & Company LLC ("Crudo Decl."), one of the nation's largest, full-service class action claims administration firms, demonstrating the formulaic way in which class members and their claims can be ascertained; and (iv) the Expert Report of W. Scott Dalrymple, CFA, dated May 1, 2017 ("Dalrymple Report"), explaining that damages can be calculated on a class-wide basis in a manner consistent with Plaintiff's theory of liability.[3]

As set forth below, the preponderance of the evidence demonstrates that the "class members will be, at some point, readily identifiable without resort to individualized hearings." 3/21/17 Order

---

Memo.") (Dkt. No. 185); Declaration of Lucas F. Olts in Support of Plaintiff Royal Park Investments SA/NV's Motion for Class Certification and Appointment of Class Representative and Class Counsel (Dkt. No. 187); Plaintiff Royal Park Investments SA/NV's Reply Memorandum of Law in Further Support of Its Motion for Class Certification and Appointment of Class Representative and Class Counsel (Dkt. No. 283); Declaration of Lucas F. Olts in Support of Plaintiff Royal Park Investments SA/NV's Reply Memorandum in Further Support of Its Motion for Class Certification and Appointment of Class Representative and Class Counsel (Dkt. No. 284).

[3]   The Expert Report of W. Scott Dalrymple and the Declaration of Peter L. Crudo are attached as exhibits G-H, respectively, to the Declaration of Lucas F. Olts in Support of Plaintiff Royal Park Investments SA/NV's Renewed Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Olts Decl.").

at 19.  In addition to the implied ascertainability requirement, each of the other class certification

requirements of Rule 23 is met.  Plaintiff's motion should be granted.

## II.     STATEMENT OF FACTS

This action arises from Deutsche Bank's failure to fulfill its contractual and common law

obligations as Trustee for the Covered Trusts, causing damages to Plaintiff and the Class.  To avoid

repetition, Plaintiff hereby incorporates the Statement of Facts set forth in the June 8 Memo.  Dkt.

No. 185 at 3-6.

## III.    ARGUMENT

### A.     The Proposed Class Definition Meets the Temporal Limitations
###        Requirement of *Brecher*

The proposed class definition meets the requirements of *Brecher* and the 3/21/17 Order.  The

*Brecher* court held that a class definition ordinarily should have temporal limitations.  *Brecher*, 806

F.3d at 25 ("owning a beneficial interest in a bond series without reference to time owned . . . is

insufficiently definite to allow ready identification of the class or the persons who will be bound by

the judgment"); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 n.6 (9th Cir. 2017)

("In *Brecher* . . . administrative feasibility played no role in the court's decision, which instead

turned on the principle that a class definition must be objective and definite.").  In the 3/21/17 Order,

the Court noted that a failure to propose "any temporal constraint whatsoever would exacerbate the

administrative obstacles to class member identification."  3/21/17 Order at 10.

The temporal limitations of the revised proposed class definition, including a beginning and

ending date for the Class, resolve the issue identified in *Brecher* of an "ever-changing composition"

(*Brecher*, 806 F.3d at 25) and the 3/21/17 Order's concern that Royal Park had not "include[d] a

temporal limit in its proposed class definition."  3/21/17 Order at 20; *see also Cordes & Co. Fin.*

*Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 102-03 (2d Cir. 2007); *Bauer-Ramazani v.*

- 3 -

*Teachers Ins. & Annuity Ass'n of America-College Ret. & Equities Fund*, 290 F.R.D. 452, 462-63 (D. Vt. 2013) (setting the date of class certification order as the end of the class period); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001) (same).  After notice goes out to potential Class members, and before a finding on liability, the make-up of the Class will be fixed.

### B.     The Proposed Class Is Ascertainable

#### 1.     The Standard for Demonstrating Ascertainability Is Not Demanding

Although not required by Fed. R. Civ. P. 23, the Second Circuit has held that a class definition must be "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"  *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015).  But "'[t]he standard for ascertainability is not demanding.  It is designed only to prevent the certification of a class whose membership is truly *indeterminable*.'"  *In re Facebook, Inc.*, 312 F.R.D. 332, 352-53 (S.D.N.Y. 2015).   The fact that such a process might be "'administratively burdensome,'" or require "an analysis of the merits," does not render the class unascertainable.  *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 & n.9 (S.D.N.Y. 2003); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012).  Moreover, even "formidable" ascertainability difficulties "should not be made into a device for defeating the action."  *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

