UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiff,

      -against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

             Defendant.

------------------------------------------------------- X

Case No. 1:14-cv-4394-AJN-BCM

## DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT OF W. SCOTT DALRYMPLE

Tera M. Heintz, Esq. (admitted *pro hac vice*)
Joseph Floren, Esq. (admitted *pro hac vice*)
Ashley Krupski, Esq (admitted *pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market Street
San Francisco, CA 94114
Tel: (415) 442-1000
Fax: (415) 442-1001
tera.heintz@morganlewis.com
joseph.floren@morganlewis.com
ashley.krupski@morganlewis.com

Michael Kraut, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000
Fax: (212) 309-6001
michael.kraut@morganlewis.com

Attorneys for Defendant Deutsche Bank National
Trust Company, as Trustee

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD .......................................................................................... 4

SUMMARY OF THE DALRYMPLE REPORT ........................................................ 6

I.     ARGUMENT ............................................................................................ 7

     A.     Dalrymple's Opinion That Class-Wide Damages "Can Be" Calculated Lacks a Reliable Basis Because Dalrymple Does Not Propose to Measure Class Members' Damages .................................................................. 7

     B.     Dalrymple's Report and Opinions Would Fail to Measure Damages Allegedly Caused by The Trustee. ...................................................... 11

     C.     Dalrymple's Failure to Propose a Method or to Identify Relevant Information Necessary to the Computation of Damages Makes His Opinion Inadmissible. ...................................................................... 18

II.    CONCLUSION ...................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*
  5 F.Supp.3d 543 (2014) .................................................................1

*Amorgianos v. Nat'l R.R. Passenger Corp.*
  303 F.3d 256 (2d Cir. 2002).......................................................5, 17

*Boyce v. Soundview Tech. Grp., Inc.*
  464 F.3d 376 (2d Cir. 2006).........................................................14

*Chen-Oster v. Goldman, Sachs & Co.*
  114 F. Supp. 3d 110 (2015) ..........................................................5

*Comcast Corp. v. Behrend*
  133 S. Ct. 1426 (2013)............................................................5, 14

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993).............................................................*passim*

*Dev. Specialists, Inc. v. Weiser Realty Advisors LLC*
  2012 WL 242835 (S.D.N.Y. Jan. 24, 2012) .................................17

*Hertz v. Graham*
  23 F.R.D. 17 (S.D.N.Y. 1958) ........................................................7

*Horton v. IndyMac Fed. Bank*
  2010 WL 3429941 (E.D. Cal. Aug. 30, 2010)..............................13

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*
  2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .................................4

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999)......................................................................5

*McLaughlin v. Am. Tobacco Co.*
  522 F.3d 215 (2d Cir. 2008).........................................................8

*Meda AB v. 3M Co.*
  969 F. Supp. 2d 360 (S.D.N.Y. 2013).........................................20

*Retirement Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*
  775 F.3d 154 (2d Cir. 2014).........................................................14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Roach v. T.L. Cannon Corp.*
778 F.3d 401 (2d Cir. 2015)...............................................................................5, 14

*Robinson v. Sanctuary Record Groups, Ltd.*
542 F. Supp. 2d 284 (S.D.N.Y. 2008)......................................................................20

*Sicav v. Wang*
2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ...............................................5, 11, 21

*Weiner v. Snapple Beverage Corp.*
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).............................................. *passim*

**Rules and Regulations**

Fed. R. Evid. 702 ...............................................................................................4, 5, 21

Fed. R. Evid. 703 ..........................................................................................................4

**Other Authorities**

Federal Deposit Insurance Corporation, "Information for IndyMac Bank, F.S.B.,
and IndyMac Federal Bank, F.S.B., Pasadena, CA," *available at*
https://www.fdic.gov/bank/individu al/failed/IndyMac.html ................................13

Defendant Deutsche Bank National Trust Company, as Trustee ("Trustee"), respectfully submits this memorandum of law in support of its motion to exclude as unreliable the opinions set forth in the Expert Report of W. Scott Dalrymple ("Dalrymple") dated May 1, 2017 ("Dalrymple Report") (filed under seal as Exhibit G to the Declaration of Lucas Olts in Support of Plaintiff Royal Park Investments SA/NV's Renewed Motion for Class Certification and Appointment of Class Representative)[1] regarding his claimed ability to calculate class-wide damages in this action.

