UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

ROYAL PARK INVESTMENTS SA/NV,                    :
Individually and on Behalf of All Others         :        Case No. 1:14-CV-4394-AJN-BCM
Similarly Situated,                              :
                                                 :
                Plaintiff,                        :
                                                 :
        -against-                                :
                                                 :
DEUTSCHE BANK NATIONAL TRUST                     :
COMPANY, as Trustee,                              X

                Defendant.

-------------------------------------------------------

**MEMORANDUM OF LAW OF DEFENDANT DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE, IN OPPOSITION TO MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE
<u>AND CLASS COUNSEL OF ROYAL PARK INVESTMENTS SA/NV</u>**

Tera M. Heintz, Esq. (admitted *pro hac vice*)
Joseph Floren, Esq. (admitted *pro hac vice)*
Ashley Krupski, Esq (admitted *pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market Street
San Francisco, CA 94114
Tel: (415) 442-1000
Fax: (415) 442-1001
tera.heintz@morganlewis.com
joseph.floren@morganlewis.com
ashley.krupski@morganlewis.com

Michael Kraut, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000
Fax: (212) 309-6001
michael.kraut@morganlewis.com

Attorneys for Defendant Deutsche Bank National
Trust Company, as Trustee

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT .................................................................................................... 4

I.      ASCERTAINABILITY OBSTACLES PRECLUDE CLASS CERTIFICATION ........... 4

     A.      The Second Circuit Requires Administratively Feasible Identification of Class Members Without the Need for Individualized Mini-Hearings ................. 4

     B.      The Transfer of Litigation Claims Cannot Be Traced Through DTC's or DBNTC's Records or a Claims Administration Process ...................................... 6

     C.      RPI's Overbroad "Temporal Limitation" Exacerbates Ascertainability Issues, Undermines Numerosity, and Creates a Fail-Safe Class ........................ 10

     D.      The Class Certification Issues Here Are Nothing Like a Securities Case .......... 12

II.      INDIVIDUALIZED ISSUES OF FACT AND LAW PREDOMINATE OVER CLASS-WIDE ISSUES ................................................................................. 13

     A.      Resolving the Trustee's Statute of Limitations Affirmative Defense Requires Complex Layers of Individualized Determinations of Fact and Law ............................................................................................... 13

     B.      Individualized Issues of Damages and Causation Predominate ....................... 17

         1.      RPI Fails to Prove that Damages or Causation Can Be Assessed on a Class-wide Basis ..................................................................... 17

         2.      Individualized Determinations Are Required to Determine Causation and Damages for Assigned Claims ........................................ 20

         3.      RPI's Proposed Damages Methodologies Violate the Rules-Enabling Act, Due Process, and Comcast v. Behrend ............................ 22

     C.      RPI Fails to Show That Common Issues Predominate ....................................... 23

III.      RPI IS NEITHER AN ADEQUATE NOR TYPICAL CLASS REPRESENTATIVE AND A CLASS ACTION IS NOT SUPERIOR ........................ 25

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviva Life & Annuity Co. v. Davis*
No. 4:12-cv-00603, 2014 WL 12366406 (S.D. Iowa July 29, 2014) ....................................13

*Bluebird Partners L.P. v. First Fid. Bank, N.A.*
85 F.3d 970 (2d Cir. 1996)...................................................................................................12

*Boyce v. Soundview Tech. Grp., Inc.*
464 F.3d 376 (2d Cir. 2006)..................................................................................................22

*Brecher v. Argentina*
806 F.3d 22 (2d Cir. 2015).............................................................................................2, 5, 10

*Briseno v. Conagra Foods, Inc.*
844 F.3d 1121 (9th Cir. 2017) ................................................................................................5

*Bronx Entertainment, LLC v. St. Paul's Mercury Ins. Co.*
265 F. Supp. 2d 359 (S.D.N.Y. 2003)...............................................................................20, 21

*Carter Wallace, Inc. v. Otte*
474 F.2d 529 (2d Cir. 1972)..................................................................................................10

*Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*
15-cv-10031, 2017 WL 564089 (S.D.N.Y. Feb. 10, 2017) .............................................15, 16

*In re Countrywide Fin. Corp. MBS Litig.*
No. 2:11-ML-02265, 2014 WL 3529677 (C.D. Cal. July 14, 2014) ....................................14

*De Martino v. Rivera*
148 A.D.2d 568 (2d Dep't 1989) ..........................................................................................15

*Eaton v. Keyser*
53 A.D.3d 1029 (3d Dep't 2008) ..........................................................................................15

*In re Enron Corp.*
379 B.R. 425 (S.D.N.Y. 2007)...............................................................................................21

*In re Facebook Inc.*
312 F.R.D. 332 (S.D.N.Y. 2015) ...........................................................................................5

*Fleisher v. Phoenix Life Ins. Co.*
2013 U.S. Dist. LEXIS 99959 (S.D.N.Y. Jul. 13, 2013) ........................................................24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*
    301 F.R.D. 116 (S.D.N.Y. 2014) ..............................................................................13

*Global Fin. Corp. v. Triarc Corp.*
    93 N.Y.2d 525 (1999) ..............................................................................................15

*Gluck v. Amicor, Inc.*
    487 F. Supp. 608 (S.D.N.Y. 1980) ..........................................................................14

*IKB Int'l. S.A. v. Bank of Am.*
    2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014) ..........................................................14

*Jeffries v. Pension Trust Fund of Pension, Hosp. & Benefit Plan of Elec. Indus.*
    172 F. Supp. 2d 389 (S.D.N.Y. 2001)......................................................................11

*Johnson v. Nextel*
    780 F.3d 128 (2d Cir. 2015)........................................................................3, 14, 17

*Kurtz v. Kimberly-Clark Corp.*
    2017 US. Dist. LEXIS 44576 (S.D.N.Y. Mar. 27, 2017) ........................................5

*Lehman Bros. Holdings v. Universal American Mortg. Co., LLC*
    2016 WL 325126, *5 (10th Cir. Jan. 27, 2016) ....................................................21

*In re Lipoderm Antirust Litig.*
    No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097 (N.D. Cal. Feb. 21,
    2017) ...........................................................................................................................5

*Mazzei v. Money Store*
    288 F.R.D. 45 (S.D.N.Y. 2012), *aff'd*, 656 F. Appx. 558 (2d Cir. 2016).................12

*McLaughlin v. Am. Tobacco Co.*
    522 F.3d 215 (2d Cir. 2008).........................................................................14, 20, 23

*Meda AB v. 3M Co.*
    969 F. Supp. 2d 360 (S.D.N.Y. 2013)................................................................18, 22

*In re Nassau County Strip Search Cases*
    461 F.3d 219 (2d Cir. 2006)......................................................................................24

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*
    693 F.3d. 145 (2d Cir. 2012).....................................................................................24

*Phoenix Light SF Ltd. v. DBNTC*
    2016 WL 1212573 (S.D.N.Y. Mar. 28, 2016) ........................................................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Poldon Eng'g & Mfg. Co. v. Zell Elec. Mfg. Co.*
   155 N.Y.S.2d 115 (1955) ........................................................................................20

*Portfolio Recovery Assocs., LLC v. King*
   14 N.Y.3d 410 (2010) ......................................................................................14, 15

