UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

           Plaintiff,

     -against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

           Defendant.

14-CV-04394 (AJN) (BCM)

**SANCTIONS ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/15/2018_

**BARBARA MOSES, United States Magistrate Judge.**

      For the reasons set forth below the Court finds it necessary to impose discovery sanctions upon plaintiff Royal Park Investments SA/NV (RPI).

### Background

      On December 29, 2017, in response to a motion to compel filed by defendant Deutsche Bank National Trust Company (Deutsche Bank), this Court ordered RPI, on pain of sanctions, to produce certain documents from the email accounts of three previously-identified Belgium-based custodians in unredacted form (the Belgian Documents). *See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 7512815, at *12 (S.D.N.Y. Dec. 29, 2017) (the 12/29/17 Order).[1] Noting that the documents were in the possession of RPI's assignor BNP Paribas Fortis (BNPPF), the Court applied the now-familiar rule that RPI, which brought this action as an assignee, to pursue claims originally held by others, "must assume the discovery obligations of its assignors, including the entity now known as BNPPF. This means, among other things, that RPI must produce otherwise-discoverable documents held by BNPPF 'to the same extent that it

---

[1] For clarity, each order or opinion previously issued in this action, whether or not published, will be referred to herein (after its initial citation) by the date on which it was issued.

would be required to produce those documents from its own files pursuant to Fed. R. Civ. P. 34.'" 12/29/17 Order, 2017 WL 7512815, at *2 (quoting *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341, 347 (S.D.N.Y. 2016) (the 2/5/16 Order)). RPI was warned:

> BNPPF's continued refusal to make the documents available in that form will not be a defense to a motion for discovery sanctions against RPI, if otherwise warranted. *See JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 508 (S.D.N.Y. 2005) [*Winnick I*]; *JPMorgan Chase Bank v. Winnick*, 2006 WL 278192, at *3 (S.D.N.Y. Feb. 6, 2006) [*Winnick II*].

12/29/17 Order, 2017 WL 7512815, at *12. RPI was ordered to produce the unredacted Belgian Documents on or before January 31, 2018. *Id.*[2]

On February 2, 2018, this Court ordered RPI to produce additional documents from the files of BNPPF, including "an October 9, 2006 memorandum from Sylviane Delcuve in 'Fortis's credit risk department' (the Delcuve Memo)." Order dated Feb. 2, 2018 (Dkt. No. 544) (the 2/2/18 Order), at 6. Once again, the Court reminded plaintiff that it was required to produce discoverable documents from the files of BNPPF "to the same extent that it is required to produce documents from its own files." 2/2/18 Order at 3-4 (quoting *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *8 (S.D.N.Y. Aug. 31, 2016) (the 8/31/16 Order)). Noting that the Delcuve Memo was referenced in (though not attached to) emails previously exchanged among various individuals whose email accounts are now in the possession of BNPPF, and that Delcuve herself still worked at BNPPF, the Court held that it while it was not necessary to add all of those individuals as custodians in this action (that is, it was not necessary to search *all* of their documents for responsiveness to *all* of the requests

---

[2] On January 19, 2018, RPI filed objections and a motion to vacate the 12/29/17 Order. (Dkt. Nos. 531, 532.) On March 1, 2018, RPI withdrew the objections and motion. (Dkt. No. 561.)

served by Deutsche Bank), "no such efforts should be required to locate a single memo already identified by date and author, particularly when the author still works at what is now BNPPF." 2/2/18 Order, at 7.

On March 9, 2018, defendant submitted a letter complaining that RPI had yet to produce, *inter alia*, either the Belgian Documents or the Delcuve Memo. Def. Ltr. dated March 9, 2018 (Dkt. No. 567), at 1-2. On March 13, 2018, RPI responded that "BNPPF has now produced to RPI, and RPI has produced to [Deutsche Bank], unredacted versions of all of the documents previously redacted for privacy by BNPPF (the 'Belgian Documents')." Pl. Ltr. dated March 13, 2018 (Dkt. No. 569), at 1. As for the remaining documents that this Court ordered produced – including the Delcuve Memo – RPI reported that "BNPPF has agreed to collect and produce the documents," and that "they will be produced as soon as possible, but as the documents are located in Europe, most likely the production will not be complete for several weeks." *Id*. On March 14, 2018, the Court ordered RPI to produce "the documents described in my February 2, 2018 Order," including the Delcuve Memo, on or before March 21, 2018. Order dated March 14, 2018 (Dkt. No. 573) (the 2/14/18 Order).

