# Morgan Lewis

**Bernard J. Garbutt III**
+1.212.309.6084
bernard.garbutt@morganlewis.com

May 28, 2018

**BY ECF**
Honorable Barbara Moses, U.S.M.J.
United States District Court for the Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re:   Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co., No. 14-cv-4394

Dear Magistrate Judge Moses:

We represent defendant Deutsche Bank National Trustee Company, as trustee (the "Trustee"). We write concerning the May 21, 2018 letter from plaintiff Royal Park Investments SA/NV ("RPI"), Dkt.# 622, which attached a declaration by Sharon Barbour of Cleary Gottlieb (Dkt.# 622-1, the "Barbour Decl."), counsel to BNP Paribas Fortis ("BNPPF").

The Barbour Decl. does not comply with Your Honor's April 3, 2018 order. On April 3, 2018, Your Honor ordered RPI to provide, by April 13, 2018:

(1) The "Delcuve Memo" (see Dkt.# 544), or "a statement under oath as to what was done to look for it. At a minimum, certifying that counsel spoke to the author and conducted a reasonable search of her ESI in an attempt to locate it." Transcript of April 3, 2018 Hearing, Excerpts at Dkt.# 615-1 (the "4/3/18 Tr."), at 6:7-25; and

(2) Custodian information for all of the documents that RPI produced on March 12, 2018 and March 23, 2018, or "a statement in writing and under oath indicating in essence why [Cleary Gottlieb] couldn't provide that information." 4/3/18 Tr., at 7:9-8:8.

RPI has not complied with the April 3, 2018 orders in three respects. First, the Barbour Decl. does not represent, as it was required to, that "counsel spoke to" Ms. Delcuve. Second, the Barbour Decl. does not demonstrate that RPI, BNPPF, and Cleary Gottlieb conducted a reasonable search for the Delcuve Memo. As RPI has done routinely when searching for documents held by BNPPF, at the outset, RPI excluded the Trustee from having any input into the methods used to search for the Delcuve Memo, and instead conducted an inadequate search. Then, after receiving the Trustee's April 5, 2018 suggestions on how to conduct better searches for the Delcuve Memo, and even though RPI had the benefit of those suggestions for more than six weeks (from April 5, 2018 to May 21, 2018) before RPI provided the Barbour Decl., RPI ignored those suggestions too and stood by its unreasonable, original searches. RPI must be oblivious to the real point to this whole exercise (and what the Trustee actually desires) – to actually find the Delcuve Memo. Third, the Barbour Decl. does

**Morgan, Lewis & Bockius LLP**

101 Park Avenue
New York, NY  10178-0060
United States

☎ +1.212.309.6000
📠 +1.212.309.6001

Honorable Barbara Moses, U.S.M.J.
May 28, 2018
Page 2

not demonstrate that BNPPF <u>cannot</u> provide the missing custodian information.

**First**, although Your Honor explicitly held that the sworn statement must "at a minimum, certify[] that counsel spoke to [Ms. Delcuve]," (4/3/18 Tr., at 6:23-25), the Barbour Decl. fails to make that representation. Worse, the Barbour Decl. is inadmissible hearsay because the declarant, Ms. Barbour, bases her representations "upon either [her] own personal knowledge <u>or information conveyed to [her]</u>" by sources she fails to disclose. Barbour Decl., ¶ 2. Ms. Barbour fails to distinguish which portions are based upon her own personal knowledge and which are based upon "information conveyed to [her]." But the Barbour Decl. mostly concerns actions by BNPPF, not Cleary Gottlieb, so it is unlikely that Ms. Barbour has first-hand knowledge. This defeats the purpose of requiring RPI to provide a sworn statement.

