UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                            Plaintiff,

         vs.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as Trustee,

                        Defendant.

———————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:14-cv-04394-AJN-BCM

<u>CLASS ACTION</u>
ROYAL PARK INVESTMENTS SA/NV'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF RULE 72
OBJECTIONS TO AND MOTION TO SET
ASIDE MAGISTRATE JUDGE'S ORDER
DENYING SAMPLING

1487465_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.    BACKGROUND ........................................................................................3

    A.    RPI's Claims .................................................................................3

    B.    Procedural Background..................................................................4

    C.    The Order ......................................................................................4

III.    ARGUMENT ..............................................................................................5

    A.    The Order Should Be Vacated as Exceeding the Scope of the Magistrate Judge's Authority or upon *De Novo* Review ...........................................5

    B.    Sampling Is Permissible as Part of RPI's Liability and Damages Presentations .......................................................................................6

        1.    Courts Have Long Recognized the Admissibility of Sampling in RMBS Litigation....................................................................6

        2.    "Loan-by-Loan, Trust-by-Trust" Language Does Not Prohibit Sampling ...........................................................................8

            a.    The Order's Reading of "Loan-by-Loan, Trust-by-Trust" in *PABF* Is Contrary to the Law Regarding Sampling.......................8

            b.    The Order Overextends *Nomura* and *Ambac* to Preclude All Pervasive Breach Theories............................................................10

        3.    The Order's Holding Concerning RPI's Burden of Proof to Establish Damages Is Clearly Erroneous....................................................11

    C.    "Discovery" as Used in the PSAs Means "Knows or Should Have Known".......13

        1.    The Second Circuit Has Confirmed that "Discovery" Means Constructive Knowledge....................................................13

        2.    Traditional Principles of Contract Interpretation, Ignored by the Order, Confirm that "Discovery" Means Constructive Knowledge – Not Actual Knowledge ........................................16

    D.    RPI Should Be Permitted to Conduct Sampling for at Least Three Distinct Categories of Loans ..............................................................18

**Page**

1.    RPI Should Be Permitted to Sample Loans for Which DB Had "Actual Knowledge" ................................................................................19

2.    The Order Makes Impermissible Factual Findings by Discrediting Evidence Showing Post-EoD Loans Should Have Been Sampled ...........20

3.    RPI Should Be Permitted to Sample Loans for Which DB Discovered R&W Breaches ....................................................................22

E.    The Proportionality Analysis Is Clearly Erroneous Because It Is Tainted by the Order's Erroneous Conclusions ................................................................24

IV.    CONCLUSION..................................................................................................25

1487465_1

# TABLE OF AUTHORITIES

Page

## CASES

*Ace Secs. Corp. Home Equity Loan Tr., Series 2006-SL2 v. DBSP*,
  25 N.Y.3d 581 (N.Y. 2015) ..................................................................17

*Ambac Ass. Corp. v. Countrywide Home Loans, Inc.*,
  31 N.Y.3d 569 (2018) ........................................................................10

*Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*,
  2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014) ....................................8

*Assured Guar. v. Flagstar Bank*,
  920 F. Supp. 2d 475 (S.D.N.Y. 2013).............................................. *passim*

*Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital*,
  2013 WL 3146824 (S.D.N.Y. 2013), *aff'd in relevant part*,
  821 F.3d 297 (2d Cir. 2016).......................................................... *passim*

*BCS v. Heartwood 88*,
  637 F.3d 750 (7th Cir. 2011) ................................................................6

*BlackRock Allocation Target Shares: Series S Portfolio
v. Wells Fargo Bank, Nat'l Ass'n*,
  2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017)................................14, 15

*Carvel Corp. v. Diversified Mgmt. Grp., Inc.*,
  930 F.2d 228 (2d Cir. 1991)................................................................17

*Catskill Dev. v. Park Place Entm't*,
  206 F.R.D. 78 (S.D.N.Y. 2002) ............................................................5

*Columbus Park Corp. v. Dep't of Housing
Preservation and Dev. of City of NY*,
  598 N.E.2d 702 (N.Y. 1992)................................................................18

*Deutsche Alt-A Sec. Mort. Loan Trust Series 2006-OA1 v. DBSP*,
  958 F. Supp. 2d 488 (S.D.N.Y. 2013)..................................................14

*Deutsche Bank Nat'l Trust Co. v. HSBC*,
  No. 652001/2013 (N.Y. Sup. Ct. Jan. 13, 2014)...................................18

*Deutsche Bank Nat'l Trust Co. v. WMC Mort., LLC*,
  2014 WL 3824333 (D. Conn. Aug. 4, 2014) ..........................................8

**Page**

*E.E.O.C. v. Keco Indus.*,
   748 F.2d 1097 (6th Cir. 1984) ........................................................................5

*Enercomp, Inc. v. McCorhill Publ'g*,
   873 F.2d 536 (2d Cir. 1989)..........................................................................6

*FHFA v. JPMorgan Chase & Co.*,
   2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ...............................................8

*FHFA v. Nomura Holding America, Inc.*,
   104 F. Supp. 3d 441 (S.D.N.Y. 2015)....................................................7, 10

*Haines v. Liggett Grp.*,
   975 F.2d 81 (3d Cir. 1992)............................................................................5

*Hall & Co. v. Orient Overseas Assocs.*,
   401 N.E.2d 189 (N.Y. 1979).......................................................................16

*Home Equity Mortg. 2006-1 v DLJ Mortg. Capital, Inc.*,
   Index No. 156016/2012 (N.Y. Sup. Ct. Nov. 19, 2013) ..............................8

*Issuer v. EMC Mortg. LLC*,
   Index No. 0651820/2012 (N.Y. Sup. Ct. Feb. 5, 2015) ..............................8

*Jamil v. SPI Energy Co. Ltd.*,
   713 Fed. App'x 42 (2d Cir. 2017)...............................................................12

*Katz v. Am. Mayflower Life Ins. Co. of NY*,
   14 A.D. 3d 195 (1st Dep't 2004) ................................................................16

*LaSalle Bank Nat'l Assocs. v. Citicorp Real Estate, Inc.*,
   2003 WL 22047891 (S.D.N.Y. Aug. 29, 2003)....................................14, 16

*Law Debenture Trust Co. of NY v. WMC Mort., LLC*,
   2015 WL 9581729 (D. Conn. Dec. 30, 2015)..........................................8, 12

*LNC Invs., Inc. v. First. Fid. Bank, N.A.*,
   935 F. Supp. 1333 (S.D.N.Y. 1996)...........................................................21

*MASTR Adjustable Rate Mortgages Tr. 2006-OA2
v. UBS Real Estate Sec. Inc.*,
   2015 WL 797972 (S.D.N.Y. Feb. 25, 2015).............................................20

- iv -

**Page**

*MASTR Asset Backed Secs. Tr. 2006-HE3 v. WMC Mortg. Corp.*,
2012 WL 4511065 (D. Minn. Oct. 1, 2012) ......................................................14, 17

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
2010 WL 5186702 (N.Y. Sup. Ct. Dec. 23, 2010) ...................................................8

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)......................................................................................16

*Morgan Guar. Trust Co. of NY*
*v. Bay View Franchise Mort. Acceptance Co.*,
2002 WL 818082 (S.D.N.Y. Apr. 30, 2002).....................................................14, 17

*Morgan Stanley Structured Tr. I 2007-1*
*v. Morgan Stanley Mortg. Cap. Holdings LLC*,
289 F. Supp. 3d 484, 502 (S.D.N.Y. 2018).............................................. *passim*

