UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
ROYAL PARK INVESTMENTS SA/NV,        :   Civil Action No. 1:14-cv-04394-AJN-BCM
Individually and on Behalf of All Others :
Similarly Situated,                   :   CLASS ACTION
                                      :
                    Plaintiff,        :   ROYAL PARK INVESTMENTS SA/NV'S
                                      :   MEMORANDUM OF LAW IN FURTHER
       vs.                            :   SUPPORT OF RULE 72 OBJECTIONS TO
                                      :   AND MOTION TO SET ASIDE
DEUTSCHE BANK NATIONAL TRUST          :   MAGISTRATE JUDGE'S ORDER
COMPANY, as Trustee,                  :   DENYING SAMPLING
                                      :
                    Defendant.        :
                                      :
---------------------------------------------------------- x

1499368_1

- i -

**TABLE OF CONTENTS**

                                                                                                       **Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

      A. The Order Exceeds the Magistrate's Referral Because It Contains Effectively Dispositive Findings and Should Be Reviewed De Novo ....................2

      B. The Order's Reliance on *PABF* Was Clearly Erroneous Because *PABF* Contains No Holding as to the Propriety of Sampling ...........................................4

      C. The Court's Rejection of Well-Reasoned RMBS Sampling Decisions Was Clear Error ...............................................................................................................4

      D. The Court's Order Defining Discovery as Actual Knowledge Violates Traditional Contract Interpretation Principles that Different Terms Used in Contracts Should Be Given Different Meanings ......................................................6

      E. The Order Prevents RPI from Establishing Damages Arising from DB's Failure to Act on Pervasive Breaches It Discovered ...............................................7

      F. RPI Can Prove the Fact of Damages Without Loan-Specific Proof........................8

      G. The Proportionality Analysis Is Clearly Erroneous Because It Is Based on Merits Decisions that Are Contrary to Law............................................................10

III. CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*,
    31 N.Y.3d 569 (2018) ..................................................................................................7, 8

*Cohen v. City of New York*,
    No. 05-CV-6780 (KMK)(JCF), 2007 WL 2789272
    (S.D.N.Y. Sept. 25, 2007) ................................................................................................3

*Deutsche Bank Nat'l Trust Co. v.*
*Morgan Stanley Mortg. Cap. Holdings LLC*,
    289 F. Supp. 3d 484 (S.D.N.Y. 2018) ...............................................................................8

*E.E.O.C. v. Keco Indus.*,
    748 F.2d 1097 (6th Cir. 1984) ..........................................................................................3

*Fixed Income Shares: Series M v. Citibank, N.A.*,
    314 F. Supp. 3d 552 (S.D.N.Y. 2018) ...........................................................................8, 9

*Nomura Home Equity Loan, Inc., Series 2006-FM2*
*v. Nomura Credit & Capital, Inc.*,
    30 N.Y.3d 572, 69 N.Y.S.3d 520 (2017) .......................................................................7, 8

*PowerShare, Inc. v. Syntel, Inc.*,
    597 F.3d 10 (1st Cir. 2010) ...............................................................................................4

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi.*
*v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014) ..................................................................................1, 4, 10

*Urban Archaeology Ltd. v. 207 E. 57th St. LLC*,
    34 Misc. 3d 1222(A) 2009 WL 8572326 (N.Y. Sup. Ct.),
    *aff'd*, 68 A.D.3d 562 (1st Dep't 2009) .............................................................................9

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 72 ..........................................................................................................................1, 2
    Rule 72(a) ..........................................................................................................................4
    Rule 72(b) ..........................................................................................................................4

**Page**

**SECONDARY AUTHORITIES**

*Cambridge Dictionary*,
   https://dictionary.cambridge.org/us/dictionary/english/discovery ............................................ 6