Class membership need only be ascertainable "'at some point in the case.'"  3/21/17 Order at 19; *see also Brecher*, 806 F.3d at 26 n.2 ("'[I]dentifiable' does not mean 'identified'; ascertainability does not require a complete list of class members at the certification stage."); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (same).  Courts approve of numerous mechanisms by which class members can be ascertained, including through a claims process, transactions records, and class member affidavits.  *See, e.g., Kurtz v. Kimberly-Clark Corp.*,

- 4 -

No. 14-CV-1142, 2017 U.S. Dist. LEXIS 44576, at *125 (E.D.N.Y. Mar. 27, 2017) ("Ascertainability of class membership can be readily determined by a claims filing procedure provided under court directions."); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097, at *106 (N.D. Cal. Feb. 21, 2017) (ascertainability satisfied and quoting *Briseno*, 844 F.3d at 1131, for the proposition that at "'the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims'"); *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2017 U.S. Dist. LEXIS 51530, at *23 (E.D.N.Y. Mar. 31, 2017) (class ascertainable where membership can be determined from defendants' own records).

Ascertainability is satisfied even if the process required to identify class members proves burdensome or time-consuming. *See, e.g.*, *Dunnigan.*, 214 F.R.D. at 136 & n.9 (where "an examination of the individual files of each of the participants" will determine class membership, "[t]he fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement"); *Vitamin C*, 279 F.R.D. at 116 ("a class is not rendered unascertainable merely because an analysis of data is necessary to determine class membership"); *accord Briseno*, 844 F.3d at 1129 (noting that Fed. R. Civ. P. 23(c)(2)(B) "recognizes it might be *impossible* to identify some class members"); *Freeland v. Iridium World Commc'ns Ltd.*, 233 F.R.D. 40, 45-46 (D.D.C. 2006) (rejecting argument that tracing difficulties precludes class certification, recognizing that "any difficulty by individual class members in tracing their particular [securities] . . . is a secondary issue to be resolved *after* the predominant issue of Defendant Underwriters' liability has been decided") (collecting cases). The "'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *Ebin*, 297

- 5 -

F.R.D. at 567 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

### 2. Class Members Can Be Identified Through Deutsche Bank's Own Records and Trading Data

The Court has held that "difficulties in identifying holders of indirect beneficial interests in actively traded RMBS identifiable only by tranche-wide CUSIP" may impact ascertainability. 3/21/17 Order at 20. As set forth below, the members of the proposed class can be identified using Deutsche Bank's own records, and Deutsche Bank itself has in place processes and procedures to facilitate payments to both current and former certificate holders. In addition, ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

As witnesses and documents have now confirmed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮





Olts Decl., Ex. I at 231:17-25.



The fact that Certificate holders can be identified, and that Deutsche Bank itself can facilitate payments to Certificate holders at various points in time, demonstrates that the class is ascertainable. *See Dover*, 2017 U.S. Dist. LEXIS 51530, at *23 ("[defendant's] argument, that it is impossible to ascertain the size and scope of Plaintiffs' proposed class, is belied by [defendant's] own database, which tracks not only the names of all members of its frequent flyer program but also their addresses, and other relevant information"). Indeed, ███████████████████████████ ███████████████████████████████████████, there is no reason why the same process cannot be used to identify, and distribute payments to, Class members in connection with this action.

That the Certificates lack a "unique identifier" for each beneficial interest, as do shares of common stock and various other types of securities, does not render the process of identifying Class members unworkable, or the class unascertainable. As Deutsche Bank has conceded, the Certificates at issue are legally owned by DTC in "book entry" form.[5] DB Opp. at 6-7. DTC receives payments on the Certificates and distributes payments to DTC "Participants," who either own the certificates

---

[5]    Deutsche Bank has stated that the Certificates are owned by DTC "[i]n the U.S." DB Opp. at 6. In fact, ███████████████████████████████████████████████ *See* Olts Decl., ¶5.

themselves, or more often hold assets on behalf of the beneficial owners. *Id*. Determining the identity of the beneficial owners over time is therefore an administratively feasible process.



Olts Decl., ¶¶2-3.

*Id*.

*Id*., ¶4.