## INTRODUCTION

In its class certification motion, Plaintiff Royal Park Investment SA/NV ("RPI") relies heavily on the Dalrymple Report's assertion that ██████████████████████████████ ████████████████  *See* ¶ 4.  But Dalrymple offers no basis for ████████████ ██████████████████████ (¶ 51), let alone describes any reliable methodology by which damages caused by the Trustee to putative class members can be determined by common proof. RPI's theory of damages centers on the contention that losses on the Certificates would not have occurred but-for (1) the Trustee's alleged failure to demand and enforce the obligations of various third-party warrantors ("Warrantors") to repurchase unidentified individual home loans serving as collateral for ten Residential Mortgage-Backed Securities ("RMBS") trusts[2] and/or (2) the Trustee's alleged failure to enforce Servicer Events of Default.  On this premise, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████



---

[1] All ¶ citations are to the Dalrymple Report.
[2] All ten Trusts were created and are governed by Pooling and Servicing Agreements, or the functional equivalent thereof (collectively referred to herein as "PSAs").  *See ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.,* 5 F.Supp.3d 543, 548-49 (S.D.N.Y. 2014) (Nathan, J.).

███████████████████████████████████████████████████████████

████████████████████████████████ Yet, Dalrymple admittedly does not understand how either loss could be calculated.

Dalrymple admits that he fails to proffer any opinion as to how damages of class members could be measured, or even what information he would need to make such a determination. ████████████ ___ ████████████████████████████████ _

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ ▪ ██████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

Dalrymple's opinion that class-wide damages "can be" calculated should be excluded for the following reasons:

First, Dalrymple's framework for distributing both types of damages he describes—███████ █████████████████████████████████████████████████ should be excluded. To start, damages to Certificates are not recoverable. Certificates are not putative class members. The investors in Certificates (who would be putative class members) bought and sold Certificates during the decade-plus putative class period at widely varying prices. Dalrymple, however, suggests no method to account for the varying profits and losses of different investors in the same Certificates, let alone explain how any losses could be related to the conduct of the Trustee. Further, Dalrymple lacks a reliable basis for opining that damages to Certificates can be calculated. In addition to his failure to consider whether damages caused by

---

[3] The term "waterfall" refers to the set of rules in each Trust's Governing Agreements for the allocation of cash flows to Certificates based on a number of factors, including the "tranche" or quality of Certificate owned.

DB1/ 92147096.2

the Trustee can be reliably determined in the first instance, Dalrymple has not determined:  (1) what methodology he would use to determine damages to the Certificates; (2) whether damages can be reliably determined through such methodology; (3) whether he would consider losses incurred after the alleged breach to determine damages (which is legally impermissible); and (4) whether sufficient information is available to determine damages under any proposed methodology.

Second, Dalrymple admits that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ including originators and servicers that have since become bankrupt.  Given this theory, RPI bears a heavy burden to show how the Trustee's alleged breaches caused injury to class members who were buying and selling Certificates at different times and different prices, as well as how such damages can be shown through common proof. Dalrymple not only fails to provide such an explanation, ███████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ using this deflection to avoid all questions about how such damages could be determined in any reliable way in the first instance – let alone in any class-wide manner given the loan-by-loan proof required by RPI's claims. ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

DB1/ 92147096.2



*See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, *7 (S.D.N.Y. Aug. 5, 2010) (expert report unreliable and inadmissible when it "provides no details concerning the significant conceptual, implementation, or data issues that would be encountered if his two approaches were adopted.").

Third, ignoring the entire point of a class certification damages expert, Dalrymple ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ — ▮▮▮▮▮▮▮▮▮ Given the gaping holes in his analysis, Dalrymple's opinion that damages can be calculated for Certificates should be excluded under Federal Rules of Evidence Rules 702, 703 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## LEGAL STANDARD

This Court serves a crucial gatekeeping role with respect to expert testimony.  RPI, as the proponent of expert testimony, bears the burden of establishing the admissibility of Dalrymple's opinions by a preponderance of proof.  *Daubert*, 509 U.S. at 592 n.10; *see also IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, *13 (S.D.N.Y. Oct. 29, 2013).