*Retirement Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon*
   775 F.3d 154 (2d Cir. 2014).....................................................................4, 16, 24, 25

*In re Rezulin Prods. Liab. Litig.*
   210 F.R.D. 61 (S.D.N.Y. 2002) ...............................................................................14

*Roach v. T.L. Cannon Corp.*
   778 F.3d 401 (2d Cir. 2015)..............................................................................18, 23

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*
   No. 14-CV-4394 (AJN), 2017 WL 1331288 (S.D.N.Y. Mar. 21, 2017) ........................ *passim*

*RPI v. HSBC Bank U.S.A.*
   No. 14-cv-08175, 2017 WL 945099 (Mar. 10, 2017).............................................25

*Ruiz v. Citibank, N.A.*
   2015 WL 462944 (S.D.N.Y. Aug. 4, 2015)..............................................................12

*Schonfeld v. Hilliard*
   218 F.3d 164 (2d Cir. 2000)....................................................................................20

*Seekamp v. It's Huge, Inc.*
   2012 U.S. Dist. LEXIS 33295 (N.D.N.Y. Mar. 13, 2012).......................................24

*Seijas v. Republic of Arg.*
   2017 WL 1511352 (S.D.N.Y. April 27, 2017) ........................................................10

*Sicav v. Wang*
   2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) .................................................4, 17, 19

*St. John's Univ.. v. Bolton*
   757 F. Supp. 2d 144 (E.D.N.Y. 2010) .....................................................................16

*Vaccariello v. XM Satellite Radio*
   295 F.R.D. 62 (S.D.N.Y. 2013) ...............................................................................14

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011)...........................................................................................14, 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Weiner v. Snapple Beverage Corp.*
   No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ........................... 5, 6, 19

**Rules and Regulations**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

**Other Authorities**

3 *Corbin on Contracts* § 554 (1960) ................................................................................ 10

9-51 *Corbin on Contracts* § 51.1 ..................................................................................... 20

## INTRODUCTION

Failing to heed the detailed guidance provided by this Court in its Order denying class certification (Dkt. No. 350), plaintiff Royal Park Investments SA/NV's ("RPI") renewed class certification motion once again provides *no* administratively feasible method to identify proposed class members without individualized hearings. RPI *does not even mention*, let alone address, the two most significant ascertainability obstacles identified by the Court: (1) the difficulty in tracing the *transfer* of beneficial interests between investors over the extended class period; and (2) the need for individualized mini-hearings to determine and apply the appropriate jurisdiction's law governing the assignment of litigation claims between such investors.

RPI's sole response to this Court's Order is to add a so-called "temporal limitation": a bizarre characterization for a decade-plus class period that would sweep in every investor who has ever owned or will own Certificates in the Covered Trusts, from their inception in 2006 and 2007, to an unspecified future date when class notice is issued. The proposed "temporal limitation" has nothing to do with RPI's allegations and does nothing to help identify class members. Similarly unhelpful is RPI's inclusion of the phrase "were damaged by the conduct of DBNTC alleged in the Complaint" (as proposed in RPI's last round of briefing). RPI's own damages expert—who has conducted *no new analysis* in response to the Court's Order—admits that he cannot identify a single investor damaged by the Trustee's alleged conduct, has no method for doing so, does not know what information he would need to do so, and has no "understanding of what constitutes a breach and how that translates into an economic event" under his own proposed damages framework.

Rather than grappling substantively with the problems identified by the Court, RPI's renewed motion effectively seeks reconsideration of this Court's prior order, arguing in essence that it does not need to comply with the express requirements of *Brecher v. Argentina*, 806 F.3d

22, 24 (2d Cir. 2015).  RPI thus cites irrelevant Ninth Circuit cases to suggest that the ascertainability obstacles identified by this Court can be deferred to a post-settlement claims process.  RPI ignores, however, that the Ninth Circuit has expressly rejected an ascertainability requirement, in direct conflict with *Brecher.*   In the Second Circuit, ascertainability is a *threshold* issue that must be resolved *before* other Rule 23 factors are considered.  Ord. at 7 ("until a class of persons alleged to be entitled to relief is defined, the Court cannot conduct the numerosity, commonality, typicality and adequacy analysis that must precede certification.").[1]

RPI also mischaracterizes deposition testimony and cites inadmissible opinions of its own attorney to suggest that beneficial owners can be identified through the Depository Trust Company's ("DTC") and Deutsche Bank National Trust Company's ("DBNTC" or the "Trustee") records.  RPI also proposes that class members can be identified in a post-settlement claims administration process.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████   RPI's reliance on mischaracterized and incompetent "evidence" only underscores its inability to provide this Court "critical" guidance at the certification stage for "how the case will be tried, including how the class is to be ascertained."  Ord. at 18.

Even if accepted, RPI's evidence focuses only on an intermediate step for ascertaining the class: the identification of beneficial owners, *not class members*.  RPI concedes that not all beneficial owners would be members of the class, as this Court recognized.  Ord. at 18 ("Given RPI's assertion in its reply papers that these sorts of investors [who assigned away their claims] fall *outside* its proposed class as currently defined, the obstacles to their identification as

---

[1] Internal citations are omitted and all emphasis added in quotations, unless otherwise noted.

recognized by Mr. Dalrymple constitute further evidence of the difficulties to be confronted in distinguishing class members from non-class members") (citing RPI's Reply at 2).  Yet, RPI conveniently ignores this Court's determination that identification of investors who now own any right to assert claims for alleged breaches occurring nearly a decade ago would require tracing *the transfers* of beneficial interests between investors, and determining and applying the appropriate law governing the assignment of litigation claims.  Ord. at 13-15.  These issues necessarily require adjudications of law and fact *by the Court*, not by a claims administrator.  Ord. at 15-16.  Through its silence, RPI concedes that it cannot overcome these hurdles.

Further, the need to trace the transfer of litigation claims between investors underlies every aspect of proof in this case and cannot be relegated to a post-judgment process.  Elementary New York law mandates that an assignee of a claim, like RPI, can *never* stand in a better position than and is subject to the *same defenses* as its assignor.  Thus, every aspect of this case, including identification of class members, and adjudication of statutes of limitations, causation and damages, will require individualized factual and legal determinations necessary to identify the original assignors of the claims.  RPI's decision to eschew any "continuous holder" requirement in defining the proposed class—a class of which it would not be a member and could not represent—makes this inevitable.  These complex choice-of-law issues alone, even before considering the individualized determinations necessary to adjudicate the substantive issues, will "overwhelm the ability of the trier of fact meaningfully to advance the litigation through classwide proof." *Johnson v. Nextel*, 780 F.3d 128, 141 (2d Cir. 2015).