On March 30, 2018, Deutsche Bank submitted a letter reporting that RPI had produced documents from BNPPF's files on March 12 and 23, 2018, including the Belgian Documents, but that the productions did not contain "any custodian information," as required by the parties' prior stipulated electronic document production protocol (Dkt. No. 263). Def. Ltr. dated March 30, 2018 (Dkt. No. 599), at 1 (emphasis in original). Instead, defendant complained, the metadata produced for the Belgian Documents "lists 'Central Files' as the custodian for all of the documents." *Id*. Futher, defendant reported, the Delcuve memo still had not been produced. Instead, Deutsche Bank's counsel had received an email from RPI's counsel on March 23, 2018,

stating that "after a reasonable search, the Bank [BNPPF] was unable to locate any memo matching the description of the Delcuve [M]emo." *Id*. Deutsche Bank immediately "responded by email, requesting that RPI provide an affidavit from BNPPF's counsel, Cleary Gottlieb, describing all of the steps that it took to search for the Delcuve Memo." *Id*.

On April 2, 2018, RPI asserted in a responding letter that it received a "metadata overlay" from BNPPF on March 30, 3018, and "produced the metadata within hours" of receiving defendants' March 30 letter, thus mooting the metadata complaint. Pl. Ltr. dated April 2, 2018 (Dkt. No. 605), at 1. As to the Delcuve Memo, RPI confirmed that it had not been found, objected to Deutsche Bank's demand for an affidavit describing the search conducted for it, but reported that "BNPPF and its counsel are considering Deutsche Bank's request for additional information on the search, and the issue is not ripe for consideration by the Court." *Id*. at 2.

On April 3, 2018, Deutsche Bank's counsel stated in open court that, notwithstanding RPI's prior representations, plaintiff "has not produced any custodian information" for the Belgian Documents. *See* Tr. of Apr. 3, 2018 Hr'g (Tr.) (Dkt. No. 617) at 3:22. RPI's attorney, Lucas Olts, stated that he would be "happy to follow up with [BNPPF] and get those additional pieces of metadata." *Id*. at 7:14-15. As to the Delcuve Memo, Mr. Olts explained that the search was "all done through Cleary and BNPPF." *Id*. at 5:13-14. Mr. Olts added that he had spoken with the Cleary attorneys, that they told him they had "conducted what they deem to be a reasonable search," and that he was "still waiting for them to get back to us" concerning their willingness to provide a "sworn affidavit" concerning that search. *Id*. at 5:16-6:2.

After further discussion, the Court ordered RPI to produce, no later than April 13, 2018:

(a) custodian information for the Belgian Documents, or a statement in writing and under oath as to why it could not produce this information; and

4

>  (b) the Delcuve Memo, or, if the Delcuve Memo could not be found, a statement under oath as to what was done to search for it.

*See* Tr. at 6:7-8:8 (the 4/3/18 Order). With respect to the Delcuve Memo, the Court made it clear that if RPI could not produce the document by April 13, 2018, "I will want a statement under oath as to what was done to look for it. At a minimum, certifying that counsel spoke to the author and conducted a reasonable search of her ESI in an attempt to locate it." *Id*. at 6:21-25. With respect to the metadata, the Court was equally clear:

> THE COURT: Either you will be able to provide the missing fields – the missing data by then [April 13, 2018], or if you are not, the fine law firm that worked on that project, whichever fine law firm it is, should provide a statement in writing and under oath indicating in essence why we couldn't provide that information.
>
> MR. OLTS: Understood.

*Id*. at 7:24-8:5.

## Order to Show Cause

On April 17, 2018, defendant submitted a letter (Dkt. No. 615), reporting that RPI had still not produced either the documents or the statements required by the Court. The Court then directed RPI to show cause in writing, no later than April 20, 2018, "why it should not be sanctioned pursuant to Fed. R. Civ. P. 37(b)(2) for failing to obey this Court's April 3 discovery order." Order to Show Cause dated April 18, 2018 (OSC) (Dkt. No. 616), at 1.