**Second**, the Barbour Decl. definitively demonstrates that RPI did <u>not</u> conduct a reasonable search for the Delcuve Memo. And, it shows that, even though RPI has had the benefit of the Trustee's suggestions for more than six weeks, it chose to ignore them. By way of background, on April 4, 2018, RPI sent the Trustee an email relaying information RPI purportedly received from BNPPF about the steps BNPPF took to search for the Delcuve Memo ("RPI's April 4th Email"). The Trustee was given no input into those steps. The next day, the Trustee sent RPI an email in response (Exh. 1, the "Trustee's April 5th Email"), providing suggestions for how to search for the Delcuve Memo, in addition to the steps described in RPI's April 4th Email. But RPI ignored those suggestions. As explained below, the search for the Delcuve Memo was unreasonable.

- A reasonable search would have included shared network drives. And, the Trustee's April 5th Email asked whether BNPPF "search[ed] across … any shared network drives … ." Exh. 1. But the Barbour Decl. makes clear that <u>nobody</u> searched <u>any</u> shared network drives for the Delcuve Memo. Although Ms. Barbour represents that "[d]uring the time period in issue Ms. Delcuve's group within the Bank did not use a shared network drive" (Barbour Decl., ¶ 7), ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████. See, e.g., Exh. 2, at RPI-DB3340397 (referencing ████████); Exh. 3, at RPI-DB0833071 (referencing ████████); & Exh. 4, p. 4.

- A reasonable search would have included searching the ESI of Mr. Singh, the author of the email describing the Delcuve Memo. And, the Trustee's April 5th Email asked why BNPPF did not "recover and search the email data for Kuljot Singh … ." Exh. 1. But the Barbour Decl. is clear that, although BNPPF searched the "available email data"[1] of Ms. Delcuve, Mr. Frans, Mr. De Doncker, and Michael Guillaume (and Ms. Delcuve allegedly searched her own "active email mailbox," whatever that means), nobody searched Mr.

---

[1] Nowhere do RPI, BNPPF, or Cleary Gottlieb explain what the Barbour Decl. means by "available email data." The Trustee's April 5th Email requested more information from RPI as to this issue, and the Trustee reserves all rights.

Honorable Barbara Moses, U.S.M.J.
May 28, 2018
Page 3

> Singh's ESI.  The Barbour Decl. also fails to explain why nobody searched other sources for Mr. Frans, Mr. De Doncker, and Mr. Guillaume, such as their hard drives, hard-copy documents, or other potential network storage.

- A reasonable search would have used "root expanders" (i.e., characters, typically **!** or **\***, that permit someone to run a search for all words that begin with a common "root").  For example, a reasonable search would have included **memo!**, not just **memo**, to identify documents containing the word "memorandum."  But the search terms in the Barbour Decl. (id., ¶ 5) do not use root expanders.  Although some software may not require root expanders, it appears that BNPPF's software does.  For example, BNPPF ran, as separate search terms: **mezz w/1 aaa** and **mez w/1 aaa**.  Had root expanders been unnecessary, the latter search term would have made the former redundant.  The Trustee's April 5th Email asked RPI to "confirm that root expanders are not necessary in the system [BNPPF] used."  Exh. 1.  But RPI, BNPPF, and Cleary Gottlieb all ignored that request.  Because BNPPF failed to use root expanders, its search was unreasonable.

- A reasonable search would have used reasonable "connectors" (i.e., terms that run searches for two words within a specified number of words of each other).  Here, the Barbour Decl. reveals that BNPPF ran search terms containing two words separated by a **w/1** connector, which required the two words to be directly next to each other in a document.  The Trustee's April 5th Email suggested BNPPF run its searches with **w/5** connectors, which would capture documents that contained the two words within the same short phrase.  Exh. 1.  But RPI, BNPPF, and Cleary Gottlieb all ignored that request.  Because BNPPF failed to use "wider" connectors, its search was unreasonable.

- The Trustee's April 5th Email requested that BNPPF utilize the following search term to locate the Delcuve Memo, dated October 9, 2006: **"9 oct!" or "9th oct!" or "oct! 9" or "oct! 9th" or "10/9" or "10/09" or "9/10" or "09/10"**.  But RPI, BNPPF, and Cleary Gottlieb all ignored that request.