*NCUA v. Morgan Stanley*,
No. 1:13-cv-6736-DLC, ECF No. 93
(S.D.N.Y. Apr. 30, 2014)..............................................................................8

*Nomura Home Equity Loan, Inc., Series 2006-FM2*
*v. Nomura Credit & Capital, Inc.*,
30 N.Y.3d 572, 69 N.Y.S.3d 520 (2017) ...............................................10

*Osborn v. Bankers Trust Co.*,
5 N.Y.S.2d 211 (N.Y. Sup. Ct. 1938) ...........................................................18

*PABF v. Bank of Am., NA*,
943 F. Supp. 2d 428 (S.D.N.Y. 2013)............................................................16

*Policemen's Annuity and Benefit Fund of Chi. v. Bank of Am., NA*,
907 F. Supp. 2d 536 (S.D.N.Y. 2012)........................................................14, 15

*PowerShare v. Syntel*,
597 F.3d 10 (1st Cir. 2010)........................................................................5

*Process Am. v. Cynergy Holdings, LLC*,
839 F.3d 125 (2d Cir. 2016)....................................................................7, 12

*RCN Telecom v. 202 Centre Street Realty LLC*,
156 Fed. App'x 349 (2d Cir. 2005)................................................................6

**Page**

*Ret. Bd. of the Policemen's Annuity v. Bank of N.Y. Mellon,*
  775 F.3d 154 (2d Cir. 2014)......................................................................4, 8, 9, 19

*Revson v. Cinque & Cinque, P.C.,*
  221 F.3d 59 (2d Cir. 2000)......................................................................................16

*Syncora v. EMC,*
  2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) ........................................................8

*Tyson Foods v. Bouaphakeo,*
  136 S. Ct. 1036 (2016)......................................................................................6, 19

*U.S. Naval Inst. v. Charter Commc'ns, Inc.,*
  875 F.2d 1044 (2d Cir. 1989)................................................................................18

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 1 ....................................................................................................................20
  Rule 72(a)..................................................................................................................5
  Rule 72(b) .................................................................................................................5

## SECONDARY AUTHORITIES

Black's Law Dictionary (10th ed. 2014)....................................................................15

1487465_1

## I.      INTRODUCTION

Defendant Deutsche Bank National Trust Company ("DB" or the "Trustee") failed to carry out its duties as trustee for residential mortgage-backed securities ("RMBS") trusts by ignoring evidence of specific and pervasive mortgage loan defects and failing to require sellers to repurchase breaching loans they sold to those trusts.    Magistrate Judge Moses' September 28, 2018 Memorandum and Order ("the Order," ECF No. 646), bars plaintiff Royal Park Investments SA/NV ("RPI") from using statistically valid loan sampling evidence to prove any portion of its liability or damages case on the grounds that sampling will not "help [RPI] prove any aspect of its case outside of the sample set" and "is not proportionate to the needs of the case." *Id*. at 22, 29.  As a result, RPI is prohibited from pursuing evidence that is highly relevant to its theory of the case, and instead may be required to reunderwrite ten times as many loans as would have been required had sampling been permitted – an analysis that numerous courts in RMBS actions have found to be impractical, extremely costly, and a burden on judicial resources.  The Order exceeds the scope of Magistrate Judge Moses' referral and, worse, is based on flawed assumptions and premises that are contrary to law.

The Order ignored the general principle that federal courts have repeatedly permitted sampling as a cost effective way (and often the sole practicable method) to resolve cases involving large numbers of relatively small but similar transactions.  Sampling has been endorsed by the Second Circuit under the well-recognized principle that a plaintiff need not prove facts with granular exactitude for numerous transactions but may use reliable methods of sampling and extrapolation as part of its case to prove liability and damages by a preponderance of the evidence (probability), not loan-specific certainty.  Under New York Law, RMBS trustees, including DB themselves, have successfully advocated sampling to enforce repurchase obligations, even in circumstances when the

1487465_1

trustees were unaware of specific breaches but discovered pervasive breaches in the trusts. There is simply no reason why this evidence cannot be used to prove a trustee's liability.

The Order's preclusion of sampling is based largely on its erroneous interpretation of DB's contractual duty to enforce seller obligations to repurchase loans upon the trustee's "discovery" of breaches of seller representations and warranties ("R&W") made to the trusts. Controlling precedent from the Second Circuit, along with numerous district court decisions, have construed "discovery" in this context to mean constructive knowledge or inquiry notice, which plaintiff will show using factual (non-sampling) evidence at summary judgment. The Order's finding that "discovery" means "actual knowledge," a term used elsewhere in the trust agreements, was clear error and mandates reversal.

The Order further errs by precluding sampling for the thousands of loans where DB had "actual knowledge" of R&W breaches. The Order's conclusion that sampling of these loans would not tell the "fact-finder *which* loans in the larger pool had material and adverse R&W breaches" is erroneous. Order at 21. In fact, sampling *would* identify specific loans and damages for the sample population and will identify, with high confidence, what the total damages would be for the entire population as if each and every loan had been analyzed. Sampling is used in every other RMBS context for this exact reason.

Furthermore, once a servicer or master servicer event of default ("EoD") occurs, the PSAs charge DB with a heightened "prudent person" duty to protect the assets of the trust as if they were its own. Given the overwhelming (and, for the purposes of the Order, uncontested) evidence that DB knew the Covered Trusts were full of breaching loans, RPI can prove that a prudent person would have sampled loans within post-EoD trusts to seek damages or repurchase of the loans to protect against stratospheric losses. The Order comes to erroneous conclusions of law and unnecessarily

decides issues of fact to hold that RPI is unable to argue that a prudent person would investigate R&W breaches in the trusts via sampling post-EoD. This erroneous factual conclusion rejects RPI's claims by ignoring that DB had, in fact, contemplated these actions.

In all events, the Order must be vacated.

## II.    BACKGROUND

### A.    RPI's Claims

Residential mortgage-backed securities ("RMBS") are issued by trusts holding numerous mortgage loans. RPI is a certificateholder (and thus an investor) in the ten RMBS trusts at issue ("Covered Trusts"). DB is the RMBS trustee for all Covered Trusts, with duties set out in Pooling and Servicing Agreements (collectively, "PSAs").

RPI generally alleges DB breached its contractual (and other) duties by failing to act to protect RMBS trust assets as required by the PSAs. DB failed to enforce the loan sellers' or warrantors' obligation to cure or repurchase loans. The relevant loans were those that DB discovered breached Representations and Warranties ("R&W") that materially affected the value of the loan or were supported by materially deficient loan documentation ("Document Exceptions"). Compl., ¶¶69-115 (ECF No. 1). In addition, DB obtained actual knowledge of EoDs, but ignored its post-EoD duty to "use the same degree of care and skill in their exercise as a prudent person would exercise . . . under the circumstances . . . ." by, among other things, failing to examine the loans for breaches that would have led to repurchase. ECF No. 100 ("Motion to Dismiss Order") at 14 (quoting FFML 2006-FF9 PSA §8.01). Judge Nathan denied DB's motion to dismiss RPI's breach-of-contract claims. ECF No. 100. The PSAs provide that they are construed in accordance with New York law. ECF No. 32 at Ex. A (FFML 2006-FF9 PSA §12.03).

### B.       Procedural Background

The case was referred to the Honorable Barbara Moses for non-dispositive discovery matters. ECF No. 94.  Near the end of fact discovery, the parties informed Judge Moses that "the parties agree that the submission of expert reports and completion of expert discovery would proceed more efficiently after a determination regarding whether and/or to what extent sampling will be permitted in this case."  ECF No. 440.  The parties agreed RPI should file a motion to permit sampling, which was fully briefed.  ECF Nos. 474, 490, 496.