**I.      INTRODUCTION**

Royal Park Investments SA/NV's ("RPI") Objection[1] identifies numerous ways in which the September 28, 2018 Memorandum and Order ("Order") (ECF No. 646), was clearly erroneous and contrary to law, including that the decision: (i) relies on numerous findings of fact and law, including the interpretation of key contractual provisions, that exceed the Magistrate Judge's referral; (ii) is based on a mistaken belief that courts have found that sampling evidence is not viable proof against trustees; (iii) assumes that sole remedy clauses within the Governing Documents necessarily limits Deutsche Bank's ("DB") liability to a "loan-by-loan" analysis; (iv) erroneously concludes that DB's prudent person obligations following an Event of Default ("EoD") would not include identifying R&W breaches; and (v) misstates RPI's burden of proof as to damages.

The Order erroneously interprets the "loan-by-loan" language in *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*PABF*"), to set forth a standard of proof that prohibits sampling.  But *PABF* expressly disclaimed this holding.  The Order fails to credit the use of sampling in every other residential mortgage-backed securities ("RMBS") context, including repurchase actions by the very trustees seeking to prohibit sampling by certificateholders.  The Order is also clearly erroneous in supporting an "actual knowledge" definition of "discovery" when "actual knowledge" is used elsewhere in the Governing Agreements, and must be given a separate meaning.  Finally, even after an EoD when the trustee has heightened duties, the Court went beyond its referral and made a factual determination of what a trustee should have done to meet its duties.  On these errors, the Order's proportionality analysis was clearly erroneous because it excluded the numerous ways sampling is relevant evidence in this action.

---

[1]      Royal Park Investments SA/NV's Memorandum of Points and Authorities in Support of Rule 72 Objections to and Motion to Set Aside Magistrate Judge's Order Denying Sampling ("Objection") (ECF No. 650).

Much of DB's Opposition[2] quotes conclusory statements from the erroneous Order or from the "Trustee Sampling Decisions"[3] to justify its position with little or no analysis. And where DB does try to defend the Order, DB insists that no merits determinations were made to conclude that sampling is irrelevant to any aspect of RPI's claims, but then defends that very conclusion with merits arguments.

Although the Order is framed as a routine discovery order evaluating the proportionality of RPI's proposed sampling evidence, it precludes RPI from preparing evidence sufficient to present its full theory of the case at summary judgement and at trial. The Order goes beyond the Magistrate's referral and in effect, summarily adjudicates one of the primary disputes in this case: whether DB was required to "nose to the source" and take action to resolve trust-wide problems following discovery of pervasive representations and warranties ("R&W") breaches throughout the Covered Trusts or after an EoD. Thus, RPI respectfully requests that the Court: (i) vacate the Order; and (ii) grant RPI's motion regarding sampling-related expert discovery.

## II.    ARGUMENT

### A.    The Order Exceeds the Magistrate's Referral Because It Contains Effectively Dispositive Findings and Should Be Reviewed De Novo

DB's Opposition ignores the fact that the Order's denial of sampling-related discovery effectively limits the theories RPI is permitted to present at summary judgment and trial. Objection at 5, 20-24. Instead, DB focuses on the proportionality analysis limited to the last few pages of the Order to assert it is a non-dispositive discovery motion, while ignoring the remainder of the opinion interpreting the Pooling and Servicing Agreement ("PSA") provisions and deciding issues of fact. *Compare* Order at 4-28 *with* Order at 28-30. Because the Order exceeded the Magistrate's authority,

---

[2]    Defendant's Opposition to Plaintiff's Rule 72 Objections and Motion to Set Aside Magistrate Judge's Order Denying Sampling ("Opp.") (ECF No. 654).

[3]    *See* Opp. at 2 n.3 (citing cases).

those decisions must be reviewed *de novo* regardless if part of the decision references proportionality. Objection at 5 (citing *E.E.O.C. v. Keco Indus.*, 748 F.2d 1097, 1102 (6th Cir. 1984)); *see also* Objection at 5 n.1 (citing cases).