For purposes of establishing numerosity, RPI subpoenaed 23 DTC participants seeking records sufficient to identify "all persons or entities who owned, held, or beneficially owned or held any Certificate, or any portion of any Certificate, at any point throughout the Relevant Period." Olts Decl., ¶7. RPI received responses from all of these DTC participants or their affiliates identifying beneficial owners, some of which included detailed trade data regarding trades in the certificates.[6] Olts Decl., ¶8. The availability of these records demonstrates that it is administratively feasible to identify the beneficial owners of the Certificates, and therefore the Class members, throughout the Class Period. *See also* Crudo Decl., ¶11.

### 3. Class Members Are Identifiable Through a Claims Process

Courts routinely utilize claims filing processes and claims administrators to determine the identity of class members and calculate and apportion damages. *Kurtz*, 2017 U.S. Dist. LEXIS 44576, at *125; *Lidoderm*, 2017 U.S. Dist. LEXIS 24097, at *106. Indeed, in *Brecher*, the parties settled the claims following the Second Circuit's decision, and the court approved a claims process

---

[6]   One of the DTC Participants, Goldman Sachs, responded to RPI's subpoenas solely with objections. In light of the productions from the remaining DTC Participants, RPI elected not to pursue discovery from Goldman at that time, but may do so in the future.

similar to that being proposed here, which ascertained class members based on transaction documents and affidavits. *Infra* at 11.

Similarly, the members of the Class in this action are also ascertainable through a claims or administration process, which are widely used to identify Class members and determine and apportion damages. *See generally* Crudo Decl.  In addition to receiving data from DTC participants reflecting the owners of the Certificates over time, the claims administrator can take additional steps to ensure that all potential Class members are notified of the action and ascertained.  Crudo Decl., ¶¶13-20.  These steps include, but are not limited to: (i) mailing notice to a "propriety list of approximately 250 brokerages, custodial banks, and other institutions ("Nominal Holders") that commonly hold securities for the benefit of their customers;" (ii) mailing notice to "all institutions included on the U.S. Securities and Exchange Commission's [regularly updated] list of [4,500] active brokers and dealers;" (iii) "cause the notice to be published by [DTC] on the DTC Legal Notice System ("LENS").  "LENS enables the participating bank and broker nominees to review the notice and contact Gilardi for copies of the notice for their beneficial holders;" (iv) "cause the Summary Notice to be published once in the *Wall Street Journal* and once over the *Business Wire*"; and (v) collecting "Claim Forms" requiring class members to "provide identifying information concerning themselves, their investments, any sales, and trade data, if applicable."  Crudo Decl., ¶¶13, 15-17, 23. Deutsche Bank has provided no evidence whatsoever to suggest that such efforts will be insufficient to ascertain the members of the Class.

In contrast to consumer actions where class members may not retain receipts or any evidence of class membership, or securities actions involving widely dispersed common stock (both of which are regularly certified and utilize claims administrators), it will be comparatively simple to identify Class members in this action because: (i) the Certificates were held in book-entry form;

(ii) payments on the Certificates occurred on a regular basis throughout the Class Period; and (iii) the evidence gathered to date demonstrates that ████████████████████████████████████████ ████████████████████████. Olts Decl., ¶¶2-8; *see* Crudo Decl., ¶11.[7]

*Brecher* in no way forecloses ascertaining the class members through this type of process, and in fact supports the methodology proposed here.

First, whatever similarity the bonds at issue here may have had to the bonds in *Brecher* (*see* 3/21/17 Order at 11-13), the **record** here is drastically different from the record presented to the Second Circuit. In *Brecher*, the plaintiff's brief failed to cite any evidence regarding ascertainability, and focused its arguments on the temporal limitations issue.[8] Indeed, according to the defendant, "after six years of litigation, no member of this class other than the named purported class representative, who holds €52,000 of the tens of millions of euros of class bonds on which he purports to bring suit, has ever been identified." Brief of Defendant-Appellant, Case No. 14-4385, Dkt. No. 35 at 18 (2d Cir. Mar. 16, 2015). Here, in contrast, Royal Park has presented robust evidence regarding the ascertainability of the Class, and RPI has already identified at least 580 potential Class members based on a review of the trade data provided by DTC participants. Dalrymple Report, ¶48.