Federal Rule of Evidence 702 provides that an expert may testify if qualified and helpful, so long as (a) "the testimony is based upon sufficient facts or data;" (b) "the testimony is the product of reliable principles and methods;" and (c) "the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702 (b)(c).  Whether the expert testimony will be helpful to a trier of fact is analyzed by first asking whether the testimony is relevant.  *See, e.g., Daubert,* 509 U.S. at 595.  In the class certification context, the Court should exclude expert opinions that are not relevant to issues pertinent to class certification.  *Chen-Oster*

-4-

*v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 127-128 (S.D.N.Y. 2015) (Francis, J.) (excluding expert opinion under *Daubert* that did not pertain to class certification).

To be admissible, expert testimony must also rest on a reliable foundation of facts and data. *Daubert*, 509 U.S. at 597; *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (affirming district court's exclusion of expert testimony, explaining that "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony"). Expert testimony premised on subjective or speculative belief is inadmissible. *Daubert,* 509 U.S. at 590; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). Further, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157 (citation omitted).

At the class certification stage, RPI bears the burden of showing whether economic injury, and damages to investors from that injury, are capable of being measured on a class-wide basis using common proof. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1430 (2013); *Sicav v. Wang*, 2015 WL 268855, *6 (S.D.N.Y. Jan. 21, 2015).[4] As stated in *Sicav*, "the Court must understand, concretely, how plaintiffs propose to reliably establish damages." *Id.* at *6. Although an expert is not required to "'implement' or 'test' his methodology at the class certification stage, an expert must 'provide sufficient detail about the proposed methodology to permit a court to determine whether the methodology is suitable to the task at hand.'" *Weiner*, 2010 WL 3119452, *9 (excluding proposed class action damages expert on grounds that expert

---

[4] While the failure to provide a class-wide damages theory does not necessarily preclude certification, it is a factor in determining "whether issues susceptible to generalized proof 'outweigh' individual issues" when certifying the case as a whole. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015).

did "nothing more than identify two possible approaches and assert that they will work in this

case . . . essentially ask[ing] that [the expert] be taken at his word."). A "bare-bones report" is

insufficient to "demonstrate in adequate detail" how class-wide damages are to be calculated. *Id.*

at \*7. In other words, an expert must provide more than the bald assertion that class-wide

damages "can be" measured.

## SUMMARY OF THE DALRYMPLE REPORT



---

5 ████████████████████████████████████████████

██████████████████████████████ No explanation was given for this change in the Report, and indeed, this revision
serves to make the report less reliable, not more. *See* Declaration of Tera Heintz in Support of Deutsche Bank
National Trust Company's Opposition to Plaintiff Royal Park Investments SA/NV's Renewed Motion for Class
Certification, Ex. 1, ¶¶ 72-75 ("Carron Report").
6 Dalrymple previously submitted a report and rebuttal report in this matter in connection with RPI's first motion for
class certification (Dkts. 187-1 & 284-1); Dalrymple's Report dated May 1, 2017 is substantially identical to his
prior reports and other than a "different way of looking at the investor count" his opinions have remained the same.
Heintz Decl., Ex. 3 (350:7-353:3, 359:23-360:12); *see id.* Ex. 4 (redline document comparing Dalrymple Report to
his earlier, May 26, 2016 report). Other than the investor count, Dalrymple engaged in no additional analysis since
preparing his initial reports. *Id.* (354:5-355:8). The Trustee challenges these earlier reports as well as the revised
Report.
7 Dalrymple has been deposed in both this matter and in the matter of *Royal Park Inv. NA/SV v. U.S. Bank*, 14-cv-
02590-VM-JCF. Dalrymple's reports in the two matters are substantially identical, save for the name of the
Covered Trusts and the name of the Trustee. Ex. 1 (27:13-18; 28:22-29:3); *see also* Ex. 3 (361:22-362:18). As
such, his admissions in each deposition are relevant and citable here. *Royal Park Inv. NA/SV v. U.S. Bank*, 14-cv-
02590-VM-JCF, Order Modifying Protective Order, Dkt. 116; *see also Hertz v. Graham*, 23 F.R.D. 17, 22

███████████████████████████████████████████ ■ ████████

█████████████ Carron Report ¶ 56.

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ *Id.* (147:1-22, 149:7-150:11).

## I.
## ARGUMENT

**A.**   **Dalrymple's Opinion That Class-Wide Damages "Can Be" Calculated Lacks a Reliable Basis Because Dalrymple Does Not Propose to Measure Class Members' Damages.**

Dalrymple's opinion that damages in this case "can be" measured on a class-wide basis should be excluded because it has no reliable basis.  *See, e.g., Daubert*, 509 U.S. at 591.