Finally, RPI's argument that assignability issues do not prevent certification of securities class actions only underscores RPI's continued failure to grasp the unprecedented nature of its own claims.  RPI asserts common law breach of contract and breach of trust claims, allegedly

accruing over eight years ago, arising out of ownership of securities that transferred hundreds or even thousands of times over a class period stretching more than ten years, between investors who resided and traded all over the world, with *no* uniform law governing how their claims transferred or the applicable statutes of limitations, and *no* identifiable loss-causing event that allegedly harmed investors at the same time, in the same way. *Cf. Sicav v. Wang*, 2015 WL 268855, at *2 (S.D.N.Y. Jan. 21, 2015) ("In a typical securities fraud class action, plaintiffs allege that the market reacted negatively on a given day or several-day period to a corrective disclosure, causing a decline in stock value that simultaneously harmed all shareholder class members in the same way."). On top of all of this, RPI must prove its breach of contract claims on a loan-by-loan, trust-by-trust basis. *Retirement Bd. of Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon ("PABF")*, 775 F.3d 154, 162 (2d Cir. 2014). This means that proving and defending this case will require a painstaking loan-by-loan, assignor-by-assignee analysis. The proliferation of individualized factual and legal determinations necessary to adjudicate this case creates insuperable obstacles to certification.

For these reasons, and as demonstrated below, RPI's motion should be denied.

## ARGUMENT

## I.   ASCERTAINABILITY OBSTACLES PRECLUDE CLASS CERTIFICATION

### A.   The Second Circuit Requires Administratively Feasible Identification of Class Members Without the Need for Individualized Mini-Hearings

Defying controlling Second Circuit precedent, RPI relies heavily on Ninth Circuit case law to suggest that it need only add a temporal limitation to its class definition to meet Rule 23's implied requirement of ascertainability and that any remaining issues can be addressed through a post-settlement or post-judgment claims administration process. Opp. 3-5 (citing *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) and *In re Lipoderm Antirust Litig.*,

No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097, at *106 (N.D. Cal. Feb. 21, 2017)).  But the Ninth Circuit expressly declines to recognize the implied requirement of ascertainability. *Briseno*, 844 F.3d at 1124-25 nn. 3-4; *Lipoderm*, 2017 U.S. Dist. LEXIS 24097, at *105.  Those cases directly conflict with *Brecher's* holding that "to pass muster under Rule 23, a putative class must both be defined by objective criteria that are administratively feasible and be susceptible to the identification of its members without require[ing] a mini-hearing on the merits of each case." Ord. at 8 (citing *Brecher*, 806 F.3d at 24-25).[2]  The out-of-circuit cases have no application here.

Further, none of the in-circuit cases cited by RPI found the ascertainability requirement met in circumstances remotely resembling this case.  Each of the post-*Brecher* cases cited by RPI specifically found that a mini-hearing on the merits would *not* be required to ascertain class members pursuant to manifestly objective and administratively feasible criteria defining the class.  *See, e.g.*, *In re Facebook Inc*., 312 F.R.D. 332, 352-353 (S.D.N.Y. 2015) (finding that mini-hearings would not be necessary to apply "highly ascertainable" "institutional" versus "retail" investor subclass definitions).  Other cases cited by RPI relate to whether a consumer's inability to produce receipts proving the purchase of a consumer product precludes a finding of ascertainability.  *See, e.g.*, *Kurtz v. Kimberly-Clark Corp*., 2017 US. Dist. LEXIS 44576, at *124-127 (S.D.N.Y. Mar. 27, 2017) (ascertainability met where consumers can self-identify purchases).  Even on this straightforward issue, however, courts are split as to whether self-identification meets ascertainability requirements.  *Compare Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (class is not ascertainable where plaintiffs offered "no basis to find that putative class members would have retained a receipt, bottle label, or any other concrete documentation of their purchases of [the

---

[2] DBNTC cites to the Court's Order according to the slip opinion pages.  *See also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co*., No. 14-CV-4394 (AJN), 2017 WL 1331288 (S.D.N.Y. Mar. 21, 2017).

product]" as opposed to other *Snapple* products).

In this case, however, class membership *cannot be determined* through self-identification. As explained by Mr. Dolan, investors typically do not know from whom or to whom they *directly* purchased or sold their interests, let alone the full chain of ownership from January 2009 to the present.  Expert Report of John Dolan ("Dolan"), ¶ 25;[3] Heintz Declaration, Ex. 2.[4]  And even if investors had such information, determination of whether *litigation claims* transferred with the transfer of beneficial ownership in the Certificates necessarily requires individualized factual and legal determinations *by the Court*.  Ord. at 15 ("[I]dentifying class members with contract claims in the face of aftermarket trading across multiple domestic and international jurisdictions is likely to be a two-part inquiry.  First, it would be necessary to determine, based on New York's fact-intensive 'grouping of contracts' choice-of-law framework, which jurisdiction's laws governs the relevant assignments . . . .  And, second, the Court would have to apply that law to determine whether claims were assigned along with the Certificates or retained by the seller.").  Such legal determinations *cannot be resolved* through class member affidavits.

### B.     The Transfer of Litigation Claims Cannot Be Traced Through DTC's or DBNTC's Records or a Claims Administration Process

Tracing the transfer of beneficial interests or litigation claims between investors also cannot be accomplished through DBNTC's or DTC's records, or through a claims administration process.  To start, RPI patently mischaracterizes testimony by DBNTC's witnesses to argue that DBNTC maintains records of all current and former certificate owners.  Mot. at 6.  ███████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

---

[3] DBNTC incorporates by reference Mr. Dolan's report as previously submitted.  Dkt. No. 348-1 (and under seal).

[4] Consistent with these difficulties, other plaintiffs asserting similar claims against RMBS trustees assert (correctly) that tracing ownership interests is not possible without individualized inquiries.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████[5]

  While RPI asserts that "records from DTC Participants can identify all Class Members" (Mot. at 6), it cites solely to the declaration of its own attorney, Luke Olts, ████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ Olts Decl., ¶¶ 4-7, Exs. C, D, E.  RPI's inability to submit evidence by an expert with actual experience in this arena speaks volumes, as Mr. Olts lacks *any* foundation for the alleged analysis of unauthenticated and hearsay documents.  *See* Objections to Olts Declaration filed herewith.[6]  Further, the "analysis," such as it is, does not support RPI's assertion that class members can be ascertained from DTC records.  RPI's own expert admits that DTC holds securities only on behalf of Participants, not beneficial owners.  Dalrymple, ¶¶ 41-42.  █████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████████ owners would need to be pieced together from the records of at least 147 different Participants.

  And this would be just the first step for identifying potential class members.  DTC's "Participants" are usually *not* the beneficial owners: they are intermediate financial institutions whose records must be tracked to identify beneficial owners (or further intermediaries).  Ord. at

---

[5] █████████████████████ could be used to trace the transfer of beneficial interests between investors over the last ten years, much less avoid the need for individualized hearings.  Olts Decl., Ex. J.

[6] RPI's use of an attorney declaration appears designed to avoid valid cross-examination.  ███████████ ██████████████████████████████████████████████████████ Heintz Decl., Ex. 3 (490:20-497:5).

18 (citing Dolan ¶ 32 and Dalrymple ¶¶ 41-43).  Thus, DTC's records reveal little about how difficult it would be to identify the ultimate beneficial owners, particularly given that some trades may have cleared through European clearing houses.  Dolan, ¶ 47.  RPI does not address *any* of the difficulties in identifying beneficial owners, as explained by Mr. Dolan and recognized in this Court's Order, such as the lack of unique identifiers, the layered nature of ownership, and the complex financial instruments that hold beneficial interests.  Ord. at 12-13; Dolan ¶¶ 24-34.  RPI simply asserts that, because DTC has records of its Participants, and the Participants have records of beneficial owners, it will be administratively feasible to identify beneficial owners.  Mot. at 8.  But, even if feasible, RPI once again submits "no evidence that such identification exercise would not require individualized hearings or inquiries."  Ord. at 18.