## RPI's Response

In response to the OSC, RPI argues that "any sanction would be totally unwarranted" because (1) Deutsche Bank received "all relevant information" concerning the unsuccessful searches conducted by BNPPF for the missing documents, albeit not in the form of sworn statements as required by the Court; and (2) the decision not to comply with this Court's order

was made by BNPPF, was "completely out of RPI's control," and therefore "cannot be a basis for sanctions." Pl. Ltr. dated April 20, 2018 (Dkt. No. 619), at 1.

As to the first point, RPI explains that it received certain "information" from BNPPF's counsel Cleary Gottleib Steen & Hamilton LLP (Cleary) as to the unsuccessful searches for the the Delcuve Memo that Cleary conducted in Belgium (or directed BNPPF personnel to conduct), and passed that information along to RPI. Pl. Ltr. dated April 20, 2018, at 2-3. RPI attaches an April 4, 2018 email from Mr. Olts to Deutsche Bank's attorney Nathan T. Shapiro, beginning, "We received the following information from Cleary yesterday," and going on to state that after a "reasonable search of its records," including targeted ESI searches by Ms. Delcuve and two other BNPPF employees, BNPPF has been "unable to locate any document matching the description of the 'Delcuve memo.'" *Id*. Ex. 1 (Dkt. No. 619-1), at ECF pages 5-6.[3]

In the same April 4 email, Mr. Olts reported that "Cleary has represented" that it was not possible to identify the custodian of certain of the emails included in the Belgian Documents, and that "we" (presumably meaning RPI) "are checking on the remaining metadata issues." Pl. Ltr. dated April 20, 2018, Ex. 1, at ECF page 6. Thereafter, on April 5, RPI produced a zip file "containing a reproduction of the metadata" for some but not all of the Belgian Documents. *Id*. Ex. 2 (Dkt. No. 619-2), at ECF page 2. On April 18, 2018, in an email to Mr. Olts, Sharon L. Barbour at Cleary stated that BNPPF "is unable to retrieve any additional custodian metadata beyond wheat it has already provided." *Id*. Ex. 3 (Dkt. No. 619-3), at ECF page 2.

---

[3] The Court notes that even in the parties' underlying email traffic, the only *written* description of the searches undertaken for the Delcuve Memo was supplied by Mr. Olts, reporting information that he attributed to Cleary. There is no email or other document from Cleary itself describing the search for the Delcuve Memo. Thus, not only has RPI failed to provide the *sworn* statement required by the Court; it has failed to provide any written statement at all made by a person with actual knowledge of what was done to search for the Delcuve Memo.

As to the second point, RPI explains that Cleary initially agreed to supply a declaration "setting forth the steps BNPPF took" to search for the missing documents. Pl. Ltr. dated April 20, 2018, at 3.  However, either Cleary or its client "reconsider[ed]," *id*., and in her April 18, 2018 email – sent after receiving a copy of this Court's OSC – Ms. Barbour at Cleary informed Mr. Olts that BNPPF "does not agree to supply any declaration concerning its search for the Delcuve Memo or custodian metadata." *Id*. Ex. 3.

## Analysis

### A. Whether the Court May Sanction RPI

There can be no genuine question concerning the Court's power to sanction RPI for its failure to produce either the documents or the sworn statements required by the 4/3/18 Order. This Court has repeatedly ruled that for purposes of party discovery RPI stands in the shoes of its assignor BNPPF. *See*, *e.g*., 2/5/16 Order, 314 F.R.D. at 347; Discovery and Scheduling Order dated August 12, 2016 (Dkt. No. 253) at 1-2 (declining RPI's invitation to "revisit" the holding of the 2/5/16 Order); 8/31/16 Order, 2016 WL 4613390, at *8; 12/29/17 Order, 2017 WL 7512815, at *2; 2/2/18 Order, at 3-4. *See also* Tr. of Aug. 12, 2016 Hr'g (Dkt. No. 265) at 53:4-5 ("We treat the assignors as if they were you for purposes of Rule 34."); Tr. of June 8, 2017 Hr'g (Dkt. No. 395) at 8:17-21 (reminding RPI that discoverable documents in the physical custody of BNPPF are, "notwithstanding the backroom problems, considered the plaintiff's documents for discovery purposes").