In addition to the deficiencies in BNPPF's searches described above, the Barbour Decl. fails to provide sufficient detail on how the indexing and searches were performed.  For example, it does not disclose whether the searches were run against all available metadata fields and extracted text.  Nor does it disclose whether the searches were limited to emails or run against all documents including both emails and attachments, or whether all of this information was even part of the search index.  The Barbour Decl. also fails to explain how BNPPF handled non-searchable file types, including whether it applied Optical Character Recognition ("OCR") software to those files.  If, for example, the Delcuve Memo was converted to a non-searchable PDF, BNPPF's search should have been able to find it.

Also, the Trustee's April 5th Email asked whether BNPPF and/or Cleary Gottlieb located:  (i) "any memos with another date close in time to October 9, 2006 that might be the memo that Mr. Singh was referring to"; or (ii) "any memos dated October 9, 2006 that were written by someone from the Credit Risk Department other than Ms. Delcuve."  Exh. 1.  The Barbour

Honorable Barbara Moses, U.S.M.J.
May 28, 2018
Page 4

Decl. represents that BNPPF "did not identify any document matching or similar to the description of the Delcuve Memo." Id. ¶¶ 6 & 8. But it does not explain the standard BNPPF employed in determining that, or respond to the Trustee's specific inquiries.

**Third**, the Barbour Decl. does not demonstrate that BNPPF cannot provide the missing custodian information. Rather, as explained below, it reveals that BNPPF cut corners by having its in-house employees, not a litigation support vendor, collect and produce documents. Indeed, when BNPPF initially collected the documents for the Belgium-based BNPPF custodians (the "Belgian Documents"), it did not capture custodian information – a simple, routine task when dealing with ESI. Presumably, this is because, at the time BNPPF collected those documents, RPI and BNPPF maintained the incorrect position that Belgian law prohibited BNPPF and RPI from providing that information to the Trustee.[2] Even if that interpretation were correct (it was not), BNPPF could have still maintained the custodian information without producing it, as those are two distinct steps in the process. But now, as Ms. Barbour admits, "the available metadata for these documents does not contain identifying information for any of the Brussels custodians." Id., ¶ 11.

After this Court ordered RPI to provide custodian information for the Belgian Documents, BNPPF apparently used the "To," "From," and "CC" email fields to manually populate the "Custodian" field. Id., ¶ 10. But, where the custodian was a "blind" copyee on an email or was part of a distribution list, the metadata BNPPF collected the first time around did not include that person's name. Id., ¶ 11. Presumably, that means BNPPF failed to collect (and RPI failed to produce) "BCC" data, a violation of the "Joint Stipulation and Order Regarding the Format of Document Productions, Including Production of Electronically Stored Information," Dkt.# 263, Table 1. As a result, according to the Barbour Decl., BNPPF cannot determine whose custodial files the documents came from without the assistance of a third-party vendor and its outside counsel, Cleary Gottlieb. Barbour Decl., ¶ 12.

Ultimately, the Barbour Decl. reveals that, when BNPPF initially collected and produced documents, BNPPF cut corners by having its in-house employees collect and produce documents rather than using a litigation support vendor like the Trustee did (and like RPI presumably did). Now, as BNPPF admits, the BNPPF documents are missing metadata that once existed. Had BNPPF performed an adequate collection and maintained industry-standard chain of custody procedures, custodian information would have been easy to provide and populating the "Custodian" field would not have been a manual process. That BNPPF lost metadata by using substandard collection processes calls into question whether BNPPF adequately collected or searched its documents in the first place. BNPPF should re-run its entire search for documents using a litigation support vendor.

Respectfully submitted,
*Bernard J. Garbutt III*

---

[2] As Your Honor is well aware, RPI dragged the Trustee and this Court through months of motion practice because RPI and BNPPF sought to use Belgian law as an excuse to scrub the Belgian Documents of custodian information and names. See, e.g., Dkt.# 524.