### C.       The Order

The Order denied RPI's request to permit sampling-based expert discovery in all circumstances.  The Order found that the term "loan-by-loan and trust-by-trust" as used in *Ret. Bd. of the Policemen's Annuity v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*PABF*") and in the Motion to Dismiss Order precluded sampling because it required each individual loan at issue be independently analyzed for liability and damages even if there were more efficient means for plaintiff to prove its claims.  Order at 8-12.  Similarly, the Order held "discovery," as used in the PSAs, requires DB have "actual knowledge" of a breach of R&W to be liable.  *Id*. at 12-16.  In addition, RPI would not be able to avail itself to a "pervasive breach" theory that DB could have sued warrantors for pools of loans containing pervasive breaches, despite courts authorizing trustees to utilize similar theories.  *Id*. at 22-25.  The Order also held that RPI could not establish that upon gaining actual knowledge of a Servicer (or Master Servicer) EoD, DB would be required under the quasi-fiduciary "prudent person" standard mandated in the PSAs to conduct further investigation into the quality of the loans, such as sampling them.  *Id*. at 26-28.  Given that the Order concluded that "'the relevance of sampling evidence to prove [RPI's] claims against the trustee is slim to none,'" the Order held that the proposed sampling exercise was disproportionate to the needs of the case.  Order at 28-29.

III.    ARGUMENT

A.    The Order Should Be Vacated as Exceeding the Scope of the
Magistrate Judge's Authority or upon *De Novo* Review

The Order is rooted in conclusions of law about whether sampling can be used in part to meet

plaintiff's burden of proof, the construction of PSA provisions, and the application of case law, thus

this Court's review is *de novo* regardless whether Federal Rule of Civil Procedure 72(a) or 72(b)

applies.  Because the Order exceeds the reference to the Magistrate Judge for "discovery [and] non-

dispositive pretrial motions," ECF No. 94, it should be vacated.  Regardless, any review must be *de*

*novo*.  *See E.E.O.C. v. Keco Indus.*, 748 F.2d 1097, 1102 (6th Cir. 1984) (where "magistrate . . .

exceeded his statutory authority," district court's failure to review *de novo* "constitutes reversible

error").  Rule 72(b) addresses "[d]ispositive [m]otions" and provides that the "district judge must

determine de novo any part of the magistrate judge's disposition that has been properly objected to."

Rule 72(a) addresses "[n]ondispositive [m]atters" and provides that the "district judge in the

case must consider timely objections and modify or set aside any part of the order that is clearly

erroneous or is contrary to law."  Under either subsection, the Order merits *de novo* review because,

"for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to

law' standard and review under Rule 72(b)'s *de novo* standard."[1]

As explained below, even under a less stringent standard for non-dispositive orders, the

Order is clearly erroneous and contrary to law.

---

[1]    *PowerShare v. Syntel*, 597 F.3d 10, 15 (1st Cir. 2010) ("review of a non-dispositive motion
by a district judge turn[ing] on a pure question of law . . . is plenary under the 'contrary to law'
branch of . . . Rule 72(a)"); *Haines v. Liggett Grp.*, 975 F.2d 81, 91 (3d Cir. 1992) ("phrase 'contrary
to law' indicates plenary review as to matters of law"); *Catskill Dev. v. Park Place Entm't*, 206
F.R.D. 78, 86 (S.D.N.Y. 2002) ("order may be deemed contrary to law 'when it fails to apply or
misapplies . . . case law'").

B.      **Sampling Is Permissible as Part of RPI's Liability and Damages Presentations**

1.      **Courts Have Long Recognized the Admissibility of Sampling in RMBS Litigation**

For a breach of contract action, a plaintiff's burden of proof is by a "preponderance of the evidence." *Enercomp, Inc. v. McCorhill Publ'g*, 873 F.2d 536, 542 (2d Cir. 1989). "'[C]ausation in fact is established if the defendant's breach of duty was a substantial factor in producing the damage.'" *RCN Telecom v. 202 Centre Street Realty LLC*, 156 Fed. App'x 349, 351 (2d Cir. 2005). "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation. . . .  The causal relation between a defendant's act and a plaintiff 's injury . . . need only be probable." *BCS v. Heartwood 88*, 637 F.3d 750, 758-59 (7th Cir. 2011) (Posner, J.).

As the Supreme Court recently explained, "[a] representative or statistical sample, like all evidence, is a means to establish or defend against liability. . . .  In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability." *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (quoting Manual for Complex Litigation §11.493 (4th ed. 2004)).  Sampling conserves resources by providing reliable and objective extrapolation to a population without having to examine every single transaction.

In RMBS cases, a sampling expert draws a loan sample capable of yielding statistically significant conclusions about each trust.  A re-underwriting expert next determines how many loans in the sample materially breach R&Ws.  The sampling expert extrapolates the breach rate to the entire loan pool based on statistically accepted methodologies providing a confidence level of 95%

with a margin of error.[2]  Damages experts then use the extrapolated breach rate together with loan values and the trust's waterfall structure as components for calculating damages.  Where a plaintiff "has proven the fact of damages by a preponderance of the evidence, 'the burden of uncertainty as to the amount of damage is upon the wrongdoer'. . . .  Therefore, a plaintiff need only show a 'stable foundation for a reasonable estimate' of the damages incurred as a result of the breach . . . [, and] the burden of any uncertainty as to the amount of damages is on the breaching party."  *Process Am. v. Cynergy  Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016).

Sampling has been widely accepted in New York (and elsewhere) as part of the proof that a defendant was probably liable and caused the asserted quantum of damages in RMBS cases.  *E.g.*, *Assured Guar. v. Flagstar Bank*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims.").  Judge Rakoff, presiding over a bench trial in *Flagstar*, "accept[ed] sampling as an appropriate method of proof" and found "that the loans underlying the Trusts here at issue pervasively breached Flagstar's contractual representations and warranties." *Id.*[3] The court held "the evidence proffered by [plaintiff's sampling and damages experts wa]s clear, credible, and convincing"; the sampling expert's "sample size . . . provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and

---

[2]     *See FHFA v. Nomura Holding America, Inc.*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015) (Cote, J., presiding over an RMBS bench trial) ("A sample of 100 loans . . . permits results to be stated with a 95% confidence level, *i.e.*, with maximum margins of error of +/10 percent.").