The Order decides merits issues by holding that RPI cannot show what DB would have recovered if it brought pervasive breach cases against the warrantors of the Covered Trusts. Order at 8-10. The Order further determined that DB had no duty to take action to identify and enforce repurchase claims for R&W breaches following an EoD, despite being charged with a heightened "prudent person" standard of care as to the Covered Trusts' assets. *Compare* Order at 26-28 *with* ECF No. 100 at 14-17 (Memorandum and Order on Motion to Dismiss) (not reaching the question of what DB was required to do following an EoD).[4] Finally, the Court held that "discovery" under the PSAs means, without any distinction or "actual knowledge" and that "loan-by-loan" evidence must be demonstrated for every single loan at issue in this case. Order at 6-7.

These findings determine what the claims are in this case rather than what is relevant to the actual claims. Accordingly, the Order effectively functions as a dispositive decision by limiting the loans for which RPI is entitled to seek damages and denies RPI the ability to develop the particular forms of evidence it needs to efficiently present its theories at summary judgment and trial. *Cohen v. City of New York*, No. 05-CV-6780 (KMK)(JCF), 2007 WL 2789272, at *3 (S.D.N.Y. Sept. 25, 2007) ("district courts generally apply de novo review to magistrate orders that restrict the damages that a party may recover, even where the underlying cause of action remains"). The Order's later proportionality assessment does not negate its dispositive effects. Accordingly, the Court's review here should be *de novo*, even though the Order can also be vacated under the contrary-to-law

---

[4]  DB did not dispute that the EoD decision went beyond the Magistrate's referral. Objection at 20-21. This is unsurprising given that the standard of care is an issue of fact reserved for the trier of fact. While DB lumps in RPI's EoD claims with the use of sampling generally in this matter, this portion of the Order exceeds the Magistrate's (and indeed the District Court's) authority and must be vacated.

- 3 -

standard. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) ("for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard").

> **B.  The Order's Reliance on *PABF* Was Clearly Erroneous Because *PABF* Contains No Holding as to the Propriety of Sampling**

DB mischaracterizes "loan-by-loan," as used in *PABF*, 775 F.3d at 162, as a standard of proof that prohibits a certificateholder-plaintiff from using sampling to prove its case. Opp. at 5-8. DB fails to address RPI's arguments that the Magistrate misread *PABF*. RPI's point is simple – *PABF* explicitly disclaims deciding if sampling is permissible to prove claims against a RMBS trustee. Objection at 8-9. The "loan-by-loan" language that forms the entirety of DB's argument is dicta that addressed class standing, not liability issues, and the Second Circuit explicitly left open the possibility that sampling could be used as proof in cases against trustees. *See PABF*, 775 F.3d at 162 (explicitly not addressing "[w]hether or not that method of proof [*i.e.*, sampling] could appropriately be used to establish that [the trustee] breached its duties to certificateholders"). DB's citations to Trustee Sampling Decisions following the identical misreading of *PABF* do nothing to bolster its argument. Those cases' continued reliance on a purported "loan-by-loan" requirement – taken out of context from a portion of the decision that did not address what evidence is required to prove a trustee's liability – simply rely on each other's flawed reasoning. The Order's holding that "loan-by-loan" prohibits certificateholders from proving their case with sampling evidence, is clearly erroneous and contrary to law. Order at 8.

> **C.  The Court's Rejection of Well-Reasoned RMBS Sampling Decisions Was Clear Error**

Because *PABF* did not foreclose sampling, the Order should have endorsed sampling, as RPI demonstrated that it is regularly used to enhance efficiency in RMBS litigation. Objection at 6. DB distinguishes those cases as not brought against RMBS trustees, and suggests that as a RMBS trustee

- 4 -

1499368_1

it may rely on sampling to prove a repurchase action against warrantors, but certificateholders may not use sampling to establish what DB should have done and what it would have recovered. Opp. at 8-9. It makes no sense that RPI cannot prove what damages DB would have recovered by using the same type of evidence DB itself is permitted to use. ECF No. 474 at 22-23.