Moreover, the type of bonds at issue cannot have been the basis for the *Brecher* court's decision because the Second Circuit in fact upheld the certification of a separate class of investors in similar Argentinian bonds. In *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010), the Second Circuit rejected defendants' contention that "since many of the bonds are traded in the secondary

---

[7]   Peter Crudo is Executive Vice-President of Gilardi & Company LLC ("Gilardi"). Crudo Decl., ¶1. Gilardi is the claims administrator in the *Brecher* action.

[8]   Brief for Plaintiff-Appellee, Case No. 14-4385, Dkt. No. 48 at 19-27 (2d Cir. May 8, 2015); *see also* Dkt No. 51 at 8-14.

markets, determining the classes' compositions raises major manageability issues," and deferred to the district court's judgment that no such issues existed.

Second, notwithstanding the Second Circuit's conclusion that the plaintiff had failed to establish at that time that the class was ascertainable, just last week Judge Griesa issued an Opinion and Order granting final approval to "settlements reached in nine class action cases against the Republic of Argentina," including the *Seijas* and *Brecher* action. *Seijas v. Republic of Arg.*, No. 04-cv-400 (TPG), 2017 U.S. Dist. LEXIS 64398, at *10 (S.D.N.Y. Apr. 27, 2017). In approving the settlement, Judge Griesa expressly approved of a notice process similar to that described in the Crudo Declaration to identify Class members. 06-15297, Dkt. No. 115 at 2-3. As described by the parties, identifying, and determining the validity of the submitted claims from, class members in *Brecher* required no court intervention whatsoever:

> To date, there have been 86 claims filed with respect to the Settlement. Class Counsel and Argentina negotiated extensively, and in good faith, to determine the validity of each of those claims. In an effort to resolve Argentina's objections with respect to certain claims, Class Counsel had extensive communications with certain members of the Class, and requested these class members provide additional documentation to establish the *bona fides* of their claims. Every class member provided the additional requested information, and such additional documentation was then shared with Argentina's counsel. As a result of their extensive negotiations, with two very minor exceptions explained below, ***the parties have been able to agree upon the validity of all of the filed claims***.

*Brecher v. Republic of Arg.*, No. 06-15297, Dkt. No. 135 at 7 (S.D.N.Y. Nov. 1, 2016).

All of this makes clear that aside from temporal limitations (which in this action is no longer an issue), to the extent ascertainability was relevant in *Brecher*, any deficiencies were driven by a failure of proof by the plaintiff, not with any intrinsic inability to identify class members who purchased the bonds. Because Plaintiff here has demonstrated ascertainability by the preponderance of the evidence, *Brecher* does not support denying class certification, and the final resolution of that action demonstrates that the Class here should indeed be certified.

### 4.    The Issue of Potential Assignment of Claims Is Not a Bar to Ascertainability

In the 3/21/17 Order, the Court noted that the "need to trace the ownership history of [the Certificates] to determine the transfer (or lack thereof) of breach of contract claims" was a factor in determining whether the class was ascertainable.  3/21/17 Order at 20.  As demonstrated below, the existence of any potential assignment of claims by Class members is not a bar to ascertainability.

First, that claims related to the Certificates may have been assigned is not unique to this case; indeed, virtually *any* claim related to *any* security is assignable – and that fact has never been a bar to class certification.  *See* N.Y. Gen. Oblig. Law §13-101 ("Any claim or demand can be transferred, except" certain types of claims not present here); *see also Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92 (E.D.N.Y. 2001) (Rule 10b-5 securities claims assignable). The mere fact that a claim *could be* assigned, therefore, is not a bar to certification.

Second, even if assignment of claims by Class members did occur, the circumstances surrounding those assignments can be easily determined through a notice and claims process, at which time putative Class members must identify themselves, their purchases or sales, and any assignments.  *See* Crudo Decl., ¶¶22-24, 27; *see also Briseno*, 844 F.3d at 1131 ("At the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims.  Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.").  Indeed, despite *thousands* of securities class action settlements and judgments, RPI is aware of *no* situation where a court had to adjudicate assignment disputes in resolving a class action, let alone on a scale that would defeat the substantial efficiencies of class certification.