█████████████████████████████████████████████████

████████. Heintz Decl., Ex. 1 (147:1-150:11, 162:13-163:16) ████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████; *see also id.* (252:19-253:22); *see also* Ex. 3

(364:14-365:3).  Dalrymple makes clear that his framework ███████████████████████████████

---

(S.D.N.Y. 1958) ("Where depositions and testimony from a prior trial are sought to be used at a subsequent trial and the issues are substantially the same, and the interest of the objecting party in the prior action was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end.").

[8] ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ Heintz Decl., Ex. 3 (396:2-398:10); Carron Report ¶ 56.

███████████████████████████████ (Ex. 1, 252:19-253:22), and "irrespective of which investors or how many investors had claims on those certificate damages."  Heintz Decl., Ex. 2 (270:2-16).

In other words, Dalrymple impermissibly purports to calculate aggregate losses to all Certificates, not class members' damages.  Indeed, Dalrymple admits that his damages calculation would be "the <u>same</u> whether there are <u>700</u> members of the class or whether there are <u>ten</u> members of the class."  *Id*.  Any such approach is unreliable as a matter of law.  *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) ("aggregate [damages] determination is likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by the defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants[,]" which offends the Rules Enabling Act); *see also Daubert*, 509 U.S. at 597 (for opinion to be admissible it must be "relevant to the task at hand").

Dalrymple further admits that he is not offering an opinion about whether the Trustee's breaches actually caused <u>any</u> losses, or whether causation of loss can be determined on a class-wide basis.  Heintz Decl., Ex. 1 (68:15-69:18, 134:22-135:5).  Indeed, he admits that he has no understanding of how causation principles even apply to RPI's allegations or claims of breach, or even what a "breach" is in the first place:

> Q.    So, as part of your damages framework, would you be assessing losses that
>        occurred before the trustee's breaches?
>
> A.    I would be computing damages based on my understanding of the allegations. So,
>        if my understanding of the allegations is that there were no damages prior to the
>        breaches, then I wouldn't compute damages prior to the breaches based on that
>        understanding.
>
> Q:    Well, you've read the allegations; right, in this case?
>
> A.    I read the complaint.
>
> Q.    The complaint are the allegations.

-8-

A.       Yes.

Q.       Okay. So, based on your understanding and your review, is there any scenario in which of in which a breach in January 2009 could have caused losses that occurred more than six months earlier?

A.        I can't, but <u>I just don't have a specific understanding of what constitutes a breach, and how that translates into an actual economic event that would affect value</u>. It's just not possible to answer that question in isolation without understanding how that breach actually relates to an economic event.

\*\*\*

Q.       Is a <u>discovery</u> required in your understanding?

A.       I don't know.

*Id.* (264:20-266:1) (emphasis added).  Likewise, Dalrymple ████████████████████
████████████████████████████████████████████████████████████████████████

████████████████████████

■   ██████████████████████████████████████████████████
████████████████████████████████████████████████████

■   ██████████████████████████████████████████████████
██████████████████████████████

■   ██████████████████████████████████████████████████
■   ██████████████████████████████████████████████████████
██████████████████████████████████████████████████

■   ██████████████████████████████████████████████████
███████████████████████████████
■

■   ██████████████████████████████████████████████████
██████████████████████████████████████████████████

■   ██████████████████████████████████████████████████████
██████████████████████████████████████████████

*Id.*, Ex. 3 (365:4-368:14).  Dalrymple also testified ████████████████████
████████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* (363:8-365:3).

As detailed in the Trustee's class certification opposition, this fundamental lack of understanding of how or when the alleged breaches would have economically impacted class members prevented Dalrymple from answering even the most basic questions about how to determine damages of class members.  *See* Trustee's Opposition to Renewed Motion for Class Certification of Plaintiff Royal Park ("Opp.") pp. 17-25.  As such, Dalrymple ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████           ───────

████████    *See, e.g.*, Heintz Decl., Ex. 1 (143:16-145:22, 110:21-112:4; 264:20-266:1, 108:13-19, 96:16-97:13, 112:5-117:19); *see also* Ex. 3 (408:2-409:13, 410:20-411:11, 411:12-413:5, 428:25-431:16).