What is more, even if all beneficial owners could conceivably be identified, this is still not the end of the analysis.   RPI concedes, as it must, given its ten-year proposed class period, that not all beneficial owners would be class members and that the class would necessarily exclude any beneficial owners who assigned away their litigation claims.  Ord at 18.  There are at least hundreds of transactions in the Certificates after January 2009, each of which this Court would need to analyze to determine whether investors did or did not transfer litigation claims to the purchaser.  Dolan, ¶ 51.  RPI, however, once again provides *no* evidence or explanation for how to identify the assignors of litigation claims as required to differentiate between class members and non-class members.[7]  Dalrymple says nothing on this subject, and the trading records on which he relies only show that interests in certificates were aggregated and disaggregated through trading in a manner that makes tracing their provenance an impossibility,

---

[7] Investors who assigned away litigation claims are far from hypothetical.  RPI is an alleged assignee of claims it is pursuing here and also "subsequently sold some or all of its holdings under a contract by which it expressly retained its litigation rights."  Ord. at 15; ¶¶ 27-28.  Hundreds of investors sold their Certificates after January 2009, some or many of whom may have automatically or expressly assigned away their litigation claims.  Dolan, ¶ 51; Ord. at 14.

even with individualized inquiry.  Heintz Decl., Ex. 1 ("Carron Report"), ¶¶ 121-129; 114-120.

RPI's claims administration expert, Peter Crudo, also adds nothing to this point. 

[8] Mr. Crudo thus does not opine that he could establish administratively feasible criteria for identifying class members. Nor could he, as determining and applying the appropriate law that governs the transfer of litigation claims between investors is the exclusive domain of the Court and would necessarily require individualized hearings, in conflict with the requirements of *Brecher* and Rule 23. *Carter Wallace, Inc. v. Otte*, 474 F.2d 529, 547 (2d Cir. 1972) ("resolution of the legal issue is

RPI's efforts to gloss over these ascertainability issues cannot withstand scrutiny.

for the court," not for experts); 3 *Corbin on Contracts* § 554, p. 227 (1960) ("Construction [of a contract] is always a matter of law for the Court").[9]

### C. RPI's Overbroad "Temporal Limitation" Exacerbates Ascertainability Issues, Undermines Numerosity, and Creates a Fail-Safe Class

RPI's proposed temporal limitation also does nothing to help identify class members and, in fact, only exacerbates RPI's ascertainability problems, while at the same time undermining its numerosity analysis, and creating an impermissible fail-safe class. RPI treats the "temporal limitation" as a box to be checked, rather than a substantive criterion to help identify class members. But RPI's proposed class period bears no relationship to its claims or allegations and does nothing to help identify investors who currently own claims for alleged breaches years ago.

Indeed, RPI's decision to start the class period when the Certificates issued in 2006 and 2007, *years* before any alleged breaches, seems inexplicable until one understands that RPI's numerosity expert has no idea how to count investors for a shorter class period. Mr. Dalrymple admits that, for purposes of his numerosity analysis, he counted *every* unique investor as part of the class, even if the investor had both bought and sold certificates *years* before the Trustee's alleged breaches. Ex. 5 (100:21-101:14; 107:3-108:19).[10] When asked how a person who

---

[9] RPI's efforts to side-step *Brecher's* ascertainability standard on the grounds that, on remand, the district court approved a settlement in that case makes little sense. First, Judge Griesa certified a settlement class of "*continuous holders.*" *Seijas v. Republic of Arg.,* 2017 WL 1511352, *2 (S.D.N.Y. April 27, 2017). While this type of "temporal limitation" *may* serve to identify class members in certain circumstances, it is completely absent here. Ord. at 11 n.4. And RPI, which is not a continuous owner of any Certificates (acquiring them only after alleged breaches began, Complaint ¶ 30), would not be part of such a class. Second, Judge Griesa did not determine that even such a narrowly-defined class met the standards of *Brecher*; to the contrary, he cited continued uncertainty about decertification efforts in the future, as well as individualized issues impacting damages, as reasons to accept the settlement. *Seijas,* 2017 WL 1511352 at * 6. Thus, the eventual settlement in *Brecher* provides no insight for how the Court should identify class members here. Further, RPI's efforts to distinguish *Brecher* as presenting more difficult ascertainability issues is wishful thinking. *Brecher* involved an undisputed default on a single day. *Id.* at *2. RPI, on the other hand, alleges hundreds, if not thousands of breaches, each implicating its own individualized constellation of law and facts. *See* § II *infra*.

[10] Dalrymple has been deposed in both this matter and *Royal Park Inv. NA/SV v. U.S. Bank*, 14-cv-02590-VM-JCF, and has testified that his reports, methodologies, and opinions in both cases are substantially identical, save for the name of the Covered Trusts and the name of the Trustee. Ex. 5 (27:13-18; 28:22-29:3); Ex. 3 (361:22-362:18). As such, his admissions in each deposition are relevant and citable here. *Royal Park Inv. NA/SV v. U.S. Bank*, 14-cv-02590-VM-JCF, Order Modifying Protective Order, Dkt. 116; *see also Hertz v. Graham*, 23 F.R.D. 17, 22

-10-

bought and sold years before the Trustee's alleged breaches could possibly have been damaged by the alleged breaches, Mr. Dalrymple admitted that he could not answer the question because he had no understanding "of what constitutes a breach, and how that translates into an actual economic event that would affect value." Ex. 3 (362:19-365:22); Ex. 5 (87:6-89:20, 110:16-113:3, 96:16-97:24). He also admittedly would have no ability to identify or exclude individuals who had assigned away their claims, or to determine how many investors would be included in a class period starting in January 2009. Ex. 5 (95:24-96:5; 96:16-98:23); Ex. 3 (469:8-16).

While RPI clings to its sweepingly overbroad class period in an apparent effort to preserve Mr. Dalrymple's numerosity opinion, this strategy creates new obstacles to certification, including undermining RPI's evidence of numerosity. RPI cannot just count up all unique investors who ever held certificates in the Covered Trusts, leaving the Court to guess how many of those investors have claims against the Trustee for alleged breaches in January 2009 (or how to identify them). *Jeffries v. Pension Trust Fund of Pension, Hosp. & Benefit Plan of Elec. Indus.*, 172 F. Supp. 2d 389, 394 (S.D.N.Y. 2001) ("[a]lthough the court may make common sense assumptions to support a finding of numerosity, it cannot do so on the basis of pure speculation without any factual support.").

Further, RPI's class definition results in an unworkable fail-safe class because it predicates class membership solely on the success of RPI's substantive claims, *i.e.*, a finding that holders of Certificates were damaged "as a result of" the Trustee's alleged breaches. Such a "fail-safe" class, which is defined by legal injury, impermissibly "shields the putative class members from receiving an adverse judgment." *Mazzei v. Money Store*, 288 F.R.D. 45, 55

---

(S.D.N.Y. 1958) ("Where depositions and testimony from a prior trial are sought to be used at a subsequent trial and the issues are substantially the same, and the interest of the objecting party in the prior action was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end.").