This principle is neither novel nor difficult to understand. It was announced in this District long before RPI filed the present lawsuit. *See*, *e.g.*, *Winnick I*, 228 F.R.D. at 507 (collecting earlier cases and agreeing that plaintiffs suing on claims assigned to them by a

consortium of lenders must "bear the risks and burdens of discovery from the original lender Banks"). As Judge Lynch explained in *Winnick I*:

> It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear.

228 F.R.D. at 506.

The same principle has been applied in every case that RPI has filed in this District on claims assigned to it by BNPPF or its predecessors. *See*, *e.g.*, *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, No. 14-CV-8175 (SAS), slip op. at 5 (S.D.N.Y. Dec. 4, 2015) (Schiendlin, J.) (citing *Winnick I*, 228 F.R.D. at 507, and ordering plaintiff to "search for and produce relevant documents held by BNP Paribas," reasoning that "if anyone can and should secure production of relevant documents held by BNP Paribas, it is Royal Park"); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 125 (S.D.N.Y. 2016) (Francis, M.J.) (noting that he relied on the reasoning of the 2/5/16 Order, 314 F.R.D. at 344, in compelling RPI to produce documents from the files of BNPPF); *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 2017 WL 384350, at *1 (S.D.N.Y. Jan. 25, 2017) (Francis, M.J.) (ordering RPI to produce BNPPF-affiliated witnesses for deposition because "this principle is equally applicable to witnesses as it is to documents"); *Royal Park Investments SA/NV v. HSBC Bank USA, N.A.*, 2018 WL 745994, at *2 (S.D.N.Y. Feb. 6, 2018) (Schofield, J.) (upholding Judge Netburn's order compelling RPI to produce un-redacted documents from the files of Belgian custodians in the possession of BNPPF); *see also Blackrock Balanced Capital Portfolio (FI) v. HSBC Bank USA*, 2016 WL 11187259, at *3 (S.D.N.Y. June 2, 2016) (Netburn, M.J.)

("The plaintiffs cannot assert the litigation rights of prior RMBS owners without assuming the corresponding discovery obligations.").

To say that a plaintiff stands in the shoes of its assignors for discovery purposes would be meaningless if the court could merely issue – but could not enforce – orders compelling that plaintiff to produce documents or other information in the hands of those assignors. Thus, every court in this District that has considered the issue (including this Court) has concluded that the power to sanction, like the power to compel, cannot be negated by the assignee's claim that it is unable to obtain the necessary compliance from its non-party assignor. *See*, *e.g.*, *Winnick I*, 228 F.R.D. at 508 (if plaintiff/assignee "cannot obtain and produce documents, provide information in response to interrogatories, and/or produce witnesses for deposition from the [assignors] in response to defendants' discovery requests . . . the Court will entertain motions from defendants for appropriate sanctions pursuant to, inter alia, Federal Rule of Civil Procedure 37(c)"); *Winnick II*, 2006 WL 278192, at *1-3 (reminding plaintiff that it "must provide discovery from the [assignors] to defendants or risk sanctions" but declining to hold that sanctions were warranted at that time); *JP Morgan Chase Bank v. Winnick*, 2006 WL 3164241, at *1 (S.D.N.Y. Nov. 2, 2006) (*Winnick III*) (reiterating that if the plaintiff/assignee were unable to "persuade or compel" its assignors to provide the necessary discovery, plaintiff would "bear the risk of discovery sanctions"); 12/29/17 Order, 2017 WL 7512815, at *12 ("BNPPF's continued refusal to make the [Belgian Documents] available in that [unredacted] form will not be a defense to a motion for discovery sanctions against RPI, if otherwise warranted").

In *U.S. Bank*, RPI made precisely the same argument it makes here: that it should not be sanctioned for its failure to produce documents from the files of BNPPF because "it took all reasonable steps to obtain and produce the requested information." 319 F.R.D. at 126. Judge

9

Francis rejected that plea, reasoning that "accepting the assignment of claims without obtaining a concomitant commitment for the production of relevant documents is sufficient to constitute willfulness." *Id*. at 128.[4] The same is true here. Had RPI secured access to its assignor's documents along with the assignment of the claims on which it now sues, the search process – and the production of any required affidavit – would be wholly within RPI's control. *See* 8/31/16 Order, 2016 WL 4613390 at *8 (noting that RPI's difficulties in obtaining discovery cooperation from its assignors were "largely of plaintiff's making," particularly after it "knowingly waived its rights to compel documents from its assignors" when it settled a lawsuit against them in 2013). Even more fundamentally, since RPI stands in the shoes of BNPPF for purposes of party discovery, any failure or refusal by BNPPF to produce the documents or information necessary to comply with this Court's orders must be treated as the failure or refusal of RPI itself. Any other rule would permit the assignor "to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain [discovery] obligations that, when assigned, would magically disappear." *Winnick I*, 228 F.R.D. at 506.