[3]     Judge Rakoff interpreted the same "discovery" standard at issue in PSA §2.03 to impose liability upon the seller, holding that plaintiff "[a]ssured, by informing Flagstar "'of pervasive breaches' affecting the charged off loans" with its January 2009 repurchase demand, 'rendered Flagstar constructively "aware" – or, at a minimum, put Flagstar on inquiry notice – of the substantial likelihood that these breaches extended beyond the charged off loan population and into the broader loan portfolio.'"  920 F. Supp. 2d 475, 512-13; *see id.* at 480 (MLPA: "discovers a breach of any of the foregoing [R&Ws]").  *See infra* §III.C.2.

warranties"; and the damages expert "provided a solid basis for calculating the damages occasioned by any such breaches." *Id.* at 501.  The clear majority of courts are in accord with that approach in RMBS cases.[4]

    **2.**    **"Loan-by-Loan, Trust-by-Trust" Language Does Not Prohibit Sampling**

        **a.**    **The Order's Reading of "Loan-by-Loan, Trust-by-Trust" in *PABF* Is Contrary to the Law Regarding Sampling**

The Order interprets a quotation from *PABF* requiring "loan-by-loan and trust-by-trust" proof to mean that each and every loan must be assessed to establish liability and damages.  *PABF*, 775 F.3d at 162-63.  The case does not stand for that restrictive of a proposition.  It merely ***cautioned that loans or trusts which are not at issue cannot be used to infer information about unrelated loans or unrelated trusts***.  *Id*. at 162 ("We see no way in which answering these questions for the

---

[4]    *E.g.*, (all RMBS cases) *Assured Guar. Mun. Corp. v. DB Structured Prods., Inc.*, 2014 WL 3282310, at *6, *8 (N.Y. Sup. Ct. July 3, 2014) ("*DBSP*") ("sampling and expert evidence may be used" at trial; forcing parties "to re-underwrite all of the loans is commercially unreasonable;" "sampling may be used to compute damages"); *SACO I Trust 2006-5, Issuer v. EMC Mortg. LLC*, Index No. 0651820/2012, NYSCEF Doc. No. 564 (N.Y. Sup. Ct. Dec. 2, 2015) ("use of statistical sampling to prove liability and damages on their claims is consistent with the terms of the contract governing the transactions, including but not limited to the PSAs"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *4 (N.Y. Sup. Ct. Dec. 23, 2010) ("[s]tatistical sampling is a widely used method to present evidence from a large population of data" and "[i]t is undisputed that the use of statistical sampling is generally accepted in the scientific community"); *Home Equity Mortg. 2006-1 v DLJ Mortg. Capital, Inc.*, Index No. 156016/2012, NYSCEF Doc. No. 236 at 1 (N.Y. Sup. Ct. Nov. 19, 2013) ("HEMT 2006-1") ("ORDERED that plaintiffs may use a statistical sampling to prove liability and damages on all of their claims"); *FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *1 (S.D.N.Y. Dec. 3, 2012); *NCUA v. Morgan Stanley*, No. 1:13-cv-6736-DLC, ECF No. 93 at 1-2 (S.D.N.Y. Apr. 30, 2014); *Syncora v. EMC*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011) (approving sampling and explaining that defendant "cannot reasonably expect the Court to examine each of the 9,871 transactions to determine whether there has been a breach, with the sole remedy of putting them back one by one"); *Law Debenture Trust Co. of NY v. WMC Mort., LLC*, 2015 WL 9581729, at *7 (D. Conn. Dec. 30, 2015); *Deutsche Bank Nat'l Trust Co. v. WMC Mort., LLC*, 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case").

trusts in which Plaintiffs invested will answer the same questions for the numerous trusts in which they did not invest.").

In *PABF*, the Second Circuit denied class standing to lead plaintiffs who invested in only one of numerous trusts in the putative class. The court reasoned that even proof the trustee "always failed to act when it was required to do so would not prove [plaintiffs'] case, because they would still have to show which trusts actually had deficiencies that required [the trustee] to act in the first place." *Id*. Importantly, the court did not preclude sampling of trusts in which the lead plaintiff invested. *Id*. Consistent with the numerous authorities cited above, the Second Circuit noted without a hint of disapproval that courts have "permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts." *Id*. at 162 & n.6 (citing *Flagstar*, 920 F. Supp. at 486-87). The court merely rejected class plaintiffs' use of "a single sample of loans taken from hundreds of trusts . . . to prove a defendant's liability with respect to each of those trusts." *Id*.[5] So long as a plaintiff is not trying to infer traits from one trust to an unrelated set, *PABF* allows for sampling.

Here too, RPI may "show which trusts actually had deficiencies that required [the trustee] to act in the first place" by submitting evidence based on sampling and re-underwriting for each trust – that is, on a "loan-by-loan and trust-by-trust" basis – showing that a certain percentage of the loans, more likely than not, violated the representations and warranties made by the sellers to the trusts. *Id*. at 162-63. Contrary to the Order (at 8-12), the Second Circuit did not establish a rule that plaintiffs

---

[5]    To the extent the Order believed RPI intends to extrapolate information from loans in one trust to another trust, that view is clearly erroneous. RPI will have a separate sample for each trust, satisfying any "trust-by-trust" requirement that may be read into *PABF*. As further described *infra*, a representative sample addresses any individual differences between the loans at issue so that the sample can provides an equivalent to "loan-by-loan" proof.

must submit evidence for each of the many thousands of breaching loans.  *Flagstar* affirmatively rejected such a rule by allowing sampling.

**b.**     **The Order Overextends *Nomura* and *Ambac* to Preclude All Pervasive Breach Theories**

The Order erroneously interprets *Ambac Ass. Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 584-85 (2018) and *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 584, 69 N.Y.S.3d 520 (2017) as mandating a per se rejection of any exception to the sole remedy provisions.  Order at 9-10, 22-26.  But that is not how courts have applied those holdings.  After *Nomura*, DB itself successfully argued that the sole remedies provision could still be voidable and that it would not be limited to equitable remedies in a case against a RMBS loan warrantor.  *Deutsche Bank Nat'l Trust Co. for Morgan Stanley Structured Tr. I 2007-1 v. Morgan Stanley Mortg. Cap. Holdings LLC*, 289 F. Supp. 3d 484, 502 (S.D.N.Y. 2018). There, the court noted that irrespective of *Nomura*, the sole remedies provision was "voidable given its allegations of gross negligence, and that in all events, the [sole remedies position] does not foreclose recovery of damages."  *Id.* at 499.  *Nomura* left undisturbed the rule that in certain circumstances – such as those present here – the sole remedies provision does not prohibit breach of R&W claims to be brought in the aggregate for monetary damages.

Here, RPI has compiled evidence of numerous instances of bad faith, gross negligence or outright fraud by the loan originators or warrantors, which would support the voiding of the sole remedies provision just as DB advocated in *Morgan Stanley*.  Because replacement loans need not be swapped for specific breached loans when suing for monetary damages, pervasive breach cases can be resolved by constructing a statistically valid sample to conduct a complete loan-by-loan analysis to identify breaching loans and the related damages within the sample.  Only then will RPI extrapolate those valid results to the full population.  A properly designed sample will return a valid

- 10 -

final damages calculation which will be substantially the same as damages calculated via a review of each and every loan.  Because the result is the same, "loan-by-loan" proof is achieved while saving the parties substantial resources.

In any event, the sole remedy provision regarding repurchase is a monetary damages provision.  The sole remedy contains three possible remedies: (1) cure the breach of R&W; (2) substitute the bad loan with a good loan, or (3) pay the trust the "Repurchase Price" for the loan. In essence, the Repurchase Price is a liquidated damages provision setting the method of calculating monetary damages for the afflicted loan.[6]  As the Order recognized, the cure and substitute remedies were often limited after two years, rendering the sole remedy provision as essentially a monetary damages provision.  Order at 11 n.12.