The Order held that sampling is only relevant in cases where a trustee sues a warrantor because a warrantor is liable for all of the breached loans on account of its review of all the loan files. Order at 17. But cases allowing sampling evidence are indistinguishable from the evidence RPI seeks to use here because RPI's argument is that DB should have sought these repurchases from warrantors but failed to do so. ECF No. 496 at 2-3. DB is liable for the damages it would have recovered from the warrantor on the breaching loans if it had initiated similar litigation against warrantors. ECF No. 100 at 7-11. Thus, to show what DB should have done and what it would have recovered, involves the exact same evidentiary presentation here. Nowhere does DB explain how evidence it should have and would have used against warrantors is irrelevant for demonstrating the extent of DB's own liability.

In all the cases cited by RPI, and as RPI intends to do here, the expert establishes loan-by-loan liability and damages on the sample, and then extrapolates those findings on a statistically valid (similar) set of loans. ECF No. 474 at 19-23. RPI would not use sampling to show if DB had the sufficient state of mind to have been required to seek repurchase, but to establish what DB would have recovered after RPI proved DB was indeed required to do so. *Id*. at 23-34. Because RPI is not seeking specific performance that DB force a warrantor to replace a loan, the specific identity of each breached loan is unnecessary when a properly constructed sample provides an efficient and valid means to calculate the ultimate damages. Objection at 12.

### D. The Court's Order Defining Discovery as Actual Knowledge Violates Traditional Contract Interpretation Principles that Different Terms Used in Contracts Should Be Given Different Meanings

The Order further limits expert analysis on the loans at issue to those in which DB had "actual knowledge" of R&W breaches despite the use of the term "discovery" in the PSAs. Order at 12-16. This was clear error, as different terms used in different contexts in a contract must be given separate meanings. Objection at 14. DB attempts to justify the Order's clear error by citing one of the many dictionary definitions of discovery as obtaining actual knowledge for the first time. Opp. at 17. But DB does not explain how this particular dictionary definition should supersede numerous courts' determinations of discovery being met upon constructive knowledge. *See* "Discovery," *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/discovery (discovery is "the ***act of finding*** something that had not been known before"). Further, DB's position ignores how this "temporal component" of discovery, Objection at 17, is consistent with its universal interpretation as "constructive knowledge" or "inquiry notice" in every other circumstance analyzed by the courts. ECF No. 474 at 3-5.

DB's view of the "temporal component" of discovery is incompatible with the notice provisions of the Governing Agreements.[5] Under the Governing Agreements, a trustee must provide "prompt notice" to other deal parties upon "discovery," and must do so when it obtains constructive knowledge to preserve its claim. Objection at 17-18 (citing *Deutsche Bank Nat'l Trust Co. v. HSBC*, No. 652001/2013 (N.Y. Sup. Ct. Jan. 13, 2014), (ECF No. 9 at 22). But if the PSAs allow a trustee to wait until it obtains actual knowledge to act, its ability to enforce repurchases is compromised, at best, or illusory. This temporal process of obtaining discovery is compatible with a constructive knowledge or inquiry notice definition of discovery. Accordingly, once a trustee receives notice (or

---

[5] DB has argued that it is not a party to the Mortgage Loan Purchase Agreement. But instruments executed at the same time for the same purpose, such as to establish a RMBS trust, are to be interpreted together. Objection at 17.

- 6 -

1499368_1

information highly suggestive of a breach), it has a duty to "nose-to-the source" to confirm or deny its suspicions. ECF No. 474 at 3-5. DB's contrary positions allows it to short-circuit the "discovery" process (no matter how strong its suspicions) at any point prior to achieving "actual knowledge" and would render the entire repurchase provisions a meaningless addition to the PSAs.