- 12 -

Finally, the example provided by Deutsche Bank – the assignment of claims to Royal Park – does not support its contention.  DB Opp. at 11, 16-17; *see* 3/21/17 Order at 15.  In addition to the fact that there is no dispute as to whether breach of contact claims transferred from Fortis to Royal Park, when Royal Park acquired the Certificates, nine of the thirteen certificates had experienced no loss of principal balance whatsoever.  Olts Decl., ¶6.  Therefore, determining whether Royal Park was damaged by Deutsche Bank's misconduct, and is therefore a member of the Class, will ***never*** depend on whether Fortis assigned claims to Royal Park – the fact of which there is no dispute.  Deutsche Bank's attempt to manufacture speculative and nonexistent issues to defeat class certification should be rejected.  *Lidoderm*, 2017 U.S. Dist. LEXIS 24097, at *105.

## C.     This Case Meets the Requirements of Rule 23(a)

### 1.     The Class Is Numerous

Royal Park incorporates by reference its numerosity arguments from the June 8 Memo.  Dkt. No. 185 at 7-8.

There is no dispute that the Class meets the requirement of Rule 23 that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); Dkt. No. 185 at 7-8.  Numerosity is presumed in the Second Circuit when there are more than 40 class members.  *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014).  In addition, the numerosity requirement is satisfied even where putative class members have purchased across multiple RMBS offerings.  *See id.*  As established by Plaintiff's expert there are, at a minimum, 580 investors in the Covered Trusts, a figure that Deutsche Bank does not dispute in good faith with its ascertainability arguments.  Dalrymple Report, ¶¶40-47.  Judicial economy would be best achieved via the class action device even if these investors are sophisticated entities.  *See, e.g.*, *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011).

### 2.      There Are Questions of Law and Fact Common to the Class

Royal Park incorporates by reference its commonality arguments from the June 8 Memo.
Dkt. No. 185 at 8-10.

Plaintiff alleges that Deutsche Bank breached identical or substantially identical contractual
terms to which all Class members were beneficiaries, and that such breaches gave rise to both
contractual and common law claims.  *See, e.g.*, ¶¶5, 34, 44.  Indeed, the Governing Agreements for
***all*** of the Covered Trusts contain substantially ***identical*** terms.  Moreover, the Complaint alleges that
Deutsche Bank engaged in a common course of behavior, undertaken by the same group of
individuals at Deutsche Bank using common (yet flawed) policies and procedures.  *See, e.g.*, Dkt.
No. 187, Olts Decl., Ex. B at 22:14-24.  Thus, each Class member must answer the same common
questions in order to prove his individual breach of contract claim.  *See* Dkt. No. 185 at 8-9 (listing
common questions relevant to breach of contract claims).  Similarly, Class members would also face
common questions in order to establish their individual common law and breach of duty claims.  *See*
Dkt. No. 185 at 9 (listing common questions relevant to breach of duty claims).

Accordingly, Rule 23's commonality requirement is satisfied.

### 3.      Plaintiff's Claims Are Typical of the Class

Royal Park incorporates by references its typicality arguments from the June 8 Memo. Dkt.
No. 185 at 10-12.

Typicality is satisfied where "'each class member's claim arises from the same course of
events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In
re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also* Dkt. No. 185 at
10-11 (citing cases).  Plaintiff's claims here indisputably arise from the same course of events as do
the other Class members' claims.  Uniform practices employed by Deutsche Bank that were applied
across all of the Covered Trusts – namely, failure to give notice to the Master Servicers or Servicers

- 14 -

of servicing breaches, Events of Default, and failure to enforce representations and warranties rights – give rise to Plaintiff's and the Class' claims equally.  Dkt. No. 185 at 11-12 (citing cases).

### 4.    Plaintiff Is Adequate

Royal Park incorporates by references its adequacy arguments from the June 8 Memo.  Dkt. No. 185 at 12-14.

"The adequacy requirement is not demanding."  *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).  "'Generally, adequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 U.S. Dist. LEXIS 35326, at *18 (S.D.N.Y. Mar. 17, 2014).

No antagonistic interests exist between Plaintiff and the Class, as Plaintiff "'possess[es] the same interest and suffer[ed] the same injury as the class members.'"  *N.J. Carpenters Health Fund*, 2014 U.S. Dist. LEXIS 35326, at *18.  Royal Park acquired and held Certificates in each of the Covered Trusts, and was damaged as a result of Deutsche Bank's failure to comply with its contractual and common law obligations.  Each Class member also acquired and held certificates in the Covered Trusts and were similarly damaged.

Royal Park's actions thus far, and the common interest it shares with the Class in prosecuting this case to a successful resolution, fully satisfy Rule 23(a)(4)'s adequacy standard.