Without a concrete understanding of how class members would have been economically injured by the Trustee's alleged breaches, Dalrymple's opinion that █████████████████████

██████████████ is wholly unreliable and should be excluded.  *Weiner*, 2010 WL 3119452 at *9 (excluding opinions of class certification expert where expert failed to perform any empirical analysis, identify relevant data, or determine whether proposed methodologies would be workable to establish causation or damages).[9]

**B.**    **Dalrymple's Report and Opinions Would Fail to Measure Damages Allegedly Caused by The Trustee.**

Dalrymple's opinions also lack a reliable basis because he admits that he has done n̲o̲

---

[9] Here, Dalrymple produced no analysis, spreadsheets, or other work product in support of his damages opinions, other than his Report itself.  Heintz Decl., Ex. 3 (481:19-482:6).

analysis of whether damages caused by the Trustee can be reliably determined, even though his opinion that damages in this case "can be" determined on a class-wide basis would necessarily require such a determination.  By claiming that the damages caused by the Trustee would be an "input" provided to him,[10] Dalrymple seeks to dodge all of the relevant (and challenging) questions that an expert charged with calculating damages caused by the Trustee's alleged breaches would necessarily have to understand and address.  Heintz Decl., Ex. 1 (116:16-117:19).  It also masks the morass of individualized, loan-specific and investor-specific inquiries that would await the Court if class certification were granted.  These evasions disregard the fundamental requirement that a plaintiff show the court "concretely" how it "propose[s] to reliably establish damages" at class certification, and reveals that Dalrymple's opinion lacks a reliable foundation.  *Sicav*, 2015 WL 268855, at *6.

Dalrymple concedes that whether the Trustee would have been able to recover additional cash flow from Warrantors or Servicers in the "but-for" world is a necessary fact that must be determined to assess damages caused by the Trustee.  Heintz Decl., Ex. 2 (140:5-25, 142:12-145:8).  But Dalrymple "provides no details concerning the significant conceptual, implementation, or data issues that would be encountered if his [] approaches were adopted." *Weiner,* 2010 WL 3119452, at *7.  This is because Dalrymple acknowledges that he has not analyzed, let alone developed any method to analyze, any of the details or data that would need to be assessed to determine how to measure damages caused by the Trustee.  Dalrymple admits that he does not know if he <u>could</u> calculate damages on a class-wide basis without being fed possible outcomes in the "but-for" world if the Trustee had sought to enforce breaches of R&Ws. Heintz Decl., Ex. 2 (64:4-70:11).  His opinion could be summarized: ███████████████

---

[10] Notably, neither RPI nor Dalrymple has ever confirmed who would provide this "input."

█████████ Heintz Decl., Ex. 3 (505:10-11; *see also* 500:9-505:22).

Notwithstanding his admission on this point, ████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████

This example, however, highlights some of the *exact* issues that the Trustee is raising—

namely, that Dalrymple █████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

█████████████████ Heintz Decl., Ex. 2 (64:4-70:11); *see also* Carron Report ¶¶ 31-34.

Dalrymple did not know whether Warrantors had a history of agreeing to substitute, repurchase

or cure breaching loans, or whether the Trustee was even contractually allowed to demand

substitution or cure at the time of the Trustee's alleged breaches.  Heintz Decl., Ex. 2 (61:9-13,

19:24-20:9); *see also* Ex. 3 (404:3-406:7, 407:15-408:13).  When asked how he would construct

a damages analysis assuming the Warrantors did not agree to repurchase the allegedly non-

conforming loans (as history has shown is the most common outcome), his response was, "I

guess I don't know.  I haven't thought about that."  Heintz Decl., Ex. 2 (144:9-145:8).[11]

Dalrymple's example glosses over the information necessary to make these crucial

determinations, hoping that his conclusory statements will simply be accepted.  His statements

have no reliable basis and should be excluded.  *See Weiner*, 2010 WL 3119452, *9 (excluding

proposed class action damages expert on grounds that expert did "nothing more than identify two

possible approaches and assert that they will work in this case . . .  essentially ask[ing] that [the

expert] be taken at his word.").