(S.D.N.Y. 2012), *aff'd*, 656 F. Appx. 558 (2d Cir. 2016).  "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment."  *Id*.  Fail-safe classes present "myriad problems" including that they "require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation."  *Ruiz v. Citibank, N.A.*, 2015 WL 462944, at *7 (S.D.N.Y. Aug. 4, 2015); *Mazzei*, 288 F.R.D. at 55 (a fail-safe class "prevents an adverse judgment being entered against plaintiffs" and is also "unmanageable because the members of the class could only be known after a determination of liability.").  If the Court finds that the Trustee did not breach, or that investors were not damaged, the investors are simply not part of the class and thereby shielded from an adverse judgment.  *Ruiz*, 2015 WL 462944, at *7.  RPI's attempt to overcome inherent ascertainability problems by linking class membership to an ultimate merits resolution only further undermines its certification efforts.

### D.     The Class Certification Issues Here Are Nothing Like a Securities Case

RPI also cannot gloss over these issues through glib comparisons with securities fraud class actions.  RPI is not asserting a securities fraud claim.  In addition to the basic differences identified above, federal securities claims are governed by uniform federal law providing that litigation claims are not automatically assigned with the transfer of the security.  *Bluebird Partners L.P. v. First Fid. Bank, N.A.,* 85 F.3d 970, 974 (2d Cir. 1996); *see also Aviva Life & Annuity Co. v. Davis*, No. 4:12-cv-00603, 2014 WL 12366406, *12 (S.D. Iowa July 29, 2014) ("express assignments are incredibly rare and have only ever been recognized in two cases").  As such, unlike here, class membership in a securities case can be defined by purchase and holding of the security in relation to the alleged misconduct and loss-causing event, which can serve as objective, administratively feasible criteria for identifying class members that are not dependent

-12-

upon individualized tracing or choice-of-law determinations.[11]

Here, where there is no uniform law governing assignability, the class period cannot serve the same function.  Ord. 13-14 ("the standing of those 'hundreds' of investors who assigned or acquired Certificates via the secondary market, Dolan Rep. ¶ 51, to assert, for example, breach of contract claims, may well turn on both the nature and terms of the assignments themselves (as well as any predecessor assignments) and on the particular jurisdiction whose law governs those assignments.").

## II.   INDIVIDUALIZED ISSUES OF FACT AND LAW PREDOMINATE OVER CLASS-WIDE ISSUES

The same types of individualized determinations required to identify class members also infect virtually every aspect of proof in this case, including statute of limitations, causation and damages.  These individualized issues cannot be deferred to a post-judgment process and massively overwhelm any possible common issues.

### A.   Resolving the Trustee's Statute of Limitations Affirmative Defense Requires Complex Layers of Individualized Determinations of Fact and Law

Adjudicating the Trustee's statute of limitations defense alone requires individualized determinations that would swamp any common issues.  In determining whether common issues predominate, courts should consider whether defenses such as the statute of limitations can be established with common proof.  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *Vaccariello v. XM Satellite Radio,* 295 F.R.D. 62, 67-68 (S.D.N.Y. 2013); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002).  Rule 23 *cannot inhibit* a defendant's right to litigate such defenses.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011).

---

[11] In such cases, "damaged thereby" language is not the sole or even primary criterion for determining whether an investor is in the class.  Ord. at 13 n.7 (*distinguishing e.g., Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014)).  It is also worth noting that, unlike here, federal securities claims are subject to uniform statutes of limitations subject to common proof.  *See, e.g., id.* at 133-134.  See § II(A) *supra*.

Under the New York borrowing statute, if claimed injuries are purely economic, assigned claims are governed by the statute of limitations of the jurisdiction of the *assignor's* residence, *i.e.*, where the economic injury occurred. *Gluck v. Amicor, Inc.*, 487 F. Supp. 608, 613 (S.D.N.Y. 1980) (if plaintiff asserts an assigned claim, statute of limitations of assignor's residence applies); *Portfolio Recovery Assocs., LLC v. King,* 14 N.Y.3d 410, 416-17 (2010) (same).[12] Thus, to determine the applicable statute of limitations, this Court would need to identify the owner of the claim *at the time each alleged breach accrued*, and then trace the transfer of that claim (if any) to the current owner. As detailed in Section I *supra*, even this first step would require individualized choice-of-law issues that would overwhelm any common issues. *Johnson*, 780 F.3d at 148 (if a class action would require application of state law with significant variations, "the case for finding predominance of common issues and the superiority of trying [the] case as a class action diminishes to the vanishing point.")

On top of this complexity, the Court would then need to determine the "residences" of each investor that owned the Certificates at the time of the alleged breaches. *Portfolio Recovery*, 14 N.Y.3d at 416; *De Martino v. Rivera*, 148 A.D.2d 568, 570 (2d Dep't 1989) (residency is determined at time cause of action accrued, not when the action was commenced). For individuals, "[r]esidency is a factual issue that 'turns on whether [plaintiff] ha[d] a significant connection with some locality in the [s]tate as the result of living there for some length of time during the course of a year.'" *Eaton v. Keyser*, 53 A.D.3d 1029, 1030 (3d Dep't 2008). For corporations, New York courts have not decided whether the state of incorporation or principal place of business controls where the impact of the loss was sustained and thus, if there is a conflict, which jurisdiction's statute of limitations applies. *Global Fin. Corp. v. Triarc Corp.*, 93

---

[12] *See also IKB Int'l. S.A. v. Bank of Am.*, 2014 WL 1377801, at *6 (S.D.N.Y. Mar. 31, 2014); *In re Countrywide Fin. Corp. MBS Litig.*, No. 2:11-ML-02265, 2014 WL 3529677, at *6 (C.D. Cal. July 14, 2014) (applying statute of limitations of the *assignor of RPI's claims* under New York borrowing statute) (emphasis added).

-14-

N.Y.2d 525, 530 (1999).  And these are just the preliminary determinations.  The Court would then need to apply the statutes of limitations, accrual, and tolling rules of potentially dozens of different states and countries, which, in turn, would spawn countless additional individualized inquiries.  *Portfolio Recovery*, 14 N.Y.3d at 416-17; Dolan ¶¶ 42-46; Dalrymple ¶ 50.

Judge Koeltl's recent decision in *Commerzbank AG v. Deutsche Bank National Trust Co.*, 15-cv-10031, 2017 WL 564089 (S.D.N.Y. Feb. 10, 2017), an individual RMBS investor action against an indenture trustee, illustrates the inherently individualized nature of this defense.  In *Commerzbank AG*, the plaintiff produced documents reflecting the entire chain of transfer from the original assignor to the plaintiff, as required to prove standing, which allowed the court to identify and apply the law of the original assignor's residence, *Germany*, to the plaintiff's claims.  *Id.* at *2-3.  Yet, even with this obstacle addressed, the court spent nearly twenty pages of a 32-page opinion analyzing the various individualized issues bearing on this defense, including: (a) competing experts' opinions regarding German law; (b) the transfer history of the certificates and claims; (c) application of *American Pipe* tolling rules; (d) the locus of plaintiff's economic injury based on its business operations; (e) whether to apply the "financial base" exception to the "economic injury" test based on the assignor's business operations; and (f) when plaintiff knew about all elements of the claim as required to trigger running of the statute of limitations under German law.  All of this analysis was required for a claim by *one* plaintiff under the law of *one* jurisdiction, where the full chain of transfer history was *fully known* (pursuant to private transfers).  Any expectation that such determinations could be made for hundreds of investors, whose transfer histories are unknown or unknowable, under the laws of dozens or more jurisdictions, based on the circumstances of each assignor, is preposterous.[13]

---

[13] RPI has tried to circumvent this problem by suggesting that New York's six-year statute of limitations would apply to the claims of all investors because the Governing Agreements have a New York choice of law provision.