### B.     What Sanction the Court Should Impose

Where, as here, a party has failed to obey a discovery order, the "court where the action is pending" may issue "further just orders," up to and including preclusion of evidence and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). "Disciplinary sanctions under Rule 37 are intended to serve three purposes." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

> First, they ensure that a party will not benefit from its own failure to comply.
> Second, they are specific deterrents and seek to obtain compliance with the

---

[4] Judge Frances ultimately declined to impose the "drastic" sanction sought by Deutsche Bank – dismissal of RPI's claims – because "U.S. Bank has not yet demonstrated prejudice from the failure of Royal Park to produce Assignor documents." 319 F.R.D. at 132.

> particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Id*. In most cases, sanctions less severe than preclusion or dismissal "may be adequate and appropriate." *Id*. at 70. However, the decision to impose even the most severe sanctions "is within the discretion of the district court," *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988)), and will only be reversed "if the decision constitutes an abuse of that discretion." *John B. Hull*, 845 F.2d at 1176; *accord Update Art*, 843 F.2d at 71 ("we will reverse only if the court abused its discretion").

When determining whether the most severe sanctions are appropriate, courts in this Circuit weigh several factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide Polymers*, 694 F.3d at 159 (quoting *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009) (alteration in original)). "Prejudice to the moving party may also be a significant consideration, though not an absolute prerequisite in all circumstances." *U.S. Bank*, 319 F.R.D. at 126; *see also S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 148-49 (2d Cir. 2010) ("[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions."). No one factor is dispositive. *See World Wide Polymers*, 694 F.3d at 159 (quoting *S. New England Tel. Co.,* 624 F.3d 123, 144 (2d Cir. 2010)) (noting that "[t]hese factors are not exclusive, and they need not each be resolved against the [sanctioned] party").

In this case, RPI was ordered to produce custodian information for all of the Belgian Documents or, in the alternative, a "statement in writing and under oath" as to why it could not

11

produce this information. 4/3/18 Order, at 7:24-8:5. It failed to do either. Similarly, RPI was ordered to produce the Delcuve Memo or, in the alternative, "a statement under oath as to what was done to look for it. At a minimum, certifying that counsel spoke to the author and conducted a reasonable search of her ESI in an attempt to locate it." *Id*. at 6:22-25. Once again, RPI failed to produce either the document or the sworn statement required by this Court's order. Rule 37(b) sanctions are therefore not only permissible, but necessary to "obtain compliance with the particular order issued." *Update Art*, 843 F.2d at 71.

Moreover, there can be no question but that the failure to produce any sworn statements was willful. BNPPF's counsel initially agreed to supply the required statements, Pl. Ltr. dated April 20, 2018, at 3, but then "reconsider[ed]." *Id*. On April 18, 2018 (the day after this Court issued its OSC), one of BNPPF's attorneys, Ms. Barbour, informed Mr. Olts, without elaboration, that BNPPF "does not agree to supply any declaration concerning its search for the Delcuve Memo or the custodian metadata." *Id*. Ex. 3.

The Court recognizes that it is BNPPF that has willfully refused to supply the sworn statements necessary for RPI to comply with this Court's order. For purposes of enforcing this Court's discovery orders, however, BNPPF's conduct must be attributed to RPI. *See Winnick III*, 2006 WL 3164241, at *1 (a plaintiff/assignee unable to "persuade or compel" its assignors to provide the necessary discovery must "bear the risk of discovery sanctions" flowing from the non-cooperation). In this case, therefore, sanctions are also necessary to "ensure that a party will not benefit from its own failure to comply," *Update Art*, 843 F.2d at 71, and to serve as a "general deterrent," *id*., against similar misconduct in other cases in which RPI is suing on claims allegedly assigned to it by non-parties.