### 3.     The Order's Holding Concerning RPI's Burden of Proof to Establish Damages Is Clearly Erroneous

The Order found that a number of factors purportedly impacting damages requires individualized loan-by-loan analysis of every loan and precludes sampling.  Order at 11.  The Order states that RPI would need to establish in its affirmative case with respect to each breaching loan DB had discovered, the remedy sought, the warrantor's solvency, the timing of the demand process, the statute of limitations, and the nonperformance risk of substituted loans.  *Id*.[7]  This analysis erroneously conflates RPI's affirmative burden of proof with DB's affirmative defenses.  *See* ECF No. 113 (DB's Thirty-Sixth affirmative defense: "Plaintiff's claims are barred, in whole or in part, to

---

[6]     The Repurchase price is "the sum of (i) the unpaid principal balance of such Mortgage Loan . . . (ii) interest on such unpaid principal balance of such Mortgage Loan . . . (iii) all unreimbursed Servicing Advances, and (iv) all expenses incurred by the Master Servicer, the Servicer or Trustee arising out of the Master Servicer's, the Servicer's or Trustee's enforcement of the Mortgage Loan Seller's or Sponsor's repurchase obligation hereunder."  FFML 2006-FF9 at 41, ECF No. 1-1 (PSA definition of Repurchase Price.)

[7]     The Order also stated that sampling would not address issues relating to DB's state of mind, however, RPI will address that issue without the use of sampling evidence.

the extent that any enforcement action by the Trustee taken against an allegedly breaching party would not have yielded any recovery for the Covered Trusts due to the insolvency of the allegedly breaching party or for any other reason.").

To the extent that the Order relied on this misunderstanding to find that sampling evidence would not be relevant to RPI's affirmative case, its finding is erroneous. The preponderance of the evidence standard that RPI must meet in proving damages requires that it prove the ***fact*** of damages, and the "burden of any uncertainty as to the amount of damages is on the breaching party." *Process Am.*, 839 F.3d at 141. "[A] plaintiff need only show a 'stable foundation for a reasonable estimate' of the damages incurred as a result of the breach [of contract]." *Id.* Using statistically-valid sampling to determine a material defect rate in loans that have been liquidated at a loss, and from there extrapolating a damages figure for each Covered Trust – just as DB itself has done in actions against RMBS sponsors or issuers – will create a reliable damages estimate sufficient to meet RPI's burden of proof. *See, e.g.*, *Law Debenture*, 2015 WL 9581729, at *7; *see also HEMT 2006-1*, Index No. 156016/2012, NYSCEF No. 236. DB will then have the opportunity to counter RPI's damages evidence with any evidence it has to support its defenses (*e.g.*, whether certain originators were insolvent prior to the breach). *See, e.g.*, *Jamil v. SPI Energy Co. Ltd.*, 713 Fed. App'x 42, 44-45 (2d Cir. 2017) (once plaintiff, the non-breaching party, had shown damages as a matter of fact, it was defendant's burden of proof to establish any discount rate to the value of the estimated damages). Requiring that RPI provide an exact, loan-by-loan damages figure in its affirmative case, however, amounts to limiting RPI to a remedy for specific performance – a remedy it has not sought and which DB has waived through its gross negligence. *See Morgan Stanley*, 289 F. Supp. 3d at 500-02. Because the Order's damages conclusion was contrary to law, it must be set aside.

- 12 -

### C.    "Discovery" as Used in the PSAs Means "Knows or Should Have Known"

Despite the PSAs requiring DB to act upon "discovery" of breaches of R&Ws, the Order held it was bound by the Court's Motion to Dismiss Order to hold that DB does not have liability for R&W breaches unless it obtains "actual knowledge" of the breach.  Order at 12-16.  That reading of the Motion to Dismiss Order was erroneous.  The Court held that RPI's complaint alleged actual knowledge and thus was sufficient to meet the "discovery" language in the PSAs, not that actual knowledge is the hurdle which RPI must clear at trial.  *Royal Park*, MTD Order, 2016 WL 439020, at *4-*6 (S.D.N.Y. Feb. 3, 2016).  Since actual knowledge exceeds discovery, the Court did not need to analyze RPI's claims on that issue.  As discussed below, as RPI can prove "discovery" under the PSAs, sampling should be permitted.

### 1.    The Second Circuit Has Confirmed that "Discovery" Means Constructive Knowledge

In addition to proving DB had actual knowledge of a set of R&W breach claims, RPI will establish DB's "discovery" of breaching loans pursuant to PSA §2.03 by showing (though non-sampling evidence) that it knew or was aware of facts raising a suspicion as to the existence of numerous breaching loans but failed to investigate in a manner consistent with the established meaning of "discovery."  Sampling and extrapolation will then show what DB would have found upon proper investigation triggered by these facts, to prove liability and estimate damages.

"As several courts have observed in cases involving securitized mortgage loans, '[a] party "discovers" a breach when it knows or should know that the breach has occurred.'"  *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital*, 2013 WL 3146824, at *19 (S.D.N.Y. 2013), *aff'd in relevant part*, 821 F.3d 297 (2d Cir. 2016) ("*BNYM*").  Therefore, "discovery" means that, "once a party becomes aware of the relevant facts, a duty arises . . . 'to pick up the scent and nose to the source.  If the quest confirms this suspicion, then [it] must'" act on its rights "'with reasonable

dispatch.'" *Id.* In affirming *BNYM*, the Second Circuit held that "the district court correctly observed [that] the law charges a party with discovery of [an R&W] breach . . . after it has had a reasonable opportunity to investigate and confirm its suspicions [of the breach]." 821 F.3d at 310. The Second Circuit's affirmance further applies to numerous other decisions concerning the meaning of "discovery" of R&W breaches by an RMBS trustee. *See Deutsche Alt-A Sec. Mort. Loan Trust Series 2006-OA1 v. DBSP*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (§2.03 "discovery" means "knew, or should have been aware"); *Flagstar*, 920 F. Supp. 2d at 512-13 ("discovery" means "constructively aware" or "inquiry notice"); *Policemen's Annuity and Benefit Fund of Chi. v. Bank of Am., NA*, 907 F. Supp. 2d 536, 553-54 (S.D.N.Y. 2012) (a trustee aware of "facts 'suggestive of a breach . . . was required to 'pick up the scent and nose to the source' – *i.e.*, to investigate any suspicions about the loans . . . in the Trusts," and "had no right to" proceed as though "'living under a rock' . . . given its role and responsibilities").[8]

Following the Second Circuit's *BNYM* decision, Judge Failla held in the *Blackrock v. Wells Fargo* action that "[it] is inconsistent with the bargained-for terms of the PSAs [to] treat[] . . . 'discovery' and 'actual knowledge' as synonymous, when the use of two different terms to address two different subjects in two different sections of the PSAs must be given meaning. . . . Plaintiffs are correct in their identification of relevant contract-interpretation principles." *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3610511, at

---

[8]    *See also MASTR Asset Backed Secs. Tr. 2006-HE3 v. WMC Mortg. Corp.*, 2012 WL 4511065, at *6-7 (D. Minn. Oct. 1, 2012) (upon "[l]earning of facts . . . suggestive of a breach . . . it becomes incumbent [upon the trustee] to pick up the scent and nose to the source"; holding that the Trustee "was duty-bound to investigate its suspicions" and was "constructively aware of the breaches"); *LaSalle Bank Nat'l Assocs. v. Citicorp Real Estate, Inc.*, 2003 WL 22047891, at *6 (S.D.N.Y. Aug. 29, 2003) ("'[a] party "discovers" a breach when it knows or should know [based on awareness of 'red flags'] that the breach has occurred'"); *Morgan Guar. Trust Co. of NY v. Bay View Franchise Mort. Acceptance Co.*, 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002) ("a party 'discovers' a breach when it knows or should know that the breach has occurred").