DB further points to certificateholder direction provisions in the PSAs to justify that it need not confirm *any* suspicions it obtains. Opp. at 14-16. But this misconstrues both RPI's arguments and the purposes of those PSA provisions. RPI is not arguing that DB had a general pre-EoD duty to investigate all the loans in the Covered Trusts for R&W breaches. The PSAs require, however, that once DB received enough information to suspect there was a breach, it would need to confirm or deny such suspicions. Failing to do so (*i.e.*, consciously avoiding knowledge) makes DB liable under the constructive knowledge standard for those breaches. ECF No. 474 at 3-4 (citing cases). Certificateholder direction is for instances when DB has not received information requiring further inquiry, but the certificateholders nonetheless desire further investigation. These actions are different from investigations stemming from the trustee receiving sufficient evidence suggesting there are in fact breaches of R&W. The trustee is not permitted to sit on the sidelines once it obtains information suggestive of R&W breaches. *Id*.

### E.   The Order Prevents RPI from Establishing Damages Arising from DB's Failure to Act on Pervasive Breaches It Discovered

Contrary to cases applying *Nomura* and *Ambac*, the Order prevents RPI from developing sampling evidence to establish what damages DB could have recovered for the Covered Trusts through pervasive breach cases, even though pervasive breach cases may still be brought by RMBS trustees. *See* Order at 9 (citing *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569 (2018), and *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 584, 69 N.Y.S.3d 520 (2017)). Pervasive breach cases permit

repurchase litigation for money damages notwithstanding the sole-remedy provisions of the PSAs. While *Nomura* and *Ambac* may have altered the standards for these cases, courts continue to permit pervasive breach cases, such as in DB's case against Morgan Stanley. *Deutsche Bank Nat'l Trust Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 289 F. Supp. 3d 484, 502 (S.D.N.Y. 2018). Indeed, the Magistrate and DB agree that the sole-remedies provisions can still be voided in certain circumstances. Opp. at 11; Order at 9 n.11. Here, RPI will show that the evidence indicates that the sole-remedy provisions were voidable and that DB should have brought pervasive breach cases against certain warrantors. To establish damages, RPI will do what DB should have and would have done, and sample the relevant loans to establish liability and damages. As this theory of liability is still viable, prohibiting RPI from obtaining the evidence used to support that theory is clearly an erroneous application of *Nomura* and *Ambac*.

### F. RPI Can Prove the Fact of Damages Without Loan-Specific Proof

DB argues that the Order correctly found that RPI must establish that a warrantor was solvent to prove damages based on the assertion – unsupported by any citation to the Governing Documents at issue – that damages must be proved loan-by-loan. Opp. at 12-13. According to DB, even proving the "***fact*** of damages" can only be done on a loan-by-loan basis. *Id*. But DB's sole support is Judge Furman's decision in *Fixed Income Shares: Series M v. Citibank, N.A.*, 314 F. Supp. 3d 552 (S.D.N.Y. 2018), which involved allegations very different from those at issue here.

*Citibank* concerned a RMBS trust for which Citibank served as trustee and two divisions of American Home Mortgage Holdings, Inc. served as the Seller and Master Servicer. *Id*. at 553-54. When American Home declared bankruptcy in 2007, Citibank filed placeholder claims with the bankruptcy court to preserve the trust's claims against both entities and informed certificateholders it would not take any further action absent certificateholder instruction. *Id*. at 555. No certificateholder responded with further instruction, and the bankruptcy court stayed further claims being brought

- 9 -

against the American Home entities outside of the bankruptcy proceedings. *Id*. at 555, 561. The *Citibank* court found that, in light of the actions that Citibank took to protect the trusts' interests, including obtaining a settlement of claims for the trusts, the plaintiffs had no basis for their claims other than speculation that if the trustee had taken further unspecified action with regard to the bankruptcy claims, the trusts would have recovered more from American Home. *Id*. at 562.

Judge Furman's reasoning in *Citibank* is inapplicable here, where RPI alleges not that particular settlements DB obtained for repurchase claims were insufficient, but that it intentionally avoided taking any action to protect trust assets. *See, e.g.*, ECF No. 474 at 10-11. DB, in all but a few instances, did not file any claims to enforce the Covered Trusts' rights. Rather, DB adopted a policy – not based on any particular language in the Governing Agreements – that erected hurdles for certificateholders and made it nearly impossible to demand that DB act on its repurchase enforcement obligations. *See, e.g.*, ECF No. 474 at 8-9.