### D.    The Requirements of Rule 23(b)(3) Are Also Satisfied

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.  Dkt. No. 185 at 14-19; Dkt. No. 283 at 4-8.

### 1. Common Questions of Law and Fact Predominate Under Rule 23(b)

Royal Park incorporates by reference its predominance arguments from the June 8 Memo. Dkt. No. 185 at 14-19.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re U.S. FoodServ. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). This standard "'does not require a plaintiff to show that there are no individual issues.'" *In re IndyMac Mortg.-Backed Sec. Litig*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012). Instead, it requires that "'a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class.'" *See J.P. Morgan*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

The primary common questions the Class must address to establish its breach of contract claims will be whether Deutsche Bank: (1) failed to enforce R&W breaches, upon discovering them; (2) failed to notify Master Servicers and Servicers of their failures to fulfill their obligations after learning of Events of Default; (3) failed to declare Events of Default when it learned of them; and (4) failed to act as a reasonable person would to protect its own assets after learning of Events of Default. All of these questions will necessarily be answered through common proof. Dkt. No. 185 at 14-16.

The fact that individual plaintiffs may suffer different amounts of damages and may hold claims only for a portion of the Class Period is not the predominant damages inquiry. *In re Currency*

*Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 116 (S.D.N.Y. 2010) ("the need for individualized determinations of the putative class members' damages do not, without more, preclude certification of a class under Rule 23(b)(3)").

Even if damages were not calculable on a class-wide basis, which they are, the correct result would not be deny class certification altogether, but rather to certify the Class for liability purposes only pursuant to Fed. R. Civ. P. 23(c)(4), which allows an action to be "maintained as a class action with respect to particular issues." *J.P. Morgan Chase*, 301 F.R.D. at 142 (certifying liability-only class of RMBS purchasers based on showing that "liability may be proven on a classwide basis," not declining to find that damages can be calculated on a classwide basis "at this time"); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013) (discussing appropriateness of liability-only class in light of *Comcast v. Behrend*, 133 S. Ct. 1426 (2013) and finding Fed. R. Civ. P. 23(c)(4) to be a "useful and fair case management tool"). Here, although not necessary, the Court could easily certify a class for purposes of determining Deutsche Bank's liability, while reserving questions about individual class members' damages until after a liability determination was reached.

### 2. A Class Action Is Superior

Royal Park incorporates by reference its superiority arguments from the June 8 Memo. Dkt. No. 185 at 19-21.

First, there is no overwhelming interest by Class members to proceed individually.

Second, the maintenance of a class action in this District ensures an efficient expenditure of resources, will save an enormous amount in litigation costs for all parties and will allow the parties to more efficiently prosecute their claims and defenses.

Finally, there are no manageability issues that would warrant denial of class certification.

**E.    The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g)**

Royal Park incorporates by reference its class counsel arguments from the June 8 Memo. Dkt. No. 185 at 21-22.

Rule 23(g)(4) requires the Court to appoint counsel who will fairly and adequately represent the Class.

Robins Geller has demonstrated its ability to fairly and adequately represent the interests of the Class and should be appointed as Class Counsel pursuant to Rule 23(g).

## IV.    CONCLUSION

For the foregoing reasons, Royal Park respectfully requests the Court to: (a) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Royal Park as the representative of the proposed Class; and (c) appoint Robbins Geller as Class Counsel.

DATED:  May 1, 2017                              Respectfully submitted,

                                                ROBBINS GELLER RUDMAN & DOWD LLP
                                                ARTHUR C. LEAHY
                                                STEVEN W. PEPICH
                                                LUCAS F. OLTS
                                                DARRYL J. ALVARADO


                                                         s/ LUCAS F. OLTS
                                                     LUCAS F. OLTS

                                                655 West Broadway, Suite 1900
                                                San Diego, CA  92101-8498
                                                Telephone:  619/231-1058
                                                619/231-7423 (fax)
                                                artl@rgrdlaw.com
                                                stevep@rgrdlaw.com
                                                lolts@rgrdlaw.com
                                                dalvarado@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2017, a true copy of PLAINTIFF ROYAL PARK INVESTMENTS SA/NV'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL was served on all counsel of record in this proceeding via email.

s/ LUCAS F. OLTS
LUCAS F. OLTS

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  lolts@rgrdlaw.com