     Dalrymple also could not address numerous important questions raised by his own

example.  For instance, ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████  Heintz Decl., Ex. 3 (514:12-516:3, *see also* 412:16-415:2).[12] ████████████████

██████████████████████████████████████████████████████████ *See*

*Retirement Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon ("PABF")*, 775

F.3d 154, 162 (2d Cir. 2014) (trustee liability is determined loan-by-loan).  It also violates a

number of legal rules applying to breach of contract cases against a Trustee.  For example, it

███████████████████████████████████████████████████████████

---

[11] Whether or not the Warrantors could have or would have cured the alleged breaches fundamentally affects any damages analysis.  For example, by 2009, many Warrantors were out of business or had filed for bankruptcy.  *See, e.g.,* Carron Report ¶¶ 35-37; Federal Deposit Insurance Corporation, "Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA," *available at* https://www.fdic.gov/bank/individu al/failed/IndyMac.html; *Horton v. IndyMac Fed. Bank*, FSB, No. 09-CV-01818, 2010 WL 3429941, at *2 (E.D. Cal. Aug. 30, 2010).  Thus, if the Trustee requested a repurchase or a cure, but the Warrantor refused, or was unable to repurchase in light of the Warrantor's insolvency, any damages flowing from the Warrantor's refusal necessarily could not be proximately caused by the Trustee's actions.

[12] ████████████████████████████████████████████████████████████████

██████████████████████████████████████████████  Heintz Decl., Ex. 3 (395:3-20, 411:12-415:6).

██████████████████████████████████████████████████████

███████████████████████████████████████████████ *See*

*Boyce v. Soundview Tech. Grp., Inc.,* 464 F.3d 376, 384 (2d Cir. 2006) ("It is settled Second

Circuit law that in a breach of contract case, damages are calculated at the time of the breach.");

*see also* Heintz Decl., Ex. 3 (408:2-409:13).

Indeed, Dalrymple had no ability to explain ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Heintz Decl., Ex. 3 (519:11-521:4). ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ *Id.* (437:20-439:17; 441:23-442:18); *see also*

Dalrymple Report ¶ 37.  Thus, his damage theory is both internally incoherent and does not even

match Plaintiff's theory of liability.  *Roach*, 778 F.3d at 407 (*Comcast* requires that Plaintiff's

"model for determining classwide damages . . . actually measure damages that result from the

class's asserted theory of injury.").

Dalrymple also had no idea how he (or any other expert) could account for the likely

need for litigation by the Trustee to enforce breaches of R&Ws or alleged servicing failures.  He

testified that he did not "have enough information to even begin" assessing how he would

account for the need for litigation in his damages theory; nor did he "understand the role of the

-14-

litigation" in computing damages.  Heintz Decl., Ex. 2 (127:19-128:15); Ex. 1 (214:17-25).[13]  In addition to these factors, Dalrymple could not determine how any litigation-related issues could be accounted for in assessing class members' damages, though these factors would admittedly impact what "cash flow" the Trustee could have obtained in a "but-for" world in which the Trustee sought to enforce breaches of R&Ws or servicing failures by third-parties.  He could not determine whether or how any of the following issues could be reliably determined and accounted for in a damages analysis:

- What information he would need regarding litigation to compute damages (Ex. 2 (127:19-128:15));

- Which investors would bear the cost of litigation necessary to enforce repurchase requests (*id.*, 154:6-155:4);[14]

- How long repurchase litigation would take (*id.*, 154:6-11, 135:10-12);

- How much litigation would cost (*id.*, 135:13-16, 146:15-148:24, 157:17-25);

- Who would bear the cost of repurchase litigation (*id.*, 154:20-155:4);

- Who would receive the proceeds from successful repurchase litigation (*id.*, 156:4-157:2);[15]

- What the likelihood of success of repurchase litigation would be (*id.*, 157:3-6);

- What are common recoveries (or if there are common recoveries) as a proportion of loss in repurchase litigations (*id.*, 157:7-10);

---

[13]Dalrymple surely knew that litigation would affect the "but-for" world because he had previously been involved in repurchase litigation—illustrating that he was familiar with the fact that Warrantors refuse to repurchase pursuant to the terms of the Governing Documents; yet he performed no investigation into this issue.  Heintz Decl., Ex. 2 (89:12-91:2).

[14] This question is significant because it would be the other putative class members whose funds would be used to pay for the litigation, not RPI, because RPI's own Certificates have been reduced to zero by loan write-offs (*i.e.*, RPI's Certificates have already been reduced to zero principal value).  *See* Dkt. 348-1, Dolan Report ¶¶ 71-73.  This is a classic example of a conflict that prevents this case from being appropriate for class treatment.