This is particularly true given that the alleged breaches potentially number in the hundreds (or even thousands). *PABF*, 775 F.3d at 161-62. This Court would thus have to perform a separate tracing and statute of limitations analysis for each investor/assignor at the time of *each* alleged breach. *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 163 (E.D.N.Y. 2010) (statute of limitations runs from date of breach). In addition, RPI asserts a breach of trust claim based on the Trustee's alleged conflicts of interest, which is governed by *different* statutes of limitations. *See, e.g., Phoenix Light SF Ltd. v. DBNTC*, 2016 WL 1212573 at *4 n.2, *14 (S.D.N.Y. Mar. 28, 2016) (three-year statute of limitations). Thus, this Court would be required to conduct this individualized analysis *again* for each investor's breach of trust claim.

This task is further complicated because of the fungible nature of beneficial interests. For example, some investors purchased large interests from multiple prior owners residing in different jurisdictions, meaning that a single investor's breach of contract claim may be subject to multiple, different statutes of limitations, accrual rules, and tolling rules. Dolan, ¶¶ 42-46. This issue thus cannot be resolved through use of subclasses, even assuming current claim owners could be identified in the first instance. Nor can it be resolved at the damages stage, as admitted by RPI's expert. Ex. 6 (268:5-269:16).[14]

The statute of limitations is among the Trustee's critical defenses. Because RPI waited

---

But New York's borrowing statute *is* New York substantive law. It "borrows" the statute of limitations of foreign plaintiffs and assignors to prevent abuse. *Commerzbank AG,* 2017 WL 564089 at *8. RPI also argues that New York's six-year statute of limitations should apply because the claims really belong to DTC as the sole "Certificate Holder" with standing to sue as a third-party beneficiary. *See, e.g.,* Dkt. No. 283, at 5. RPI, however, cannot establish that DTC's residence is the place of "economic injury." *Commerzbank AG,* 2017 WL 564089 at *12-13. Indeed, RPI argued in this and other cases that DTC did not even have Article III standing to assert a breach of contract claim because it did not suffer *any* economic injury. *See* Dkt. No. 45, at 10; *Royal Park Investments SA/NA v. HSBC Bank USA Nat'l Ass'n*, 14-cv-8175-LGS-SN, Dkt No. 32, at 33. If DTC were, in fact, the true party in interest here, then RPI would have no standing to assert its claims and its numerosity argument would also fail.

[14] Determining the applicable statute of limitations would be further complicated by the complex special-purpose financial entities that beneficially owned Certificates. For example, Plaintiff alleges that it was assigned litigation claims from three Collateralized Debt Obligations ("CDO"): Clifton, Nassau and Pacific Pinnacle. *See* Dkt. 348-5. We are unaware of any authority governing how to determine a CDO's "residency."

nearly six years after the alleged breaches to file suit, claims of investors from jurisdictions with three-, four-, and five-year statutes of limitations—such as California (four years), Delaware (three years), Florida (five years), Germany (three years), Maryland (three years), and Pennsylvania (four years)—are likely time-barred.  This defense alone makes certification of this case impracticable.  *Johnson,* 780 F.3d at 148 (if "variations in state law present 'insuperable obstacles' to determination of liability based on common proof, such variations defeat the predominance of common issues and the superiority of trying the case as a class action.").[15]

> **B.**  **Individualized Issues of Damages and Causation Predominate**
>
> > **1.**  **RPI Fails to Prove that Damages or Causation Can Be Assessed on a Class-wide Basis**

RPI also fails to meet its burden to establish how it can "concretely" and "reliably" establish damages and economic injury on a class-wide basis.  *See Sicav*, 2015 WL 268855, at *6.[16]  As further detailed in the Trustee's accompanying *Daubert* motion, RPI's expert failed to conduct *any* analysis to confirm, based on *any* evidence, that class-wide injury can be demonstrated through common proof.  Ex. 5 (94:5-19, 128:22-129:8); *see generally* Ex. 1 (Carron).  Darlymple opines that damages "can be" calculated class-wide in two ways: (a) by comparing the cash flow to Certificates in the actual world with the cash flow in the "but-for" world if the Trustee had complied with its contractual obligations; and (b) by comparing the hypothetical but-for "value" of the Certificates, assuming such additional cash flow, with the so-called "actual value" of the Certificates.  Dalrymple Rep., ¶¶ 51-52, 56.  However, he could not answer even the most basic questions about how causation and damages of class members could be determined, or what factors might be relevant to such analysis, such as:

---

[15] The Trustee incorporates by reference arguments related to the continuing breach doctrine.  Dkt. 347, at 17 n.15.

[16] The failure to provide a class-wide damages theory is a factor in determining "whether issues susceptible to generalized proof 'outweigh' individual issues."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

- What information he would need to determine whether *any* of the investors in the "class" were damaged by the Trustee's alleged conduct (Ex. 5 at 94:5-19).

- Whether an investor who bought and sold certificates *before* the Trustee's alleged breaches could have been damaged or suffered economic loss as a result of the breach.  (*id.* 110:21-112:4, 264:20-266:1).

- Whether the prices paid by investors included in the proposed class could have taken into account losses caused by the Trustee's alleged breaches and, if so, whether such investors would be damaged (*id.* 143:16-145:22; 141:8-4).

- Whether he would need to know *when* the Trustee's alleged breaches occurred to determine whether and which investors were damaged or suffered economic loss due to the breaches (*id.* 95:13-23).

- Whether he would consider evidence of losses incurred *after* the alleged breaches to determine damages (which is legally impermissible) (*id.* 59:21-60:25).[17]

- What specific valuation techniques he would use to measure losses of Certificate value allegedly caused by the Trustee's breaches (*id.* 61:12-62:1).

- Whether there is sufficient information for each of the certificates to determine whether loss of market value was due to loss of subordination caused by the Trustee's breaches versus other market forces (*id.* 82:14-24).

- Whether *any* damages would exist under his damages framework if RPI is not able to prove that there would have been additional cash flow to investors in the but-for world (*id.* 53:14-54:7, 238:13-239:19).

- Whether there must have been additional cash flow in the but-for world during the time period that an investor held a certificate for that investor to be damaged (*id.* 112:5-113:3).

Where, as here, plaintiff has not "proposed a suitable methodology for establishing the critical elements of causation and [damages] on a class-wide basis," certification is appropriately denied.  *Snapple*, 2010 WL 3119452, at *9 (denying certification where plaintiff's expert failed to perform empirical analysis, identify relevant data, or determine that proposed methodologies would be workable to establish causation or damages); *Sicav*, 2015 WL 268855, at *10-11 (denying certification where plaintiff's expert failed to make a "credible case . . . based on actual

---

[17] *See, e.g., Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 387 (S.D.N.Y. 2013) ("Damages . . . shall not be based on information learned through hindsight.")

evidence" that "price injury to all class members can be established by common proof.").