The most severe sanctions, however, are not yet warranted. Although this is not the first time that RPI has blamed BNPPF for its failure or inability to comply with its discovery obligations,[5] previous standoffs ultimately resulted in production of the required documents or information. This may be due in part to the 12% ownership interest in RPI held by BNPPF's parent BNP Paribas. *See* 2/5/16 Order, 314 F.R.D. at 346. Since BNP Paribas has "an economic interest in the outcome of this litigation," it also has an "economic motivation" to cause BNPPF to provide RPI with the documents or information it needs (including the sworn statements at issue here) to comply with its discovery obligations. *Id*. Moreover, it has been only six weeks since this Court issued the 4/3/18 Order, and less than four weeks since the OSC, which warned RPI (and, by extension, BNPPF) of the risk of sanctions, but did not specifically warn of the risk of dismissal or preclusion sanctions. Coercive rather than punitive sanctions are therefore in order. *See*, *e.g.*, *Funk v. Belneftekhim*, 861 F.3d 354, 368-69 (2d Cir. 2017) (noting with approval that the district court imposed "a coercive monetary sanction in an effort to induce compliance" with its order requiring jurisdictional discovery before striking defendant's sovereign immunity defense as a penalty for further disobedience).

In *Funk*, the district court "required defendants to pay $2,000 to the Clerk of Court for every day they failed to provide the ordered discovery, as well as $5,000 in litigation costs to plaintiffs." 861 F.3d at 368. In this case, although Deutsche Bank advised the Court of RPI's noncompliance with the 4/3/18 Order (and then submitted a letter critiquing RPI's response to the OSC), it has not formally made a motion for discovery sanctions, nor made a showing of prejudice with respect to the discovery now at issue. Consequently, no costs will be awarded at this time. Instead, the Court will require RPI to pay the sum of $1,000 to the Clerk of Court for

---

[5] *See* Def. Ltr. dated April 23, 2018 (Dkt. No. 620), App. A.

every day that it continues to disobey the 4/3/18 Order, beginning one week from today. If RPI can "persuade or compel" BNPPF to provide the necessary sworn statements before that date, it can avoid these monetary penalties altogether. Thereafter, it can still "halt[ ] the sanction on any day by complying with the court's order." *Funk*, 861 F.3d at 369.

As an alternative to producing the sworn statements required by the 4/3/18 Order, RPI may avoid (or halt) the monetary sanctions discussed above by obtaining the equivalent information from Cleary at a deposition in New York pursuant to Fed. R. Civ. P. 30(b)(6) and 45. This alternative – though undoubtedly more costly to both RPI and BNPPF than producing the sworn statements originally required by the 4/3/18 Order – would permit RPI to compel the attendance and testimony of a knowledgable representative of the law firm that apparently directed BNPPF's discovery efforts, thus obviating any need for voluntary cooperation by that firm or its non-party client. Deutsche Bank would of course be entitled to notice of the deposition and an opportunity to cross-examine.

If – notwithstanding these options – RPI fails or refuses to produce either sworn statements or sworn testimony concerning the matters covered by the 4/3/18 Order, Deutsche Bank may seek "further just orders," Fed. R. Civ. P. 37(b)(2), including but not limited to orders permitting adverse inferences, directing that designated facts be taken as established, prohibiting the introduction of designated matters into evidence, staying further proceedings, striking pleadings, dismissing claims, treating the failure to obey as contempt of court, imposing further monetary sanctions, and directing the disobedient party to pay the expenses, including attorneys' fees, caused by the failure or refusal.

**Conclusion**

For the reasons set forth above it is hereby ORDERED that plaintiff Royal Park Investments SA/NV shall pay the sum of $1,000 per day to the Clerk of Court, beginning on **May 22, 2018**, until it has either: (a) produced the sworn statements required by the Court's 4/3/18 Order or (b) obtained the same information in the form of sworn testimony from one or more knowledgeable representative(s) of Cleary Gottlieb Steen & Hamilton LLP at a deposition, in New York, taken pursuant to Rules 30(b)(6) and 45.

Dated: New York, New York
       May 15, 2018

                            **SO ORDERED**.

                            **BARBARA MOSES**
                            **United States Magistrate Judge**.