*9 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo*") ("[a]llowing that 'discovery' and 'actual knowledge' are different terms that must be given different meanings"). *Id.* Judge Failla concluded that "[i]t is . . . plausible . . . that the Consolidated Plaintiffs could demonstrate 'discovery' through a showing of conscious avoidance or implied actual knowledge," the latter term being "defined as '[k]nowledge of information that would lead a reasonable person to inquire further.'" *Id.* at *10 (quoting Black's Law Dictionary (10th ed. 2014)).[9] The Order rejects *BNYM* by suggesting that RPI is advocating for a "wholesale basis" investigation on R&W breaches it cannot identify. Order at 13-14. RPI has not advocated that DB has a duty to identify each and every R&W breach in a vacuum, but rather, consistent with the case law, a trustee must act once it becomes aware of "facts 'suggestive of a breach . . . [which] required [it] to 'pick up the scent and nose to the source' – *i.e.*, to investigate any suspicions about the loans . . . in the Trusts." *PABF v. Bank of Am.*, 907 F. Supp. 2d at 553-54. The Order ignores the overwhelming evidence that DB learned facts which raised suspicions of breaches (or intentionally ignored them), and permits DB to proceed as though "living under a rock." *Policemen's Annuity v. Bank of Am.*, 907 F. Supp. 2d at 553-54; *see* ECF No. 474 at 5-13 (citing evidence).[10]

---

[9]      Although Judge Failla refused to vacate the Magistrate's Order regarding sampling because the plaintiffs intended to use sampling "to demonstrate that any 'discovery' had occurred." *Wells Fargo*, 2017 WL 3610511, at *10. Because RPI is not advocating that sampling be used to establish discovery, that analysis is not applicable here.

[10]      The Order quotes the Second Circuit's analysis of *BNYM* to suggest that discovery means "effectively becomes aware." That quote, however, was discussing the temporal nature of discovery, which is a process that takes time to complete. The court specifically acknowledged that a duty to investigate can be triggered because there "must be a reasonable opportunity to investigate and confirm its suspicions." This is consistent with RPI's position that a trustee may not ignore facts suggesting breaches.

### 2. Traditional Principles of Contract Interpretation, Ignored by the Order, Confirm that "Discovery" Means Constructive Knowledge – Not Actual Knowledge

In concluding that "the trustees' duty to enforce the R&Ws arises upon its 'actual knowledge' of breaching loans," the Order erroneously rejects *BNYM* and traditional contract interpretation principles.  Order at 12.

*First*, by construing "discovery" in §2.03 to mean the same thing as "actual knowledge" in §8.01, the Order violates the rule that "parties must be deemed to have intended different meanings" by using different "language [in] two provisions."  *Hall & Co. v. Orient Overseas Assocs.*, 401 N.E.2d 189, 189 (N.Y. 1979).  The Order provides no rationale for why those two distinct terms, one with a lengthy judicial history in this context, must be given the same meaning.  This Court should hold that "discovery" means constructive knowledge.[11]

*Second*, DB entered into the PSAs after courts had already construed "discovery" of R&W breaches to mean "knows or should know."  *Supra* n. 8 (citing *LaSalle* and *Morgan Guaranty*).  That judicially construed meaning is ordinarily "preferred" and controls here.  *Katz v. Am. Mayflower Life Ins. Co. of NY*, 14 A.D. 3d 195, 206 (1st Dep't 2004).[12]  The PSA drafters knew how to require "actual knowledge" in §8.01 but they chose not to do so in §2.03.[13]

---

[11]   Even if deemed ambiguous, that term's interpretation "is a question of fact for the factfinder" a trial.  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).  The Second Circuit "review[s] *de novo* a district court's determination of whether a contract is ambiguous."  *Id.*  Review of the Order's construction here must also be *de novo*.

[12]   Statutes of limitations frequently include a "discovery" provision.  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (holding "discovery" as used in federal securities limitations period "encompasses not only those facts [the party] actually knew, but also those facts a reasonably diligent [party] would have known").  The sophisticated drafters of the PSAs certainly were aware of that fact.

[13]   *See PABF v. Bank of Am., NA*, 943 F. Supp. 2d 428, 433 (S.D.N.Y. 2013) (in which PSA §2 provided "'in the case of the Trustee, having actual knowledge thereof'" for R&W breaches).

- 16 -

***Third***, after "discovery" of an R&W breach the trustee has a duty to enforce breaches of R&Ws.  Motion to Dismiss Order at 7-11.  Included in this duty is to enforce breaches of R&Ws contained in a separate Purchase Agreement assigned to the trustee.  ECF No. 46, Ex. 1 ("FFML 2006-FF9 PSA §2.03(k)").  The Purchase Agreement is the Mortgage Loan Purchase Agreement ("MLPA"), a contract between the loan seller and the depositor, in which the seller makes the representations and warranties that are conveyed to the trusts via the PSAs and which the trustee must enforce. MLPAs contain the same type of "discovery" language as the PSAs that reference them and have been construed to require only constructive notice.  *See Morgan Guaranty*, 2002 WL 818082, at \*5; *MASTR 2006-HE3*, 2012 WL 4511065, at \*6-7.  The MLPA and PSA are "executed on the same day," *Ace Secs. Corp. Home Equity Loan Tr., Series 2006-SL2 v. DBSP*, 25 N.Y.3d 581, 590 (N.Y. 2015), and "[u]nder New York law, instruments executed at the same time, by the same parties, for the same purpose in the course of the same transaction will be read and interpreted together." *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 233 (2d Cir. 1991). "Discovery" in PSAs must therefore be construed in the same way courts have construed that term as used in MLPAs.

***Fourth***, MLPAs typically require trustees to provide "prompt notice" upon "discovery" of R&W breaches, and repurchase claims have been dismissed for the trustee's failure to do so after being placed on inquiry notice.  *See, e.g.*, *MASTR 2006-HE3*, 2012 WL 4511065, at \*7 (holding trustee "constructively aware of," and thus "duty-bound to investigate" breaches more promptly); *accord* ECF No. 46, Ex. 1 (FFML 2006-FF9 PSA §2.03 ) ("party discovering such breach shall give prompt written notice to the others").  Indeed, when DB sued HSBC, seeking repurchase of breaching loans HSBC had sold to the trust at issue, HSBC argued that the MLPA's prompt notice requirement triggered by "discovery" began to run when the plaintiff trustee "knew or should have

- 17 -

known of [the] alleged breaches," and the trustee's claims should therefore be dismissed. *Deutsche Bank Nat'l Trust Co. v. HSBC*, No. 652001/2013 (N.Y. Sup. Ct. Jan. 13, 2014), Doc. No. 9 at 22 (citing *Morgan Guaranty*). To accept that a trustee has no obligation to act with respect to R&W breaches until it obtains actual knowledge, when any repurchase action against the seller pursuant to the same language could be barred if the trustee fails to act upon constructive knowledge, would nullify the repurchase remedy and leave investors unprotected based on inconsistent and irreconcilable interpretations of the same term "discovery" as used in the interlocked PSAs and MLPAs.

*Fifth*, "due consideration must be given to the purpose of the parties" in establishing the trust to protect and manage trust assets for beneficiaries. *Columbus Park Corp. v. Dep't of Housing Preservation and Dev. of City of NY*, 598 N.E.2d 702, 706 (N.Y. 1992). The Order's construction would leave trust beneficiary investors unprotected. Further, any "uncertainty or ambiguity of meaning must be construed in favor of the beneficiary [investors] . . . and against the [trustee] who prepared the instrument."[14]

### D.     RPI Should Be Permitted to Conduct Sampling for at Least Three Distinct Categories of Loans

As the Order acknowledges, RPI seeks to use statistical sampling on three distinct categories of loans: (1) loans which DB had "actual knowledge" of breaches; (2) loans in the Covered Trusts which experienced an EoD; and (3) loans that the Trustee "discovered" had breaches. Order at 18. For the reasons below, the Order's refusal to allow sampling of these loans was erroneous and must be reversed.