DB also attempts to disclaim that its Thirty-Sixth Defense is an affirmative defense and recasts it as a causation element of RPI's claim. Opp. at 12-13. But DB's Thirty-Sixth Defense has nothing to do with DB's breaches of the PSAs causing RPI's damages. RPI's damages are caused by DB's failure to enforce the repurchase obligations of the warrantors. DB's Thirty-Sixth Defense is an offset to damages if the warrantors were insolvent at the time the repurchase claim should have been instituted. DB's defense is in essence an impossibility defense to a contract which is an affirmative defense. *See, e.g.*, *Urban Archaeology Ltd. v. 207 E. 57th St. LLC*, 34 Misc. 3d 1222(A) 2009 WL 8572326, at *4 (N.Y. Sup. Ct.), *aff'd*, 68 A.D.3d 562 (1st Dep't 2009) ("impossibility of


against the American Home entities outside of the bankruptcy proceedings. *Id*. at 555, 561. The *Citibank* court found that, in light of the actions that Citibank took to protect the trusts' interests, including obtaining a settlement of claims for the trusts, the plaintiffs had no basis for their claims other than speculation that if the trustee had taken further unspecified action with regard to the bankruptcy claims, the trusts would have recovered more from American Home. *Id*. at 562.

Judge Furman's reasoning in *Citibank* is inapplicable here, where RPI alleges not that particular settlements DB obtained for repurchase claims were insufficient, but that it intentionally avoided taking any action to protect trust assets. *See, e.g.*, ECF No. 474 at 10-11. DB, in all but a few instances, did not file any claims to enforce the Covered Trusts' rights. Rather, DB adopted a policy – not based on any particular language in the Governing Agreements – that erected hurdles for certificateholders and made it nearly impossible to demand that DB act on its repurchase enforcement obligations. *See, e.g.*, ECF No. 474 at 8-9.

DB also attempts to disclaim that its Thirty-Sixth Defense is an affirmative defense and recasts it as a causation element of RPI's claim. Opp. at 12-13. But DB's Thirty-Sixth Defense has nothing to do with DB's breaches of the PSAs causing RPI's damages. RPI's damages are caused by DB's failure to enforce the repurchase obligations of the warrantors. DB's Thirty-Sixth Defense is an offset to damages if the warrantors were insolvent at the time the repurchase claim should have been instituted. DB's defense is in essence an impossibility defense to a contract which is an affirmative defense. *See, e.g.*, *Urban Archaeology Ltd. v. 207 E. 57th St. LLC*, 34 Misc. 3d 1222(A) 2009 WL 8572326, at *4 (N.Y. Sup. Ct.), *aff'd*, 68 A.D.3d 562 (1st Dep't 2009) ("impossibility of

performing the contract may be raised as an affirmative defense in a breach of contract action").[6] RPI need not address these issues to establish the "fact of damages."

### G. The Proportionality Analysis Is Clearly Erroneous Because It Is Based on Merits Decisions that Are Contrary to Law

The Order's holding that sampling, even for loans DB actually knew had breached the R&W, is a fruitless exercise is incorrect and a misapplication of what sampling is intended to show here. Order at 28-30. While sampling may not inform which specific loans outside of the sample breached the R&W, it does consist of a relevant substantive review of individual loans for breaches. Importantly, a properly constructed sample can accurately calculate damages for the remainder of loans with similar characteristics not in the sample. Objection at 19-22. Since *PABF* did not hold sampling was impermissible and RMBS cases regularly use statistical techniques to interpret evidence, requiring each and every loan be reviewed is unnecessarily wasteful and disproportionate to the case, especially because RPI does not seek to identify specific loans for a specific performance remedy of replacement. And in any event, if RPI's sample is later found to be unreliable, those loans reviewed can be encompassed into the full-scale review of loans. Objection at 24-25.[7]

## III. CONCLUSION

For the foregoing reasons, the Order be vacated and RPI's Motion for sampling-related expert discovery should be granted.