[15] How to distribute repurchase proceeds among senior versus junior holders is hotly contested in litigation, and because RPI will argue for a different result than senior certificate owners, this is another example of a conflict that prevents this case from being appropriate for class treatment.  *See, e.g.*, Carron Report ¶¶ 53-56, 63-65, 112-13; Dkt. 348-1, Dolan Report ¶¶ 71-73

- Whether the Warrantors in the Covered Trusts were solvent at the time of the alleged breaches (*id.*, 157:11-16);

- What the timeframe of litigation recovery would be (*id.*, 170:6-172:7);

- Whether investors who bore the costs of litigation would be the same who received the benefit of a repurchase recovery (*id.*, 158:2-9).

- Whether there was possibility of settlement (*id.*, 135:17-19);

- What the value of possible settlements might be (*id.*, 135:20-136:17);

- Whether there was a possibility a trustee could lose repurchase litigation (*id.*, 146:8-14); and

- Whether the likelihood of recovery would be different for each Warrantor of the Covered Trusts (*id.*, 161:13-21).

Dalrymple admitted that determining such issues, like the recovery date from any enforcement actions, would clearly be relevant to calculating damages. Heintz Decl., Ex. 2 (170:6-171:14) (to "determine which investors would have benefitted from that additional distribution, you would need to have a [recovery] date because without a date you wouldn't be able to determine the list of investors."); *id.*, Ex. 3 (403:10-406:7) ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *id.* (406:8-25) ███████████████████████████████████ █████████. Yet, he has no proposal for how such issues could be determined, other than on a case-by-case, loan-by-loan basis. *Id.*, Ex. 2 (171:15-172:14); *id.*, Ex. 3 (407:15-25, 505:23-508:6).

Likewise, with regard to Servicer-related breaches, Dalrymple confirms that he does not know how any of the alleged servicing failures he referenced in his own report would or could be addressed in determining damages caused by the Trustee's alleged failure to enforce such

servicing failures.  These include:

- Whether the effect of servicing failures would vary from jurisdiction to jurisdiction (Ex. 2, 322:7-322:10);

- Whether the impacts of concessions to borrowers and government entities would be the same loan to loan (*id.*, 322:11-323:5);

- How excessive servicing fees and other servicing failures would be calculated (*id.*, 323:6-324:15); and

- Whether a loss associated with a delay in foreclosures could have been mitigated (*id.*, 318:12-319:16).

Dalrymple's failure to determine whether any of these issues could be reliably

determined according to common proof renders his opinion ██████████████████

████████ without basis and, therefore, inadmissible.  *See Amorgianos v. Nat'l R.R. Passenger*

*Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[T]he *Daubert* 'requirement that the expert testify to

scientific knowledge—conclusions supported by good grounds for each step in the analysis—

means that *any* step that renders the analysis unreliable under the *Daubert factors renders the*

*expert's testimony inadmissible.*'") (emphasis in original; citation omitted); *Dev. Specialists, Inc.*

*v. Weiser Realty Advisors LLC*, No. 09 Civ. 4085 (KBF), 2012 WL 242835, *8 (S.D.N.Y. Jan.

24, 2012) ("The reliability inquiry is context-specific, and the question before the Court is not

the reasonableness [of the expert's methodology] *in general*, but rather the reasonableness of

using such an approach . . . to draw a conclusion regarding *the particular matter to which the*

*expert testimony was directly relevant*.") (emphasis and alteration in original; internal quotations

and citations omitted).

## C.      Dalrymple's Failure to Propose a Method or to Identify Relevant Information Necessary to the Computation of Damages Makes His Opinion Inadmissible.

Dalrymple's framework is also inadmissible because he has not provided the Court

sufficient information to determine whether his proposed framework can reliably measure

-17-

damages on a class-wide basis.  Indeed, although Dalrymple purports to identify techniques that *could* be used to determine damages, he admits that he has proposed no specific method under his proposed framework, and that without proposing such a method, he does not know whether damages can be reliably calculated.  Heintz Decl., Ex. 1 (67:12-68:14) ("Without actually performing the analysis, it's not possible to make those types of valuations.  So, I can't comment as to the reliability of any calculation without doing it."); *id.*, Ex. 3 (500:9-505:18, 505:23-508:6).  This failure to actually propose and analyze suitable methodologies or "techniques" renders Dalrymple's opinions and report entirely speculative and inadmissible.  *See Weiner*, 2010 WL 3119452, *9.