As explained in the accompanying declaration of Mr. Carron, proof of injury and damages of class members would necessarily depend upon highly individualized determinations, which would be different for each supposed breach, each investor, and each tranche of Certificate issued by each Trust.  Carron, ¶¶ 19-70.  The individualized factors needed to determine alleged damages of investors include, among many others: (1) when each investor bought Certificates in relation to the alleged breaches; (2) when each investor held or sold the Certificates in relation to when additional cash (if any) would have flowed to investors in the but-for world; (3) the seniority of each investor's Certificates and whether the investors would have borne the costs of litigation or other enforcement actions in the but-for world; (4) the price each investor paid for its Certificates and whether such price reflected any losses alleged by RPI; and (5) the waterfall structure in place at the time of each alleged breach and how additional cash flow (if any) would have flowed to each investor based on the seniority of its Certificates.  *Id.* These purely individualized issues preclude certification.  *McLaughlin,* 522 F.3d at 230.[18]

### 2.     Individualized Determinations Are Required to Determine Causation and Damages for Assigned Claims

Further individualized inquiries would be required for members asserting assigned claims because those investors' claimed damages are limited to the damages incurred by the assignors of the claims *before* the Certificates and claims were transferred.  *Bronx Entertainment, LLC v. St. Paul's Mercury Ins. Co.*, 265 F. Supp. 2d 359, 361 (S.D.N.Y. 2003) (assignee of claim can only assert damages of assignor incurred before assignment, not its own damages, based on

---

[18] RPI will likely argue that it does not need to show damages with certainty because the Trustee, as the alleged "wrongdoer," bears the burden of any uncertainty in calculating damages.  But that rule does not apply where the *existence* of damages is uncertain.  *Schonfeld v. Hilliard,* 218 F.3d 164, 175 (2d Cir. 2000).  Dalrymple admits that he has no idea whether individual class members were damaged.  Ex. 6 at 270:2-16, 281:7-283:14.  Further, RPI cannot avoid the fact that determination of causation and damages is necessarily individualized.

"elementary ancient law that an assignee never stands in any better position than his assignor."); *Poldon Eng'g & Mfg. Co. v. Zell Elec. Mfg. Co.*, 155 N.Y.S.2d 115, 117 (1955) (plaintiff, as an assignee, "may not recover from the defendant any damages arising out of a breach of contract which it, the plaintiff, sustained; it is limited to those which [the assignor] suffered"); 9-51 Corbin on Contracts § 51.1 ("the rights of the assignee can rise no higher than those of the assignor").

Application of this "elementary ancient" law to this case would require an untold number of individualized inquiries.  For example, to comply with the requirement that damages of an assignee cannot be greater than the damages of the assignor, this Court would have to determine, for each assigned claim, whether the hypothetical enforcement actions the Trustee allegedly should have taken would have led to increased cash flow or increased "value" of the Certificates *before* that assignor sold its ownership interest.  This, again, is an inherently individualized assessment, as RPI's own alleged transfer history exemplifies.

RPI asserts claims for the HASC 2007-WF1 Trust, claims that purportedly were assigned to RPI from Fortis Park Lane Ireland ("Fortis Ireland") in May 2009.  Dkt. Nos. 348-5.  Because RPI asserts breach of contract claims that allegedly accrued in January 2009 (Mot. at 5), *i.e.*, *before* obtaining the Certificates, RPI necessarily sues as a purported assignee of Fortis Ireland. It thus can only assert damages incurred *by* Fortis Ireland.  *Bronx*, 265 F. Supp. 2d at 361; *Lehman Bros. Holdings v. Universal American Mortg. Co., LLC*, 2016 WL 325126, *5 (10th Cir. Jan. 27, 2016) (assignee that did not own RMBS certificates at time of alleged breaches of contract can only assert claims of assignor).

But Fortis Ireland admittedly incurred *no* losses on these Certificates before transferring the Certificates to RPI and thus could have no damages attributable to the Trustee.  Fortis Ireland

obtained the Certificates for a "fair market value" of "$0.00" in June 2008, *before* the Trustee allegedly discovered any breaches of R&Ws. Dkt. No. 348-8. Fortis Ireland thus could not show market loss damages caused by alleged loss of "subordination" due to alleged breaches in January 2009. Further, Fortis Ireland itself did not miss *any* distribution payments for the Trust before it transferred the Certificates to RPI and could not recover for payments missed by RPI *after* the Certificates transferred because Fortis Ireland did not incur those losses. Dkt. No. 348-6. By the same token, RPI cannot recover its own losses standing in Fortis Ireland's shoes. To hold otherwise would violate the long-standing rule that an assignee stands in an assignor's shoes for all purposes, whatever size those shoes are. *In re Enron Corp.*, 379 B.R. 425, 435 (S.D.N.Y. 2007); *Bronx*, 265 F. Supp. 2d at 361.[19] This is also consistent with the established rule that damages for breach of contract must be measured as of the date of breach and cannot be based on hindsight or post-breach events. *Boyce v. Soundview Tech. Grp., Inc.,* 464 F.3d 376, 384 (2d Cir. 2006) ("It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach."). RPI's post-assignment losses are thus legally irrelevant, illustrating why it is so important to determine when and at what prices each assignor bought and sold its certificates to determine both causation and damages. *Meda AB*, 969 F. Supp. 2d at 388-389 (causation and damages are essential elements of breach of contract).

### 3.   RPI's Proposed Damages Methodologies Violate the Rules-Enabling Act, Due Process, and *Comcast v. Behrend*

RPI's expert tries to sidestep this morass of individualized considerations by proposing a partial damages "framework" that has virtually nothing to do with the proposed class members' injuries or damages, or even RPI's theory of liability. Indeed, Mr. Dalrymple makes clear that the framework he proposes does not even seek to measure losses caused by the Trustee; rather,

---

[19] Even if RPI could show breaches by the Trustee *after* it obtained the Certificates, this still would not give it the right to recover for its own losses for breaches accruing while the Certificates were owned by Fortis Ireland. *Id*.

this would be an "input" provided to him from some unspecified source.  Ex. 5 (94:5-19, 128:22-129:8).  Nor does his framework address how to assess, apportion or allocate losses to proposed class members.  *Id.* (147:1-150:11).  Instead, Mr. Dalrymple proposes to apportion aggregate damages (that he does not himself calculate) to *Certificates* "irrespective of which investors or how many investors had claims on those certificate damages."  Ex. 6 (269:17-270:16).  Mr. Dalrymple confirms that this framework would operate "irrespective of *anything that happens at the investor level*" and is not even limited to determining damages of *investors who were allegedly damaged by the Trustee.*  Ex. 5 (252:19-253:22); Ex. 6 (106:4-109:7) ("Q:  So when you're proposing to calculate damages on a class-wide basis, is your damages methodology limited to those investors who were allegedly damaged by the Trustee's alleged breaches?  A:  No, I don't have a specific damages analysis that I'm proposing, *but no, it's not limited to that*").