---

[14]     *Osborn v. Bankers Trust Co.*, 5 N.Y.S.2d 211, 215 (N.Y. Sup. Ct. 1938); *see* Bogert's Trusts and Trustees, §182 n.7 (same); U.*S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1050 (2d Cir. 1989) (construing ambiguous terms in favor of non-drafter in dispute involving sophisticated parties). Indeed, DB's transaction managers testified they negotiated the terms of the PSAs on DB's behalf. ECF No. 327 at 3, Ex. 3 at 227:18-228:4, 324:22-326:9.

1.     **RPI Should Be Permitted to Sample Loans for Which DB Had "Actual Knowledge"**

Even if the Court finds that a trustee needs to have "actual knowledge" of a R&W breach to be liable, which it should not, RPI has obtained evidence that DB had actual knowledge of approximately 5,000 loans with R&W breaches.  ECF No. 474 at 5-8; Order at 18-19.  Because RPI can establish DB had actual knowledge of a breach of R&W for each loan in the bucket, an actual knowledge standard has no effect on the sampling protocol.  RPI will select a representative sample of the loans to establish liability and damages on those particular loans then extrapolate the results to the remaining loans which DB had actual knowledge.  A fact-finder could reasonably accept that a properly constructed sample's breach rate and recoverable damages would be statistically similar to the remaining loans.

The Order correctly assumes that: (1) RPI can "show, using non-sampling evidence" that DB "had actual knowledge of thousands of loans" with R&W breaches, and that (2) sampling could provide the trier of fact with the "reliable" number of materially breaching loans in that group.  Order at 19-20.

The Order's rejection of RPI's request to sample these loans because sampling would not inform the "fact-finder *which* loans in the larger pool had material and adverse R&W breaches or Document Exceptions" is erroneous.  Order at 21 (Court's emphasis).  The sampling protocol *would* identify specific loans and damages for the sample population and as generalized, will identify, with high confidence, what the total damages would be for the entire population as if each and every loan had been analyzed.  Sampling is used in every other RMBS context for this reason.  *Tyson Foods*, 136 S. Ct. at 1046; *see* §III.D, *supra*.  *PABF* does *not* require the parties to review every loan at issue to reach the same result as they would reach after sampling a statically significant portion of those

- 19 -

loans.  Such a conclusion would be unnecessary and wasteful, and contrary to the Court's role in promoting efficient determination of the action required under Fed. R. Civ. P. 1.[15]

At a minimum, RPI should be permitted to sample loans for which it can prove that DB has actual knowledge of breaches.

> ### 2. The Order Makes Impermissible Factual Findings by Discrediting Evidence Showing Post-EoD Loans Should Have Been Sampled

The Order precluded sampling of loans to establish what R&W breaches DB was required to identify for repurchase after obtaining actual knowledge of a servicer EoD.  Order at 26-28.  To establish that a prudent person would have sampled the loans in the trusts to determine the magnitude of material breaches in the trusts, RPI cited evidence that DB had a policy to sample loans post-EoD, did in fact sample loans after bankruptcies of originators, ECF No. 474 at 16-19; 496 at 7, and sampled loans when it took action to enforce repurchase claims in *DB v. Morgan Stanley*.  Although the Order agreed that DB would have been under a "prudent person" standard of care after obtaining knowledge of an EoD, the Court held that RPI's evidence did not establish a prudent person would have a duty to investigate the quality of loans unless it could cite to legal authority or industry standards.  Order at 27 n.34.

The Order went far beyond the matters referred to the Magistrate.  What a prudent person should have done has not been resolved in this case and is an issue of fact to be decided by the jury. The Order, in precluding RPI from using sampling to show what DB would have uncovered had it

---

[15]     The Order cites *MASTR Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, 2015 WL 797972, at *4 (S.D.N.Y. Feb. 25, 2015) to assert that a court should not alter agreements to provide "an efficient and economical remedy" as it would disturb "predicable outcomes" envisioned by sophisticated parties.  Order at 29.  No unpredictability is introduced using a sample which is designed to provide the same results as a review of every single loan, and it was certainly expected that a trustee could be liable for breach of contract.  It was not expected between the parties that the trustee could seek shelter behind a provision designed to protect warrantors.

conducted an investigation after an EoD, is in effect a decision that DB's obligations under the prudent person standard did not include conducting an investigation at all – an issue far beyond the scope of the Magistrate Judge's authority and inappropriate for resolution on a discovery order.

New York law "requires an indenture trustee to perform prudently even the more general obligations in the indenture, and applies to any conduct not specifically prohibited by the indenture which would enable the investors to secure repayment of the trust certificates." *LNC Invs., Inc. v. First. Fid. Bank, N.A.*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996). As described in RPI's Sampling Motion, ECF No. 474 at 16-19, after demonstrating DB's knowledge of EoDs, RPI will then show that a prudent person could and would have investigated for R&W breaches and enforced repurchases, but that DB failed to do so unless specifically compelled by Certificateholders. Sampling will demonstrate the rate of breaches that DB would have identified had it conducted a prudent investigation of the Trusts once it knew of an EoD – just as it did in other instances as trustee.

The Order also suggests the PSA provisions require the trustee receive indemnification prior to conducting the post-EoD review. The trustees are entitled to indemnification from the Master Servicer for "any breach of the Master Servicer's obligation . . . ." ECF No. 32, Ex. A at 119 (FFML 2006-FF9 PSA §8.05(b)). If the Master Servicer is not able or required to indemnify the trustee, the trustee may seek funds from the distribution account for "the performance of any of the Trustee's duties under [the PSA]," such as undertaking its heightened duty of a quasi-fiduciary after an EoD. *Id*. It is clear error to lump the use of sampling to prove the R&W breaches DB should have enforced in its ordinary administration of a Covered Trust together with the use of sampling to prove the defects in Covered Trusts experiencing an EoD.

- 21 -

### 3.   RPI Should Be Permitted to Sample Loans for Which DB Discovered R&W Breaches

The Order also prevents RPI from sampling loans where DB "discovered" breaches of R&Ws, either through constructive knowledge or conscious avoidance.  Order at 22-26.  As discussed above, under the Second Circuit's "discovery" standard, DB "discovered" breaching loans through evidence that it was aware of facts raising a suspicion as to (i) the remainder of loans in the trusts; (ii) Warrantors; and (iii) Servicers.  §III.D.2; ECF No. 474 at 9-12.  Sampling evidence will show what DB would have found had it carried out its obligations following such discovery.  *Id.*

A clear example of what DB ***should have*** done to fulfill its contractual obligations as trustee is what it did do in the *Deutsche Bank v. Morgan Stanley* case.  There, DB demanded the repurchase or replacement of breaching loans – the same actions that RPI alleges DB should have, but failed to, undertake on behalf of the Covered Trusts.  *See* 2018 WL 583116, at *14.  Moreover, Judge Forrest agreed with DB that "statistical sampling is an appropriate means of attempting to prove both liability and damages" in proving its claims against Morgan Stanley.  If an RMBS trustee is permitted to use sampling when suing a sponsor for the repurchase of breaching loans, it follows that a certificateholder should be permitted to use sampling when suing a trustee for its failure to sue a sponsor for the repurchase of breaching loans.  Judge Forrest also specifically rejected Morgan Stanley's argument that the "sole remedy" provisions of the Governing Agreements require "loan-by-loan" proof of material breaches in each loan, thereby precluding proof of pervasive breaches and globalized damages using sampling evidence.  *Morgan Stanley*, 289 F. Supp. 3d at 502-05.