DATED:  November 7, 2018                    Respectfully submitted,

                                            s/ LUCAS F. OLTS
                                            LUCAS F. OLTS

---

[6] Moreover, DB's assertions are highly speculative because many of the warrantors identified in RPI's complaint, such as Morgan Stanley, HSBC, Goldman Sachs and Wells Fargo, were solvent at the filing of the Complaint. RPI should not be blocked from sampling on this basis for trusts which had a solvent warrantor when the complaint was filed.

[7] The Order credited DB's complaints about the costs of sampling. Order at 28 n.35. Because much of the time and expense of "sampling" is the loan-by-loan review that RPI would have to conduct with or without sampling, DB's additional costs are limited to challenging the construction of the sample and the extrapolation of its findings.

- 10 -

1499368_1

ROBBINS GELLER RUDMAN & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
CHRISTOPHER M. WOOD
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 7, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LUCAS F. OLTS
LUCAS F. OLTS

ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  lolts@rgrdlaw.com

1499368_1

# Mailing Information for a Case 1:14-cv-04394-AJN-BCM Royal Park Investments SA/NV v. Deutsche Bank National Trust Company

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Cristina Ashba**
  cristina.ashba@morganlewis.com

- **Kevin James Biron**
  kevin.biron@morganlewis.com,robert.thompson@morganlewis.com,nymanagingclerk@morganlewis.com

- **Rollin Bernard Chippey**
  rchippey@morganlewis.com,robert.thompson@morganlewis.com

- **Paul Fattaruso , II**
  pfattaruso@bsfllp.com

- **Joseph Edward Floren**
  joseph.floren@morganlewis.com

- **Elizabeth Allen Frohlich**
  efrohlich@morganlewis.com,lucy.wang@morganlewis.com,jowyang@morganlewis.com

- **Bernard J. Garbutt , III**
  bernard.garbutt@morganlewis.com,melissa.feig@morganlewis.com,anna.goldenhersh@morganlewis.com,robert.thompson@morganlewis.com,nymanagingclerk@morg

- **Bryan P. Goff**
  bryan.goff@morganlewis.com,melissa.feig@morganlewis.com,nymanagingclerk@morganlewis.com

- **Tera Marie Heintz**
  tera.heintz@morganlewis.com,dlang@morganlewis.com,ewoodward@morganlewis.com

- **Robin Ann Henry**
  rhenry@bsfllp.com,mholness@bsfllp.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Stephan Kraut**
  mkraut@morganlewis.com,rschaffer-goldman@morganlewis.com,anna.goldenhersh@morganlewis.com,nymanagingclerk@morganlewis.com

- **Ashley Anelcha Krupski**
  akrupski@morganlewis.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,DBakshi@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan Herman Levy**
  jonathan.levy@morganlewis.com,nymanagingclerk@morganlewis.com

- **Grant R. MacQueen**
  gmacqueen@morganlewis.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,kmccormack@rgrdlaw.com,e_file_sd@rgrdlaw.com,9870190420@filings.docketbird.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Regina Schaffer-Goldman**
  rschaffer-goldman@morganlewis.com,nymanagingclerk@morganlewis.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,3827167420@filings.docketbird.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Nathan Todd Shapiro**
  nathan.shapiro@morganlewis.com

- **Motty Shulman**
  mshulman@bsfllp.com,NYC_Managing_Clerk@bsfllp.com,mpoppito@bsfllp.com

- **Jeffrey James Stein**
  jstein@rgrdlaw.com,2859905420@filings.docketbird.com

- **John Michael Vassos**
  jvassos@morganlewis.com,nymanagingclerk@morganlewis.com

- **Phillip J. Wiese**
  phillip.wiese@morganlewis.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`