In *Weiner*, the plaintiff's expert proposed a "yardstick" and "inherent value" approach to measuring damages and stated that he would make use of "class-wide economic data and standard economic methodologies" to develop a class-wide damage opinion.  *Id.* at *7-8.  The expert failed to account for numerous factual issues, however, and failed to determine if reliable studies or market research even existed upon which he could rely.  *Id.*  The court found that, although an expert is not required to "'implement' or 'test' his methodology at the class certification stage, if an expert has "done nothing more than identify two possible approaches and assert that they will work in this case," the opinions are inadmissible.  *Id.*

This is exactly what Dalrymple has done here.  When questioned about the "techniques" he identifies in his report for performing a valuation analysis (¶ 65),[16] Dalrymple responded:



Q.

---

[16] Paragraph 65 in Dalrymple's revised Report is identical to paragraph 57 of the report previously submitted as Dkt. 187-1.



Heintz Decl., Ex. 2 (199:8-200:4, 218:21-25); Ex. 1 (67:12-68:14).  Dalrymple also confirmed

that he would not even know which method to select until after he did an analysis, stating:

Q:     Would you use these three methods or proposed methods to
       measure the losses of investors who have sold their RMBS?

A.     Possibly.

Q.     But you don't know for sure?

A.     I wouldn't know until I were to do the analysis. These are methods
       I *would* consider.

Heintz Decl., Ex. 2 (235:25-236:9) (emphasis added); *see also* Ex. 3 (427:14-25) ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

Because Dalrymple has not actually proposed a damages methodology, he cannot know whether damages can be reliably determined, as even he admits.  Heintz Decl., Ex. 1 (67:12-68:14); *see Weiner,* 2010 WL 3119452, at *9 ("at a minimum, [plaintiff's expert] would need to determine what 'standard economic methodologies' he will employ, identify the relevant 'class-wide economic data' and 'studies and market research, and build an actual algorithm before it could be determined whether [the] proposed methodology can reliably prove injury and causation on a class-wide basis."); *see also Robinson v. Sanctuary Record Groups, Ltd.*, 542 F. Supp. 2d 284, 293 (S.D.N.Y. 2008) (excluding expert opinion and testimony where expert "never tested their calculations as commended by *Daubert*, instead relying exclusively on their many faulty assumptions."), *vacated on other grounds*, 383 F. App'x 54 (2d Cir. 2010).

Dalrymple likewise could not answer whether information is available to conduct the required analysis.  For example, he cannot determine whether he would need to consider realized losses after the alleged breaches (impermissibly reflecting hindsight bias) to determine "cash flow" damages to Certificates.  Ex. 1 (59:21-60:25); *see, e.g.*, *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 387 (S.D.N.Y. 2013) ("Damages are to be judged based on what the parties would have done at the time of contract, and shall not be based on information learned through hindsight.").

Dalrymple's opinion regarding certificate value losses similarly lacks any support.  For example, although Dalrymple opines that ████████████████████████████ ████████████████████████████████████████████████ (¶ 63), he admitted in deposition that he has not done any analysis on whether the loss of subordination actually caused a reduction in value for senior certificates.  Heintz Decl., Ex. 2 (178:20-179:19).  Further, while Dalrymple states ████████████████████████████ ████████████████ (¶ 65), ████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ Heintz

Decl., Ex. 2 (175:14-176:10, 53:22-54:20); *id.* Ex. 3, 428:25-431:16.  Additionally, Dalrymple

has not considered the basic issue of whether the RMBS market is an efficient market, and

whether there is sufficient market transaction data to calculate market-level losses (if any).

Heintz Decl., Ex. 2 (98:5-21, 176:4-177:5); *see also* Dkt. 348-1 (and under seal), Dolan Report,

¶¶ 24-62; Carron Report ¶¶ 88-96.  The "dearth of actual support" underlying Dalrymple's

opinions renders his report inadmissible.  *See Sicav*, at *4; *Weiner*, 2010 WL 3119452, at *9;

F.R.E. § 702.

## II.
## <u>CONCLUSION</u>

For all of the foregoing reasons, the Trustee's motion to exclude Dalrymple's Report and

opinions should be granted.

Dated:   San Francisco, California
         May 22, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By:  */s/ Tera M. Heintz*
     Tera M. Heintz

     One Market, Spear Street Tower
     San Francisco, CA 94105
     +1.415.442.1000
     +1.415.442.1001
     tera.heintz@morganlewis.com

     Attorneys for Defendant, Deutsche Bank
     National Trust Company, as Trustee

DB1/ 92147096.2