Indeed, Mr. Dalrymple admits that any damages calculation based on his proposed framework *bears no relationship* to the amount of class members' damages, and instead, would result in the same damages figure "whether there are *700* members of the class or whether there are *ten* members of the class."  Ex. 6 (270:2-16).  Mr. Dalrymple claims that this aggregate amount would be distributed through a post-judgment claims administration process regardless of the number of class members.  Ex. 3 (281:7-283:14).  This proposed method of aggregating damages to *Certificates* violates the Rules Enabling Act, Due Process, and the rule against fluid recovery damages.  As explained in *McLaughlin,* 522 F.3d at 231:

> [a]n aggregate [damages] determination is likely to result in an astronomical damages figure *that does not accurately reflect the number of plaintiffs actually injured* by the defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants.  This kind of disconnect offends the Rules Enabling Act, which provides that federal rules of procedure, such as *Rule 23*, cannot be used to abridge, enlarge, or modify any substantive right.  Roughly estimating the gross damages to the class as a whole and only subsequently allowing for the processing of individual claims would inevitably alter defendants' substantive right to pay damages

reflective of their actual liability.

*See also id*. at 231 ("fluid recoveries" have been barred since 1973, precluding determination of

aggregate liability in a single class-wide adjudication with any excess amounts, after individual

proof of claims, distributed to class).  It also patently fails to match RPI's "theory of liability:" a

direct breach of contract action by allegedly damaged investors.  It cannot be certified.  *Roach*,

778 F.3d at 407 (*Comcast* requires that Plaintiff's "model for determining classwide damages . . .

actually measure damages that result from the class's asserted theory of injury.").

### C.     RPI Fails to Show That Common Issues Predominate

In contrast to the many individualized issues plaguing identification of class members,

liability and damages, RPI fails to show the existence of any "common contention" that is

"capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is ***central to the validity of each one of the claims in one stroke***."  *Dukes*,

564 U.S. at 350.  To establish predominance, plaintiff must show that a "common nucleus of

operative facts and issues" forms "the central issue in the case." *In re Nassau County Strip*

*Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).

RPI once again relies on inapposite case law and mischaracterized testimony to support

its argument.  To start, RPI's comparison of this case to securities fraud cases against issuers,

such as *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d. 145, 163 (2d

Cir. 2012) (Mot. at 17), has been *expressly rejected* by the Second Circuit.   In *PABF,* the Second

Circuit contrasted the type of generalized proof required to prove the securities fraud claims at

issue in *NECA*, to the individualized proof needed to prove breach of contract against a trustee:

> In contrast to *NECA,* where the defendants' alleged Securities Act violations inhered in
> making the *same* misstatements across multiple offerings, [the Trustee's] alleged
> misconduct ***must be proved loan-by-loan and trust-by-trust***.  For example, whether
> Countrywide breached it obligations under the governing agreements (thus triggering
> BNYM's duty to act) requires examining its conduct with respect to each trust.  Whether

-23-

> it was obligated to repurchase a given loan requires examining which loans, in which
> trusts, were in breach of the representations and warranties.  And whether a loan's
> documentation was deficient requires looking at individual loans and documents.

*PABF,* 775 F.3d at 162.  Tellingly, after the Second Circuit issued its decision in *PABF,* the

plaintiff there dismissed its claims *with prejudice*, citing, in part, the "many legal and factual

obstacles to certifying a class and prevailing on the merits."  *PABF*, No. 1:11-cv-05459, Dkt. No.

202 (S.D.N.Y. 2016).  This case presents even greater obstacles to certification because RPI

alleges breaches by nearly *40* Warrantors, as opposed to the single Warrantor in *PABF*.[20]  ¶ 67.

RPI also relies on RMBS securities fraud cases against issuers to suggest that proof

against the Trustee will be offered through "loan sampling and reunderwriting."  Mot. at 17.  But

the only *indenture trustee* case on point holds that sampling *cannot* prove liability against a

trustee because: (1) liability of a trustee must be assessed "loan-by-loan;" (2) loan-specific

"discovery" of an R&W breach or trust-specific "actual knowledge" of an Event of Default by

the trustee is a prerequisite to any duty to act; (3) loan-specific proof of materiality and the loan-

specific remedies available to a trustee upon discovering a breach of R&W are required; and

(4) the trustee's obligations are narrowly circumstanced in comparison to other deal parties.  *RPI*

*v. HSBC Bank U.S.A.,* No. 14-cv-08175, 2017 WL 945099, at *4-9 (Mar. 10, 2017).[21]

---

[20] The breach of contract cases cited by RPI also present none of the complex individualized issues presented here. *See, e.g., Fleisher v. Phoenix Life Ins. Co.,* 2013 U.S. Dist. LEXIS 99959, * 43-47 (S.D.N.Y.  Jul. 13, 2013) (class certified where liability turned on interpretation of a single provision in a form insurance contract, applied through a single decision by defendant to all class members, with no individualized defense); *Seekamp v. It's Huge, Inc.,* 2012 U.S. Dist. LEXIS 33295, *32 (N.D.N.Y. Mar. 13, 2012) (liability on all claims turned primarily on whether provision of "Anti-Theft Security Discount" pursuant to a form contract with all class members, offered at the same price, was illegal under New York law).

[21] RPI also mischaracterizes deposition testimony to suggest the Trustee's administration of the Trusts are determined by a single policy.  To the contrary, the witness testified: "to actually administer the trusts, one has to review the pooling and servicing agreement because the pooling and servicing agreements are different.  The policies and procedures have to do with, for example, the new account set up process, performing annual reviews— these are more internal controls to be a corporate trustee versus—the administration of the trust, actually, one would have to look at the pooling and servicing agreement."  Olts, Ex. B. 34:10-19.  Further, contrary to RPI's argument, the cited policies and procedures cannot establish liability in one stroke because "even proof that [the Trustee] always failed to act when it was required to do so would not prove their case, because they would still have to show which trusts [or loans] had deficiencies that required [the Trustee] to act in the first place."  *PABF,* 775 F.3d at 162.

Given the almost innumerable individualized issues of law and fact that permeate this case, individualized issues would predominate over even a compelling common issue.  RPI's inability to articulate, much less prove, that any common issue strikes at the heart of all claims for all class members makes this conclusion inescapable.

## III.   RPI IS NEITHER AN ADEQUATE NOR TYPICAL CLASS REPRESENTATIVE AND A CLASS ACTION IS NOT SUPERIOR

DBNTC incorporates by reference its previously briefed arguments regarding adequacy, typicality and superiority.  Dkt. No. 347 at 23-25.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion should be denied.

Dated:   New York, New York
         May 22, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By: */s/ Tera M. Heintz*
    Tera M. Heintz, Esq.

    One Market Street
    San Francisco, CA 94114
    Tel: (415) 442-1000
    Fax: (415) 442-1001
    tera.heintz@morganlewis.com

    Attorneys for Defendant Deutsche Bank
    National Trust Company, as Trustee

---

Thus, a breach with respect to one loan that occurred, for example, in January 2009, cannot establish liability or damages with respect to investors who held at different times or in different Trusts.  *PABF*, 775 F.3d at 161-62.