The Order's finding that there are numerous Warrantors of loans in the Covered Trusts in no way alleviated DB's obligation to demand the repurchase or replacement of breaching loans.  Order at 24-25.  Seven of the ten Covered Trusts only contained loans from a single originator, which would result in similar single-warrantor pervasive breach cases like *Morgan Stanley*.  ECF No. 1 at

31-34.[16]  The two trusts which account for the vast majority of the Warrantors do not undercut these single-warrantor cases.  The seven trusts contain thousands of shoddily underwritten loans deposited into the trusts through gross negligence or outright fraud.  RPI's complaint specifically notes DB was aware of that "[t]he FCIC Report specifically identified many of the Covered Trusts' Warrantors and loan originators as being active participants in this fraud" involving "RMBS trusts and the mortgage loans underlying them."  ECF No. 1, ¶74; *see also* ¶¶78, 81 (regarding Wells Fargo loans); 82 (regarding New Century loans); 85, 95 (fraud was ubiquitous); 96.  Because DB had knowledge of the fraudulent loans underlying the single-originator trusts, DB should have demanded the repurchase or replacement of breaching loans, just as it did in *Morgan Stanley*.

A trustee bringing suit for pervasive breaches is not a discretionary act when done to remedy specific trust-wide suspicion of breaches, nor is it an instance in which the trustee would not be indemnified by the warrantor or the trust.  If DB had sufficient suspicions that a substantial number of loans within the trusts had breached their R&Ws, it would under the PSA's discovery standard (either constructive knowledge of conscious avoidance), need to confirm or deny it suspicions.  The efficient method is what was done in *Morgan Stanley* – identify a set of loans with pervasive breaches and ask the warrantor to repurchase the breached loans which materially affected certificateholders' interest.  If the warrantor refused, the trustee would need to sue under the pervasive breach theory or independently confirm or deny its suspicions.

The Order's conclusion regarding indemnity similarly does not relieve DB from fulfilling its obligations.  Order at 25-26.  The trustee may be reimbursed for cases against the Mortgage Loan Sellers by the Mortgage Loan Sellers under PSA §2.03(h) or if unavailable, by funds in the distribution account for "the performance of any of the Trustee's duties under [the PSA]," such as its

---

[16]     These trusts are: FFML 2006-FF9, HVMLT 2006-8, MSAC 2007-NC2, MSAC 2007-NC3, NHEL 2006-4, SAST 2006-2, SVHE 2007-NS1.

duty to seek remedies for breaching loans it discovers. ECF No. 42 at Ex. A at 119 (FFML 2006-FF9

PSA §8.05(b)).  The issue the Order raises regarding adequate indemnification applies to situations

"at the request, order or direction of any of the Certificateholders."  But in these instances alleged by

RPI, the trustee had a duty to act to remedy R&W breaches it discovered via its knowledge of

pervasive breaches.  *BNYM*, 2013 WL 3146824, at *19 ("once a party becomes aware of the relevant

facts, a duty arises").

### E.   The Proportionality Analysis Is Clearly Erroneous Because It Is Tainted by the Order's Erroneous Conclusions

The Order concluded that the relevance of the sampling evidence is "slim to none," and "the

burdens remain high" and therefore concluded sampling would be disproportionate to the needs of

the case.  Order at 28-29.  But the Order's proportionality analysis is flawed because it relied on

clearly erroneous premises and assumptions contrary to law.  As discussed above, sampling is

relevant proof that trustees are liable for damages.  The Order did not, and could not, find that it

would be more cost-effective to reunderwrite all loans at issue rather than a sample.[17]  It is thus

proportionate to the case as sampling is far more cost effective than reunderwriting all the loans.

Even if sampling were later found to be improper, all the work is not a "dead end."  Order at

29.  The analysis done on the loans in the sample can be incorporated into an exhaustive loan-by-

loan analysis.  As DB is aware, if its sampling exercise in its suit against Morgan Stanley is later

rejected, "the sample would be 'the first tranche of loans to be subject to prove up on a loan by loan

basis.'"  *Morgan Stanley*, 289 F. Supp. 3d at 505.  The same is true here.  Given that the sample still

---

[17]    RPI estimates it would cost $500 per loan to reunderwrite and it currently estimates there are more than 25,000 loans at issue, including 5,000 loans DB had actual knowledge of R&W breaches. RPI had initially intended to reunderwrite 1,000 loans, or 100 per trust.  The rough estimate of reunderwriting all the loans at issue is $12.5 million compared to $5 million with sampling.

has probative value even if the sample's generalization is later rejected on its merits, it is far more proportionate to proceed with the sample first.

## IV.     CONCLUSION

Because the Magistrates' Order came to clearly erroneous conclusions, was contrary to law and made improper dispositive factual determinations, the Order should be vacated and RPI be permitted to conduct sampling-related expert discovery.

DATED:  October 12, 2018                     Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO


                                             s/ LUCAS F. OLTS
                                             LUCAS F. OLTS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

- 25 -

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 12, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List.

s/ LUCAS F. OLTS
LUCAS F. OLTS

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  lolts@rgrdlaw.com

1487465_1

**Mailing Information for a Case 1:14-cv-04394-AJN-BCM Royal Park Investments SA/NV v. Deutsche Bank National Trust Company**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Cristina Ashba**
  cristina.ashba@morganlewis.com

- **Kevin James Biron**
  kevin.biron@morganlewis.com,robert.thompson@morganlewis.com,nymanagingclerk@morganlewis.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Paul Fattaruso , II**
  pfattaruso@bsfllp.com

- **Joseph Edward Floren**
  joseph.floren@morganlewis.com

- **Elizabeth Allen Frohlich**
  efrohlich@morganlewis.com,lucy.wang@morganlewis.com,jowyang@morganlewis.com

- **Bernard J. Garbutt , III**
  bernard.garbutt@morganlewis.com,melissa.feig@morganlewis.com,anna.goldenhersh@morganlewis.com,robert.thompson@morganlewis.com,nymanagingclerk@morganlewis.com,jennifer.

- **Bryan P. Goff**
  bryan.goff@morganlewis.com,melissa.feig@morganlewis.com,nymanagingclerk@morganlewis.com

- **Tera Marie Heintz**
  tera.heintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Robin Ann Henry**
  rhenry@bsfllp.com,mholness@bsfllp.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-goldman@morganlewis.com,anna.goldenhersh@morganlewis.com,nymanagingclerk@morganlewis.com

- **Ashley Anelcha Krupski**
  akrupski@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,DBakshi@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan Herman Levy**
  jonathan.levy@morganlewis.com,nymanagingclerk@morganlewis.com

- **Grant R. MacQueen**
  gmacqueen@morganlewis.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com,9870190420@filings.docketbird.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Regina Schaffer-Goldman**
  rschaffer-goldman@morganlewis.com,nymanagingclerk@morganlewis.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,3827167420@filings.docketbird.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nathan Todd Shapiro**
  nathan.shapiro@morganlewis.com

- **Motty Shulman**
  mshulman@bsfllp.com,NYC_Managing_Clerk@bsfllp.com,mpoppito@bsfllp.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com,2859905420@filings.docketbird.com

- **John Michael Vassos**
  jvassos@morganlewis.com,nymanagingclerk@morganlewis.com

- **Phillip J. Wiese**
  phillip.wiese@morganlewis.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)